UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| METROPOLITAN TRANSPORTATION AUTHORITY and TRIBOROUGH BRIDGE AND TUNNEL AUTHORITY,<br><br>Plaintiffs,<br><br>v.<br><br>SEAN DUFFY, in his official capacity as Secretary of the United States Department of Transportation, GLORIA M. SHEPHERD, in her official capacity as Executive Director of the Federal Highway Administration, UNITED STATES DEPARTMENT OF TRANSPORTATION, and FEDERAL HIGHWAY ADMINISTRATION,<br><br>Defendants. | CIVIL ACTION NO. 1:25-cv-01413-LJL |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO INTERVENE**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................ iii

PRELIMINARY STATEMENT ...................................................................................................1

BACKGROUND ...........................................................................................................................2

    A.    FACTUAL BACKGROUND.................................................................................2

    B.    PROPOSED INTERVENORS ...............................................................................3

    C.    THE LAWSUIT........................................................................................................5

ARGUMENT .................................................................................................................................6

I.     THIS MOTION IS TIMELY, AND PERMISSION TO INTERVENE WILL
      NEITHER DELAY THE ACTION NOR PREJUDICE THE ADJUDICATION
      OF ANY PARTY'S RIGHTS.............................................................................................8

II.    RIDERS ALLIANCE AND SIERRA CLUB HAVE COGNIZABLE
      INTERESTS IN THE BENEFITS PROVIDED BY THE CONGESTION
      PRICING PROGRAM AND THEIR INTERESTS WILL BE ADVERSELY
      AFFECTED IF THE PROGRAM IS WITHDRAWN. ......................................................9

III.   PROPOSED INTERVENORS' RIGHTS ARE SUFFICIENTLY DISTINCT
      FROM THE MTA'S TO BE INADEQUATELY REPRESENTED UNDER
      RULE 24(A)...................................................................................................................12

IV.   ALTERNATIVELY, THE COURT SHOULD GRANT PERMISSIVE
      INTERVENTION UNDER RULE 24(B). .......................................................................14

CONCLUSION.............................................................................................................................16

# TABLE OF AUTHORITIES

**Page number(s)**

**CASES**

*Allco Fin. Ltd. v. Etsy*,
   300 F.R.D. 83, 88 (D. Conn. 2014)....................................................................14

*Ass'n of Conn. Lobbyists LLC v. Garfield*,
   241 F.R.D. 100 (D. Conn. 2007)........................................................................11

*Berger v. N. Carolina State Conf. of the NAACP*,
   597 U.S. 179 (2022)..........................................................................................13

*Bldg. & Realty Inst. of Westchester and Putnam Cnties., Inc. v. New York.*,
   No. 19-CV-11285, 2020 WL 5658703 (S.D.N.Y. Sep. 23, 2020)...........................9, 11, 14

*Chan v. United States Dep't of Transp.*,
   No. 23-CV-10365 (LJL), 2024 WL 5199945 (S.D.N.Y. Dec. 23, 2024) ........................2

*CIFI Latam, S.A. v. Tauch*,
   No. 19-CV-05607, 2020 WL 1164687 (S.D.N.Y. Mar. 11, 2020) ..................................8

*Commack Self-Serv. Kosher Meats, Inc. v. Rubin*,
   170 F.R.D. 93 (E.D.N.Y. 1996) .......................................................................11

*Floyd v. City of N.Y.*,
   302 F.R.D. 69 (S.D.N.Y. 2014) .........................................................................2

*Floyd v. City of N.Y.*,
   770 F.3d 1051 (2d Cir. 2014)............................................................................8

*Friends of E. Hampton Airport, Inc. v. Fed. Aviation Admin.*,
   No. 15-CV-0441, 2016 WL 792411 (E.D.N.Y. Feb. 29, 2016) ........................................9

*Hartford Fire Ins. Co. v. Mitlof*,
   193 F.R.D. 154 (S.D.N.Y. 2000) ......................................................................8

*Home Ins. Co. v. Liberty Mut. Ins. Co.*,
   No. 87-CV-00675, 1990 WL 188925 (S.D.N.Y. Nov. 20, 1990)......................................8

*Hulinsky v. Cnty. of Westchester*,
   No. 22-CV-06950, 2023 WL 3162428 (S.D.N.Y. Apr. 28, 2023) ................................8, 9

*Human Servs. Council of New York v. City of New York*,
   No. 21-CIV-11149, 2022 WL 4585815 (S.D.N.Y. Sept. 29, 2022) ..........................9, 14

*McNeill v. N.Y.C. Hous. Auth.*,
   719 F. Supp. 233 (S.D.N.Y. 1989)....................................................................14

