UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------- X
METROPOLITAN TRANSPORTATION
AUTHORITY, *et al.*,

                                                      *Plaintiffs*,

                                                      v.                                        No. 1:25-cv-1413-LJL

SEAN DUFFY, in his official capacity as Secretary
of the United States Department of
Transportation, *et al.*,

                                                    *Defendants*.
-------------------------------------------------------------------------- X

# MEMORANDUM OF LAW IN SUPPORT OF THE
# NEW YORK STATE DEPARTMENT OF TRANSPORTATION'S
# MOTION TO INTERVENE AS PLAINTIFF

                                                    LETITIA JAMES
                                                    Attorney General of the State of New York
                                                    New York State Attorney General's Office
                                                    28 Liberty Street
                                                    New York, New York 10005
                                                    (212) 416-8271

Andrew G. Frank,
  Assistant Attorney General
*Of Counsel*

March 19, 2025

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................. 1

BACKGROUND ...................................................................................................................... 2

      A.   New York State's Congestion Pricing Statute ............................................. 2

      B.   Implementation of the Act and Commencement of Congestion Tolling ... 3

      C.   The Purported Termination of the Cooperative Agreement ...................... 6

      D.   This Litigation ............................................................................................ 6

      E.   State DOT's Proposed Complaint-in-Intervention ..................................... 7

ARGUMENT ............................................................................................................................ 7

THE COURT SHOULD GRANT STATE DOT LEAVE TO INTERVENE. ................... 7

I.     State DOT Is Entitled to Intervention as of Right Under Rule 24(a). .............. 8

      A.   This Motion to Intervene Is Timely. ........................................................... 8

      B.   State DOT Has Significant Protectable Interests
          Relating to This Action. ............................................................................. 9

      C.   This Action May Impair the Interests of State DOT. .............................. 10

      D.   State DOT's Interests Are Not Adequately Represented by
          the Current Parties. ................................................................................... 11

II.    State DOT Should Be Granted Permissive Intervention
     Under Rule 24(b) ............................................................................................... 12

CONCLUSION ...................................................................................................................... 14

# **TABLE OF AUTHORITIES**

**CASES** **PAGE(S)**

*AB ex rel. CD v. Rhinebeck Central Sch. Dist.*, 224 F.R.D. 144 (S.D.N.Y. 2004) ................................................................................................................ 10

*Akiachak Native Cmty. v. Dep't of the Interior*,
584 F. Supp. 2d 1 (D.D.C. 2008) ................................................................ 9, 11, 12

*Alfred L. Snapp & Son v. Puerto Rico*,
458 U.S. 592 (1982) ..................................................................................... 9, 10, 12

*Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Americas*,
262 F.R.D. 348 (S.D.N.Y. 2009) .............................................................................. 7

*Blatch v. Franco*,
No. 97 CIV. 3918 (DC), 1998 WL 265132 (S.D.N.Y. May 26,1998) ...................... 14

*Citizens for an Orderly Energy Pol'y, Inc. v. Cnty. of Suffolk*,
101 F.R.D. 497 (E.D.N.Y. 1984) ............................................................................. 9

*Dixon v. Scott Fetzer Co*,
No. 3:11-cv-982 (MPS), 2016 WL 10514834 (D. Conn. May 31, 2016) ................ 13

*Dow Jones & Co. v. U.S. Dep't of Just.*,
161 F.R.D. 247 (S.D.N.Y. 1995) ...................................................................... 13, 14

*In re New York City Policing During Summer 2020 Demonstrations*,
27 F.4th 792 (2d Cir. 2022) .................................................................................... 11

*In re Snap Inc. Sec. Litig.*,
334 F.R.D. 209 (C.D. Cal. 2019) ............................................................................ 14

*McNeill v. N.Y.C. Housing Auth.*,
719 F. Supp. 233 (S.D.N.Y. 1989) .......................................................................... 13

*Md. People's Counsel v. Fed. Energy Regulatory Com.*,
760 F.2d 318 (1985) ................................................................................................ 10

*N.Y. Pub. Int. Rrch. Grp., Inc. v. Regents of the University of the State of N.Y.*,
516 F.2d 350 (2d Cir. 1975) .................................................................................... 11

| **CASES** | **PAGE(S)** |

*Nuesse v. Camp,*
    385 F.2d 694 (D.C. Cir. 1967) ................................................................................. 9

