UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

METROPOLITAN TRANSPORTATION AUTHORITY, and TRIBOROUGH BRIDGE AND TUNNEL AUTHORITY,

Case No.: 1:25-cv-1413-LJL

                             Plaintiffs,

RIDERS ALLIANCE, SIERRA CLUB, and THE NEW YORK STATE DEPARTMENT OF TRANSPORTATION,

                             Intervenor-Plaintiffs,

-against-

SEAN DUFFY, in his official capacity as Secretary of the United States Department of Transportation, GLORIA M. SHEPHERD, in her official capacity as Executive Director of the Federal Highway Administration, UNITED STATES DEPARTMENT OF TRANSPORTATION, and FEDERAL HIGHWAY ADMINISTRATION,

                             Defendants.

------------------------------------------------------------------------x

## MEMORANDUM IN SUPPORT OF NEW YORK CITY DEPARTMENT OF TRANSPORTATION'S MOTION TO INTERVENE

**MURIEL GOODE-TRUFANT**
Corporation Counsel of the City of New York
Attorney for Proposed Intervenor – New York City Department of Transportation
100 Church Street
New York, NY 10007

Of Counsel:
    Nathan Taylor
    Christian C. Harned

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ..................................................................................................... 1

BACKGROUND ............................................................................................................................. 2

    A.    Factual Background ............................................................................................................ 2

    B.    Purported Termination of the VPPP Agreement ............................................................... 3

    C.    This Litigation .................................................................................................................... 4

    D.    City DOT's Proposed Complaint ....................................................................................... 5

ARGUMENT .................................................................................................................................. 5

    A.    City DOT is Entitled to Intervene as of Right .................................................................. 5

        i.    *City DOT's Intervention is Timely.* ......................................................................... 6

        ii.    *City DOT Has Significant Interests Relating to This Action.* ................................. 7

        iii.    *This Action May Impair City DOT's Interests.* ..................................................... 8

        iv.    *City DOT's Interests Are Not Adequately Represented by Current Parties.* ......... 8

    B.    City DOT Should Be Granted Permissive Intervention. .................................................. 9

CONCLUSION ............................................................................................................................. 10

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Akiachak Native Cmty. v. Dep't of the Interior*,
  584 F. Supp. 2d 1, 5-6 (D.D.C. 2008) ................................................................................. 6

*Bldg. & Realty Inst. v. New York*,
  2020 U.S. Dist. LEXIS 174577 (S.D.N.Y. Sept. 23, 2020) ................................................. 9

*CIFI Latam, S.A. v. Tauch*,
  2020 U.S. Dist. LEXIS 43193 (S.D.N.Y. Mar. 11, 2020) ................................................... 6

*Floyd v. City of N.Y.*,
  770 F.3d 1051 (2d Cir. 2014) ............................................................................................. 6

*Human Servs. Council v. City of New York*,
  2022 U.S. Dist. LEXIS 178058 (S.D.N.Y. Sept. 22, 2022) ................................................ 9

*N.Y. Pub. Int. Rrch. Grp., Inc. v. Regents of the University of the State of N.Y.*,
  516 F.2d 350 (2d Cir. 1975) ........................................................................................... 8, 9

*In re New York City Policing During Summer 2020 Demonstrations*,
  27 F.4th 792 (2d Cir. 2022) ................................................................................................ 8

*Tribovich v. United Mine Workers of Am.*,
  404 U.S. 528 (1972) ........................................................................................................ 8, 9

*U.S. Postal Serv. v. Brennan*,
  579 F.2d 188 (2d Cir. 1978) ............................................................................................... 9

*United States v. Peoples Benefit Life Ins. Co.*,
  271 F.3d 411 (2d Cir. 2001) ............................................................................................... 7

*United States v. Pitney Bowes, Inc.*,
  25 F.3d 66 (2d Cir. 1994) ................................................................................................... 6

*Washington Elec. Coop., Inc. v. Massachusetts Mun. Wholesale Elec. Co.*,
  922 F.2d 92 (2d Cir. 1990) ............................................................................................... 10

*XL Specialty Ins. Co. v. Lakian*,
  632 Fed. Appx. 667 (2d Cir. 2015) .................................................................................... 7

