# Exhibit A



## THE SECRETARY OF TRANSPORTATION
### WASHINGTON, DC 20590

April 21, 2025

The Honorable Kathy Hochul
Governor of New York
Albany, NY 12224

Dear Governor Hochul:

I write to warn you that the State of New York risks serious consequences if it continues to fail to comply with Federal law, and to direct New York to show cause why the Federal Highway Administration ("FHWA") should not impose appropriate measures to ensure compliance.

Under 23 U.S.C. § 301, all roads constructed using Federal-aid highway funds "shall be free from tolls of any kind," unless an exception applies. In November 2024, the Biden Administration signed a Value Pricing Pilot Program ("VPPP") agreement that authorized an exception for New York's Central Business District Tolling Program ("CBDTP"). On February 19, 2025, I terminated that agreement. New York therefore is not legally permitted to collect tolls on roads within the CBDTP zone that were constructed using Federal-aid highway funds.

To allow for an orderly shutdown, on February 20, 2025, FHWA notified New York that the termination would take effect on March 21, 2025. FHWA made clear that New York "must cease the collection of tolls" by March 21, 2025, and directed New York to "provide the necessary details and updates regarding the cessation of toll operations." In a spirit of goodwill based on ongoing discussions with New York, FHWA later extended the deadline to April 20, 2025, and again requested that New York provide information about the cessation of tolling.

New York has not responded to FHWA's requests for information. You have also publicly declared that New York will continue to collect tolls in open defiance of Federal law, and the April 20, 2025, deadline has now passed without New York taking action to comply.

**Accordingly, I hereby direct the New York State Department of Transportation ("NYSDOT") to show cause, no later than May 21, 2025, why FHWA should not take appropriate steps under 23 CFR § 1.36 to remedy New York's noncompliance with 23 U.S.C. § 301 in connection with the CBDTP. By that date, NYSDOT shall submit a response to FHWA's New York Division Administrator that either: (1) certifies that the collection of tolls under the CBDTP has ceased; or (2) demonstrates that the continued collection of tolls does not violate 23 U.S.C. § 301. The project's other sponsors—the Triborough Bridge and Tunnel Authority ("TBTA") and the New York City Department of Transportation ("NYCDOT")—may also submit responses.**

If, after evaluating NYSDOT's response and any responses received from TBTA and NYCDOT (or if NYSDOT fails to submit a timely response), FHWA determines that New York is out of compliance with 23 U.S.C. § 301, FHWA will implement appropriate initial compliance measures beginning on or after May 28, 2025, until compliance is achieved, to include:

- No further advance construction ("AC") authorizations for projects within the borough of Manhattan, except for projects determined by FHWA to be essential for safety ("Safety Projects").[1]
- No further National Environmental Policy Act ("NEPA") approvals for projects within the borough of Manhattan, except for Safety Projects.
- No further approvals of Statewide Transportation Improvement Program ("STIP") amendments concerning New York Metropolitan Transportation Council ("NYMTC") TIP modifications.

If New York's noncompliance continues, FHWA may consider imposing additional measures such as:

- No further obligations of FHWA funds (both formula and competitive) for projects within New York City, except for Safety Projects.
- No further AC authorizations for projects within New York City, except for Safety Projects.
- No further NEPA approvals for projects within New York City, except for Safety Projects.

The corrective measures noted above may be expanded to other geographic areas within the State of New York, if any noncompliance continues.

The response(s) to the directive to show cause should include any arguments related to my determination, explained in the February 19, 2025, letter, that FHWA lacked the statutory authority to approve the New York City cordon pricing project as a "value pricing pilot project."

The response(s) should also address the policy concerns expressed in my February 19, 2025, letter, which were an independent basis for my decision to terminate the VPPP agreement. New York's cordon pricing program imposes a disproportionate financial hardship on low and medium-income hardworking American drivers for the benefit of high-income drivers. It is not consistent with the Federal-aid Highway Program, which was established and funded as a "user-pay" system through the gas tax. Highway users whose taxes already paid for the Federal-aid highways in the cordon area are now being forced to pay again while receiving no new highway benefits in return because there are no toll-free alternative routes available to access the cordoned-off area of Manhattan. This type of cordon pricing is unprecedented in the United States and is inconsistent with any previous pilot project approved under the VPPP. Anyone needing to drive into the area is either forced to pay a cost-prohibitive toll or required to use the

---

[1] Safety Projects include projects under the National Highway Performance Program, Bridge Formula Program, and Highway Safety Improvement Program.

substandard transit system run by the Metropolitan Transit Authority ("MTA"). This is a breach of the promise made to the hardworking American taxpayers whose gas taxes have funded the existing Federal-aid highway system in this area.

