

NORTHEAST REGIONAL OFFICE

48 WALL STREET, 15TH FLOOR
NEW YORK, NY 10005-2903
T: 212.845.7376
F: 212.918.1556

May 2, 2025

**VIA CM/ECF**

The Honorable Lewis J. Liman
United States District Court, Southern District of New York
500 Pearl Street, Courtroom 15C
New York, NY 10007

    Re:  *Metropolitan Transportation Authority v. Duffy,* No. 25 Civ. 1413 (LJL)

Dear Judge Liman:

    I write on behalf of Intervenor-Plaintiffs Riders Alliance and Sierra Club in opposition to the Defendants' letter motion to seal the document at ECF No. 65. In accordance with the Court's April 24 Order, this letter addresses "(1) whether, in light of the document's public filing on the docket and subsequent republication by media outlets, there exists sufficient basis to grant the motion to seal, and (2) whether Defendants' inadvertent publication of the document waives any applicable privilege." Order, ECF No. 69.

    **I.**    **The document cannot be permanently sealed after its widespread publication.**

    Defendants ask the Court to order the permanent sealing of a document after it has been widely republished. The futility of such an order dictates the outcome. "The burden of demonstrating that a document submitted to a court should be sealed rests on the party seeking such action." *DiRussa v. Dean Witter Reynolds Inc.*, 121 F.3d 818, 826 (2d Cir. 1997). Because the document the Defendants seek to keep secret will remain publicly available, Defendants cannot carry their burden.

    As the Second Circuit has explained, a court's power to seal does not include the power to restore secrecy to information that has become broadly available. Courts "do not have the power, even were [they] of the mind to use it if [they] had, to make what has thus become public private again." *Gambale v. Deutsche Bank AG*, 377 F.3d 133, 144 (2d Cir. 2004). Regardless of a document's previous confidentiality, "[o]nce it is public, it necessarily remains public." *Id.* at n.11. If "[t]he genie is out of the bottle," a permanent sealing order cannot provide "the means to put the genie back." *Id.* at 144. *See also, e.g.*, *June Med. Servs., L.L.C. v. Phillips*, 22 F.4th 512, 520–21 (5th Cir. 2022) ("Publicly available information cannot be sealed."); *Constand v. Cosby,* 833 F.3d 405, 410 (3d Cir. 2016) ("In light of the extensive publicity . . . we are similarly without power to affect the dissemination of the unsealed documents' contents in any meaningful way."); *Doe No. 1 v. Reed*, 697 F.3d 1235, 1240 (9th Cir. 2012) (describing

1

"commonsense conclusion that once a fact is widely available to the public, a court cannot grant any 'effective relief' to a person seeking to keep that fact a secret").

The document Defendants seek to seal is not just publicly available; it is the subject of saturation-level media coverage. A recent case found sealing precluded where "significant portions of the [document] have been published and written about in *Newsday*." *White v. Cnty. of Suffolk*, No. 20-CV-1501 (RER)(JMW), 2024 WL 2274450, at *5 (E.D.N.Y. May 20, 2024). The publicity here is far more extensive: the document is not only in *Newsday*,[1] but also the *New York Times*,[2] the *New York Daily News*,[3] the *New York Post*,[4] *AM New York*,[5] and *New York Magazine*.[6] And the document's dissemination extends beyond New York's print sources: it has been extensively quoted and discussed on radio[7] and the major broadcast television networks.[8]

---

[1] Alfonso A. Castillo, *Federal Congestion Pricing Lawsuit 'Unlikely' to Succeed, DOJ Lawyers Say in Mistakenly Public Letter*, Newsday (Apr. 29, 2025), https://www.newsday.com/long-island/transportation/congestion-pricing-lawsuit-federal-agencies-u66gg6r9.

[2] Stefanos Chen & Winnie Hu, *Can Trump Still Kill Congestion Pricing After U.S. Lawyers Showed Doubt?*, N.Y. Times (Apr. 26, 2025), https://www.nytimes.com/2025/04/26/nyregion/nyc-congestion-pricing-dot-lawyers.html.

