

1133 Avenue of the Americas
Suite 1500
New York, New York 10036

(212) 316-9500
rkaplan@kaplanmartin.com

May 2, 2025

**VIA ECF**

The Honorable Lewis J. Liman
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

        Re:    *Metro. Transp. Auth., et al. v. Duffy, et al.*, No. 25 Civ. 1413 (LJL)

Dear Judge Liman:

      We write on behalf of Plaintiffs the Metropolitan Transportation Authority ("MTA") and Triborough Bridge and Tunnel Authority ("TBTA") pursuant to the Court's Order dated April 24, 2025 (ECF 69) concerning the consequences of Defendants' public filing of what we understand to be an eleven-page memorandum providing legal advice (the "Memo") the evening of April 23, 2025. As explained below, we respectfully submit that the Memo should be unsealed and that any privilege with respect to it has been waived.

    **I.**    **The Memo should not be sealed**

      Given the near instantaneous reach of technology and the significant public interest in this litigation, the factual circumstances here are somewhat unusual. Although the Memo was only on the public docket for less than an hour, it was immediately picked up by news outlets, is publicly available online,[1] and has continued to be covered in the press.[2] The Memo has also been discussed extensively by Secretary Duffy himself, including earlier this week on *Fox Business* and *Good Day New York*.[3] Courts "routinely deny sealing requests where ... the information to be sealed is already publicly available," and there is no reason for the Court to deviate from that rule here. *Grossberg v. Fox Corp.*, 2023 WL 2612262, at *1 (S.D.N.Y. Mar. 23, 2023); *accord Gambale v.*

---

[1] *See, e.g.*, Uebelacker, *DOJ Filing Faults Congestion Pricing Case*, COURTHOUSE NEWS (Apr. 24, 2025), https://www.courthousenews.com/disgrace-doj-filing-faults-congestion-pricing-case-sparking-feud.

[2] *See, e.g.*, Chen & Weiser, *U.S. Sidelines Lawyers Who Doubted Their Own Case on Congestion Pricing*, N.Y. TIMES (Apr. 24, 2025), https://www.nytimes.com/2025/04/24/nyregion/nyc-congestion-pricing-duffy-lawyers.html; Kramer & Prussin, *DOJ Admits Case Against Congestion Pricing is Weak*, CBS NEWS (Apr. 24, 2025), https://www.cbsnews.com/newyork/news/congestion-pricing-nyc-justice-department-memo/.

[3] *Sean Duffy*, FOX BUSINESS (Apr. 24, 2025), https://www.foxbusiness.com/video/6371905986112 (at 4:05); *Sec. Sean Duffy on* GDNY, YOUTUBE (Apr. 29, 2025), https://www.youtube.com/watch?v=vsLBOENiiwI (at 1:39).

*Deutsche Bank AG*, 377 F.3d 133, 144 & n.11 (2d Cir. 2004). In other words, the "cat is now firmly out of the bag," *Grossberg*, 2023 WL 2612262 at *1, and further "disclosure will not cause [Defendants] any incremental injury," *Eletson Holdings, Inc. v. Levona Holdings Ltd.*, 2023 WL 5956144, at *4 (S.D.N.Y. Sept. 13, 2023) (Liman, J.).

**II.     Defendants waived any privilege attached to the Memo**

"If a party voluntarily discloses a privileged document, it waives the privilege for that document and cannot later seek to keep the document confidential." *United States v. Gangi*, 1 F. Supp. 2d 256, 263 (S.D.N.Y. 1998) (Chin, J.). Where the disclosure was intentional, the finding of waiver is automatic. *Id.* Here, counsel "authorized production of [the Memo], sight unseen," evidencing a "deliberate decision … to produce it without looking at it." *S.E.C. v. Cassano*, 189 F.R.D. 83, 86 (S.D.N.Y. 1999). Indeed, Defendants have themselves described the disclosure as "malpractice,"[4] with Secretary Duffy characterizing it as either "absolute incompetence," or "sabotage," or "part of the resistance movement."[5] Waiver is therefore automatic.

Even if the disclosure were inadvertent (and we can understand how that could happen to a sleep-deprived attorney at 9:00 p.m.), the privilege would still be waived under the well-settled, multi-factor test in *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 104 F.R.D. 103 (S.D.N.Y. 1985); *see also In re Nat. Gas Commodity Litig.*, 229 F.R.D. 82, 86 & n.3 (S.D.N.Y. 2005).[6]

1. <u>Reasonable precautions</u>. Defendants have not proffered any basis to suggest that counsel took "reasonable precautions" to prevent disclosure. *Gangi*, 1 F. Supp. 2d at 265; *see also Note Funding Corp. v. Bobian Inv. Co.*, 1995 WL 662402, at *6 (S.D.N.Y. Nov. 9, 1995). As noted, Defendants themselves have actually stated otherwise. And even a cursory inspection would have revealed that counsel was about to file the wrong document, as the Memo was not addressed to the Court, bore the wrong date (of twelve days prior), and was substantially longer than the letter counsel ultimately filed, which turned out to be only two pages. *Loc. 851 v. Kuehne & Nagel Air Freight, Inc.*, 36 F. Supp. 2d 127, 132 (E.D.N.Y. 1998).

2. <u>Time to rectify error</u>. This case is very different from the more typical situation where a document is inadvertently shared only with an adversary during civil discovery. Here, the Memo was posted on the Court's public docket and was immediately available to the public and the press. While Defendants promptly contacted the parties to request its deletion, there is no evidence they made such a request to third parties who downloaded the Memo. *See In re Initial Pub. Offering Sec. Litig.*, 249 F.R.D. 457, 466 (S.D.N.Y. 2008) (disclosure to third parties "will" waive protection "absent special circumstances"); *Denney v. Jenkens & Gilchrist*, 362 F. Supp. 2d 407, 417 (S.D.N.Y. 2004) (waiver where defendant "made no effort to demand the memo's return").

