*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

---

*86 Chambers Street*
*New York, New York 10007*

May 7, 2025

**BY ECF**
The Honorable Lewis J. Liman
United States District Court
Southern District of New York
500 Pearl Street, Courtroom 15C
New York, NY 10007

      Re:    *Metropolitan Transportation Authority, et al. v. Duffy, et al.*, No. 25 Civ. 1413 (LJL)

Dear Judge Liman:

      This Office, along with the Federal Programs Branch in the Civil Division of the Department of Justice, represents defendants Sean Duffy, in his official capacity as United States Secretary of Transportation, Gloria M. Shepherd, in her official capacity as Executive Director of the Federal Highway Administration ("FHWA"), the United States Department of Transportation ("DOT"), and FHWA (together "Defendants") in the above-referenced matter.

      We write respectfully in further support of the Defendants' request that the Court remove or permanently seal the document at ECF No. 65, which is an inadvertently filed attorney-client privileged communication / attorney work product, and find that the inadvertent filing did not constitute a waiver of the privileges protecting the document. Further, Defendants request that the Court reject Plaintiffs' and Plaintiff-Intervenors' attempts, ECF Nos. 70, 72, 74, to gain a tactical advantage in this litigation by capitalizing on counsel's mistake and hold that this document cannot be used as evidence or otherwise in this litigation.

      The inadvertently-filed document is a letter dated April 11, 2025 from Assistant United States Attorneys ("AUSAs") in the U.S. Attorney's Office for the Southern District of New York ("SDNY USAO") to their client, DOT, providing legal advice in connection with this litigation. As this letter is a privileged document filed in error, and not a judicial record, the document should be sealed or removed from the docket. Furthermore, the letter is a quintessential example of attorney-client communication, and given that it was filed inadvertently and the error was rectified quickly, there is no basis to find waiver of the applicable privileges. Accordingly, the document should not be used as evidence, or otherwise, in this case.

      **I.**    **The Inadvertently-Filed Document Is Not a Judicial Record in this Case and Should Be Removed from the Docket or Permanently Sealed**

      As discussed in greater detail below, on April 23, 2025, counsel for Defendants intended to file a letter concerning the anticipated administrative record in this matter and recent developments impacting the case management schedule, and inadvertently uploaded a privileged

attorney-client communication at ECF No. 65. Upon recognizing the error, counsel promptly contacted the Clerk of Court and the parties and the incorrectly filed document was temporarily sealed by the Clerk's office. Counsel filed the correct document later that evening at ECF No. 66, and, the next day, filed a motion seeking permanent sealing of the inadvertently-filed privileged document. ECF No. 67.

The SDNY ECF Rules specifically set forth a procedure for correcting errors related to mistakenly filed sensitive or confidential information, which provides for sealing of the mistakenly filed document and subsequent filing of the correct version of the document. *See* SDNY ECF Rules & Instructions, § 21.7 ("What if I mistakenly file sensitive or confidential information?"); *see also id.* § 13.26 ("What if I make a mistake in electronic filing?"). And when such filing errors occur, judges in this district have sealed the mistakenly filed documents. *See, e.g., Mazzocchi v. Windsor Owners Corp.*, No. 11 Civ. 07913 (RA)(SDA), 2020 WL 4038342, at *3 (S.D.N.Y. July 17, 2020) (ordering Clerk of the Court to maintain the privileged document under seal (citing Fed. R. Evid. 502(b), (d)));[1] *see also Davis v. Lowe's Home Ctrs., LLC*, No. 23 Civ. 5613 (CS), 2024 WL 1513681, at *1 n 2. (S.D.N.Y. Apr. 8, 2024) ("Outgoing counsel asked to file under seal his affidavit detailing the reasons he wished to withdraw as counsel, but then (presumably inadvertently) filed the affidavit publicly. The Court has now sealed it." (internal citations omitted)); *Cloney's Pharmacy, Inc. v. Wellpartner, Inc.*, No. 23 Civ. 10088 (MKV), 2024 WL 4349291, at *13 (S.D.N.Y. Sept. 30, 2024) (granting motion to seal unredacted version of documents that had been filed in error in unredacted form); *In re: Google Digital Advertising Antitrust Litig.*, 21-md-3010 (PKC), Dkt. No. 410 (S.D.N.Y. May 6, 2022) (granting request pursuant to ECF Rules & Instructions §§ 13.26 & 21.7 to seal inadvertently filed unredacted consolidated amended complaint); *In re Omnicom Grp., Inc. ERISA Litig.*, No. 20 Civ. 4141 (CM), Dkt. No. 74 (S.D.N.Y. Feb. 23, 2022) (granting emergency sealing request pursuant to ECF Rule 21.7 of document inadvertently filed in unredacted form); *Omari v. Ras Al Khaimah Free Trade Zone Auth.*, No. 16 Civ. 3895 (NRB), 2017 WL 2271536, at *1 (S.D.N.Y. May 1, 2017) (noting that the court permitted sealing of exhibit that had initially been inadvertently filed publicly in unredacted form).

