U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*86 Chambers Street*
*New York, New York 10007*

May 13, 2025

**BY ECF**
The Honorable Lewis J. Liman
United States District Court
Southern District of New York
500 Pearl Street, Courtroom 15C
New York, NY 10007

      Re:    *MTA, et al. v. Duffy, et al.*, No. 25 Civ. 1413 (LJL)

Dear Judge Liman:

      We write respectfully on behalf of Defendants in response to Plaintiffs' letter dated May 12, 2025, ECF No. 101, and the Court's order dated May 12, 2025, granting Defendants leave to submit a response, ECF No. 102.

      Plaintiffs' and Intervenor-Plaintiffs' efforts to obtain a Court order allowing them to use an inadvertently-filed privileged document in this litigation are not supported by the applicable law for the reasons set forth in Defendants' April 24 and May 7 letters, *see* ECF Nos. 67 & 97. Where, as here, the disclosure of the document was plainly a mistake, counsel undertook immediate efforts to claw back the document, and fairness considerations weigh against use of the document by Plaintiffs and Intervenor-Plaintiffs, courts have found that the attorney-client privilege was not waived by inadvertent disclosure. *See, e.g.*, ECF No. 97 at 4-5; *see also U.S. ex rel. Bagley v. TRW, Inc.*, 204 F.R.D. 170, 185 (C.D. Cal. 2001). That the document was quickly disseminated through social media and news networks because of media attention to the case should not undo the protections the attorney-client privilege affords clients. Indeed, to hold otherwise would be a dangerous encroachment on a protection on which all clients rely.

      We briefly address herein the additional arguments set forth in Plaintiffs' May 12, 2025, letter. First, given that the document at issue is not a judicial document—as Plaintiffs appear to concede—there is no presumptive right of public access. *See* ECF No. 97 at 3 (collecting cases). Moreover, in cases involving judicial documents containing privileged material, the "protection of the attorney-client privilege" is a "countervailing factor" that outweighs the presumption of public access to such documents. *See Eletson Holdings, Inc. v. Levona Holdings, Ltd.*, No. 23 Civ. 7331 (LJL), 2023 WL 5956144, at *3 (S.D.N.Y. Sept. 13, 2023) (*citing Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 125 (2d Cir. 2006)). Contrary to Plaintiffs' assertion, *see* ECF No. 101 at 1-2, the fact that the inadvertent filing was the subject of public reporting does not mean that the document is properly part of the court docket such that it may used by the parties and the Court in this litigation. Rather, the document should be treated in the same manner as other mistakenly filed documents in this district and should remain under seal. *See* ECF No. 97 at 2 (citing cases).

      Next, as courts have recognized, even if the court cannot make what has become public private again, *see Gambale v. Deutsche Bank AG*, 377 F.3d 133, 144 (2d Cir. 2004), limitations

on the use of a privileged document by opposing parties are plainly proper—and would prevent further prejudice to Defendants. *See Bagley*, 204 F.R.D. at 184; *Prescient Partners, L.P. v. Fieldcrest Cannon, Inc.*, No. 96 Civ. 7590 (DAB)(JCF), 1997 WL 736726, at *7 (S.D.N.Y. Nov. 26, 1997) (quoting *Aramony v. United Way of Am.,* 969 F. Supp. 226, 237 (S.D.N.Y. 1997)). Although Plaintiffs attempt to distinguish *Bagley* by characterizing that case as involving "the routine disclosure of privileged materials in discovery," ECF No. 101 at 3 n.6, the decision is directly applicable here where the disclosure of the document cannot be entirely reversed. In *Bagley*, the court granted defendants' motion for a protective order regarding 29 inadvertently produced privileged documents even where plaintiff argued that the motion should be denied because "the bell has already been rung." *Bagley*, 204 F.R.D. at 184 (citation omitted). The court held that plaintiff's view "rests on an unduly narrow conception of the interests protected by the privilege" and that the "privilege protects against both disclosure and use." *Id.* The court acknowledged that confidentiality cannot be restored to a disclosed communication, but noted that "[l]itigation takes place in a controlled environment where a lack of confidentiality outside the courtroom is irrelevant to the proceedings within" and "a court can repair the damage done by disclosure of a confidential document by preventing use of that document at trial." *Id.* The circumstances of the instant case compel the same result.

Further, Plaintiffs' contention that fairness requires that they be permitted to use the document in this litigation because the public has access to it is unavailing. Case after case makes clear that "the evaluation of overall fairness does not focus on whether or not the receiving party is being deprived of information it believes is pertinent to its prosecution or defense of the action. Rather, it pertains to the relative prejudices each party would suffer by virtue of restoring privilege to the documents inadvertently disclosed." *Metso Mins. Inc. v. Powerscreen Int'l Distrib. Ltd.*, No. CV-06-1446 ADS ETB, 2007 WL 2667992, at *7 (E.D.N.Y. Sept. 6, 2007) (internal citations omitted); *see also* ECF No. 97 at 7. Plaintiffs and Intervenor-Plaintiffs have not shown how *they* would be prejudiced by not being able to use the legal advice provided to DOT by its attorneys as a sword in this litigation—that the public or the media may have access to this information due to the inadvertent disclosure has no bearing on whether Plaintiffs and Intervenor-Plaintiffs will suffer prejudice by not being able to use the document. The cases in which the courts discuss wide dissemination of the privileged information when evaluating "fairness" do so in the context of different *defendants* being differently situated in defending against the Government's enforcement actions. In the criminal context, in *United States v. Gangi*, the court explained that "because two defendants and their counsel have seen the Prosecution Memorandum, the defendants who have not seen it argue that they have been deprived of a 'level playing field' because they may suffer prejudice in their preparations for trial and/or plea negotiations." 1 F. Supp. 2d 256, 267 (S.D.N.Y. 1998). The court further explained that when two defendants "alone are now aware of the Government's likely strategy at trial and the substance of the evidence that would be presented against all of the defendants[,]" this "knowledge gives [those defendants] a significant advantage in a case where finger-pointing among defendants is likely to occur." *Id.*; *see also S.E.C. v. Cassano*, 189 F.R.D. 83, 86 (S.D.N.Y. 1999) (finding in an SEC enforcement action, "[s]urely there would be little equity in *some defendants* going forward with the benefit of counsel who have read the memorandum while others do not" (emphasis added)); *cf. United States v. Rigas*, 281 F. Supp. 2d 733, 742 (S.D.N.Y. 2003) (finding no waiver where "no one defendant will be prejudiced *vis-à-vis any other defendant* should the privileged documents in question be returned to the Government." (emphasis added)).

