UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---

METROPOLITAN TRANSPORTATION
AUTHORITY, *et al.*,

    *Plaintiffs*,

NEW YORK STATE DEPARTMENT OF
TRANSPORTATION, *et al.*,

    *Intervenor-Plaintiffs*,

v.

SEAN DUFFY, in his official capacity as Secretary
of the United States Department of Transportation,
*et al.*,

    *Defendants*.

No. 25-cv-1413 (LJL)

---

**BRIEF FOR AMICUS CURIAE
NYC SCHOOL BUS UMBRELLA SERVICES, INC.
IN SUPPORT OF PLAINTIFFS AND INTERVENOR PLAINTIFFS**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................................ ii

STATEMENT OF INTEREST OF AMICUS CURIAE ..................................................................... 1

ARGUMENT ....................................................................................................................................... 2

I.    NYCSBUS's Analysis Shows That the Congestion Pricing Program Has Improved School Bus Service in Manhattan ...................................................................... 3

    A.    The Congestion Pricing Program Makes School Buses More Likely to Arrive at School On Time ................................................................................................ 3

    B.    The Congestion Pricing Program Increases Average School Bus Speeds ............... 4

    C.    The Congestion Pricing Program Reduces Missed Classroom Time ...................... 7

II.    NYCSBUS's Analysis Supports an Injunction Protecting the Congestion Pricing Program ............................................................................................................................... 9

    A.    Irreparable Harm Will Result from Rescission ...................................................... 10

    B.    An Injunction is in the Public Interest ................................................................... 10

    C.    NYCSBUS's Analysis Shows that the Plaintiffs are Likely to Succeed on the Merits of Their APA Claim ..................................................................................... 11

CONCLUSION ................................................................................................................................. 13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Brown v. Board of Ed.*
 347 U.S. 483 (1954) ..................................................................................................... 10

*Doe v. Noem*
 2025 WL 1141279 (W.D. Wash. Apr. 17, 2025) ........................................................ 10

*Eco Tour Adventures, Inc. v. Zinke*
 249 F. Supp. 3d 360 (D.D.C. 2017) ............................................................................ 12

*Helms v. Cody*
 1994 WL 424367 (E.D. La. Aug. 9, 1994) ................................................................. 10

*Long Island R.Co. v. Int'l Ass'n of Machinists*
 874 F.2d 901 (2d Cir. 1989) ....................................................................................... 10

*Nat. Res. Def. Council, Inc. v. U.S. Food & Drug Admin.*
 598 F. Supp. 3d 98 (S.D.N.Y. 2022) .......................................................................... 12

*New York v. United States Dep't of Com.*
 351 F. Supp. 3d 502 (S.D.N.Y. 2019) ........................................................................ 12

*New York v. United States Dep't of Health & Hum. Servs.*
 414 F. Supp. 3d 475 (S.D.N.Y. 2019) ........................................................................ 12

*New York v. United States Dep't of Homeland Sec.*
 969 F.3d 42 (2d Cir. 2020) ......................................................................................... 10

*Ohio v. Env't Prot Agency*
 603 U.S. 279 (2024) ................................................................................................... 11

*R.F. by Frankel v. Delano Union School District*
 224 F.Supp.3d 979 (E.D. Cal. 2016) .......................................................................... 10

*R.S. v. Lower Merion School District*
 2023 WL 2228972 (E.D. Pa. Feb. 24, 2023) ............................................................. 10

*Saget v. Trump*
 375 F. Supp. 3d 280 (E.D.N.Y. 2019) ........................................................................ 12

*State v. Bureau of Land Mgmt.*
 286 F. Supp. 3d 1054 (N.D. Cal. 2018) ..................................................................... 12

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*St. Joseph's Hosp. Health Ctr. v. Am. Anesthesiology of Syracuse, P.C.*
  131 F.4th 102 (2d Cir. 2025) ...................................................................................9

**Other Authorities**

Kevin Duggan, *Congestion Pricing's Big Winner? Bus Riders*, Streetsblog NYC
  (Mar. 20, 2025), https://nyc.streetsblog.org/2025/03/20/congestion-pricings-
  big-winner-bus-riders..................................................................................................5