*Miller v. Silbermann*,
   832 F. Supp. 663 (S.D.N.Y. 1993)....................................................................14

*Mulgrew v. United States Dep't of Transp.*,
   No. 23-CV-10365 (LJL), 2024 WL 3251732 (S.D.N.Y. June 20, 2024) .................2, 5, 10

*New York Pub. Int. Rsch. Grp., Inc. v. Regents of Univ. of State of N. Y.*,
    516 F.2d 350 (2d Cir. 1975)..............................................................................9, 11, 13

*New York v. Scalia*,
    No. 20-cv-1689, 2020 WL 3498755 (S.D.N.Y. June 29, 2020) ..........................14

*New York v. U.S. Dep't of Health & Human Servs.*,
    No. 19-Civ-4676, 2019 WL 3531960 (S.D.N.Y. Aug. 2, 2019)...........................14

*New York v. U.S. Immigration & Customs Enforcement*,
    No. 19-CV-8876, 2019 WL 7816835 (S.D.N.Y. Dec. 17, 2019) ........................14

*Olin Corp v. Lamorak Ins. Co.*,
    325 F.R.D. 85 (S.D.N.Y. 2018) ............................................................................9

*Oneida Grp. Inc. v. Steelite Int'l U.S.A. Inc.*,
    No. 17-CV-0957, 2017 WL 6459464 (E.D.N.Y. Dec. 15, 2017) ........................14

*R.S. v. N.Y.C. Dep't of Educ.*,
    No. 21-CV-10596 (LJL), 2022 WL 13826132 (S.D.N.Y. Oct. 21, 2022)..........15

*Riders Alliance v. Hochul*,
    Index No. 156711/2024 (N.Y. Sup. Ct. N.Y. Cnty. 2024) .......................1, 5, 11

*Rodriguez v. It's Just Lunch, Int'l*,
    No. 07-CV-09227, 2013 WL 1749590 (S.D.N.Y. Apr. 23, 2013) .......................9

*S.E.C. v. Credit Bancorp, Ltd.*,
    No. 99-CV-11395, 2000 WL 1170136 (S.D.N.Y. Aug. 16, 2000)......................9

*S.E.C. v. Xia*,
    No. 21-CV-5350 (PKC), 2024 WL 964676 (E.D.N.Y. Mar. 4, 2024) ...............2

*United States v. Int'l Bus. Mach. Corp.*,
    62 F.R.D. 530 (S.D.N.Y.1974) ............................................................................8

*United States v. N.Y.C. Hous. Auth.*,
    326 F.R.D. 411 (S.D.N.Y. 2018) ........................................................................14

*United States v. Pitney Bowes, Inc.*,
    25 F.3d 66 (2d Cir. 1994) ..............................................................................7, 15

*United States v. Yonkers Bd. of Educ.*,
    801 F.2d 593 (2d Cir. 1986)..................................................................................8

*Washington Elec. Co-op., Inc. v. Massachusetts Mun. Wholesale Elec. Co.*,
    922 F.2d 92 (2d Cir. 1990)..................................................................................15

## OTHER AUTHORITIES

7C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1909
    (3d ed. 2022) ........................................................................................................13

Fed. R. Civ. P. 24(a)(2)...........................................................................................6–7

Fed. R. Civ. P. 24(b)(1)(B) ................................................................................................7, 14

Fed. R. Civ. P. 24(b)(3)........................................................................................................7, 15

## PRELIMINARY STATEMENT

Proposed Intervenors Riders Alliance and Sierra Club seek to intervene under Federal Rule of Civil Procedure 24 to protect their interest in the transformative Central Business District Tolling Program, which Defendants have purported to terminate. The Tolling Program is critical to improving the air New Yorkers breathe and the usability of the transit system New Yorkers depend on.

Riders Alliance is New York City's grassroots nonprofit membership organization of thousands of subway and bus riders who come together to work toward a more reliable, accessible, and affordable public transit system. The Sierra Club is the nation's oldest and largest grassroots environmental organization, and works to promote a cleaner, healthier, and more sustainable environment in its members' communities. Riders Alliance and Sierra Club members depend on the Tolling Program to improve the air quality around their homes and workplaces, and to increase the accessibility and reliability of the transit system they ride every day.