*Olin Corp. v. Lamorak Ins. Co.,*
    325 F.R.D. 85 (S.D.N.Y. 2018) ........................................................................... 8, 13

*Oneida Indian Nation of Wis. v N.Y.,*
    732 F.2d 261 (2d Cir. 1984) .................................................................................... 8

*Peterson v. Islamic Republic of Iran,*
    290 F.R.D. 54 (S.D.N.Y. 2013) ............................................................................... 9

*Sec. & Exch. Comm'n v. Everest Mgmt. Corp.,*
    475 F.2d 1236 (2d Cir.1972) ................................................................................. 13

*Sw. Payroll Serv., Inc. v. Pioneer Bancorp, Inc.,*
    No. 1:19-CV-01349, 2020 WL 12675945 (N.D.N.Y. Aug. 4, 2020) ...................... 13

*Trbovich v. United Mine Workers of Am.,*
    404 U.S. 528 (1972) .............................................................................................. 11

*United States v. Hooker Chemicals & Plastics Corp.,*
    101 F.R.D. 444 (W.D.N.Y. 1984) ............................................................... 10, 11, 12

*United States v. Pitney Bowes, Inc.,*
    25 F.3d 66 (2d Cir. 1994) ........................................................................................ 8

*WildEarth Guardians v. Jewell,*
    320 F.R.D. 1 (D.D.C. 2017) ................................................................................ , 11

| **FEDERAL STATUTES** | **PAGE(S)** |

23 U.S.C. § 149 note ................................................................................................. 3, 4

23 U.S.C.
    § 133(b)(1)(C) ......................................................................................................... 4

42 U.S.C.
    § 4321-4370m-11 .................................................................................................... 4

49 U.S.C.
    § 5307(a)(1) ............................................................................................................. 4
    § 5337(b)(1) ............................................................................................................. 4

Interstate Surface Efficiency Act Pub. L. 102-240
  § 1012(b) (Dec. 18, 1991) .................................................................................. 3, 4


**STATE STATUTES**                                                                      **PAGE(S)**

New York Vehicle & Traffic Law.
  § 1701 ...................................................................................................................... 2
  § 1701-1706 ............................................................................................................ 2
  § 1704-a .................................................................................................................. 3
  § 1704(2) ................................................................................................................. 2

New York Transportation Law
  § 10 .......................................................................................................................... 9

**FEDERAL REGULATIONS**                                                                 **PAGE(S)**

88 Fed. Reg. 41998 (June 28, 2023) ............................................................................ 4

 **FEDERAL RULES**                                                                      **PAGE(S)**

Fed. R. Civ. P. 24 .................................................................................................. 7, 13

Fed. R. Civ. P.  24(a) ............................................................................................. 8, 13

Fed. R. Civ. P. 24(a)(2) ..................................................................................... 1, 8, 10

Fed. R. Civ. P.  24(b) .......................................................................................... 12, 13

Fed. R. Civ. P.  24(b)(1) ............................................................................... 2, 8, 12, 13

Fed. R. Civ. P.  24(b)(2) ............................................................................................ 13

## PRELIMINARY STATEMENT

Plaintiffs Metropolitan Transportation Authority and Triborough Bridge and Tunnel Authority ("Triborough," and together with the Metropolitan Transportation Authority, "MTA"), filed this action against defendants (together, "USDOT") to challenge the purported termination of an agreement that provided federal approval for New York's congestion pricing program. The New York State Department of Transportation ("State DOT") respectfully moves to intervene as plaintiff in this action.

State DOT seeks to intervene because the purported termination by USDOT, if upheld by this Court, would constitute a direct infringement of State DOT's authority to implement the Traffic Mobility Act (the "Act"), the state statute that authorized the congestion pricing program, and to maintain the benefits of congestion pricing for New Yorkers. The congestion pricing program is already furthering the goals set out in the Act by providing significant reductions in traffic congestion and revenue for public transit improvements.

State DOT qualifies for intervention as of right under Federal Rule of Civil Procedure 24(a)(2) because (1) its motion is timely; (2) it has an interest relating to the subject of the action, namely, the continued implementation of congestion pricing pursuant to state law; (3) the disposition of the action without its intervention may, as a practical matter, impair or impede its ability to protect its interest; and (4) its sovereign and quasi-sovereign interests are not adequately represented by the other parties. State DOT also qualifies for intervention by permission under Rule

24(b)(1)(B) because its legal claims share common questions of law or fact with the MTA's claims.