**Statutes**

49 U.S.C. § 5307(a)(1) ............................................................................................................... 3

49 U.S.C. § 5337(b)(1) ............................................................................................................... 3

Intermodal Surface Transportation Efficiency Act, Pub. L. 102-240, § 1012(b)(1) ................... 3

iii

Intermodal Surface Transportation Efficiency Act, Pub. L. 102-240, § 1012(b)(3) ................................... 3

N.Y. Vehicle & Traffic L. § 1701 ................................................................................................... 2

N.Y. Vehicle & Traffic L. § 1704(2) .............................................................................................. 2

**Other Authorities**

49 C.F.R. § 1.85(c)(22) ................................................................................................................... 2

88 Fed. Reg. 41998 (Jun. 28, 2023) ................................................................................................ 2

Federal Rules of Civil Procedure Rule 24 ..................................................................................... 5

Federal Rules of Civil Procedure Rule 24(a)(2) ........................................................................... 8

Federal Rules of Civil Procedure Rule 24(b)(3) ........................................................................... 9

**PRELIMINARY STATEMENT**

The New York City Department of Transportation ("City DOT") seeks intervention under Rule 24 of the Federal Rules of Civil Procedure because Defendants' purported termination of the federal approval for the Central Business District Tolling Program ("Congestion Pricing" or the "Program") will have significant and adverse impacts on City DOT's operations, New York City, and its residents.

Congestion Pricing's benefits—some of which are already being realized—will significantly reduce traffic congestion in the tolling area, result in an improved public transit network, and reduce the hazardous environmental impacts of congestion for New York City residents. For over five years, City DOT has worked closely with the Metropolitan Transportation Authority ("MTA"), the Triborough Bridge and Tunnel Authority ("TBTA"), and the New York State Department of Transportation ("State DOT") to design, study, and implement Congestion Pricing. Much of the tolling infrastructure necessary to operate Congestion Pricing is suspended over public streets in the City DOT right of way, and City DOT will remain an important partner in deploying two regional mitigation measures and all of the place-based mitigation measures identified in the Program's environmental review. Most critically to this action, City DOT is a project sponsor of the Program and a signatory to the Value Pricing Pilot Program ("VPPP") agreement, which outlines the terms under which Congestion Pricing may operate, and which provided federal approval for the Program before Defendants' purported unilateral termination of it.

City DOT may intervene as of right pursuant to Rule 24(a)(2) of the Federal Rules of Civil Procedure because: (1) this application is timely; (2) City DOT, as a project sponsor for the Program, has an interest in the continued implementation of Congestion Pricing; (3) City

1

DOT's interests are sufficiently unique from other participants to this proceeding that disposition of this proceeding without City DOT could impair or impede its ability to protect its interests; and (4) other parties may not adequately represent City DOT's interests.  In the alternative, City DOT should be granted permission to intervene under Rule 24(b)(1)(B) because its legal claims share common questions of law or fact with Plaintiffs' claims.

## BACKGROUND

### A. Factual Background

Congestion Pricing is the result of the 2019 Traffic Mobility Act ("TMA"), *see* N.Y. Vehicle & Traffic L. § 1701 *et seq.*, and has the goals of reducing traffic congestion and related air pollution in the "central business district," which includes Manhattan roads south of 60th Street with limited exceptions, and creating a dedicated funding source for MTA's capital needs.  TMA §§ 1701, 1704(2).

Congestion Pricing required federal approval by the Federal Highway Administration ("FHWA") because it tolls certain roads that are eligible to receive federal aid.[1] The FHWA provided this approval on November 21, 2024, by entering into the VPPP agreement with the project sponsors—TBTA, State DOT, and City DOT.  Proposed Complaint, Exhibit 2. Congress established the VPPP through the Intermodal Surface Transportation Efficiency Act of 1991 ("ISTEA"), Pub. L. 102-240 (Dec. 18, 1991), § 1012(b), and authorized the U.S. Department of Transportation[2] to enter into "cooperative agreements with States, local governments, or public

---

[1] As this Court is aware, Congestion Pricing underwent a years-long environmental review under the National Environmental Policy Act before the FHWA issued a "finding of no significant impact" on June 28, 2023.  *See* 88 Fed. Reg. 41998, 41998 (Jun. 28, 2023).  Challenges to the sufficiency of that review, among other claims, are currently before this Court in a number of matters to which City DOT is a party.  *See*, *e.g.*, *Chan v. U.S. Dep't of Transp., et al.*, No. 23-10365 (LJL); *Mulgrew v. U.S. Dep't of Transp., et al.*, No. 24 Civ. 1644 (LJL); and *New Yorkers Against Congestion Pricing Tax, et al. v. U.S. Dep't of Tansp., et al.*, No. 24 Civ. 367 (LJL).