I am also concerned that the tolls collected from highway users under this pilot project have been set and will be used primarily for funding transit capital projects.[2] It is a fundamental principle of the Federal-aid Highway Program that toll revenues should be used to pay for the infrastructure on which the toll is imposed, with any excess reinvested back into the broader highway network. Although the VPPP statute permits revenues from pilot programs to be used for transit projects eligible for funding under title 23 of the U.S. Code, it is unconscionable as a matter of policy that highway users are being forced to bail out the MTA transit system. Moreover, setting tolls with the primary goal of raising revenue for the MTA conflicts with the purpose of the VPPP to initiate pilot projects designed to relieve congestion, not fund transit capital projects.

Rather than establishing good transportation policy under this pilot project, the Biden Administration sought to advance its preference for funding transit systems over highway improvements. Under this Administration, FHWA policy will no longer support this type of project or policy. While I am Secretary, FHWA will only prioritize tolling projects under the VPPP that provide for toll-free alternative routes and set tolls with the aims of reducing congestion and/or raising revenue primarily for highway infrastructure, rather than projects such as the CBDTP, which forces hardworking Americans who rely upon the already-paid-for existing Federal-aid highway network to pay cost-prohibitive tolls designed to fund MTA's capital projects.

Finally, I note that MTA, TBTA, NYSDOT, and NYCDOT alleged in the Complaints they filed in the U.S. District Court for the Southern District of New York that the VPPP agreement is a "cooperative agreement" that may only be terminated pursuant to 2 CFR Part 200. To the extent those regulations apply, they support my termination of the VPPP agreement. Under 2 CFR § 200.340(a)(4), a cooperative agreement may be terminated by a federal agency if it "no longer effectuates the program goals or agency priorities." As explained above, and in my February 19, 2025, letter, the CBDTP does not effectuate the goals or priorities of the U.S. Department of Transportation.

Although MTA, TBTA, NYSDOT, and NYCDOT further allege that termination was not permissible under this regulation because the VPPP agreement does not contain any provision that would permit FHWA to terminate the agreement unilaterally, that suggestion is equally unavailing. Indeed, the VPPP agreement expressly incorporates all Federal laws and requirements applicable to the project, and the terms and conditions pertinent to FHWA cooperative agreements unambiguously provide that such agreements may be terminated under

---

[2] New York's implementing legislation for the CBDTP provides that the level of tolls must be set to achieve minimum funding requirements for MTA capital projects. *See* N.Y. Veh. & Traf. Law § 1704-a(1).

2 CFR § 200.340.[3]  Moreover, it simply cannot be that this "pilot program" must be permitted to go on *forever*, for as long as New York wants.  Perpetual operation of a value pricing pilot is not mandated by law, and the right to termination is inherent in the VPPP agreement.  Furthermore, the allegations by MTA, TBTA, NYSDOT, and NYCDOT that they were not given proper "notice" and an "opportunity to be heard" with respect to the termination, pursuant to 2 CFR § 200.341(a), is unavailing in light of this letter, which once again provides notice of the termination and, for now the third time, provides them with a fair opportunity to contest that termination before FHWA begins imposing compliance measures.  To the extent the regulations at 2 CFR Part 200 apply, this letter serves as the written notice of termination under 2 CFR § 200.341(a), and the directive to show cause outlined above serves as NYSDOT's, TBTA's, and NYCDOT's opportunity to object and provide information challenging the termination under 2 CFR § 200.342.

As always, I remain available for further communication with you on these issues, and I look forward to receiving New York's response.

Sincerely,

Sean P. Duffy

CC:    Marie Therese Dominquez, Esq. NYSDOT Commissioner
       Catherine T. Sheridan, President of TBTA
       Ydanis Rodriguez, NYCDOT Commissioner

---

[3] *See* Federal Highway Administration, *Contractors and Recipients General Terms and Conditions for Assistance Awards* § 17, *available at* https://www.fhwa.dot.gov/cfo/contractor_recip/gtandc_after2023aug07.cfm.