[3] Evan Simko-Bednarski & Molly Crane-Newman, *Fed Attorneys Admit Case for Ending NYC Congestion Pricing Has Legal Holes: Trump DOT Memo*, N.Y. Daily News (Apr. 24, 2025), https://www.nydailynews.com/2025/04/24/fed-attorneys-admit-case-for-ending-nyc-congestion-pricing-has-legal-holes-says-trump-dot-memo/.

[4] Peter Senzamici, *Feds Accidentally Upload Internal Memo Admitting Plan To Kill NYC Congestion Pricing Is 'Very Unlikely' to Succeed — Before Quickly Deleting It*, N.Y. Post (Apr. 24, 2025), https://nypost.com/2025/04/24/us-news/fed-lawyers-cast-doubt-on-duffys-dubious-congestion-kill/.

[5] Barbara Russo-Lennon, *Congestion Pricing: Memo Blunder Leads USDOT to Boot Federal Lawyers Who Claimed Trump Admin's Case Is Weak*, AMNY (Apr. 24, 2025), https://www.amny.com/news/congestion-pricing-memo-blunder-usdot-weak/.

[6] Nia Prater, *Trump Admin Mistakenly Shares Doomed Plan to Kill Congestion Pricing*, N.Y. Mag. (Apr. 24, 2025), https://nymag.com/intelligencer/article/trump-admin-leaks-plan-to-kill-congestion-pricing-by-mistake.html.

[7] *See, e.g.*, *Feds Mistakenly Post Memo Detailing Flaws in Bid to Kill Congestion Pricing*, WNYC (Apr. 25, 2025), https://www.wnyc.org/story/feds-mistakenly-post-memo-detailing-flaws-in-bid-to-kill-congestion-pricing/.

[8] *See, e.g.*, *Mistakenly Filed Congestion Pricing Memo Outlines Flaws in Trump Admin's Strategy*, News 4 NBC New York (Apr. 24, 2025), https://www.nbcnewyork.com/on-air/as-seen-on/mistakenly-filed-congestion-pricing-memo-outlines-flaws-in-trump-admins-strategy/6238013/; Marcia Kramer & Mark Prussin, *DOJ Admits Case Against Congestion Pricing in NYC Is Weak in Internal Memo*, CBS News New York (Apr. 24, 2025), https://www.cbsnews.com/newyork/news/congestion-pricing-nyc-justice-department-memo/; Aaron Katersky & Peter Charalambous, *DOJ Accidentally Files Document Outlining Flaws with Trump Administration's Plan to Kill NYC Congestion Pricing*, News10 ABC (Apr. 24, 2025), https://abcnews.go.com/US/doj-accidentally-files-document-nyc-congestion-pricing/story?id=121129852; Jessica Formoso, *Federal Memo Leaked in Court Filing Admits Weak Legal Strategy in NYC Congestion Pricing Case*, Fox 5 New York (Apr. 24, 2025), https://www.fox5ny.com/news/federal-memo-leaked-court-filing-reveals-weak-legal-strategy-nyc-congestion-pricing-case.

Many sources not only quote portions of the document, but link to and republish the memorandum in its entirety. In short, the information in the document is readily accessible to anyone who seeks it—and difficult to avoid for anyone who does not.