---

[4] Chen & Weiser, *supra* note 2.
[5] *See* sources cited *supra* note 3; *see also* Zoe Han, *There Should 'Absolutely' be Consequences for Congestion Pricing Filing Snafu*, SEMAFOR (Apr. 24, 2025), https://www.semafor.com/article/04/24/2025/congestion-pricing-filing-prompts-sean-duffy-to-say-should-there-be-consequences-absolutely ("it's incompetence or it was on purpose").
[6] Although Defendants rely on Fed. R. Evid. 502(b), this Court has already rejected the "argument that Federal Rule of Evidence 502 displaces *Lois Sportswear*." *United States v. Ray*, 2022 WL 842254, at *3 n.6 (S.D.N.Y. Mar. 20, 2022) (Liman, J.). The sole case Defendants rely on does not apply the *Lois* factors and is clearly distinguishable in any event. *See Mazzochi v. Windsor Owners Corp.*, 2020 WL 4038342, at *3 (S.D.N.Y. July 17, 2020) (summarily finding that filing of unredacted emails to docket did not waive privilege on facts of case).

3, 4. <u>Scope of discovery and disclosure</u>. Here, "the Government does not have the excuse that it was producing thousands of documents." *Gangi*, 1 F. Supp. 2d at 266. It only needed to file a short letter regarding the administrative record. ECF 66. Defendants' failure to protect their privileged information while engaged in the routine act of filing a single document "weigh[s] heavily in favor of a finding of waiver." *Loc. 851*, 36 F. Supp. 2d at 133; *see also Berall v. Teleflex Med. Inc.*, 2021 WL 5989936, at *5 (S.D.N.Y. Dec. 17, 2021); *Liz Claiborne, Inc. v. Mademoiselle Knitwear, Inc.*, 1996 WL 668862, at *5 (S.D.N.Y. Nov. 19, 1996) (similar). The scope of the disclosure similarly supports waiver here, because there was a "complete disclosure of the privileged information." *Loc. 851*, 36 F. Supp. 2d at 134.

5. <u>Fairness</u>. Finally and most importantly, basic fairness favors waiver because "the privileged information at issue has been widely disseminated." *United States v. Rigas*, 281 F. Supp. 2d 733, 741 (S.D.N.Y. 2003); *accord Gangi*, 1 F. Supp. 2d at 266 (similar); *LabMD, Inc. v. Tiversa Holding Corp.*, 2015 WL 1213043, at *7 (W.D. Pa. Mar. 17, 2015). After all, the Memo is not just a "bell" that "would be very difficult to unring." *Cassano*, 189 F.R.D. at 86. According to media reports, it provides powerful evidence that the rationales offered by Secretary Duffy in his February 19 letter for purporting to terminate the VPPP Agreement are pretextual, since Defendants' true objective was the "elimination of the [Program],"[7] *not* enforcing the Value Pricing Pilot Program statute. *See New York v. Dep't of Com.*, 351 F. Supp. 3d 502, 660 (S.D.N.Y.) (Furman, J.), *aff'd in relevant part*, 588 U.S. 752 (2019). The Memo further establishes that Duffy's newfound reliance on "policy concerns" in his April 21 letter is "an alternative [post-hoc] justification to defend cancelling the program"[8] in light of a litigation risk. Indeed, to the extent Defendants now assert alternative legal bases for Duffy's unlawful termination decision while representing to the Court that "the agency decision-making process is ongoing" (ECF 66 at 2), considerations of fairness should prevent Defendants from "simultaneously invoking the attorney-client privilege to bar [Plaintiffs] from challenging that assertion." *Loc. 851*, 36 F. Supp. 2d at 134.

While we have complied with our ethical obligations, we obviously cannot avoid seeing the news. *See Int'l Digital Sys. Corp. v. Digital Corp.*, 120 F.R.D. 445, 449 (D. Mass. 1988) ("There is no order I can enter which erases from defendant's counsel's knowledge what has been disclosed."). Secretary Duffy's commentary on the Memo alone provides a basis for a finding of waiver. *See, e.g.*, *In re Buspirone Antitrust Litig.*, 208 F.R.D. 516, 520 (S.D.N.Y. 2002) (waiver where party "makes an assertion" that "in fairness requires examination of protected communications"). And it would be a very strange state of affairs indeed if journalists at the *New York Times*, as well as Secretary Duffy and the rest of the public, could read, analyze, and make arguments about the substance of the Memo, while counsel for the MTA or other parties could not.[9]

---

[7] King, *Trump Gov't Lawyers Bash Their Own Case Against NYC Congestion Pricing In Mistakenly Uploaded Memo*, YAHOO (Apr. 25, 2025), https://autos.yahoo.com/trump-govt-lawyers-bash-own-201303531.html.
[8] Katersky & Charalambous, *DOJ Accidentally Files Document Outlining Flaws*, ABC NEWS (Apr. 24, 2025), https://abcnews.go.com/US/doj-accidentally-files-document-nyc-congestion-pricing/story?id=121129852.
[9] While we are still far off from any evidentiary hearing, the Memo would obviously be admissible under Federal Rules of Evidence 801(d)(2) and 804(b)(3).

Respectfully submitted,

Roberta A. Kaplan

cc: Counsel of Record (via ECF)