The Court should reject Plaintiffs' and Plaintiff-Intervenors' arguments that the document cannot be sealed because in the short time that it was publicly available it was obtained by the news media and websites such as CourtListener. Indeed, Plaintiffs and Plaintiff-Intervenors recognize the document was only on the public docket for less than an hour, ECF No. 72 at 1, that "Defendants unquestionably acted promptly to rectify" the mistake, ECF No. 70 at 4, and that "near instantaneous reach of technology and the significant public interest in this litigation" present unusual circumstances, ECF No. 72 at 1. In other words, had this inadvertent filing occurred in a case not subject to public interest and thus not disseminated beyond the court docket before it was sealed, there would be little question that the document should remain under seal. The unusual

---

[1] Other districts have followed similar procedures. *See, e.g., Lee v. Certainteed Corp.*, No. 13 Civ. 826 (FL), 2015 WL 12857328, at *10 (E.D.N.C. July 30, 2015) (finding no privilege waiver of internal memorandum that had been inadvertently produced and filed as exhibit on the docket, and permanently sealing inadvertently filed documents, terminating all electronic access rights to specific docket entries at issue, and ordering plaintiffs to immediately return and destroy all copies of privileged document); *Hanson v. Wells Fargo Home Mortg., Inc.*, No. 13 Civ. 0929 (JLR), 2013 WL 5674997, at *1 (W.D. Wa. 2013) (sealing privileged materials that were inadvertently attached to declaration); *Sampson Fire Sales, Inc. v. Oaks*, 201 F.R.D. 351, 362 (M.D. Pa. 2001) (sealing attorney-client privileged document that had been inadvertently faxed to opposing counsel and filed on the docket).

circumstances presented here do not change the fact that this document should not be part of the court record in this case—it simply is not a judicial record.

As the Second Circuit has explained "the mere filing of a paper or document with the court is insufficient to render that paper a judicial document subject to the right of public access." *United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995); *see also Lugosch v. Pyramid Co. of Onondaga,* 435 F.3d 110, 119 (2d Cir. 2006) ("Before any such common law right [of access] can attach, however, a court must first conclude that the documents at issue are indeed '"judicial documents."'"). "[T]he item filed must be relevant to the performance of the judicial function and useful in the judicial process in order for it to be designated a judicial document." *Amodeo*, 44 F.3d at 145. "There is no presumption of access to documents that play no role in the performance of Article III functions." *Under Seal v. Under Seal*, 273 F. Supp. 3d 460, 467 (S.D.N.Y. 2017) (internal citations omitted).

Unlike the documents at issue in the cases on which Plaintiffs and Plaintiff-Intervenors rely, *see* ECF No. 72 at 1-2, ECF No. 70 at 1-3,[2] the inadvertently-filed, privileged letter should not play any role in the Court's performance of its Article III functions—it does not form the basis of any relief that Defendants are seeking and its submission to the Court was entirely inadvertent. Defendants now seek to correct that error and have the letter removed from the docket.

Even if the Court were to find some degree of public right of access to the inadvertently-filed document, any such right is overridden by the strong countervailing consideration, discussed below, that the letter is a privileged attorney-client communication and attorney work product. *See*