There are simply no similar considerations here. Even if some counsel looked at the privileged letter (whether before they were advised of its inadvertent filing or in news reports, *see* ECF No. 101 at 3), Plaintiffs and Intervenor-Plaintiffs are all challenging the same decision and seeking the same result. There are no concerns about "finger-pointing" amongst the MTA/TBTA, City, State, and not-for-profit challengers to the Secretary's action or concerns that they may be disadvantaged vis-à-vis one another in mounting that challenge.

Additionally, Plaintiffs' argument as to the "evidentiary relevance" of the document appears to be based on pure speculation that the document contains the equivalent of factual admissions or somehow contradicts Defendants' previous representations to the Court. There is no real dispute that the document is a letter from counsel to clients consisting of legal analysis and advice provided during the course of ongoing litigation. Thus, the information fits squarely within the type of "internal thought processes and deliberations" that Plaintiffs acknowledge are not admissible as evidence under FRE 801(d)(2)(D). *See* ECF 101 at 3 n.7 (citing *Novo Nordisk, Inc. v. Genentech, Inc.*, No. 94 Civ. 8634 (CBM), 1995 WL 512171, at *27 (S.D.N.Y. Aug. 28, 1995), *vacated*, 77 F.3d 1364 (Fed. Cir. 1996)).[1] Moreover, as the case law makes clear, the fact that a party might believe that an inadvertently disclosed privileged document may be useful in its case is simply not the test for whether fairness dictates a finding a waiver. *See, e.g., In re Nat. Gas Commodity Litig.,* 229 F.R.D. 82, 90 (S.D.N.Y. 2005) (noting that this factor of the analysis does not focus on whether the privilege will deprive a party of "pertinent information").

Finally, contrary to Plaintiffs' assertion, Defendants have not argued that Rule 502(b) and *Lois Sportswear* are at odds, *see* ECF No. 101 at 2. Rather, both outline a set of "non-determinative guidelines that vary from case to case." ECF No. 97 at 4 (quoting Explanatory Note on Evidence Rule 502 (revised Nov. 28, 2007)); *see also Apionishev v. Columbia Univ.*, No. 09 Civ. 6471 (SAS), 2012 WL 208998, at *11 (S.D.N.Y. Jan. 23, 2012) ("While the Court finds the flexible approach . . . to be appropriate outside the context of discovery, only two of the *Lois* factors are relevant here: the length of delay and fairness."); *Valentin v. Bank of N.Y. Mellon Corp.,* No. 09 Civ. 09448 (GBD), 2011 WL 2437644, at *2 (S.D.N.Y. May 31, 2011); *Bagley*, 204 F.R.D. at 179 ("Although multi-factor tests such as the *Lois Sportswear* test are useful in identifying relevant considerations, they should not be applied mechanistically. . . . the *Lois Sportswear* test will be employed simply as a guide to the exercise of discretion in determining whether a waiver occurred."). Here, considering the totality of the circumstances, the Court should not find that a waiver of the privilege has occurred.

For the foregoing reasons and the reasons set forth in Defendants' April 24 and May 7 letters, ECF Nos. 67 & 97, the Court should grant Defendants' motion to seal (or otherwise remove from the docket) ECF No. 65, find that the attorney-client privilege and work product protections applicable to the inadvertently-filed document have not been waived, and order that the contents of the document may not be used, directly or indirectly, in any further proceedings in this litigation.

---

[1] In citing *Estiverne v. Goodwine*, No. 06-cv-6617 (NG), 2009 WL 10706260, at *6 (E.D.N.Y. Oct. 19, 2009), Defendants acknowledged that the court found that the equities favored waiver in that case because, *unlike the circumstances here*, "the document at issue at most is subject to qualified protection, and does not contain information covered by the attorney-client privilege." Likewise, Plaintiffs' reliance on *Atronic Int'l v. SAI Semispecialists of Am., Inc.*, 232 F.R.D. 160, 166 (E.D.N.Y. 2005), is misplaced. In that case, the documents at issue consisted of factual information that the court found to be squarely at issue in the litigation, not legal analysis and advice from counsel to client. *See Employers Ins. of Wausau v. Skinner*, CV 07-735 (JS) (AKT), 2008 WL 4283346, at *10 (E.D.N.Y. Sept. 17, 2008) (distinguishing *Atronic*).

          Respectfully,

          JAY CLAYTON
          United States Attorney for the
          Southern District of New York

By:   /s/ Christine S. Poscablo
      DOMINIKA TARCZYNSKA
      DAVID FARBER
      CHRISTINE S. POSCABLO
      Assistant United States Attorneys

      YAAKOV M. ROTH
      Acting Assistant Attorney General

      ERIC J. HAMILTON
      Deputy Assistant Attorney General

      MICHAEL BRUNS
      STEPHEN ELLIOTT

cc: All Counsel of Record (via ECF)