Ann Brody Guy, *Flight delays cost $32.9 billion, passengers foot half the bill*, UC
  Berkeley News (Oct. 18, 2010),
  https://news.berkeley.edu/2010/10/18/flight_delays/ ................................................7

United States Congress Joint Economic Committee, *Your Flight Has Been
  Delayed Again* (May 2008),
  https://www.jec.senate.gov/public/_cache/files/47e8d8a7-661d-4e6b-ae72-
  0f1831dd1207/yourflighthasbeendelayed0.pdf .........................................................7

United States Department of Transportation, Federal Highway Administration, *et
  al.*, Final Environmental Assessment Subchapter 5A, *Social Conditions* (Apr.
  2023), https://www.mta.info/document/92811 ........................................................12

United States Environmental Protection Agency, *School Bus Idle Reduction* (Apr.
  1, 2025), https://www.epa.gov/dera/school-bus-idle-reduction..................................7

## STATEMENT OF INTEREST OF AMICUS CURIAE

NYC School Bus Umbrella Services, Inc. ("NYCSBUS"), a New York not-for-profit corporation, is one of the largest providers of transportation services to schoolchildren in the New York City area.[1] Under contract with the New York City Department of Education, NYCSBUS operates a fleet of 900 school buses, making up approximately ten percent of the school buses serving New York City's schoolchildren. Every school day, NYCSBUS transports nearly 10,000 New York City schoolchildren (primarily children with Individualized Education Programs) on 777 routes spanning all five New York City boroughs and the surrounding area. In the course of safely transporting these schoolchildren, the NYCSBUS fleet travels approximately 8.7 million miles on the roads of the New York City region every year. Given the scale and nature of NYCSBUS's operations, it has a strong interest in legal developments that may impact transportation policy in New York City.

The Congestion Pricing Program (the "Program")[2] that was implemented by MTA affiliate Triborough Bridge and Tunnel Authority on January 5, 2025, and is the subject of this lawsuit, has resulted in important and measurable improvements in the lives of New York City schoolchildren. As the operator of a large fleet of school buses, NYCSBUS sees firsthand how the Program helps schoolchildren in New York City spend less time on buses and more time at school. NYCSBUS wants these gains preserved and opposes the efforts by the defendants to end the Program. For this reason, NYCSBUS submits this amicus curiae brief in support of the plaintiffs' motion for a preliminary injunction.

---

[1] NYCSBUS states that no counsel for any party authored this brief in whole or in part and no entity or person, aside from NYCSBUS or its counsel, made any monetary contribution intended to fund the preparation or submission of this brief.

[2] Unless otherwise specified, this brief uses the defined terms set forth in the Consolidated Second Amended Complaint, Dkt. No. 96.

1

In this brief, NYCSBUS presents the Court with concrete statistical evidence that demonstrates how the Program benefits the public: more on-time school arrivals, fewer delays, and a resultant increase in instructional time for schoolchildren. NYCSBUS' findings are data-driven. Each and every NYCSBUS vehicle is equipped with a GPS-enabled tracking device that provides real-time information on the vehicle's speed, location, and other parameters. NYCSBUS uses this information to provide students, parents, and guardians with up-to-date information on its bus service. It also employs an in-house data science team that analyzes bus tracking data to improve NYCSBUS's safety, reliability, and efficiency. The NYCSBUS data science team closely monitors the impact of the Program on NYCSBUS's operations. Given NYCSBUS's vast route network and fleet, and robust data collection program, NYCSBUS can offer the Court a nearly unparalleled source of information on changes in New York City traffic conditions resulting from the Program, with a particular focus on how the Program has improved the lives of New York City schoolchildren. This information is relevant to the Court as it considers the plaintiffs' motion for a preliminary injunction.