Riders Alliance and Sierra Club previously filed a lawsuit to ensure that the Tolling Program would be turned on. *See Riders Alliance v. Hochul*, Index No. 156711/2024 (N.Y. Sup. Ct. New York Cnty. 2024). Proposed Intervenors now seek once again to safeguard their interest in cleaner air and a transit system that works for all New Yorkers. In the interest of judicial economy and efficiency, Riders Alliance and Sierra Club propose to intervene in this action rather than file a separate case.[1]

---

[1] Plaintiffs and Defendants have informed Proposed Intervenors that they do not yet take positions with respect to this intervention motion at the time of filing.

## BACKGROUND[2]

### A.    FACTUAL BACKGROUND

This Court is well-versed in the long road leading to the New York State Legislature's passage of the Traffic Mobility Act on April 19, 2019, *see Mulgrew v. U.S. Dep't of Transp.*, No. 23-CV-10365 (LJL), 2024 WL 3251732, at *2–*4 (S.D.N.Y. June 20, 2024) (tracing history of congestion pricing in New York City), as well as the subsequent efforts expended to implement the Central Business District Tolling Program, *see Chan v. U.S. Dep't of Transp.*, No. 23-CV-10365 (LJL), 2024 WL 5199945, at *4–*11 (S.D.N.Y. Dec. 23, 2024) (tracing the extensive planning, federal coordination, environmental and economic review, and toll-setting processes required before the Tolling Program could commence).

On January 5, 2025, the Program finally began collecting tolls. The results, although early, already demonstrate a reduction in motor vehicle traffic, a rise in public transit ridership, and an increase in bus speeds. Complaint-in-Intervention ¶¶ 66–67. And the Tolling Program's success will help address longstanding air quality problems in New York City. For years, heavy motor vehicle traffic has caused people living in the New York City metropolitan area to experience extremely high levels of pollution, with many of the most dangerous air pollutants concentrated in Manhattan's Central Business District. *Id.* ¶¶ 33, 36–37. Traffic emissions are by far the largest contributor to high ozone levels in the New York City metropolitan area, which can cause serious respiratory problems and increase the risk of early death. *Id.* ¶ 34–35. Some New Yorkers, like Riders Alliance member Barbara Moore and Sierra Club member Michelle Tokarczyk, are forced to limit the time they spend outdoors as a result. *Id.* ¶¶ 21, 23. Hazardous

---

[2] "Generally, in considering a motion to intervene, 'the court accepts as true the [putative intervenor's] well-pleaded, non-conclusory allegations and supporting material.'" *S.E.C. v. Xia*, No. 21-CV-5350 (PKC), 2024 WL 964676, at *5 (E.D.N.Y. Mar. 4, 2024) (quoting *Floyd v. City of N.Y.*, 302 F.R.D. 69, 83 (S.D.N.Y. 2014)).

air pollution from vehicle traffic in New York City was estimated in recent years to cause over one thousand premature deaths annually and to lead to many more asthma attacks, emergency department admissions, and missed days of work and school. *Id.* ¶ 33.

Despite the Tolling Program's promising beginning, the Trump administration has attempted to end it. On February 19, 2025, Secretary of Transportation Sean Duffy purported to terminate the Tolling Program, announcing by letter that he had concluded that the Tolling Program had not been authorized in accordance with the requirements of the federal Value Pricing Pilot Program ("VPPP"). Secretary Duffy cited two reasons for his conclusion: First, according to Secretary Duffy, Federal Highway Administration's VPPP authority contains an unwritten exception barring tolling programs that do not include toll-free lanes or approaches. Second, Secretary Duffy concluded that the tolls set for the Tolling Program were impermissibly based on the financial needs of the Metropolitan Transportation Authority ("MTA") rather than being set exclusively by consideration of "reducing congestion or advancing other road-related goals."

### B.    PROPOSED INTERVENORS

#### 1.    Riders Alliance

Riders Alliance is a membership organization of thousands of bus and subway riders dedicated to winning better transit in New York City. The organization and its members have consistently advocated for implementation of congestion pricing, including advocacy in 2018 and 2019 that was integral to the adoption of the Congestion Pricing Program. Compl.-Intervention ¶ 14. Riders Alliance has continued to support implementation of the program through organizing, advocacy and litigation.

Riders Alliance members are directly affected by the air quality and transit improvements that the Defendants intend to strip away. They live and work directly inside Manhattan's Central Business District, and in the areas selected for the Congestion Pricing Program's mitigation measures. See *id.* ¶¶ 16–21. Many members are specifically vulnerable to traffic fumes due to their age, medical conditions, and extensive time spent outdoors. *See id.* Their use of public transit was significantly impaired prior to the implementation of congestion pricing, including by lengthy delays in accessing work and medical care owing to Manhattan's worst-in-the-nation bus speeds and through the underfunded transit system's lack of accessible subway platforms. *See id.* ¶ 14. The federal government now threatens to deprive them of long-awaited improvements they have only begun to enjoy.