State DOT therefore requests that the Court enter an order authorizing it to intervene, in which event State DOT would file the proposed complaint-in-intervention attached as Exhibit A to the Notice of Motion ("Complaint-in-Intervention"). Counsel for the MTA has stated that it does not oppose State DOT's intervention. Counsel for USDOT has stated that it cannot take a position before seeing these motion papers.

## BACKGROUND

A.  **New York State's Congestion Pricing Statute**

In 2019, the New York legislature enacted the Act. N.Y. Vehicle & Traffic L. §§ 1701-1706. Two goals of the Act were to reduce traffic congestion and air pollution caused by traffic congestion in an area designated as the "central business district," which includes all roads in Manhattan south of 60th Street with a few exceptions. *Id*. §§ 1701, 1704(2). A third goal was to create a dedicated funding source for the capital needs of the MTA, which operates the New York City region's subway, bus, and commuter railroads, in addition to numerous bridges and tunnels. *Id*. § 1701. To achieve these ends, the Act directed Triborough, an affiliate agency of the Metropolitan Transportation Authority, to establish and charge tolls for vehicles entering Manhattan's central business district for the purpose of reducing traffic and environmental harms in the central business district, as well as paying the operating

costs of the congestion pricing program and funding MTA capital improvement projects. *Id.* § 1704-a.

### B. Implementation of the Act and Commencement of Congestion Tolling

Because there are numerous highways in the central business district that are eligible to receive federal aid, the federal government took the position that the MTA needed to obtain federal permission to implement the tolls required by the Traffic Mobility Act. The Federal Highway Administration ("FHWA") provides such federal authority through the Value Pricing Pilot Program ("VPPP"), which was established by the Intermodal Surface Transportation Efficiency Act of 1991 ("ISTEA") Pub. L. 102-240 (Dec. 18, 1991), § 1012(b); 23 U.S.C. § 149 note. To participate in the VPPP, States, local governments, and public authorities enter into "cooperative agreements" with FHWA. *Id.* § 1012(b)(1); 23 U.S.C. § 149 note.

The FHWA has consistently determined that the VPPP allows "cordon pricing," which imposes tolls to drive into a congested area.[1] Revenues generated by a VPPP

---

[1] *See* FHWA, Report on the Value Pricing Pilot Program Through April 2006 at 10 (undated), https://ops.fhwa.dot.gov/congestionpricing/value_pricing/pubs_reports/rpttocongress/pdf/vppp06rpt.pdf; FHWA, Report on the Value Pricing Pilot Program Through May 2009 at 3 (Sept. 17, 2009), https://ops.fhwa.dot.gov/congestionpricing/value_pricing/pubs_reports/rpttocongress/pdf/vppp09rpt.pdf; FHWA, Report on the Value Pricing Pilot Program Through April 2010 at 2 (May 2010), https://ops.fhwa.dot.gov/congestionpricing/value_pricing/pubs_reports/rpttocongress/pdf/vppp10rpt.pdf; FHWA, Report on the Value Pricing Pilot Program Through April 2012 at 11, 50 (May 2012), https://ops.fhwa.dot.gov/congestionpricing/value_pricing/pubs_reports/rpttocongress/pdf/vppp12rpt.pdf; FHWA, Report on the Value Pricing Pilot Program Through April 2016 at iii, 31 (undated), https://ops.fhwa.dot.gov/congestionpricing/value_pricing/pubs_reports/rpttocongress/pdf/vppp16rpt.pdf; FHWA, Report on the Value Pricing Pilot Program Through

project must be used for any "projects eligible under [Title 23]." ISTEA § 1012(b)(3), 23 U.S.C. § 149 note. Pursuant to 23 U.S.C. § 133(b)(1)(C), eligible projects include public transportation projects under 49 U.S.C. §§ 5307(a)(1) and 5337(b)(1).

In June 2019, NYSDOT, an authorized participant in the VPPP, requested that the FHWA enter into an agreement with Triborough, NYSDOT, and the New York City Department of Transportation (together, "project sponsors"), to obtain congestion tolling authority through the VPPP. Complaint-in-Intervention, Exhibit 4. As required by the National Environmental Policy Act ("NEPA), 42 U.S.C. § 4321-4370m-11, the FHWA reviewed the potential environmental impacts of New York's congestion pricing program. In April 2023, the FHWA issued an "environmental assessment," and in June 2023 it issued a "finding of no significant impact." *See*, *e.g.*, 88 Fed. Reg. 41998, 41998 (June 28, 2023).