[2] The Secretary of Transportation has delegated authority to administer the VPPP to the FHWA Administrator.  *See* 49 C.F.R. § 1.85(c)(22).

2

authorities." *Id*. § 1012(b)(1). "Cordon pricing" schemes, which like the Program impose tolls to drive in a congested area, are eligible for the VPPP.[3] VPPP revenues must be used for "projects eligible under [Title 23]," ISTEA § 1012(b)(3), which includes public transportation projects under 49 U.S.C. §§ 5307(a)(1) and 5337(b)(1).

On January 5, 2025, Congestion Pricing began. Preliminary data suggests the Program goals are being achieved: an average of 60,000 fewer cars per day enter the district; bridge and tunnel travel times into the district during the morning rush hour have decreased by 9% to 44%; January retail sales in the central business district have increased by more than $900 million as compared to January 2024; and attendance at Broadway shows in January and early February increased by 21% as compared to the same 2024 period. *See* MTA, MTA Board Meeting February 26, 2025, at 8-10 (Feb. 26, 2025).[4]

B. **Purported Termination of the VPPP Agreement**

On February 19, 2025, Defendant Duffy sent a letter to New York State Governor

---

[3] *See* FHWA, Report on the Value Pricing Pilot Program Through April 2006 at 10 (undated), https://ops.fhwa.dot.gov/congestionpricing/value_pricing/pubs_reports/rpttocongress/pdf/vppp06rpt.pdf; FHWA, Report on the Value Pricing Pilot Program Through May 2009 at 3 (Sept. 17, 2009), https://ops.fhwa.dot.gov/congestionpricing/value_pricing/pubs_reports/rpttocongress/pdf/vppp09rpt.pdf; FHWA, Report on the Value Pricing Pilot Program Through April 2010 at 2 (May 2010), https://ops.fhwa.dot.gov/congestionpricing/value_pricing/pubs_reports/rpttocongress/pdf/vppp10rpt.pdf; FHWA, Report on the Value Pricing Pilot Program Through April 2012 at 11, 50 (May 2012), https://ops.fhwa.dot.gov/congestionpricing/value_pricing/pubs_reports/rpttocongress/pdf/vppp12rpt.pdf; FHWA, Report on the Value Pricing Pilot Program Through April 2016 at iii, 31 (undated), https://ops.fhwa.dot.gov/congestionpricing/value_pricing/pubs_reports/rpttocongress/pdf/vppp16rpt.pdf; FHWA, Report on the Value Pricing Pilot Program Through April 2018 at 3, 35 (undated), https://ops.fhwa.dot.gov/congestionpricing/value_pricing/pubs_reports/rpttocongress/pdf/vppp18rpt.pdf; Letters from Deputy Administrator Stephanie Pollack to Chair and Ranking Member of the Senate Committee on Environment and Public Works and the Chair and Ranking Member of the House Committee on Transportation and Infrastructure at 1 (each letter) (Feb. 16, 2022), https://ops.fhwa.dot.gov/congestionpricing/value_pricing/pubs_reports/rpttocongress/pdf/vppp20rpt.pdf; Letters from Administrator Shailen Bhatt to Chair and Ranking Member of the Senate Committee on Environment and Public Works and the Chair and Ranking Member of the House Committee on Transportation and Infrastructure at 1 (each letter) (Sept. 22, 2023), https://ops.fhwa.dot.gov/congestionpricing/value_pricing/pubs_reports/rpttocongress/vppp22rpt/vppp22rpt.pdf.

[4] https://www.mta.info/document/165401.