Publicity this pervasive obviates any question of sealing. *See Rollag v. Cowen Inc.*, No. 20-CV-5138 (RA), 2020 WL 4937462, at *3 (S.D.N.Y. Aug. 24, 2020) ("In light of the existing press coverage . . . sealing would be futile at this stage."). The "practical effect" of a sealing order "would be to make [the document] available everywhere, except in the Clerk's office for the Southern District of New York." *United States v. Giffen*, No. S2 03 CR.404(WHP), 2004 WL 2750092, at *2 (S.D.N.Y. Dec. 2, 2004). There is no authority that supports such a result. Instead, "the publication of the information in the public domain sounded the death knell to any claim that the documents should be sealed." *White*, 2024 WL 2274450, at *5. Decision after decision confirms this inevitable conclusion.[9]

## II.  The Court should find that the government's disclosure has waived any applicable privilege.

As this Court described in *United States v. Ray*, No. 20-CR-110 (LJL), 2022 WL 842254, at *3 (S.D.N.Y. Mar. 20, 2022), the question of "whether an alleged inadvertent disclosure should result in a waiver" turns on factors Judge Sweet described in *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 104 F.R.D. 103, 105 (S.D.N.Y. 1985), and reiterated in *BNP Paribas Mortg. Corp.*, 2013 WL 2322678, at *10 (S.D.N.Y. Mar. 7, 2013). The factors "include (1) 'the reasonableness of the precautions to prevent inadvertent disclosure'; (2) 'the time taken to rectify the error'; (3) 'the scope of discovery'; (4) 'the extent of the disclosure'; and (5) 'an overreaching issue of fairness.'" *BNP Paribas Mortg. Corp.*, 2013 WL 2322678, at *5 (quoting *Lois Sportswear*, 104 F.R.D. at 105). Here, the first four factors largely offset each other, while the fifth weighs decisively in favor of waiver.

The first four factors are largely a wash. The first and second weigh against waiver: beyond the disclosure itself, there is no indication that Defendants failed to take reasonable care;

---

[9] *See, e.g.*, *In re Tel. Media Grp. Ltd.*, No. 23-MC-215 (JGLC), 2023 WL 5770115, at *6 (S.D.N.Y. Sept. 6, 2023) ("The repeated prior public disclosure of the information that Chishti seeks to seal here is fatal to his sealing motion."); *Cunningham v. Cornell Univ.*, No. 16-CV-6525 (PKC), 2019 WL 10892081, at *3 (S.D.N.Y. Sept. 27, 2019) (denying request to seal when information could be "found through a basic Internet search" because "[i]nformation that is publicly available need not be sealed"); *Sparman v. Edwards*, 325 F. Supp. 3d 317, 319 (E.D.N.Y. 2018) ("The Court can conceive of no justification to seal an opinion that is readily available in the public domain."); *JetBlue Airways Corp. v. Helferich Pat. Licensing, LLC*, 960 F. Supp. 2d 383, 397 (E.D.N.Y. 2013) ("Any countervailing privacy interest of Helferich cannot defeat the strong presumption of public disclosure where the material it seeks to seal is already in the public domain."); *In re Application to Unseal 98 Cr. 1101(ILG)*, 891 F. Supp. 2d 296, 300 (E.D.N.Y. 2012) ("Any balancing of the interests here, however, would be academic as the information the Government and Doe seek to maintain sealed has already been publicly revealed; the cat is out of the bag, the genie is out of the bottle."); *Gucci Am., Inc. v. Guess?, Inc.*, No. 09 CIV 4373 (SASJLC), 2010 WL 1416896, at *1 (S.D.N.Y. Apr. 8, 2010) (publicly filed document could not be sealed after "press has already published articles" about its contents); *Giffen*, 2004 WL 2750092, at *2 (rejecting the partial sealing of judicial opinion months after its public filing and media dissemination as "absurd" and "an exercise in futility").

3

and Defendants unquestionably acted promptly to rectify. But the third and fourth weigh in favor: this is not a case where a large document production included within it a few privileged materials, nor is this a case where only a portion of a privileged communication was produced. Defendants disclosed only a single document. *See United States v. Gangi*, 1 F. Supp. 2d 256, 266 (S.D.N.Y. 1998) (finding waiver where the "the Government does not have the excuse that it was producing thousands of pages of documents" because it submitted "a single document"); *cf. Ray*, 2022 WL 842254, at *4 (no waiver where "a thousand files," including "seventy audio files" turned over pursuant to agreement, of which only eight inadvertently disclosed). And that single document apparently contained within it the entire privileged communication. *See Estiverne v. Goodwine*, No. 06-CV-6617 (NG), 2009 WL 10706260, at *6 (E.D.N.Y. Oct. 19, 2009) ("The complete disclosure of the privileged communication supports a finding of waiver." (quoting *Local 851 of Int'l Bhd. of Teamsters v. Kuehne & Nagel Air Freight, Inc.*, 36 F. Supp. 2d 127, 134 (Oct. 9, 1998) (collecting cases))).