---

[2] *Grossberg v. Fox Corp.*, No. 23 Civ. 2368 (JMF), 2023 WL 2612262 (S.D.N.Y. Mar. 23, 2023) (request to seal complaint); *Gambale v. Deutsche Bank AG*, 377 F.3d 133, 144 (2d Cir. 2004) (request to seal portions of a district court's published order); *Eletson Holdings, Inc. v. Levona Holdings Ltd.*, No. 23 Civ. 7331 (LJL), 2023 WL 5956144, at *2 (S.D.N.Y. Sept. 13, 2023) (in a petition to confirm arbitration award, request to seal petition, arbitration award and supporting documents); *DiRussa v. Dean Witter Reynolds Inc.*, 121 F.3d 818, 827 (2d Cir. 1997) (assuming without deciding whether documents at issue were "judicial documents" and upholding district court's sealing order); *June Med. Servs., L.L.C. v. Phillips*, 22 F.4th 512, 521 (5th Cir. 2022) (requiring district court to evaluate all documents that were "placed in the *judicial record*" and make individualized sealing determinizations (emphasis in original)); *Constand v. Cosby*, 833 F.3d 405, 407 (3d Cir. 2016) (sealing of excerpts of deposition transcripts filed in connection with discovery motions); *White v. Cnty. of Suffolk*, No. 20 Civ. 1501 (RER)(JMW), 2024 WL 2274450, at *5 (E.D.N.Y. May 20, 2024) (request to seal discovery motion exhibits that had been made public years before the docket filing); *Rollag v. Cowen Inc.*, No. 20 Civ. 5138 (RA), 2020 WL 4937462, at *1 (S.D.N.Y. Aug. 24, 2020) (request to seal portions of complaint 1-month after it was filed); *United States v. Giffen,* No. 03 Cr. 404 (WHP), 2004 WL 2750092, at *2 (S.D.N.Y. Dec. 2, 2004) (request to seal portions of court's opinion made 4 months after filing); *In re Tel. Media Grp. Ltd.,* No. 23-mc-215 (JGLC), 2023 WL 5770115, at *5 (S.D.N.Y. Sept. 6, 2023) (request to seal motion papers which are "unquestionably judicial documents"); *Cunningham v. Cornell Univ.*, No. 16 Civ. 6525 (PKC), 2019 WL 10892081, at *1 (S.D.N.Y. Sept. 27, 2019) (motions to seal materials submitted in connection with summary judgment and *in limine* motions); *Sparman v. Edwards*, 325 F. Supp. 3d 317, 319 (E.D.N.Y. 2018) (request to seal case file and opinion that had been available for 20 years); *JetBlue Airways Corp. v. Helferich Pat. Licensing, LLC*, 960 F. Supp. 2d 383, 396 (E.D.N.Y. 2013) (revoking sealing order over summary of defendants' commercial contacts with New York explaining "[r]esolution of this litigation can only be achieved with reference to [defendant's] contacts—which are substantial—with New York."); *In re Application to Unseal 98 Cr. 1101(ILG)*, 891 F. Supp. 2d 296, 299 (E.D.N.Y. 2012) (sealing of entire criminal docket sheet); *Gucci Am., Inc. v. Guess?, Inc.*, No. 09 Civ. 4373 (SAS) (JLC), 2010 WL 1416896, at *2 (S.D.N.Y. Apr. 8, 2010) (sealing of declaration and memorandum of law submitted in support of motion). *Doe No. 1 v. Reed*, 697 F.3d 1235 (9th Cir. 2012), is not a case about sealing a document on the court docket, but rather about a petition seeking to enjoin the Secretary of State and Public Records Officer of the State of Washington, from releasing the names of people who signed petitions supporting a Washington referendum, which information was already widely available on the internet.

*Richards v. Kallish*, No. 22 Civ. 9095 (CS) (VR), 2023 WL 4883461, at *2 (S.D.N.Y. Aug. 1, 2023) ("The Second Circuit has 'implied,' but has not yet held, 'that protection of the attorney-client privilege is a 'higher value' under the First Amendment that may rebut the presumption of access.'" (quoting *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 145 (2d Cir. 2016)); *see also Lugosch*, 435 F.3d at 125 ("[A]ttorney-client privilege might well be such a compelling reason."); *J.L. on behalf of J.P. v. N.Y.C. Dep't of Educ.,* No. 17 Civ. 7150 (PAC) (KHP), 2024 WL 291218, at *3 (S.D.N.Y. Jan. 25, 2024) (sealing documents protected by the attorney-client privilege and/or work product doctrine that were the subject of a claw back); *Moshell v. Sasol Ltd.*, No. 20 Civ. 01008 (JPC), 2021 WL 67107, at *1 (S.D.N.Y. Jan. 4, 2021) (granting request to seal "exhibits which reflect the mental impressions, strategy, and opinions of Plaintiff's counsel").

    **II.**    **The Inadvertent Filing Does Not Waive the Attorney-Client Privilege and Work Product Protection Applicable to the Document**

There is no dispute that this letter, containing legal advice from lawyers to a client concerning legal aspects of pending litigation, is protected by the attorney-client privilege and work product protection. *See Fams. for Freedom v. U.S. Customs & Border Prot.*, 837 F. Supp. 2d 287, 302-03 (S.D.N.Y. 2011) (finding that memorandum prepared by AUSA offering a legal opinion on legal standards applicable to immigration checks prepared at the request of CBP in part due to concern about possible litigation "is a classic attorney-client communication and may well be protected attorney work-product"); *N.Y. Times Co. v. U.S. Dep't of Just.*, 282 F. Supp. 3d 234, 238 (D.D.C. 2017) ("This is a quintessential example of the sort of document that falls within the attorney-client privilege: advice from an attorney (the head of OLC) to his client (the Attorney General and, subsequently, the NSA) concerning the legal aspects of the client's contemplated actions and based on confidential information from the client concerning those contemplated actions.").