## ARGUMENT

There can be no doubt that the Program has improved student transportation service in New York City. NYCSBUS's data analysis shows that, relative to the period before the Program was implemented, NYCSBUS's service in the CBD is faster, more efficient, and more punctual. These findings are relevant to the Court's preliminary injunction analysis for several reasons. There is a strong public interest in maintaining a program that has significant benefits for New York City schoolchildren. Indeed, rescinding the Program will cause irreparable harm to the schoolchildren of New York City in the form of decreased instructional time, lost extracurricular time, and missed meals. Given the defendants' failure to consider how the Program has improved transportation reliability, and the accompanying benefits for schoolchildren, before issuing letters purporting to

rescind approval for the Program, their decision was arbitrary and capricious in violation of the Administrative Procedure Act. The Court should issue a preliminary injunction.

**I.      NYCSBUS's Analysis Shows That the Congestion Pricing Program Has Improved School Bus Service in Manhattan**

NYCSBUS's data science team has made several critical findings regarding the impact of the Program on school bus service in New York City. Since the implementation of the Program on January 5, 2025, buses bound for schools in the CBD are more likely to arrive on time, and NYCSBUS buses traversing the CBD move more quickly than they did before the Program was implemented.

On-time arrivals matter because improved school bus service in the CBD gives schoolchildren more time in the classroom. Indeed, since the Program was implemented, students who ride NYCSBUS buses to schools in the CBD have gained, on average, approximately half an hour of additional time at school per week that otherwise would have been spent idling in traffic on a school bus. Below, we provide specific details on NYCSBUS's findings on the impact of the Program for New York City schoolchildren.

**A.      The Congestion Pricing Program Makes School Buses More Likely to Arrive at School On Time**

Before the implementation of the Program, traffic congestion in Manhattan frequently resulted in school buses arriving at their destinations behind schedule. In the first fifteen weeks of 2024, the year prior to implementation of the Program (the "2024 Measurement Period"),[3] nearly a quarter of NYCSBUS arrivals at schools within the CBD were delayed.[4] Only 58% of arrivals

---

[3] Week 8 of the 2024 Measurement Period is not included in the data because it coincided with the public school Midwinter Recess, and NYCSBUS operations were limited as a result.

[4] NYCSBUS calculates on time and late arrival rates on a per-stop basis, not a per-student basis, as in the following hypothetical example involving a route serving two schools and five students. On Monday, a bus arrives on time at School A and discharges two students. It then continues to School B, where it arrives 10 minutes late and discharges

3

were on time. Delayed bus arrivals at school have detrimental consequences for students. A delayed arrival often results in missed instructional time, and because New York City public schools offer free breakfast to all students, a delayed arrival at school could mean a lost opportunity for a nutritious meal before the school day begins.

The implementation of the Program resulted in an immediate and substantial improvement in the punctuality of NYCSBUS arrivals within the CBD. Over the first fifteen weeks of 2025 (the "2025 Measurement Period"),[5] NYCSBUS's on time arrival rate in the CBD in the 2025 Measurement Period increased to 72%, up from 58% in the 2024 Measurement Period. NYCSBUS also observed a concomitant decrease in the rate of delayed arrivals in the CBD, with delayed arrivals decreasing from 24% in the 2024 Measurement Period to an average of only 15% in the 2025 Measurement Period. NYCSBUS did not observe a similar decrease in delayed arrivals outside of the CBD during the 2025 Measurement Period, suggesting that the improvement is related to the Program.

### B. The Congestion Pricing Program Increases Average School Bus Speeds

NYCSBUS's on-time arrival rates have improved in the CBD because decreased congestion has allowed buses to travel faster. Since the implementation of the Program,

---

three students. The on-time arrival rate for the route that day is 50%, because the bus arrived on time at one of its two stops, and the late arrival rate for the route that day is 50%, because the bus arrived late at one of its two stops.

As a result of this method of data aggregation, NYCSBUS's on time and late arrival percentages rarely sum to 100%. That is because, on any given day, NYCSBUS services skip scheduled stops at certain schools. Some routes may stop at a given school to discharge only a single student, and if that student is not on board the bus that day due to illness or some other reason, the bus will not stop at that school. Additionally, because NYCSBUS serves students with Individualized Education Programs, many NYCSBUS routes serve private schools that New York City public school students may be attending pursuant to their programs. Those schools do not always use the same academic calendar as New York City public schools. If a private school served by NYCSBUS is closed on a day when New York City public schools are open, NYCSBUS services will not stop at the private school. When a bus skips a school for the above reasons, or any other reason, it is not counted as either an on time arrival or a late arrival.