### 2.    Sierra Club

Sierra Club is a grassroots environmental organization with more than 600,000 members across the country; the Atlantic Chapter is responsible for membership and activities in New York State and has approximately 50,000 members. *See* Compl.-Intervention ¶ 15. Sierra Club is the nation's oldest and largest grassroots environmental organization, and its Atlantic Chapter is the oldest grassroots environmental organization in New York. It has long advocated for the role that cleaner transportation can play in improving health and environmental outcomes.

Numerous individual Sierra Club members live in or near the Manhattan Central Business District, regularly engage in outdoor activities in the Central Business District, and are particularly vulnerable to the threats posed by air pollution in the Central Business District in the absence of the Congestion Pricing Program. Sierra Club members affected by the Tolling Program include older adults with heart and pulmonary diseases, individuals who must curtail their ordinary activities when air quality is particularly impaired, and persons at particular risk

for degraded air quality due to lung cancer and prolonged exposure to the World Trade Center dust cloud resulting from the September 11, 2001 attacks. *Id.* ¶¶ 22–25.

### 3.    Proposed Intervenors' Previous Tolling Program Litigation

In June 2024, "just weeks before Congestion Pricing was scheduled to go into effect, New York Governor Kathleen Hochul 'directed the MTA to pause implementation' of Congestion Pricing." *Mulgrew*, 2024 WL 3251732 at \*1. That July, with the Tolling Program subjected to an indefinite block, Riders Alliance and Sierra Club filed a lawsuit in New York state court to enforce their right to the benefits that the Tolling Program was set to deliver to their members. *See Riders Alliance v. Hochul*, Index No. 156711/2024 (N.Y. Sup. Ct. N.Y. Cnty. 2024). Governor Hochul moved to dismiss the lawsuit on various grounds, including arguing that Riders Alliance and Sierra Club lacked sufficiently concrete and particularized environmental interests in the Tolling Program to confer standing.

The court denied the motion to dismiss in its entirety, sustaining Riders Alliance's and Sierra Club's environmental interests in the Tolling Program. *See Riders Alliance v. Hochul*, Index No. 156711/2024, NYSCEF Doc. No. 57 (N.Y. Sup. Ct. N.Y. Cnty. Sept. 30, 2024). The parties subsequently negotiated a settlement.

### C.    THE LAWSUIT

On February 19, 2025, the same day that Secretary Duffy announced his decision to terminate the Tolling Program, Plaintiffs commenced this lawsuit. The Complaint raises six claims arising from Secretary Duffy's letter. First, Plaintiffs allege that the Secretary lacks authority to unilaterally rescind the VPPP agreement, rendering the action both contrary to law under the Administrative Procedure Act ("APA") (Count I) as well as ultra vires (Count II). Second, Plaintiffs charge that Secretary Duffy's purported recission of the VPPP agreement neither comports with the terms of the agreement and applicable federal regulations (Count III),

nor accounts for Plaintiffs' property interests (Count IV). Finally, Plaintiffs allege that the desultory nature of Secretary Duffy's decision—which summarily dispensed with significant reliance interests, ignored foreseeable environmental and economic impacts, and failed to consider less damaging alternative policies—violates the APA (Count V) and the National Environmental Policy Act (Count VI).

Riders Alliance and Sierra Club seek to intervene to assert closely related but distinct claims. The proposed Complaint-in-Intervention focuses on the obviously flawed legal rationale that Secretary Duffy purports to rely on, which, read in context, suggests that the rationale is a pretext. As the proposed Complaint-in-Intervention details, although the Trump administration and Secretary Duffy have repeatedly described their political opposition to the Tolling Program, the letter claims that the decision to terminate the Tolling Program rests entirely on a legal conclusion. Yet the legal reasoning in the letter is cursory, and appears to have been adopted specifically in an effort to avoid accounting for the reliance interests that would otherwise complicate any effort to summarily rescind the VPPP agreement or terminate the Program. Compl.-Intervention ¶¶ 75–89, 99. Taken together, these factors suggests that the rationale chosen by Secretary Duffy is pretextual in violation of the APA (Count I). And the significant flaws in the Secretary's legal rationale render the decision substantively arbitrary and capricious under the APA (Count II). Riders Alliance and Sierra Club also raise claims under NEPA (Count III) and maintain that Secretary Duffy lacked authority to unilaterally terminate the Tolling Program (Count IV).

## ARGUMENT

Riders Alliance and Sierra Club seek to intervene under Federal Rule of Civil Procedure 24. Rule 24(a)(2) provides for intervention as of right for any party who "claims an interest

relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2).