In March 2024, Triborough adopted a toll rate schedule. MTA, MTA Board Adopts Central Business District Toll Rates (Mar. 27, 2024).[2] In June 2024, after

---

April 2018 at 3, 35 (undated), https://ops.fhwa.dot.gov/congestionpricing/value_pricing/pubs_reports/rpttocongress/pdf/vppp18rpt.pdf; Letters from Deputy Administrator Stephanie Pollack to Chair and Ranking Member of the Senate Committee on Environment and Public Works and the Chair and Ranking Member of the House Committee on Transportation and Infrastructure at 1 (each letter) (Feb. 16, 2022), https://ops.fhwa.dot.gov/congestionpricing/value_pricing/pubs_reports/rpttocongress/pdf/vppp20rpt.pdf; Letters from Administrator Shailen Bhatt to Chair and Ranking Member of the Senate Committee on Environment and Public Works and the Chair and Ranking Member of the House Committee on Transportation and Infrastructure at 1 (each letter) (Sept. 22, 2023), https://ops.fhwa.dot.gov/congestionpricing/value_pricing/pubs_reports/rpttocongress/vppp22rpt/vppp22rpt.pdf.

[2] https://new.mta.info/press-release/mta-board-adopts-central-business-district-toll-rates.

4

reevaluating the environmental impacts based on that schedule, the FHWA confirmed that tolling would have no significant environmental impacts. Letter from Richard Marquis to Allison de Cerreño (June 14, 2024).[3]

In November 2024, Governor Hochul announced and the MTA subsequently adopted a revised toll rate schedule that phased in the initial toll schedule over the first several years of the program. *See, e.g.*, Letter from Roberta Kaplan to the Hon. Lewis Liman (Nov. 14, 2024) [*Chan* ECF No. 125]. After the preparation of a second reevaluation, the FHWA confirmed that the phased-in tolling schedule would have no significant environmental impacts. Letter from Richard Marquis to Allison de Cerreño (Nov. 21, 2024).[4] In late November, the FHWA approved the use of tolling under the congestion pricing program by entering into a cooperative agreement pursuant to the VPPP with State DOT and the other project sponsors. Complaint-in-Intervention, Exhibit 2.

On January 5, 2025, congestion pricing began. Since then, data have shown significant positive results: an average of 60,000 fewer cars per day have been entering the district; bridge and tunnel travel times into the district during the morning rush hour have decreased by nine percent to 44 percent; January retail sales in the district increased by more than $900,000,000 as compared to January of last year; and attendance at Broadway shows in January and early February increased

---

[3] https://new.mta.info/document/142701.
[4] https://new.mta.info/document/158196.

5

by 21 percent as compared to the comparable period last year. MTA, MTA Board Meeting February 26, 2025, at 8-10 (Feb. 26, 2025).[5]

### C. The Purported Termination of the Cooperative Agreement

On February 19, 2025, Secretary Duffy sent a letter to Governor Hochul advising her that he was terminating the cooperative agreement because, in his view, the FHWA had lacked authority to enter into it under the VPPP and because of President Trump's political opposition to congestion pricing. Complaint-in-Intervention, Exhibit 1. Soon after, President Trump announced "CONGESTION PRICING IS DEAD. Manhattan, and all of New York, is SAVED. LONG LIVE THE KING." The following day, FHWA Executive Director Shepherd sent a follow-up letter directing the project sponsors to coordinate with the FHWA to cease collection of congestion pricing tolls by March 31, 2025. Complaint-in-Intervention, Exhibit 3.

### D. This Litigation

On February 19, 2025, MTA filed its complaint [ECF No. 1] against USDOT, the FHWA, Secretary Duffy, and Executive Director Shepherd ("Defendants"). MTA claims that the termination of the cooperative agreement violated the Administrative Procedure Act because the USDOT did not have legal authority to terminate the agreement, violated regulations governing contract termination, and failed to provide an adequate explanation for the termination; violated the due process clause; and failed to comply with NEPA before the termination. Complaint ¶¶ 122-131, 140-183. The MTA also claims that the termination is *ultra vires*. *Id.* ¶¶ 132-139. As relief,

---

[5] https://www.mta.info/document/165401.

the complaint seeks a declaration that the purported termination is unlawful and vacatur of that termination. *Id.* at 50.