3

Hochul, copying City DOT Commissioner Ydanis Rodriguez, advising that he was terminating the VPPP agreement.  Proposed Complaint, Exhibit 1.  In the letter, Duffy explained that the termination was based on his view that FHWA lacked authority to enter into the VPPP and on President Donald Trump's opposition to the Program.  *Id*.  That same day, President Trump stated on social media that, "CONGESTION PRICING IS DEAD. Manhattan, and all of New York, is SAVED. LONG LIVE THE KING."  On February 20, 2025, Defendant Shepard sent a letter to the project sponsors, including City DOT Commissioner Rodriguez, directing the sponsors to coordinate with the FHWA to cease collection of tolls under the Program by March 31, 2025.  Proposed Complaint, Exhibit 3.  By letter dated March 20, 2025, Defendant Shepard informed the project sponsors, including City DOT Commissioner Rodriguez, that she was extending the period of time to cease collection of tolls by thirty days, until April 20, 2025.  Proposed Complaint, Exhibit 4.

### C. This Litigation

On February 19, 2025, MTA and TBTA filed their complaint against Defendants.  Dkt. 1.  They allege that the purported termination of the VPPP agreement violated: (1) the Administrative Procedure Act ("APA") because the Defendants lacked the authority to terminate the agreement, violated regulations governing contract termination, and failed to provide an adequate explanation for the termination; (2) is *ultra vires;* (3) violated the due process clause of the U.S. Constitution; and (4) failed to satisfy their environmental review obligations under the National Environmental Policy Act.  *Id*., ¶¶ 122-183.  MTA and TBTA seek a declaration that the purported termination is unlawful and an order vacating same.  *Id*. at 50.

As of the date of this filing, Defendants have not responded to the complaint.  Three other parties (State DOT, the Riders Alliance, and Sierra Club), have sought and been granted intervention.  *See* Dkt. 32, 36.

### D. City DOT's Proposed Complaint

City DOT's proposed complaint, Exhibit A, asserts six claims against Defendants herein: (1) Defendants' purported termination of the VPPP agreement violated the APA because Defendants' lack the authority to terminate it (Exhibit A, ¶¶ 101-110); (2) Defendants' purported termination of the VPPP agreement violated the APA because Defendants acted contrary to governing regulations and did not provide City DOT an opportunity to be heard before the purported termination or to appeal same (Exhibit A, ¶¶ 119-126); (3) Defendants' purported termination of the VPPP agreement violated the APA because it failed to adequately explain FHWA's reversal in position (Exhibit A, ¶¶ 135-148); (4) Defendants' purported termination of the VPPP agreement is *ultra vires* (Exhibit A, ¶¶ 111-118); (5) Defendants' purported termination of the VPPP agreement violated City DOT's due process rights under the U.S. Constitution because it did not afford the project sponsors sufficient process before depriving the project sponsors of a property interest (Exhibit A, ¶¶ 127-134); and (6) Defendants failed to satisfy their obligations under the National Environmental Policy Act before purporting to terminate the VPPP agreement (Exhibit A, ¶¶ 149-163).

## ARGUMENT

## CITY DOT SHOULD BE GRANTED LEAVE TO INTERVENE

Rule 24 of the Federal Rules of Civil Procedure allows a non-party to intervene in pending litigation as of right or by permission of the court. Fed. R. Civ. P. 24.

### A. City DOT is Entitled to Intervene as of Right

City DOT is entitled to intervention as of right. Intervention as of right may be granted to a party where: (1) its motion is timely; (2) it has an interest relating to the property or transaction that is the subject of the action; (3) without intervention, the disposition of the act may,

5

as a practical matter, impair or impede its ability to protect its interest; and (4) its interest is not adequately represented by the other parties. *See United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 70 (2d Cir. 1994). City DOT satisfies each of these requirements.

      *i.*    *City DOT's Intervention is Timely.*

"The timeliness requirement is flexible and the decision is one entrusted to the district judge's sound discretion." *Floyd v. City of N.Y.*, 770 F.3d 1051, 1058 (2d Cir. 2014) (quoting *United States v. Yonkers Bd. of Educ.*, 801 F.2d 593, 594–595 (2d Cir. 1986). Courts generally consider: "(a) the length of time the applicant knew or should have known of its interest before making the motion; (b) prejudice to existing parties resulting from the applicant's delay; (c) prejudice to the applicant if the motion is denied; and (d) the presence of unusual circumstances militating for or against a finding of timeliness." *Id*. (quoting *MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc.*, 471 F.3d 377, 390 (2d Cir. 2006).