As for the fifth factor, several fairness considerations weigh heavily in support of waiver. The document is already ubiquitous, and "[g]enerally, courts hold that fairness dictates a finding of waiver in cases where the privileged information at issue has been widely disseminated." *United States v. Rigas*, 281 F. Supp. 2d 733, 741–42 (S.D.N.Y. 2003). As described in the preceding section, the document has been about as widely disseminated as a legal memorandum conceivably could be, and it will necessarily remain publicly accessible. In cases with significant dissemination, even where distribution was far more limited than here, courts have found that fairness favors waiver because the "bell nevertheless would be very difficult to unring." *S.E.C. v. Cassano*, 189 F.R.D. 83, 86 (S.D.N.Y. 1999).

It is unlikely that the various Plaintiffs will manage to equally avoid exposure to the document as this case proceeds. Because the document will remain public, it will feature in future reporting as the media follow the progress of this litigation. While the undersigned still has not read the document pending the Court's resolution of Defendants' motion, it will only become more difficult for counsel for the various Plaintiffs to avoid learning its contents as they encounter public reporting. This too weighs in favor of waiver: "Fairness concerns are especially salient when some parties have reviewed the information while others have not." *Rigas*, 281 F. Supp. 2d at 741–42.

The nature of this litigation further supports a finding of waiver. This is not a private dispute between individuals or corporations, but a question about the legitimacy of the federal government's abrupt decision to upend an agreement with significant implications for millions of New Yorkers. "[P]articularly when so much is at stake . . . 'the Government should turn square corners in dealing with the people.'" *Dep't of Homeland Sec. v. Regents of the Univ. of California*, 591 U.S.1, 24 (2020) (citation omitted). And the federal government is no ordinary litigant: "If anything, the Government has a higher duty and must take even greater care to protect its privileges than a private litigant in a civil dispute." *Gangi*, 1 F. Supp. 2d at 266.

Finally, fairness would best be served by allowing the parties to openly address a document that will inevitably shape public understanding of this litigation. This case arises from Defendants' purported reliance on the government's legal determination that "FHWA lacked statutory authority to approve" the tolling program. Letter from Sean Duffy, Sec'y of Transp., to Kathy Hochul, Gov. of New York (Feb. 19, 2025), ECF No. 62-3. As we pointed out at the

outset, the legal theories Secretary Duffy offered to the public were "so insubstantial as to appear pretextual." Proposed Compl. in Intervention ¶ 3, ECF No. 23-1. A cursory glance at the newspaper headlines cited above indicates that the disclosed document will inform the public's view of whether Secretary Duffy in fact "offer[ed] genuine justifications for important decisions, reasons that can be scrutinized by courts and the interested public." *Dep't of Com. v. New York*, 588 U.S. 752, 785 (2019).

      Even if the document is excluded from the litigation, as this case proceeds the public will inevitably compare the arguments Defendants make to the publicly available memorandum at ECF No. 65. We respectfully submit that testing and resolution of any discrepancies between the document and the government's public justifications should take place in the courtroom, rather than being reserved for the media and interested public outside.

Sincerely,
*s/Dror Ladin*
Dror Ladin
Earthjustice
48 Wall Street, 15th Floor
New York, NY 10005
(917) 410-8701
dladin@earthjustice.org

*Counsel for Intervenor-Plaintiffs*
*Riders Alliance and Sierra Club*

cc: All counsel of record via CM/ECF