Defendants did not waive that attorney-client privilege or work product protection by inadvertently disclosing the document on the docket. Federal Rule of Evidence 502(b) provides that "when made in a federal proceeding . . . disclosure does not operate as a waiver . . . if: (1) the disclosure is inadvertent; (2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and (3) the holder promptly took reasonable steps to rectify the error." Fed. R. Evid. 502(b). While the Advisory Committee Notes adopting Fed. R. Evid. 502(b) refer to the "multifactor test for determining whether inadvertent disclosure is a waiver" set out in *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 104 F.R.D. 103, 105 (S.D.N.Y. 1985), they explain that "none of [these factors] is dispositive." Explanatory Note on Evidence Rule 502 (revised Nov. 28, 2007). The Notes further explain that the Federal Rule "does not explicitly codify that test, because it is really a set of non-determinative guidelines that vary from case to case. The rule is flexible enough to accommodate any of those listed factors." *Id.; see also BNP Paribas Mortg. Corp. v. Bank of Am., N.A.*, No. 09 Civ. 9783 (RWS), 2013 WL 2322678, at *10 (S.D.N.Y. May 21, 2013); *Valentin v. Bank of N.Y. Mellon Corp.*, No. 09 Civ. 09448 (GBD), 2011 WL 2437644, at *2 (S.D.N.Y. May 31, 2011) (court "was not required to consider the multifactor test set out in *Lois Sportswear*, . . . or any other factors in assessing Defendants' response to the improper disclosure").

The facts make it abundantly clear that the filing of the privileged document was inadvertent, reasonable steps were taken to prevent disclosure, and that counsel took immediate steps to rectify the error. *See Mazzocchi*, 2020 WL 4038342, at *3; *Hanson*, 2013 WL 5674997,

at *7 (finding no waiver of attorney-client or work product protection with respect to documents that were inadvertently attached to a declaration and filed with the court).[3]

*First,* the undersigned counsel represents,[4] and the facts confirm, that this filing was inadvertent. At 9:04 p.m. on April 23, 2025, an AUSA handling this matter uploaded the incorrect document to ECF. The intended filing was a letter responding to the Court's April 9, 2025, Order directing Defendants to provide the Court with certain information concerning the anticipated administrative record in this matter and updating the Court regarding recent developments impacting the case schedule set by the Court. The inadvertently filed document was a letter addressed to DOT. The two letters had the same SDNY USAO letterhead and similar file names, and had been saved in the same file folder on the SDNY USAO network.

The assertion by Plaintiffs that the disclosure was intentional and thus automatically waived the privilege is entirely unsupported. ECF No. 72 at 2. If anything, Secretary Duffy's public expressions of displeasure about the filing to which Plaintiffs cite demonstrate that the filing was not an authorized waiver of the attorney-client privilege.[5] *Cf. Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.*, 160 F.R.D. 437, 443 (S.D.N.Y. 1995) ("[T]he underlying purpose of the privilege is to encourage free communication between attorney and client. This rule fosters that goal by assuring the client that its confidences will not be publicly exposed because of a minor mistake by otherwise competent counsel.").

*Second,* counsel took reasonable steps to prevent disclosure. Prior to the inadvertent filing at issue, the letter had only been shared internally within DOJ and DOT. At the SDNY USAO, the letter was stored electronically in a network folder accessible only to attorneys handling this matter. The fact that this is the only disclosure of this information and it would not have been discoverable absent the filing error supports that reasonable steps were taken to prevent disclosure.