[5] As with the 2024 Measurement Period, Week 8 of the 2025 Measurement Period is not included in the data because it coincided with the public school Midwinter Recess, and NYCSBUS operations were limited as a result.

NYCSBUS has seen its buses travel at increased average speeds in the CBD as compared to the same week in the previous year. The data below reflects the improvement in bus speeds in the first eight weeks of 2025.

| Week | 2024 average speed in CBD | 2025 average speed in CBD | Percentage Change |
|---|---|---|---|
| 2 | 7.21 mph | 7.7 mph | 6.8% faster |
| 3 | 7.02 mph | 7.66 mph | 9.1% faster |
| 4 | 7.6 mph | 7.48 mph | 1.6% slower[6] |
| 5 | 7.19 mph | 7.58 mph | 5.4 % faster |
| 6 | 6.96 mph | 7.52 mph | 8% faster |
| 7 | 6.99 mph | 7.4 mph | 5.9% faster |
| 8 | n/a—Midwinter Recess | n/a—Midwinter Recess | n/a—Midwinter Recess |
| 9 | 7.12 mph | 7.61 mph | 6.9% faster |

NYCSBUS has not observed comparable increases in average bus speed outside of the CBD, suggesting that the increased speeds observed in the CBD are a function of decreased traffic congestion resulting from the Program.[7] And NYCSBUS has observed particularly substantial speed increases in historic traffic chokepoints, such as major arteries like the West Side Highway and FDR Drive, as well as areas in the vicinity of bridges and tunnels that traverse the Hudson and East Rivers. The NYCSBUS analysis presented on the following page shows that over the first five school days after the Program was implemented, average bus speeds in these trouble spots were significantly higher than average bus speeds over the last five school days before the Program was implemented—by nearly 20 miles per hour, in some areas.

---

[6] The data for Week 4 of 2025 (beginning January 20, 2025 and ending January 26, 2025) was influenced by a winter storm that impacted New York City and school closures associated with the Martin Luther King, Jr. Day holiday.

[7] Other large operators of buses in New York City have observed similar speed improvements within the CBD. For example, the MTA has reported that its average bus speeds have increased by approximately four percent since implementation of the Program. *See* Kevin Duggan, *Congestion Pricing's Big Winner? Bus Riders*, Streetsblog NYC (Mar. 20, 2025), https://nyc.streetsblog.org/2025/03/20/congestion-pricings-big-winner-bus-riders.



Across a bus fleet of 900 vehicles that operates over 700 routes every weekday, even a single-digit percentage increase in bus speeds within the CBD as a whole has significant benefits. Over time, increased average bus speeds will allow for more efficient use of driver and vehicle resources. Additionally, NYCSBUS data and anecdotal reports from drivers show that average speeds have increased in part because buses are less likely to be idling in gridlocked traffic. Unnecessary school bus idling releases air pollution that can be harmful to human health and the

environment alike.[8]  NYCSBUS's data suggest that reductions in bus idling associated with the Program will likely produce health and environmental benefits for all residents of New York City.

### C. The Congestion Pricing Program Reduces Missed Classroom Time

These improvements in on-time arrival rates and average bus speeds are not merely abstract benefits.  NYCSBUS routinely uses its data to calculate Lost Instruction Minutes—time that a student could have spent in school but instead spent on a bus because of delays.[9]  Lost Instruction Minutes come with tangible consequences for students.  Every Lost Instruction Minute that a student spends on a school bus in traffic is a minute that a student could have spent in the classroom, on the playground, or eating a nutritious school meal.  NYCSBUS's data analytics program is intended in part to identify ways in which NYCSBUS can reduce Lost Instruction Minutes to the fullest extent possible, and NYCSBUS's data show that the Program produces material reductions in Lost Instruction Minutes.