Rule 24(b) provides for intervention by permission, which authorizes this Court to grant the timely motion of parties with "claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). "The principal guide in deciding whether to grant permissive intervention is 'whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.'" *United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 73 (2d Cir. 1994) (quoting Fed. R. Civ. P. 24(b)(3)).

As described below, Proposed Intervenors' motion may be granted under either Rule 24(a) or Rule 24(b). This motion is timely and will neither delay resolution of the action nor require any alteration in scheduling. Riders Alliance and Sierra Club members have a strong interest in challenging the federal government's effort to end the Tolling Program, which provides them with cleaner air and a greater ability to use and enjoy the public spaces in the city they live in, including by improving their ability to travel. Should the federal government succeed in establishing its entitlement to terminate the Tolling Program, Proposed Intervenors' interests will be significantly impaired. Finally, Proposed Intervenors' interests are sufficiently distinct from Plaintiffs' to support intervention as of right under Rule 24(a). But the Court need not reach that question, because Riders Alliance and Sierra Club undoubtedly qualify for permissive intervention under Rule 24(b), and the Court may grant permissive intervention without addressing the adequacy-of-protection prong under Rule 24(a)(1).

As they have done in the past in response to attempts to block the Congestion Pricing Program, Riders Alliance and Sierra Club are prepared to file a separate lawsuit to safeguard

7

their interest in the significant improvements that the Program secures for their members. But a separate lawsuit would not promote judicial efficiency when intervention is an available and appropriate result here.

**I.      This Motion Is Timely, and Permission to Intervene Will Neither Delay the Action nor Prejudice the Adjudication of Any Party's Rights.**

"The timeliness requirement is flexible and the decision is one entrusted to the district judge's sound discretion." *Floyd v. City of N.Y.*, 770 F.3d 1051, 1058 (2d Cir. 2014) (quoting *United States v. Yonkers Bd. of Educ.*, 801 F.2d 593, 594–95 (2d Cir. 1986). "It is firmly established that the most significant criterion in determining timeliness is whether the delay in moving for intervention has prejudiced any of the existing parties." *Hartford Fire Ins. Co. v. Mitlof*, 193 F.R.D. 154, 160 (S.D.N.Y. 2000) (quoting *United States v. Int'l Bus. Mach. Corp.*, 62 F.R.D. 530, 541–42 (S.D.N.Y.1974)). "Absent any significant prejudice to the existing parties, courts usually consider an application for intervention as timely." *Hulinsky v. Cnty. of Westchester*, No. 22-CV-06950, 2023 WL 3162428, at *3 (S.D.N.Y. Apr. 28, 2023) (quoting *Home Ins. Co. v. Liberty Mut. Ins. Co.*, No. 87-CV-00675, 1990 WL 188925, at *2 (S.D.N.Y. Nov. 20, 1990)).

Here, there is no undue delay, and granting this motion will not result in any alteration to any schedules. Initial service of the Complaint was completed days before this filing, and the operative event triggering this lawsuit took place less than two weeks ago. No initial status conference has taken place, no initial disclosures have been served, and no case management plan has been developed. "In other words, this litigation is in 'its early stages' such that the motion to intervene is timely because the intervention would not significantly affect the case's manageability." *CIFI Latam, S.A. v. Tauch*, No. 19-CV-05607, 2020 WL 1164687, at *2 (S.D.N.Y. Mar. 11, 2020) (citations omitted).

Because "this action is in its infancy," Riders Alliance's and Sierra Club's participation "will not result in delay or prejudice" to any party. *Friends of E. Hampton Airport, Inc. v. Fed. Aviation Admin.*, No. 15-CV-0441, 2016 WL 792411, at *9 (E.D.N.Y. Feb. 29, 2016). Courts in this Circuit routinely deem motions to intervene timely even in cases where months, rather than weeks, separate the filing of the complaint and the motion for intervention. *See, e.g.*, *Human Servs. Council of New York v. City of New York*, No. 21-CIV-11149, 2022 WL 4585815, at *3 (S.D.N.Y. Sept. 29, 2022); *Olin Corp v. Lamorak Ins. Co.*, 325 F.R.D. 85, 88 (S.D.N.Y. 2018) ("[C]ourts have found motions to intervene timely where, as here, these motions were brought a 'few months' after the claims.") (citations omitted); *Hulinsky*, 2023 WL 3162428, at *2 (motion timely when filed "approximately five months after Plaintiffs commenced this action"); *Bldg. & Realty Inst. of Westchester and Putnam Cnties., Inc. v. New York.*, No. 19-CV-11285, 2020 WL 5658703, at *7 (S.D.N.Y. Sep. 23, 2020) (collecting cases where courts have granted as timely motions to intervene where the movants waited three months or longer); *Rodriguez v. It's Just Lunch, Int'l*, No. 07-CV-09227, 2013 WL 1749590, at *3 (S.D.N.Y. Apr. 23, 2013) (motion to intervene filed five months after receiving notice of interest not untimely); *S.E.C. v. Credit Bancorp, Ltd.*, No. 99-CV-11395, 2000 WL 1170136, at *2 (S.D.N.Y. Aug. 16, 2000) (same).