Defendants have not yet answered or otherwise responded to the complaint. Two non-governmental groups, the Riders Alliance and Sierra Club, have moved to intervene [ECF No. 23].

### E. State DOT's Proposed Complaint-in-Intervention

State DOT's proposed Complaint-in-Intervention, filed as an exhibit to its Notice of Motion, claims that the USDOT's purported termination of the cooperative agreement violated the Administrative Procedure Act because the USDOT lacked authority to terminate (first claim, ¶¶ 105-112), did not provide State DOT notice and an opportunity to be heard before the termination (third claim, ¶¶ 118-123), arbitrarily and capriciously contended that FHWA did not have authority to sign the agreement and failed to explain FHWA's reversal in position (fourth claim, ¶¶ 124-135), and did not conduct an environmental review under NEPA (fifth claim, ¶¶ 136-150). State DOT also claims that the termination was *ultra vires* (second claim, ¶¶ 113-117).

## ARGUMENT

### THE COURT SHOULD GRANT STATE DOT LEAVE TO INTERVENE.

Federal Rule of Civil Procedure 24 allows a non-party to intervene in ongoing litigation in two ways: as of right or by permission of the court. On motions to intervene, courts accept as true the applicant's non-conclusory allegations. *See, e.g., Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Americas*, 262 F.R.D. 348, 352

7

(S.D.N.Y. 2009). State DOT meets the requirements for both intervention as of right under Rule 24(a)(2) and for permissive intervention under Rule 24(b)(1)(B).

**I.     State DOT Is Entitled to Intervention as of Right Under Rule 24(a).**

Courts grant intervention as of right under Rule 24(a)(2) when an applicant demonstrates that: (1) its motion is timely; (2) it has an interest relating to the property or transaction that is the subject of the action; (3) without intervention the disposition of the action may, as a practical matter, impair or impede its ability to protect its interest; and (4) its interest is not adequately represented by the other parties. *See, e.g., Oneida Indian Nation of Wis. v. N.Y.*, 732 F.2d 261, 265 (2d Cir. 1984) (citations omitted). State DOT meets all of these requirements.

**A.     This Motion to Intervene Is Timely.**

Under Rule 24(a)(2), the threshold inquiry is whether the application for intervention is timely. Among the factors courts consider in evaluating timeliness are: "(1) how long the applicant had notice of the interest before it made the motion to intervene; (2) prejudice to existing parties resulting from any delay; (3) prejudice to the applicant if the motion is denied; and (4) any unusual circumstances militating for or against a finding of timeliness." *Olin Corp. v. Lamorak Ins. Co.*, 325 F.R.D. 85, 87 (S.D.N.Y. 2018) (quoting *United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 70 (2d Cir. 1994)).

All of these considerations establish timeliness here. State DOT is making this motion within 28 days of MTA's filing of the complaint. At this early point, defendants have not answered the complaint, the Court has not ruled on any issue in this

8

litigation other than related case status, discovery has not commenced, and no motions or other applications for relief are pending before the Court other than this intervention motion and one other such motion. *See, e.g.*, *Akiachak Native Cmty. v. Dep't of the Interior*, 584 F. Supp. 2d 1, 5-6 (D.D.C. 2008); *Citizens for an Orderly Energy Pol'y, Inc. v. Cnty. of Suffolk*, 101 F.R.D. 497, 501 (E.D.N.Y. 1984). No unusual circumstances counseling against intervention are present. There is accordingly no prejudice to the parties to this litigation.

### B. State DOT Has Significant Protectable Interests Relating to This Action.

To intervene as of right, the applicant must have an interest relating to the property or transaction that is "direct, substantial, and legally protectable." *Peterson v. Islamic Republic of Iran*, 290 F.R.D. 54, 59 (S.D.N.Y. 2013) (citations omitted). This interest requirement "is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *Nuesse v. Camp*, 385 F.2d 694, 700 (D.C. Cir. 1967).

State DOT has both sovereign and quasi-sovereign interests here. First, State DOT has a direct interest in ensuring that the cooperative agreement authorizing congestion pricing to which NYSDOT, as an authorized participant in the VPPP was a signatory, remains in effect.