Each of these considerations weigh in favor of finding that the instant motion is timely. First, City DOT moves within forty-two days of the filing of the complaint. Second, Defendants will not be prejudiced by City DOT's intervention because Defendants have not answered or otherwise responded to the complaint, no issues raised in this litigation have been disposed of, discovery has not commenced, and there are no motions before the Court that might be affected by City DOT's intervention. "In other words, this litigation is in 'its early stages' such that the motion to intervene is timely because the intervention would not significantly affect the case's manageability." *CIFI Latam, S.A. v. Tauch*, 2020 U.S. Dist. LEXIS 43193, at *5 (S.D.N.Y. Mar. 11, 2020) (citations omitted); *see also Akiachak Native Cmty. v. Dep't of the Interior*, 584 F. Supp. 2d 1, 5-6 (D.D.C. 2008). Third, no unusual circumstances exist militating against a finding that the instant application is timely. Fourth, as detailed *infra*, City DOT will be significantly

6

prejudiced if it is unable to defend its substantial interests in this proceeding.

    *ii.    City DOT Has Significant Interests Relating to This Action.*

"For an interest to be cognizable under Rule24(a)(2), it must be 'direct, substantial, and legally protected.'" *United States v. Peoples Benefit Life Ins. Co.*, 271 F.3d 411, 415 (2d Cir. 2001) (quoting *Washington Elec. Coop., Inc. v. Massachusetts Mun. Wholesale Elec. Co.*, 922 F.2d 92, 97 (2d Cir. 1990)). "This test, however, is one of inclusion rather than exclusion." *XL Specialty Ins. Co. v. Lakian*, 632 Fed. Appx. 667, 669 (2d Cir. 2015) (internal citations omitted).

City DOT has a direct and substantial interest in this action. First, City DOT has a direct and substantial interest in ensuring that the VPPP agreement, to which it is a party, remains in effect and is not unilaterally and unlawfully terminated. Second, City DOT has a direct interest in the deployment of two regional mitigation measures and, through existing City DOT programs, all place-based mitigation measures set forth in the Program's environmental review. Defendants' purported termination of the VPPP agreement and this litigation risks a situation where City DOT might expend significant staff time and resources deploying the regional and place-based mitigation measures to satisfy its obligations as set forth in the environmental review of the Program, but where the benefits of the Program may not be realized because it must cease operation. Third, City DOT has a direct and substantial interest in ensuring it can rely on lawful administrative processes. Defendants' attempt to unilaterally and unlawfully revoke the VPPP agreement, despite a years-long coordination between Defendants and the project sponsors on the Program's design, environmental review, and implementation, undermines City DOT's ability to rely on federal actions at large and, ultimately, undermines the rule of law itself. Initiatives like Congestion Pricing require long-term planning and coordination by various agencies—like City DOT—at all levels of government, but these efforts are not achievable if parties may arbitrarily

7

alter course and terminate a program after it has received all lawful approvals and is implemented.

### iii. This Action May Impair City DOT's Interests.

The outcome of this action will plainly impair or impede City DOT's ability to protect its interests. *See* Fed. R. Civ. P. 24(a)(2). Each of the direct and substantial interests identified above will be impaired should this Court find that Defendants properly terminated the VPPP agreement.

### iv. City DOT's Interests Are Not Adequately Represented by Current Parties.

The burden on a proposed intervenor to show inadequacy of representation by other parties "should be treated as minimal," requiring only that the movant "show[] that representation of his interest 'may be' inadequate." *Tribovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972); *see also In re New York City Policing During Summer 2020 Demonstrations*, 27 F.4th 792, 803 (2d Cir. 2022) (quoting *Tribovich*); *N.Y. Pub. Int. Rrch. Grp., Inc. v. Regents of the University of the State of N.Y.*, 516 F.2d 350, 352 (2d Cir. 1975) (inadequate representation occurs when an intervenor may make "more vigorous representation" of an argument than existing parties).