*Third,* counsel took immediate steps to rectify the inadvertent disclosure, a fact that Plaintiff-Intervenors do not dispute. ECF No. 70 at 4 ("Defendants unquestionably acted promptly

---

[3] The cases relied upon by Plaintiffs and Plaintiff-Intervenors are readily distinguishable on their facts. Many involve lengthy or unexplained delays in seeking the return of the privileged materials. *Local 851 of Int'l Bhd. of Teamsters v. Kuehne & Nagel Air Freight, Inc.*, 36 F. Supp. 2d 127, 133 (E.D.N.Y. 1998) (one month delay); *S.E.C. v. Cassano*, 189 F.R.D. 83, 85-86 (S.D.N.Y. 1999) ("there was no excuse for waiting 12 days to find out what the document was."); *Denney v. Jenkens & Gilchrist,* 362 F. Supp. 2d 407, 417 (S.D.N.Y. 2004) (the producing party "made no effort to demand the memo's return [over three years], or even to inform Guerin that the memo was confidential and had been sent in error") ; *Liz Claiborne, Inc. v. Mademoiselle Knitwear, Inc.*, No. 96 Civ. 2064 (RWS), 1996 WL 668862, at *5 (S.D.N.Y. Nov. 19, 1996) (one month delay before requesting return); *Note Funding Corp. v. Bobian Inv. Co.,* No. 93 Civ. 7427 (DAB), 1995 WL 662402, at *6 (S.D.N.Y. Nov. 9, 1995) (the party claiming inadvertence offers no explanation as to why its counsel sent these documents to the plaintiff long before any litigation was commenced); *LabMD, Inc. v. Tiversa Holding Corp.*, No. 15 Civ. 92, 2015 WL 1213043, at *7 (W.D. Pa. Mar. 17, 2015) (court questioned whether filing "in fact was inadvertent and not reflective of a late in the day change of strategy.").

[4] Undersigned counsel represents under penalty of perjury that the facts set forth in this letter as to the actions of the SDNY USAO are true and correct. To the extent that the Court would prefer a sworn declaration, Defendants would be happy to provide one.

[5] *In re von Bulow*, 828 F.2d 94, 100-01 (2d Cir. 1987) ("Of course, the privilege belongs solely to the client and may only be waived by him. An attorney may not waive the privilege without his client's consent."); *Schnell v. Schnall*, 550 F. Supp. 650, 653 (S.D.N.Y.1982) (no waiver of attorney-client privilege where attorney testified at SEC hearing without presence or authorization of client); *Maloney v. Sisters of Charity Hosp. of* Buffalo, 165 F.R.D. 26, 29 (W.D.N.Y. 1995) ("[T]he law is clear that the [attorney-client] privilege belongs to the client, and cannot be waived by the attorney without the client's consent.").

to rectify" the mistake).  Less than 15 minutes after the inadvertent filing, at 9:18 p.m., the AUSA contacted all counsel of record via email advising of this inadvertent filing of a privileged communication and requesting that they not download the document, or if they had downloaded it, to delete it.  At 9:20 p.m., the SDNY USAO contacted the Clerk's office to have the document removed from the docket.  By 9:48 p.m. the Clerk's office had put a temporary seal on the document and it was no longer available on ECF.[6]  At 9:56 p.m., the AUSA again contacted all counsel of record advising that the letter had been removed from the docket, and asked counsel to either confirm that they had not viewed the letter or had deleted it and had not further disseminated it. The email further requested that, to the extent the parties were aware of anyone not on the docket who had downloaded the document, the parties inform them that this was an inadvertently filed privileged communication that should be destroyed.[7]  The following day, on April 24, 2025, Defendants filed a motion requesting that the inadvertently-filed document either be removed from the docket or permanently sealed.  ECF No. 67.  Defendants understand that despite these immediate efforts to notify counsel and to have the document removed from the docket, due to circumstances outside Defendants' control, the document was nevertheless made public through websites like CourtListener and disseminated through news articles and on various social media platforms.[8]

Additionally, even where—unlike the circumstances here—the disclosure of a privileged document was not inadvertent, Federal Rule of Evidence 502(d) provides that "[a] federal court may order that the privilege or protection is not waived by disclosure connected with the litigation pending before the court — in which event the disclosure is also not a waiver in any other federal or state proceeding." Fed. R. Evid. 502(d); *see also Mazzocchi*, 2020 WL 4038342, at *3 ("[E]ven if the filing were not 'inadvertent' under Rule 502(b), I nevertheless find that privilege was not waived by the filing." (citing Fed. R. Evid. 502(d))); *Certain Underwriters at Lloyd's, London v. Nat'l R.R. Passenger Corp.*, 218 F. Supp. 3d 197, 201 (E.D.N.Y. 2016) ("Federal courts may, however, supplant the FRE's default standards in favor of more forgiving non-waiver provisions.").