In the 2024 Measurement Period, one year before the Program was implemented, students using NYCSBUS services lost, on average, more than an hour and a half of instructional time per

---

[8] United States Environmental Protection Agency, *School Bus Idle Reduction* (Apr. 1, 2025), https://www.epa.gov/dera/school-bus-idle-reduction.

[9] NYCSBUS calculates Lost Instruction Minutes by multiplying a bus's arrival delay at a given school (in minutes) by the number of students discharged at that school, as in the following illustration of a hypothetical route serving two schools and five students:

|  | Students Discharged at School | Arrival Delay at School (min) | Lost Instruction Minutes |
|---|---|---|---|
| School A | 2 | 5 | 10 (5 minute delay * 2 students discharged) |
| School B | 3 | 10 | 30 (10 minute delay * 3 students discharged) |

For the above hypothetical route, the total Lost Instruction Minutes would be 40.  A similar metric—passenger delay minutes—is widely used by the aviation industry and its regulators when studying the causes and consequences of flight delays.  *See, e.g.*, Ann Brody Guy, *Flight delays cost $32.9 billion, passengers foot half the bill*, UC Berkeley News (Oct. 18, 2010), https://news.berkeley.edu/2010/10/18/flight_delays/; United States Congress Joint Economic Committee, *Your Flight Has Been Delayed Again* A4 (May 2008), https://www.jec.senate.gov/public/_cache/files/47e8d8a7-661d-4e6b-ae72-0f1831dd1207/yourflighthasbeendelayed0.pdf.

week due to bus delays. Moreover, during the 2024 Measurement Period, there was little difference in weekly average Lost Instruction Minutes between students transported by NYCSBUS to schools in the CBD and students transported by NYCSBUS to schools outside of the CBD.

| Week (2024) | Average Weekly Lost Instruction Minutes Per Student In CBD | Average Weekly Lost Instruction Minutes Per Student Outside CBD |
|---|---|---|
| 1 | 112.2 | 107.9 |
| 2 | 112.7 | 108.5 |
| 3 | 102.2 | 121.4 |
| 4 | 114.2 | 116.9 |
| 5 | 133.3 | 97.4 |
| 6 | 87.5 | 103.4 |
| 7 | 112.2 | 129.3 |
| 8 | n/a—Midwinter Recess | n/a—Midwinter Recess |
| 9 | 64.3 | 105.1 |
| 10 | 65.0 | 111.1 |
| 11 | 62.0 | 102.7 |
| 12 | 85.0 | 109.0 |
| 13 | 50.9 | 96.3 |
| 14 | 145.5 | 116.7 |
| 15 | 88.8 | 104.8 |
| **Average** | **95.4 weekly Lost Instruction Minutes prior to the Program** | **109.3 weekly Lost Instruction Minutes prior to the Program** |

Since the implementation of the Program, students transported by NYCSBUS to schools in the CBD have experienced a significant decrease in Lost Instruction Minutes arising from bus transportation delays. Comparing the 2025 Measurement Period to the 2024 Measurement Period, the average student transported by NYCSBUS to a school in the CBD gained over half an hour of instruction time at school per week due to reduced bus delays. Students transported by NYCSBUS to schools outside of the CBD did not benefit from a similar decrease in Lost Instruction Minutes, suggesting that the Program is related to decreased traffic delays in the CBD, as the table on the following page demonstrates:

| Week (2025) | Average Weekly Lost Instruction Minutes Per Student In CBD | Average Weekly Lost Instruction Minutes Per Student Outside CBD |
|---|---|---|
| 1 | 50.2 | 104.4 |
| 2 | 68.1 | 103.9 |
| 3 | 55.5 | 96.3 |
| 4 | 73.0 | 109.8 |
| 5 | 77.2 | 96.9 |
| 6 | 66.1 | 89.6 |
| 7 | 64.5 | 122.2 |
| 8 | n/a—Midwinter Recess | n/a—Midwinter Recess |
| 9 | 64.6 | 108.9 |
| 10 | 81.2 | 127.5 |
| 11 | 63.2 | 99.7 |
| 12 | 62.4 | 97.9 |
| 13 | 55.0 | 100.7 |
| 14 | 68.6 | 134.6 |
| 15 | 56.9 | 92.6 |
| **Average** | **64.7 weekly Lost Instruction Minutes (decrease of 30.7 Lost Instruction Minutes per week versus 2024)** | **106.1 weekly Lost Instruction Minutes (decrease of 3.2 Lost Instruction Minutes per week versus 2024)** |