## II.    Riders Alliance and Sierra Club Have Cognizable Interests in the Benefits Provided by the Congestion Pricing Program and Their Interests Will Be Adversely Affected if the Program Is Withdrawn.

It is well-established that a membership organization "has a sufficient interest to permit it to intervene" when "a regulation from which its members benefit is" at stake. *New York Pub. Int. Rsch. Grp., Inc. v. Regents of Univ. of State of N. Y.*, 516 F.2d 350, 352 (2d Cir. 1975). Riders Alliance and Sierra Club members benefit from the tolling and regulation of vehicle traffic under the Congestion Pricing Program in several ways: they breathe cleaner air and enjoy an increased ability to recreate outdoors, they have an increased ability to travel due to the improvements in

bus speeds and transit functioning, and riders with disabilities are finally gaining the accessible subway stations that have long been denied them.

First, many members derive a direct and substantial environmental benefit from the Program, which reduces air pollution in many sites in and around the Manhattan Central Business District. Some Riders Alliance and Sierra Club members live and work directly in the Central Business District, while others work near sites that will directly benefit from mitigation projects funded by the Congestion Pricing Program. Compl.-Intervention ¶ 16–25. The foreseeable increase in pollution if the Congestion Pricing Program is ended establishes a legally protected interest sufficient not only for intervention, but for independent Article III standing as well. *See Mulgrew*, 2024 WL 3251732, at *19 (observing that "even a small increase in pollutants abutting" a challenger's "neighborhood would provide the 'identifiable trifle' standing doctrine requires"); *see also Brennan v. N.Y.C. Bd. of Educ.*, 260 F.3d 123, 131 (2d Cir. 2001) (observing that "where a proposed intervenor's interests are otherwise unrepresented in an action, the standard for intervention is no more burdensome than the standing requirement").

Second, numerous Riders Alliance members rely on buses and on the subway to exercise their right to travel around New York City. In the absence of the Tolling Program, these riders were forced to endure some of the slowest bus speeds in the nation, and the subway suffered from frequent outages and delays. The Tolling Program reduces the time these members spend crawling through traffic or waiting for a delayed train, conferring direct benefits on transit riders like Riders Alliance members Deborah Baldwin and Norma Ginez. *See* Compl.-Intervention ¶¶ 18–19.

Third, the Tolling Program is an essential source of funds for increasing the subway system's accessibility to riders with disabilities. While disabled riders have fought for years for

accessible trains, they will be subjected to a far longer wait for the accessible trains they are entitled to if the Tolling Program is ended. *See* Compl., ECF No. 1 at ¶ 115. Riders Alliance members like George Bettman will suffer significant harm if these long-deferred upgrades are further delayed. *See* Compl.-Intervention ¶ 20.

In addition to these concrete benefits for their members, Riders Alliance and Sierra Club have an interest in the continuation of the Tolling Program as they have previously supported its enactment and implementation. *See Commack Self-Serv. Kosher Meats, Inc. v. Rubin*, 170 F.R.D. 93, 102 (E.D.N.Y. 1996) ("Organizations may have sufficient interest to support intervention . . . in actions involving legislation or regulations previously supported by the organization." (citation omitted)); *see also, e.g.*, *Bldg. & Realty Inst.*, 2020 WL 5658703, at *11 (finding that proposed intervenors had "demonstrated sufficiently direct and substantial interests" where they "played an active role in the formation and passage of the [challenged law]" and "represented that their members . . . could be affected by revocation of the [challenged law]"); *Ass'n of Conn. Lobbyists LLC v. Garfield*, 241 F.R.D. 100, 103 (D. Conn. 2007) (groups that advocated for campaign finance laws had interest in its validity, partially on account of that advocacy and because "the very purposes for which the organizations were originally created, namely, election reform, are at stake"). Riders Alliance and Sierra Club not only advocated for and supported the Tolling Program, they litigated to ensure it would be turned on. *See Riders Alliance v. Hochul*, Index No. 156711/2024, (N.Y. Sup. Ct. N.Y. Cnty.).