Second, State DOT, as the executive agency tasked "with overall responsibility for balanced transportation policy and planning," has a sovereign interest in implementing the Act, which reflects the considered policy judgment of the State's elected officials. *See* New York Transportation Law § 10; *Alfred L. Snapp & Son v.*

9

*Puerto Rico*, 458 U.S. 592, 601 (1982) (a State's sovereign interests include "the power to create and enforce a legal code"); *AB ex rel. CD v. Rhinebeck Central Sch. Dist.*, 224 F.R.D. 144, 157 (S.D.N.Y. 2004) (agency's interest in ensuring proper enforcement of law met interest requirement).

Third, State DOT has quasi-sovereign or *parens patriae* interests in defending congestion pricing against attempts to terminate it because it is part of the State's mission to protect the health and welfare of its residents: the congestion pricing program reduces the economic and environmental harms that traffic congestion imposes on the State's residents and improves public transit used each day by millions those people to travel to work and elsewhere. *See Alfred L. Snapp & Son*, 458 U.S. at 602 (a State has quasi-sovereign interests "[i]n the well-being of its populace"); *Md. People's Counsel v. Fed. Energy Regulatory Com.*, 760 F.2d 318, 321 (1985) (allowing a state agency to invoke a State's *parens patriae* interests); *United States v. Hooker Chemicals & Plastics Corp.*, 101 F.R.D. 444, 447 (W.D.N.Y. 1984) (Canadian province's interest in protecting health of its residents met interest requirement).

C.  **This Action May Impair the Interests of State DOT.**

State DOT meets the third element of the test for intervention as of right because the outcome of this action "may as a practical matter impair or impede [its] ability to protect its interest." Fed. R. Civ. P. 24(a)(2). A ruling upholding the purported termination of the cooperative agreement would impair State DOT's interests as discussed above: preservation of an agreement to which State DOT is a

10

party, implementation of a state statute, and protection of New Yorkers' health and welfare.

### D. State DOT's Interests Are Not Adequately Represented by the Current Parties.

As to the fourth prong for intervention as of right, inadequacy of representation by other parties, the burden on a proposed intervenor "should be treated as minimal," requiring only that the movant "show[ ] that representation of his interest *may be* inadequate." *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972) (emphasis added) (internal quotation marks omitted); *see also In re New York City Policing During Summer 2020 Demonstrations*, 27 F.4th 792, 803 (2d Cir. 2022) (quoting *Trbovich*); *N.Y. Pub. Int. Rrch. Grp., Inc. v. Regents of the University of the State of N.Y.*, 516 F.2d 350, 352 (2d Cir. 1975) (inadequate representation when intervenor's arguments would likely have different emphasis); *WildEarth Guardians v. Jewell*, 320 F.R.D. 1, 5 (D.D.C. 2017) (inadequate representation because states "may have unique sovereign interests not shared by the federal government"); *Akiachak Native Cmty.*, 584 F. Supp. 2d 1, 7 (D.D.C. 2008) (same); *United States v. Hooker Chemicals & Plastics Corp.*, 101 F.R.D. 444, 448-449 (W.D.N.Y. 1984) (inadequate representation when plaintiffs and intervenors shared similar goals but there was "the likelihood" that plaintiffs and intervenors would "place different emphasis upon different problems"). Thus, for example, when an indigenous nation sued the Department of Interior to challenge a prohibition on the Department's placement of land in Alaska into trust for indigenous nations, the State of Alaska was

11

allowed to intervene as of right because the Department had "no clear interest in protecting Alaska's sovereignty or Alaska's interest as a party to [a settlement agreement]." *Akiachak Native Cmty.*, 584 F. Supp. at 7.

Although both the MTA and State DOT share an interest in reducing congestion and funding public transit improvements, only State DOT has sovereign interests in ensuring compliance with its state law and quasi-interests in protecting the public health and welfare of New Yorkers. *See Alfred L. Snapp & Son*, 458 U.S. at 601-602. Because State DOT has those distinct interests, it is likely, as in *Hooker Chemicals*, 101 F.R.D. at 448-49, that State DOT will "place different emphasis upon different problems" than the MTA does and therefore State DOT's interests are not adequately represented by the MTA.

Accordingly, State DOT should be allowed to intervene as of right.