Here, City DOT's interests are sufficiently distinct from existing litigants that their interests may not be adequately represented. For example, MTA and TBTA may elect to emphasize the financial impacts to New York's public transit system should the purported termination of the VPPP agreement be upheld. *See*, *e.g.*, Dkt 1 at ¶ 12. State DOT has indicated that it may emphasize arguments addressing its sovereign interest in this litigation. Dkt. 31 at 12. The Riders Alliance and Sierra Club have indicated that they may emphasize arguments addressing the Program's environmental benefits. Dkt. 24 at 13. Each of these important interests are distinct from those raised by City DOT above, and without City DOT's participation in this litigation, its

8

own interests—including those related to the deployment of certain regional and all place-based mitigation measures—may not be sufficiently addressed because of other litigants' focus on economic, environmental, or sovereign interests. *See Tribovich*, 404 U.S. at n.10; *N.Y. Pub. Int. Rrch. Grp., Inc.*, 516 F.2d at 352.

City DOT has established its entitlement to intervene as of right, and it respectfully requests this Court grant its motion to do so.

**B. City DOT Should Be Granted Permissive Intervention.**

In the alternative, City DOT should be permitted intervention pursuant to Rule 24(b)(1), which permits courts to grant intervention to anyone "who…has a claim or defense that shares with the main action a common question of law or fact."  Fed. R. Civ. P. 24(b)(1). "Permissive intervention is wholly discretionary with the trial court[,]" *U.S. Postal Serv. v. Brennan*, 579 F.2d 188, 191 (2d Cir. 1978), and may be granted after consideration of "whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).  "Rule 24(b)(2) is to be liberally construed in favor of intervention." *Human Servs. Council v. City of New York*, 2022 U.S. Dist. LEXIS 178058, at *7 (S.D.N.Y. Sept. 22, 2022).  "It is well-established by district courts in the Second Circuit that '[t]he words "claim or defense" are not read in a technical sense, but only require some interest on the part of the applicant.'"  *Bldg. & Realty Inst. v. New York*, 2020 U.S. Dist. LEXIS 174577, at *25 (S.D.N.Y. Sept. 23, 2020) (collecting cases).

City DOT should be permitted intervention in this action.  As detailed above, City DOT's intervention will not unduly delay adjudication of any issues at bar or prejudice the interest of a party to this action.  Importantly, City DOT's claims are closely related to those asserted by other parties, namely MTA, TBTA and State DOT, because they share a question of law and fact: whether Defendants' purported termination of the VPPP agreement is lawful.  City DOT, like other

9

plaintiffs herein, seeks declaratory relief and vacatur on that issue. Permitting City DOT's intervention therefore serves the purpose of judicial economy and efficiency and prevents a multiplicity of suits where common questions of law or fact are involved. *See Washington Elec. Coop., Inc.*, 922 F.2d at 97.

Accordingly, City DOT respectfully requests this Court's permission to intervene.

## CONCLUSION

For the foregoing reasons, City DOT respectfully requests that the Court permit its intervention under Rule 24 of the Federal Rules of Civil Procedure.

Dated:     New York, New York
            April 2, 2025

                                         **MURIEL GOODE-TRUFANT**
                                         Corporation Counsel of the City of New York

                 By:    /s/ Nathan Taylor
                                         Nathan Taylor
                                         Assistant Corporation Counsel
                                         ntaylor@law.nyc.gov
                                         Christian C. Harned
                                         Assistant Corporation Counsel
                                         chharned@law.nyc.gov
                                         100 Church Street
                                         New York, New York 10007
                                         (212) 356-2315

                                         *Attorneys for the New York City Department of Transportation*

# CERTIFICATE OF SERVICE

Case: *Metropolitan Transportation Authority, et al., v. Sean Duffy, et al.*, No. 1:25-cv-1413-LJL

I hereby certify that on April 2, 2025, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**NOTICE OF MOTION TO INTERVENE – FED. R. CIV. P. 24**

**MEMORANDUM IN SUPPORT OF THE NEW YORK CITY DEPARTMENT OF TRANSPORTATION'S MOTION TO INTERVENE– FED. R. CIV. P. 24**

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of New York and the United States of America the foregoing is true and correct and that this declaration was executed on April 2, 2025, at New York, New York.

| | |
|---|---|
| Nathan Taylor | *[signature]* |
| Declarant | Signature |