---

[6] Plaintiffs' argument (ECF No. 72 at 2) that SDNY USAO did not act promptly to rectify the error because it did not request deletion by other third parties who may have downloaded the letter is unavailing.  On April 23, 2025 at 9:49 p.m., after ensuring that the document was placed under seal and contacting the parties in the case, the SDNY USAO sent an email to the Clerk of Court to inquire as to whether she could provide information as to any other persons who had accessed the document on PACER so that the SDNY USAO could notify them that the document is a privileged communication that should not be viewed.  The next morning, the Clerk's office advised that information concerning who may have viewed the document is only available from the PACER service and that, to obtain such information, the SDNY USAO would need to submit a subpoena in accordance with the disclosure regulations adopted by the Judicial Conference of the United States.  Given that, within minutes of the filing, the document was already available on other websites and the general public and news media had likely accessed the document by means other than PACER, the SDNY USAO determined that it would not be able to justify the issuance of a subpoena in an effort to obtain the identity of people who viewed the document on PACER.

[7] Only counsel for Plaintiff-Intervenor NYSDOT and Plaintiff-Intervenors Riders Alliance and Sierra Club responded to this email.  To date, counsel for Plaintiffs MTA and TBTA and Plaintiff-Intervenor NYCDOT have not responded to this email or confirmed that they complied with this request.

[8] The CourtListener.com "removal policy" expressly states that "We will not remove any public document from our database without a court order.  If you want information deleted from our site, your only recourse is to get it deleted from the public record and to obtain a court order demanding that we do the same." https://www.courtlistener.com/terms/#removal (last accessed May 7, 2025).

Plaintiffs' and Plaintiff-Intervenors' arguments that "fairness" dictates a finding of waiver because of the wide dissemination, ECF No. 72 at 3, ECF No. 70 at 4, turn fairness considerations on their head. As the court explained in *United States v. Rigas*, "prior to the Government's 'isolated, inadvertent error,' Defendants were not entitled to the work product contained within [the document]. By restoring the privilege as to these documents, the Court takes nothing away from Defendants, but rather prevents a 'windfall' to them." 281 F. Supp. 2d 733, 742 (S.D.N.Y. 2003); *see also United States v. Ray*, No. 20 Cr. 110 (LJL), 2022 WL 842254, at *4 (S.D.N.Y. Mar. 20, 2022) ("In these circumstances, any unfairness to defendant by 'the deprivation of information to which it was not originally entitled' is far outweighed by the unfairness . . . in not honoring the attorney-client and psychotherapist-patient privileges." (citation omitted)); *Kalra v. HSBC Bank USA, N.A.,* No. 06 Civ. 5890 (JFB) (ETB), 2008 WL 1902223, at *7 (E.D.N.Y. Apr. 28, 2008) ("[T]he evaluation of overall fairness does not focus on whether or not the receiving party is being deprived of information it believes is pertinent to its prosecution or defense of the action."); *In re Copper Mkt. Antitrust Litig.*, 200 F.R.D. 213, 223 (S.D.N.Y. 2001) ("Depriving a party of information in an otherwise privileged document is not prejudicial. However, finding waiver would be prejudicial to RLM because the documents involve attorney-client communications about case strategy." (internal citations omitted)).

This is not a situation like *United States v. Gangi*, 1 F. Supp. 2d 256, 267 (S.D.N.Y. 1998), or *SEC v. Cassano*, 189 F.R.D. 83, 85-86 (S.D.N.Y. 1999), relied upon by Plaintiffs. There, the courts were concerned about fairness *between defendants*. In those cases, counsel for some defendants would have access to the DOJ's or SEC's work product in defending their clients while others would not.[9] Here, the SDNY USAO took prompt steps to notify all counsel who had made an appearance on the docket not to download the document, and if they had downloaded it, to destroy it. That the public or media may have access to a document in no way prejudices Plaintiffs' or Plaintiff-Intervenors' ability to litigate their challenge to the Secretary's decision. *Cf. Rigas*, 281 F. Supp. 2d at 741-42 (noting that "[t]here is no such risk of prejudice in the present case [in which] [a]ll defense counsel have refrained from reviewing [the] work product pending resolution of this discovery dispute. As a result, the purpose of the work product privilege has not been undermined and no one defendant will be prejudiced vis-à-vis any other defendant should the privileged documents in question be returned to the Government.").