In sum, NYCSBUS's data show that the Program has been a boon to the thousands of schoolchildren who travel to or around the CBD by school bus each week. Because of the Program, thousands of children benefit from faster, more reliable bus service, affording them more time in the classroom. The defendants' proposed rescission of approval for the Program threatens to undo this hard-won progress.

## II. NYCSBUS's Analysis Supports an Injunction Protecting the Congestion Pricing Program

"To obtain a preliminary injunction, a party must show (1) irreparable harm; (2) either a likelihood of success on the merits or both serious questions on the merits and a balance of hardships decidedly favoring the moving party; and (3) that a preliminary injunction is in the public interest." *St. Joseph's Hosp. Health Ctr. v. Am. Anesthesiology of Syracuse, P.C.*, 131 F.4th 102, 106 (2d Cir. 2025) (quotation marks omitted). On all three factors, NYCSBUS's data supports the issuance of a preliminary injunction.

9

### A.    Irreparable Harm Will Result from Rescission

The plaintiff agencies have already explained why they will suffer irreparable harm in the absence of a preliminary injunction. MTA Br. 51–60 (describing loss of federal funds needed for ongoing projects as well as injury from interference with a policy enacted by the duly elected legislature of New York). This is surely true, although it is not the only harm that will flow from rescission of the Program.

NYCSBUS's data show that rescission of the Program would also cause irreparable harm to thousands of schoolchildren, and the Court can consider this harm when deciding the motion. The Second Circuit has held that "[i]n making the determination of irreparable harm, both harm to the parties and to the public may be considered." *Long Island R. Co. v. Int'l Ass'n of Machinists*, 874 F.2d 901, 910 (2d Cir. 1989). If the Program is rescinded, children will spend more time on school buses and lose irreplaceable time at school. These sorts of injuries "cannot be remedied by an award of monetary damages." *New York v. United States Dep't of Homeland Sec.*, 969 F.3d 42, 86 (2d Cir. 2020) (quotation marks omitted); *see also Doe v. Noem*, 2025 WL 1141279, at *8 (W.D. Wash Apr. 17, 2025) ("[I]nterruption of educational programs or progress can be an irreparable harm.").

### B.    An Injunction is in the Public Interest

As the Supreme Court has recognized, "education is perhaps the most important function of state and local governments" because it is "the very foundation of good citizenship." *Brown v. Board of Ed.*, 347 U.S. 483, 493 (1954). Consistent with that principle, courts around the country have held that preliminary injunctions protecting students' education against unnecessary disruption are in the public interest. *See, e.g., R.S. v. Lower Merion School District*, 2023 WL 2228972, at *9 (E.D. Pa. Feb. 24, 2023); *R.F. by Frankel v. Delano Union School District*, 224 F.Supp.3d 979, 991 (E.D. Cal. 2016); *Helms v. Cody*, 1994 WL 424367, at *6 (E.D. La. Aug. 9,

1994). NYCSBUS's data show that the Program has reduced educational disruption associated with school transportation delays. There is a strong public interest in the continuation of a program that improves the educational experience of New York City students and limits the risk of educational disruption associated with delayed arrival at school.

### C. NYCSBUS's Analysis Shows that the Plaintiffs are Likely to Succeed on the Merits of Their APA Claim

The defendants have put forth several rationales for terminating the Program. At times, they have contended that the Program must be terminated because it is inconsistent with federal law. *See* Feb. 19, 2025 Letter from Secretary Duffy, Dkt. No. 87 (Trice Decl.), Ex. 5. At other times, the defendants have purported to rest the termination on policy grounds, contending that they have chosen to terminate the Program because of its "disproportionate financial hardship on low and medium-income hardworking American drivers for the benefit of high-income drivers." *See* Apr. 21, 2025 Letter from Secretary Duffy, Dkt. No. 87 (Trice Decl.), Ex. 10.