Because this action concerns the validity of Defendants' efforts to end the Tolling Program, "disposition of the action may as a practical matter impair or impede [Proposed Intervenors'] ability to protect their interests," particularly in light of the "possible stare decisis effect of an adverse decision." *New York Pub. Int. Rsch. Grp., Inc.*, 516 F.2d at 352. Plaintiffs'

11

Complaint and the proposed Complaint-in-Intervention share numerous common questions, including whether Secretary Duffy engaged in the reasoned decision-making that the Administrative Procedures Act requires, whether Defendants were entitled to disregard the obligations imposed by NEPA when they decided to terminate the Tolling Program's extensive environmental benefits, and the extent of Secretary Duffy's legal authority to unilaterally terminate the Tolling Program. Riders Alliance and Sierra Club must act to safeguard their interests in these questions, whether through intervention in this lawsuit or through a separate action if intervention is denied.

### III.    Proposed Intervenors' Rights Are Sufficiently Distinct to Be Inadequately Represented Under Rule 24(a).

While Plaintiffs have critically important financial, contract, and reliance interests in the Congestion Pricing Program, these interests are distinct from those of Riders Alliance and the Sierra Club. Plaintiffs are public entities charged with responsibility for and operation of transit networks; they do not possess the environmental interest held by individuals, like Riders Alliance and Sierra Club members, who breathe the air in the Manhattan Central Business District and rely on the Program to ameliorate air pollution. And while the MTA has an interest in the operations of its bus fleet, it does not necessarily share the precise interests of the system's bus riders, who rely on the Congestion Pricing Program to end gridlock so that buses deliver them to their workplaces and appointments in a timely fashion. Nor do the MTA's interests strictly overlap with those of the subway's riders, who have prioritized funding for the signal upgrades that will provide them the fast, reliable service they need. Finally, the MTA does not necessarily share the same interests as disabled Riders Alliance members, who rely on the tolling funds to enable the station accessibility upgrades they have spent years fighting for and are especially anxious to realize.

These distinct interests undercut any presumption of adequate representation. "Where 'the absentee's interest is similar to, but not identical with, that of one of the parties,' that normally is not enough to trigger a presumption of adequate representation." *Berger v. N. Carolina State Conf. of the NAACP*, 597 U.S. 179, 197 (2022) (quoting 7C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1909 (3d ed. 2022)). And, as the Second Circuit has observed, distinct interests in a challenged regulation will tend to lead to differences in argument that weigh in favor of intervention. *See New York Pub. Int. Rsch. Grp., Inc.*, 516 F.2d at 352. Here, for example, in light of their environmental stake in the Congestion Pricing Program Riders Alliance and Sierra Club will likely "make a more vigorous presentation of the [environmental] side of the argument." *New York Pub. Int. Rsch. Grp., Inc.*, 516 F.2d at 352.

Moreover, as the attached proposed pleading demonstrates, Riders Alliance and Sierra Club raise distinct claims from those raised by Plaintiffs. Plaintiffs' claims focus to some degree on the VPPP agreement and the rights it confers on the Triborough Bridge and Tunnel Authority as a signatory to the agreement. The claims emphasize the contractual, regulatory, and constitutional protections that Defendants have flouted, as well as Plaintiffs' significant reliance interests that Defendants have failed to account for. *See* Compl., ECF No. 1 at ¶¶ 122–168 (Counts I–V). The proposed Complaint-in-Intervention focuses instead on the Secretary's use of a seemingly pretextual rationale to try and end the Tolling Program (Count I), and the Secretary's erroneous legal analysis (Count II). And while both complaints raise NEPA claims, Riders Alliance and Sierra Club members possess at least as strong an interest in the quality of the air they breathe as the environmental interests possessed by the MTA and Triborough Bridge and Tunnel Authority.

Thus, because they satisfy each of the requirements of Rule 24(a), Riders Alliance and Sierra Club are entitled to intervention as of right. But in any event, the Court need not reach the question of adequacy of representation. As described in the next section, the Court may elect instead to grant permissive intervention under Rule 24(b).[3]