## II. State DOT Should Be Granted Permissive Intervention Under Rule 24(b)

Rule 24(b)(1) provides that, "[o]n timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact" after consideration of "whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."  Courts construe Rule 24(b)(1) liberally and have granted intervention even when a "single common question of law or fact is involved, despite factual differences between the

12

parties." *McNeill v. N.Y.C. Housing Auth.*, 719 F. Supp. 233, 250 (S.D.N.Y. 1989).[6] And "[t]he words claim or defense are not to be read in a technical sense, but only require some interest on the part of the applicant." *Dow Jones & Co. v. U.S. Dep't of Just.*, 161 F.R.D. 247, 254 (S.D.N.Y. 1995). In particular, permissive intervention "is appropriate where the applicant's interest will be finally determined by the suit." *Id.*

A district court has broad discretion to grant or deny a request for permissive intervention "to determine the fairest and most efficient method of handling a case with multiple parties and claims." *Sec. & Exch. Comm'n v. Everest Mgmt. Corp.*, 475 F.2d 1236, 1240 (2d Cir. 1972); *see also Sw. Payroll Serv., Inc. v. Pioneer Bancorp, Inc.*, No. 1:19-CV-01349 (FJS/CFH), 2020 WL 12675945, at *8 (N.D.N.Y. Aug. 4, 2020) (recommending permissive intervention to avoid "piecemeal litigation"), *report and recommendation adopted,* 2021 WL 4583643 (N.D.N.Y. Oct 6, 2021); *Dixon v. Scott Fetzer Co*, No. 3:11-cv-982 (MPS), 2016 WL 10514834, at *2 (D. Conn. May 31, 2016) (granting permissive intervention to allow quicker resolution of plaintiff-intervenors' claims). Courts may also consider the factors relevant on a motion for Rule 24(a) intervention as of right when addressing a motion for Rule 24(b) permissive intervention. *See, e.g.*, *Olin Corp. v. Lamorak Ins. Co.*, 325 F.R.D. 85, 87 (S.D.N.Y. 2018).

---

[6] Before the amendments to Rule 24 effective in December 2007, Rule 24(b)(1)(B)'s provision regarding shared questions of law or fact was codified as Rule 24(b)(2). Although the wording changed slightly, those 2007 changes were intended to be stylistic only, not substantive. Advisory Committee Notes to the 2007 Amendment. Accordingly, decisions under Rule 24(b)(2) issued before December 2007, like *McNeill*, are valid precedent for current Rule 24(b)(1)(B).

13

State DOT meets the standards for permissive intervention. First, as explained above (at 8-9), this motion for intervention is timely, *see, e.g.*, *Blatch v. Franco*, No. 97-civ-3918 (DC), 1998 WL 265132, at *7 (S.D.N.Y. May 26, 1998) (finding timeliness when litigation was "still in its early stages"), and will not delay this litigation or prejudice the original parties' rights.

Second, the MTA's claims and State DOT's claims are closely related in that they share the most central question of law and fact: whether the USDOT's attempt to terminate the congestion pricing program by terminating the cooperative agreement is lawful. *See, e.g.*, *In re Snap Inc. Sec. Litig.*, 334 F.R.D. 209, 215 (C.D. Cal. 2019) (intervention granted when intervenors' claims arose out of same alleged acts as plaintiffs' claims). Both the MTA and State DOT seek declaratory relief and vacatur on that issue, and this Court has held that permissive intervention is appropriate when "the intervenors seek virtually the same relief as the named plaintiffs." *Blatch*, 1998 WL 265132, at *7. Thus, under *Dow Jones & Co. v. U.S. Dep't of Just.*, 161 F.R.D. 247, 254 (S.D.N.Y. 1995), State DOT has an interest sufficient to justify permissive intervention.

Accordingly, permissive intervention is appropriate.

## CONCLUSION

For the foregoing reasons, this Court should enter an order giving State DOT leave to intervene as of right or, alternatively, by permission.

| | |
|---|---|
| Dated: New York, New York<br>March 19, 2025 | Respectfully Submitted,<br><br>LETITIA JAMES<br>Attorney General of the State of New York<br><br>By: __/s/ Andrew G. Frank___<br>     Andrew G. Frank<br>     Assistant Attorney General<br>     N.Y.S. Attorney General's Office<br>     28 Liberty Street<br>     New York, New York 10005<br>     Telephone: (212) 416-8271<br>     E-mail: andrew.frank@ag.ny.gov<br><br>*Attorneys for Movant for Intervention as Plaintiff New York State Department of Transportation* |