Contrary to Plaintiffs' and Plaintiff-Intervenors' arguments, they should not be permitted to make unfettered use of this inadvertently-filed, privileged communication simply because the letter has been widely disseminated. That the privileged document was widely disseminated in

---

[9] Additionally, both of these cases are distinguishable in that they involved inadvertent disclosure of attorney work product, not a privileged attorney-client communication. *See Estiverne v. Goodwine*, No. 06-cv-6617 (NG), 2009 WL 10706260, at *6 (E.D.N.Y. Oct. 19, 2009) (finding that equities favor waiver "particularly since the document at issue at most is subject to qualified protection, and does not contain information covered by the attorney-client privilege."); *see also Mazzocchi*, 2020 WL 4038342, at *3 ("I find that, in the circumstances presented, the filing error made by an employee of Defendants' counsel's law firm, is not a basis for finding waiver of the *sacrosanct attorney-client privilege.*" (emphasis added)). This also is not a document like the one at issue in *Estiverne* which was "largely factual in nature, summarizing statements made and opinions expressed to [the attorney] by a series of physicians" who "can no longer recall their statements . . . and/or have given deposition testimony at variance with the statements attributed to them in the [attorney] Memorandum." *Estiverne*, 2009 WL 10706260, at *6. Nor is it the case, as was the situation in *Gangi*, that "much of the information contained in the Prosecution Memorandum will eventually be disclosed in any event" to the criminal defendants later in the proceeding. *Gangi*, 1 F. Supp. 2d at 267. This is pure legal advice and analysis provided by counsel to their clients.

the media does not prevent the Court from restricting its *use* in the course of this litigation. *See United States ex rel. Bagley v. TRW, Inc.*, 204 F.R.D. 170, 184 (C.D. Cal. 2001) (the "bell has already been rung" argument "rests on an unduly narrow conception of the interests protected by the privilege" because the privilege "protects against both disclosure and use" and "[p]reventing the latter is sufficient to promote at least one of the purposes of the privilege."). Defendants do not seek to prevent further disclosure in the news media or make what has "become public private again," *Gambale*, 377 F.3d at 144; however, the Court can—and should—prevent use of this privileged material in further proceedings in this case. As courts in this district have recognized, "'[i]t would be inappropriate for the client of producing counsel to suffer the waiver of privilege . . . due to an isolated, inadvertent error.'" *Prescient Partners, L.P. v. Fieldcrest Cannon, Inc.*, No. 96 Civ. 7590 (DAB)(JCF), 1997 WL 736726, at *7 (S.D.N.Y. Nov. 26, 1997) (quoting *Aramony v. United Way of Am.,* 969 F. Supp. 226, 237 (S.D.N.Y. 1997)).

While Plaintiffs and Plaintiff-Intervenors may wish to compare the advice provided by counsel in the privileged letter to publicly made arguments defending the Secretary's decisions, *see* ECF No. 70 at 5; ECF No. 72 at 3, courts have routinely denied this exact use of inadvertently disclosed privileged materials in litigation. For example, in *Prescient Partners*, the court rejected defendants' "claim that preserving the documents' privileged status would prejudice them by depriving them of evidence to challenge [plaintiff's] claims for damages and attorneys' fees," explaining that "[t]he prejudice factor focuses only on whether the act of restoring immunity to an inadvertently disclosed document would be unfair, not whether the privilege itself deprives parties of pertinent information." 1997 WL 736726, at *7.

Similarly, in *Aramony,* the court rejected plaintiffs' argument that fairness required a finding of waiver because "the memo challenge[d] [defendant's] defenses to [plaintiffs'] claims." 969 F. Supp. at 238. Specifically, the court noted that "it is difficult to discern how [plaintiff] may properly use the memo. This document is a private communication between [defendant] and its counsel. The memo merely provides a legal opinion to [defendant]." *Id.*

And in *Bank Brussels Lambert*, the court explained that "the relevance of a privileged document to the merits of the litigation does not make it unjust to withhold it from discovery." 160 F.R.D. at 446. Even though the defendants in that case argued that the document at issue was a "smoking gun" and fairness required waiver, the court maintained the privilege because the "prejudice factor focuses only on whether the act of restoring immunity to an inadvertently disclosed document would be unfair, not whether the privilege itself deprives parties of pertinent information." *Id.*[10]

Accordingly, the factual circumstances and applicable law compel a determination that the inadvertent filing did not waive the attorney-client privilege and work product protection applicable to the document and that the document should remain under seal or be removed from the court docket.

---

[10] Likewise without merit is Plaintiffs' argument that the Secretary's "commentary" on the inadvertently-filed letter provides a basis for a finding of waiver. *See* ECF No. 72 at 3. The case on which Plaintiffs rely in support of this argument discusses the "at issue" waiver doctrine, in which a party asserts good faith reliance on attorney advice as a defense and thus puts it "at issue" in the litigation. *See In re Buspirone Antitrust Litig.,* 208 F.R.D. 516, 520-21 (S.D.N.Y. 2002). Here, the Secretary has not made such arguments.