For the reasons that the plaintiffs explain in their brief, the Court should consider only the statutory interpretation arguments set forth in Secretary Duffy's February 19, 2025 letter, and not the defendants' *post hoc* policy-based rationales for terminating the Program set forth in the April 21, 2025 letter. MTA Br. at 45–46. However, to the extent the Court considers the defendants' policy-based rationales for terminating the Program, NYCSBUS's analysis shows that the defendants' actions are arbitrary and capricious and violate the Administrative Procedure Act.

Agency action is arbitrary and capricious when it "ignore[s] 'an important aspect of the problem'" that the agency purports to be addressing. *Ohio v. Env't Prot Agency*, 603 U.S. 279, 293 (2024) (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). The impact of the Program on transportation reliability (including school transportation reliability) in New York City is an important aspect of the problem that the

11

defendants were obligated to consider. Indeed, the environmental review record surrounding the approval of the Program extensively discusses how the Program was expected to increase the reliability of school bus service and other road transportation services in New York City.[10]

NYCSBUS's analysis suggests that the expectation of improved transportation reliability has become a reality.[11] Before they could attempt to rescind approval for the Program, the defendants were legally obligated to consider evidence that rescission of the Program would come with costs, including decreased reliability of school buses and similar services. But the defendants' cursory April 21 letter does not even nod to the risk of decreased transportation reliability. Their failure to consider this important aspect of the problem is arbitrary and capricious, and it is illegal. *See, e.g., New York v. United States Dep't of Health & Hum. Servs.*, 414 F. Supp. 3d 475, 555 (S.D.N.Y. 2019) (holding that agency action was arbitrary and capricious when the agency "failed to consider," or engaged in "dismissive treatment" of, important issues).

---

[10] *See* United States Department of Transportation, Federal Highway Administration, *et al.*, Final Environmental Assessment Subchapter 5A, *Social Conditions* at 5A-18, 5A-31 (Apr. 2023), https://www.mta.info/document/92811 (discussing how "school bus passengers" would "benefit due to improved travel-time reliability due to the reduced congestion resulting from congestion pricing").

[11] "Ordinarily . . . courts reviewing agency action for compliance with [the Administrative Procedure Act's arbitrary and capricious standard] confine their review to the administrative record." *New York v. United States Dep't of Com.*, 351 F. Supp. 3d 502, 631 (S.D.N.Y.) (citation and quotation marks omitted), *aff'd in part, rev'd in part and remanded sub nom. Dep't of Com. v. New York*, 588 U.S. 752 (2019). However, courts may consider materials outside of the administrative record—such as NYCSBUS's analysis—"to the limited extent that [the agency] is alleged to have entirely failed to consider an important aspect of the problem." *Id.* at 635; *see also Nat. Res. Def. Council, Inc. v. U.S. Food & Drug Admin.*, 598 F. Supp. 3d 98, 106 (S.D.N.Y. 2022); *Saget v. Trump*, 375 F. Supp. 3d 280, 342 (E.D.N.Y. 2019). Moreover, courts may consider extra-record evidence of irreparable harm when assessing requests for injunctive relief in Administrative Procedure Act cases. *See, e.g.*, *State v. Bureau of Land Mgmt.*, 286 F. Supp. 3d 1054, 1074 n.7 (N.D. Cal. 2018); *Eco Tour Adventures, Inc. v. Zinke*, 249 F. Supp. 3d 360, 370 n.7 (D.D.C. 2017).

## **CONCLUSION**

The plaintiffs' motion for a preliminary injunction should be granted.

Date: May 14, 2025

Respectfully submitted,

*/s/ Harry Sandick*
Harry Sandick
Ian D. Eppler
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, NY 10036
(212) 336-2000
hsandick@pbwt.com
ieppler@pbwt.com

*Counsel for Amicus Curiae NYC School Bus Umbrella Services, Inc.*