## IV.    Alternatively, the Court Should Grant Permissive Intervention Under Rule 24(b).

"Permissive intervention is wholly discretionary with the trial court." *U.S. Postal Serv. v. Brennan*, 579 F.2d 188, 191 (2d Cir. 1978). "Rule 24(b)(2) is to be liberally construed in favor of intervention." *Human Servs. Council of New York*, 2022 WL 4585815, at *3 (cleaned up). "Even where a party does not meet" each of the requirements for intervention as of right, "a court may, in its discretion, grant permissive intervention," *New York v. U.S. Immigration & Customs Enforcement*, No. 19-CV-8876, 2019 WL 7816835, at *1 (S.D.N.Y. Dec. 17, 2019), so long as the proposed intervenor timely seeks to participate and "has a claim or defense that shares with the main action a common question of law or fact," Fed. R. Civ. P. 24(b)(1)(B). A "single common question of law or fact" is enough to support permissive intervention. *Miller v. Silbermann*, 832 F. Supp. 663, 673 (S.D.N.Y. 1993) (quoting *McNeill v. N.Y.C. Hous. Auth.*, 719

---

[3] There is no requirement that the Court consider the adequacy of existing representation in granting permissive intervention. "'Rule 24(b) does not list inadequacy of representation as one of the considerations for the court' in exercising its discretion under Rule 24(b), and although a court may consider it, 'it is clearly a minor factor at most.'" *Human Servs. Council of N.Y.*, 2022 WL 4585815, at *4 (quoting *Allco Fin. Ltd. v. Etsy*, 300 F.R.D. 83, 88 (D. Conn. 2014)); *see also New York v. U.S. Dep't of Health & Human Servs.*, No. 19-Civ-4676, 2019 WL 3531960, at *6 (S.D.N.Y. Aug. 2, 2019) ("[T]o grant permissive intervention, Rule 24(b) does not require a finding that party representation be inadequate."). Thus, "courts in this District routinely grant permissive intervention despite finding that an existing party adequately represents the proposed intervenor's interest." *Human Servs. Council of N.Y.*, 2022 WL 4585815, at *4 (citing *Bldg. & Realty Inst.*, 2020 WL 5658703, at *13; *New York v. Scalia*, No. 20-cv-1689, 2020 WL 3498755, at *2 (S.D.N.Y. June 29, 2020); *New York v. U.S. Dep't of Health & Human Servs.*, 2019 WL 3531960, at *6–7; *United States v. N.Y.C. Hous. Auth.*, 326 F.R.D. 411, 417–18 (S.D.N.Y. 2018); *see also Oneida Grp. Inc. v. Steelite Int'l U.S.A. Inc.*, No. 17-CV-0957, 2017 WL 6459464, at *13 (E.D.N.Y. Dec. 15, 2017) (collecting cases finding permissive intervention warranted even where party representation was found adequate).

F. Supp. 233, 250 (S.D.N.Y. 1989)). The Second Circuit has instructed that "[t]he principal guide in deciding whether to grant permissive intervention is 'whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.'" *Pitney Bowes*, 25 F.3d at 73 (quoting Fed. R. Civ. P. 24(b)(3)). As described above, this motion is timely and the proposed Complaint-in-Intervention includes numerous questions in common with the Plaintiffs' complaint.

Granting intervention would serve the purpose of judicial economy and efficiency that lies at the heart of Rule 24. "The purpose of the rule allowing intervention is to prevent a multiplicity of suits where common questions of law or fact are involved." *Washington Elec. Co-op., Inc. v. Massachusetts Mun. Wholesale Elec. Co.*, 922 F.2d 92, 97 (2d Cir. 1990). If Riders Alliance and Sierra Club participate in this lawsuit rather than filing separately, the common and related questions raised in the proposed Complaint-in-Intervention may be quickly resolved in a single action, rather than requiring simultaneous, overlapping litigation. This will allow for "efficiently administrating legal disputes by resolving all related issues in one lawsuit," and the close relationship between the existing claims and the proposed Complaint-in-Intervention will prevent the "lawsuit from becoming unnecessarily complex, unwieldy or prolonged." *Pitney Bowes, Inc.*, 25 F.3d at 69. By contrast, "[d]enial of intervention would only require a new filing before a new District Court judge with a new set of briefs. That outcome would disserve judicial efficiency." *R.S. v. N.Y.C. Dep't of Educ.*, No. 21-CV-10596 (LJL), 2022 WL 13826132, at *2 (S.D.N.Y. Oct. 21, 2022).

## CONCLUSION

For the reasons described above, Proposed Intervenors are entitled to intervention as of right under Rule 24(a). But the Court need not decide that question, because it can also grant permissive intervention under Rule 24(b).


DATED: March 4, 2025

*s/Dror Ladin*
Dror Ladin
Earthjustice
48 Wall Street, 15th Floor
New York, NY 10005
(917) 410-8701
dladin@earthjustice.org

*Counsel for Intervenor-Plaintiffs*
*Riders Alliance and Sierra Club*