### III. The Document Should Not Be Used in this Litigation

Plaintiffs and Plaintiff-Intervenors go beyond trying to pierce the attorney-client privilege and request the use of this document as evidence in the litigation. This cannot be countenanced. The Court should hold that the letter cannot be used as evidence in this action. *See In re Avantel, S.A.*, 343 F.3d 311, 323-24 (5th Cir. 2003) ("It is quite obvious that, if it were determined that Avantel's disclosures were inadvertent, it still could obtain meaningful relief, specifically, a holding that such documents would be inadmissible at trial."); *Sampson Fire Sales, Inc.*, 201 F.R.D. at 362 (sealing a document that had been inadvertently faxed to opposing counsel and filed on the docket, and ordering that "the contents of that document may not be used directly, or indirectly, in any further deposition and/or trial of this case"). Moreover, prohibition on use of the document in this litigation not only furthers the bedrock principles underlying the attorney-client privilege, but also avoids other serious issues.[11]

Plaintiffs' contention that the letter would be admissible under Federal Rules of Evidence 801(d)(2) and 804(b)(3), *see* ECF No. 72 at 3 n.9, is without merit. First, there is simply no basis for Plaintiffs' assertion that a letter from counsel providing advice to a client is admissible as "an opposing party's statement" under Federal Rule of Evidence 801(d)(2). *See Bensen v. Am. Ultramar Ltd.*, No. 92 Civ. 4420 (KMW) (NRB), 1996 WL 422262, at *10 (S.D.N.Y. July 29, 1996) (collecting cases) ("courts should be reluctant to consider attorneys' statements as party admissions 'in the absence of [a showing that the client gave the attorney] express authority' to make the statement" (alternations in original, quoting *Headman v. Berman Leasing Co.*, 352 F. Supp. 211, 213 (E.D. Pa. 1972)); *Novo Nordisk of N. Am., Inc. v. Genentech, Inc.*, Civ. A. No. 94 Civ. 8634 (CBM), 1995 WL 512171, at *27 (S.D.N.Y. Aug. 28, 1995) (internal memoranda of company's legal team discussing possible legal strategies and tactics are inadmissible hearsay as they do not reflect positions adopted by the company or by counsel on its behalf and do not reflect admissions of agents of the company), *vacated*, 77 F.3d 1364 (Fed. Cir. 1996); *Headman*, 352 F. Supp. at 213-14 (statement by attorney in telephone conversation with adversary attorney not admission binding on client since out-of-court statements are not recitations of client's position); *Shumate & Co., Inc. v. Nat. Assoc. of Sec. Dealers, Inc.*, 509 F.2d 147, 156 (5th Cir. 1975) (absent proof that defendant vouched for lawyer's opinions' accuracy, such opinions cannot be considered defendant's admissions), *cert. denied*, 423 U.S. 868 (1975). As to Federal Rule of Evidence 804(b)(3), again, the document at issue contains legal advice provided by counsel to a client, not factual statements by a witness who is no longer available. Thus, the document would not be admissible under Federal Rules of Evidence 801(d)(2) or 804(b)(3) in the course of this litigation.

\* \* \*

For all of the foregoing reasons, the Court should grant Defendants' motion to seal ECF No. 65, find that the attorney-client privilege and work product protections applicable to the inadvertently-filed document have not been waived, and order that the contents of the document may not be used directly, or indirectly, in any further proceedings in this litigation.

---

[11] Practical problems flow from allowing the use of the letter in this litigation. For example, one of the "practical problems that may flow from an inadvertent waiver of the attorney-client privilege" is that if "the advice provided by [attorneys] to defendant, and defendant's interpretation or application of it, are permitted to be used throughout this case, including at trial, it might be necessary [for those attorneys] to testify." *Bagley*, 204 F.R.D. at 185 n.18.

We thank the court for its consideration of Defendants' request.

Respectfully,

JAY CLAYTON
United States Attorney for the
Southern District of New York

By:  */s/ Dominika Tarczynska*
DOMINIKA TARCZYNSKA
DAVID FARBER
CHRISTINE S. POSCABLO
Assistant United States Attorneys
Tel. (212) 637-2748/2772/2674
dominika.tarczynska@usdoj.gov
david.farber@usdoj.gov
christine.poscablo@usdoj.gov

YAAKOV M. ROTH
Acting Assistant Attorney General

ERIC J. HAMILTON
Deputy Assistant Attorney General

MICHAEL BRUNS
STEPHEN ELLIOTT

cc: All Counsel of Record (via ECF)