```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
                                                                       :
METROPOLITAN TRANSPORTATION                                            :
AUTHORITY, et al.,                                                     :
                                                                       :
                              Plaintiffs,                              :       25-cv-1413 (LJL)
                                                                       :
            -v-                                                        :       MEMORANDUM AND
                                                                       :            ORDER
SEAN DUFFY, et al.                                                     :
                                                                       :
                              Defendants.                              :
                                                                       :
-----------------------------------------------------------------------X
```

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 5/14/2025
```

LEWIS J. LIMAN, United States District Judge:

On January 5, 2025, the State of New York, acting with the approval of the federal government, initiated a new tolling program to address the vehicular congestion that had long plagued the Central Business District of New York City ("CBD"). The tolling program had been years in the making and represents a cooperative effort by a number of federal, state, and local agencies including the Federal Highway Administration ("FHWA"), the New York State Department of Transportation ("NYSDOT"), the New York City Department of Transportation ("NYCDOT"), the Triborough Bridge and Tunnel Authority ("TBTA"), and the Metropolitan Transportation Authority ("MTA"). The FHWA, NYSDOT, TBTA, and NYCDOT entered into an agreement that approved the program as a value pricing pilot program pursuant to the Intermodal Surface Transportation Efficiency Act of 1991, as amended, and authorized the collection of tolls. Dkt. No. 1-1.

A month and a half later, the federal government began to take steps to end the program. On February 19, 2025, Secretary of Transportation Sean Duffy sent a letter to New York State Governor Kathy Hochul stating that he was "rescinding FHWA's approval" of the congestion tolling program and "terminating the Agreement" pursuant to which Plaintiffs implemented the

program. Dkt. No. 87-5. Secretary Duffy's letter stated that the basis for termination was his view that the tolling program was not an eligible value pricing pilot program for which tolling could be authorized because it did not provide toll-free alternatives to enter the CBD by vehicle ("cordon pricing") and because the project "appears to be driven primarily by the need to raise revenue . . . as opposed to the need to reduce congestion." *Id.* at 4. In response, Plaintiffs filed this suit. Dkt. No. 1. On April 21, 2025, Secretary Duffy threatened that if Plaintiffs did not accede to the demand that they end the tolling program or show that it was authorized to continue tolling, the FHWA would take punitive measures including withholding advance construction authorizations, NEPA approvals, and approvals for Statewide Transportation Improvement Program amendments. Dkt. No. 64 at 2. The letter threatened that continuing "noncompliance" could prompt the FHWA to withhold funds and authorizations for projects throughout the whole of New York City or other geographic regions in New York State. *Id.*

On April 23, 2025, attorneys with the United States Department of Justice filed on the public docket an 11-page single-spaced letter (the "Letter") they had sent to the Department of Transportation on April 11, 2025, advising that it was very unlikely that this Court "or further courts of review" would accept Secretary Duffy's arguments that the tolling program was not a statutorily authorized value pricing pilot program. Dkt. No. 65 at 1, 8. The Letter was immediately the subject of widespread media attention. *See* Dkt. No. 70 at 2 & nn.1–6 (noting that the letter had been discussed by, *inter alia*, the New York Times, the New York Daily News, the New York Post, AM New York, and New York Magazine). It was also extensively quoted and discussed on radio programs and major broadcast television networks. *See id.* at 2 & nn.7–8 (noting that the letter had been discussed by, *inter alia*, WNYC, News 4 NBC New York, CCBS News New York, News10 ABC, and Fox 5 New York).

Defendants now seek to have the Letter removed from the docket or permanently sealed on the basis that it is a privileged attorney-client/attorney work product communication that was inadvertently filed with the Court. Dkt. No. 67.[1] Defendants' request raises two issues: (1) whether the Court should permanently seal the Letter; and (2) whether there has been a waiver of the privilege such that Plaintiffs may use the Letter in this litigation.

The Second Circuit has acknowledged that once otherwise confidential information is publicly filed and has been "disseminated prominently" the Court "simply do[es] not have the power, even were [it] of the mind to use it if [it] had, to make what has thus become public private again." *Gambale v. Deutsche Bank AG*, 377 F.3d 133, 144 & n.10 (2d Cir. 2004). Once "[t]he genie is out of the bottle," the Court "ha[s] not the means to put the genie back." *Id.* Numerous courts have followed the Circuit in recognizing the impossibility of "mak[ing] private that which has already become public." *Chigirinskiy v. Panchenkova*, 319 F. Supp. 3d 718, 739 (S.D.N.Y. 2018); *see, e.g.*, *Rollag v. Cowen Inc.*, 2020 WL 4937462, at *3 (S.D.N.Y. Aug. 24, 2020) ("In light of the existing press coverage of the Complaint, the Court concludes that sealing would be futile at this stage."); *In re Application to Unseal 98 Cr. 1101(ILG)*, 891 F. Supp. 2d 296, 300 (E.D.N.Y. 2012) ("Any balancing of the interests here, however, would be academic as the information the Government and Doe seek to maintain sealed has already been publicly revealed; the cat is out of the bag."); *NXIVM Corp. v. O'Hara*, 241 F.R.D. 109, 144 (N.D.N.Y. 2007) ("We cannot unsay what has already been said in the public forum."); *United States v. Gangi*, 1 F. Supp.

---

[1] On April 24, 2025, at 11:20 AM EST, Defendants filed a letter motion seeking to seal Dkt. No. 65 on the basis that it had been inadvertently filed. Dkt. No. 67. The Court temporarily granted Defendants' sealing request, pending further briefing. Dkt. No. 69 at 2. On April 24, 2025, the Riders Alliance and Sierra Club filed a letter in opposition to sealing. Dkt. No. 68. On May 2, 2025 Plaintiffs and Intervenors filed letters in opposition to sealing. *See* Dkt. No. 70 (the Riders Alliance and Sierra Club); Dkt. No. 72 (the MTA and the TBTA); Dkt. No. 74 (NYSDOT). On May 7, 2025, Defendants filed a letter reply in support of their sealing request. Dkt. No. 97. Plaintiffs (The MTA, TBTA, NYSDOT, Riders Alliance, and Sierra Club) filed a surreply on May 8, 2025. Dkt. No. 101. Defendants filed a sur-surreply on May 13, 2025. Dkt. No. 103.

2d 256, 267 (S.D.N.Y. 1998) (Chin, J.) ("There is no order I can enter which erases from . . . counsel's knowledge what has been disclosed." (quoting *Int'l Digit. Sys. Corp. v. Digit. Equip. Corp.*, 120 F.R.D. 445, 449 (D. Mass. 1988)))). "Courts in this Circuit thus 'routinely deny sealing requests where . . . the information to be sealed is already publicly available.'" *United States v. Paduch*, 2024 WL 167198, at *2 (S.D.N.Y. Jan. 16, 2024) (quoting *Grossberg v. Fox Corp.*, 2023 WL 2612262, at *1 (S.D.N.Y. Mar. 23, 2023)) (collecting cases). That proposition applies squarely here. The fact and the contents of the Letter have been widely reported by print media outlets, radio programs, and network television. *See* Dkt. No. 70 at 2 & nn.1–8. Many have not only quoted portions of the letter, but also linked to or republished the document in its entirety. *Id.* at 3. The Court has no means to restore the Letter's secrecy.[2]

The sole argument raised by Defendants is that the Letter is not a judicial record to which the presumption of public access attaches. Dkt. No. 97 at 1–4; *see United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995) ("We think that the mere filing of a paper or document with the court is insufficient to render that paper a judicial document subject to the right of public access."). Defendants are correct that the Letter is not a judicial document. A judicial document is one that is "relevant to the performance of the judicial function and useful in the judicial process in order for it to be designated a judicial document." *Amodeo*, 44 F.3d as 145. The Letter was not intended to have any role in the Court's decision in this case. The Court therefore does not apply a presumption in favor of access. *See Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006). But it does not follow from the fact that the Letter is not a judicial record that the Court must withdraw it from public view. Even though the Letter is not a judicial document "presumptively open to the public under the *Amodeo* cases, this conclusion, standing alone, does

---

[2] This case is thus distinguishable from the cases cited by Defendants in which the misfiled document was not publicized, and thus sealing could preserve the document's confidentiality. *See* Dkt. No. 97 at 2 (collecting cases).

not end the Court's inquiry." *S.E.C. v. TheStreet.Com*, 273 F.3d 222, 233 (2d Cir. 2001); *see Nichols v. Noom Inc.*, 2021 WL 3914078, at *2 (S.D.N.Y. Sept. 1, 2021) (denying motion to redact parts of nonjudicial document because the party seeking sealing "has failed to meet its burden to demonstrate any legitimate reason to maintain this information under seal"); *SuperCom, Ltd. v. Sabby Volatility Warrant Master Fund Ltd.*, 2022 WL 2543788, at *6 (S.D.N.Y. July 7, 2022) (denying motion to seal nonjudicial document). It simply means that the Court must strike "a new balance between privacy rights and the interest of the general public." *TheStreet.Com*, 273 F.3d at 234; *see also Standard Inv. Chartered, Inc. v. Nat'l Ass'n of Sec. Dealers, Inc.*, 2008 WL 199537, at *6 (S.D.N.Y. Jan. 22, 2008) (noting that the party seeking to seal nonjudicial documents "must demonstrate a particularized harm associated with disclosure in order to justify the continued sealing of these documents").

The Letter is of broad public interest. The Secretary has asserted that the law requires him to take actions with dramatic public consequences. Whether his invocation of the law is consistent with the advice he has been given is a matter of public concern. *See N. L. R. B. v. Sears, Roebuck & Co.*, 421 U.S. 132, 152 (1975) ("[T]he public is vitally concerned with the reasons which did supply the basis for an agency policy actually adopted."). "[T]he courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents" that is independent of any "proprietary interest in the document or upon a need for it as evidence in a lawsuit." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978) (collecting cases). "The interest necessary to support the issuance of a writ compelling access has been found, for example, in the citizen's desire to keep a watchful eye on the workings of public agencies, and in a newspaper publisher's intention to publish information concerning the operation of government." *Id.* at 597–98 (collecting cases). Defendants' assertion of privilege stands in the way of that interest. *See In re County of Erie*, 473 F.3d 413, 419 (2d Cir. 2007) (acknowledging

that invocation of governmental attorney-client privilege "impinges on open and accessible government"); *Reed v. Baxter,* 134 F.3d 351, 356–57 (6th Cir. 1998) ("The governmental privilege stands squarely in conflict with the strong public interest in open and honest government").

By contrast, the Secretary's interest in keeping the Letter from public view on the Court's website is *de minimis*. Traditionally, the governmental attorney-client privilege is countenanced by the fact that "public officials are duty-bound to understand and respect constitutional, judicial and statutory limitations on their authority; thus, their access to candid legal advice directly and significantly serves the public interest." *County of Erie*, 473 F.3d at 419. "Upholding the privilege furthers a culture in which consultation with government lawyers is accepted as a normal, desirable, and even indispensable part of conducting public business." *In re Grand Jury Investigation*, 399 F.3d 527, 534 (2d Cir. 2005). Here, however, the Secretary's interest in receiving the advice in confidence already has been fatally compromised. "[T]he *ex ante* incentives for full and frank consultations between clients and counsel" are not compromised by permitting public access to a document that has already been disclosed and has been highly publicized. *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 109 (2009).

Indeed, the only effect of sealing the Letter would be to prevent members of the public from comparing the copy of the Letter as reported with that as filed and ascertaining for themselves whether the reports of the advice the Secretary received accurately relay the advice the Secretary in fact received. Such outcome disserves the public and provides no benefit to any party. *See Bernsten v. O'Reilly*, 307 F.Supp.3d 161, 169 (S.D.N.Y. 2018) (holding that "[g]eneralized concern[s] of adverse publicity" do not support sealing (quoting *Prescient Acquisition Grp., Inc. v. MJ Pub. Tr.*, 487 F.Supp.2d 374, 375 (S.D.N.Y. 2007))). Defendants' request to seal the Letter is denied. The public and all parties in this litigation may access the Letter.

Separately, Defendants argue that Plaintiffs should not be able to use the Letter "as evidence, or otherwise, in this case," because the Letter is privileged and its disclosure was inadvertent. Defendants have sustained their burden.

"The attorney-client privilege protects communications (1) between a client and his or her attorney (2) that are intended to be, and in fact were, kept confidential (3) for the purpose of obtaining or providing legal assistance." *United States v. Mejia*, 655 F.3d 126, 132 (2d Cir. 2011), *cert. denied*, 565 U.S. 992 (2011). The privilege extends to government counsel as well. *See County of Erie*, 473 F.3d at 418; *Grand Jury Investigation*, 399 F.3d at 530–36. The purpose of the governmental attorney-client privilege "is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981).

"[I]t is vital to [such] a claim [of privilege] . . . that the communications between client and attorney were made in confidence and have been maintained in confidence.'" *Brennan Ctr. for Just. at N.Y.U. Sch. of L. v. U.S. Dep't of Just.*, 697 F.3d 184, 207 (2d Cir. 2012) (quoting *Mejia*, 655 F.3d at 134). "As a general rule, the voluntary production of a privileged document waives any claim of privilege with respect to that document." *United States v. Rigas*, 281 F.Supp.2d 733, 737 (S.D.N.Y. 2003). "When a party inadvertently discloses privileged material, however, the privilege will not be deemed waived unless the conduct of the producing party or its counsel evinced such extreme carelessness as to suggest that it was not concerned with the protection of the privilege." *In re Nat. Gas Commodity Litig.*, 229 F.R.D. 82, 85 (S.D.N.Y. 2005) (quotation omitted).

Defendants have demonstrated that the disclosure was inadvertent.[3] The Department of Justice attorneys involved in the filing, including the attorney under whose ECF credentials the document was filed, have represented to the Court under penalty of perjury that the misfiling was not intentional. Dkt. No. 97 at 5 & n.4. The docket text that accompanied the filing indicated that it was a letter addressing Secretary Duffy's April 20, 2025, letter to Governor Hochul and the Court's inquiry as to whether the administrative record would contain documents other than Secretary Duffy's February 19, 2025, letter—a letter that was due to the Court at that time. Dkt. No. 65. There is no reason to doubt that the attorneys engaged in a late-night filing simply selected the wrong file for upload, without any intent to make the selected document public. And the speed with which the attorneys acted to seal the Letter and prevent others from viewing it is inconsistent with an intent to publicize the document. Defendants telephonically contacted the Clerk of Court within approximately 15 minutes of the filing to request that the Letter be sealed on an emergency basis, pending a formal motion to seal. Dkt. No. 67 at 1; Dkt. No. 97 at 6. Defendants emailed all counsel of record requesting that they not download the Letter, or if they had already downloaded it, to delete it. Dkt. No. 97 at 6.

To determine whether an inadvertent disclosure was so careless as to waive the privilege, courts in the Second Circuit balance four factors: (1) the reasonableness of the precautions to prevent inadvertent disclosure, (2) the time taken to rectify the error, (3) the scope of the discovery and the extent of the disclosure, and (4) the overarching issue of fairness. *See Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 104 F.R.D. 103, 105 (S.D.N.Y. 1985); *see also United States v.*

---

[3] Plaintiffs note that Secretary Duffy has suggested the disclosure was intentional, describing the filing as either "absolute incompetence," or "sabotage," or "part of the resistance movement." Dkt. No. 72 (citation omitted). However, his comments do not indicate any firsthand knowledge that the disclosure was a purposeful act and thus are not competent evidence of the intent of the professionals involved. The Secretary's comments do not undermine the Court's finding of inadvertence.

*Ray*, 2022 WL 842254, at *3 (S.D.N.Y. Mar. 20, 2022).  Courts apply the *Lois* framework even where the inadvertent disclosure takes the form of a filing rather than document production.  *See, e.g.*, *Gangi*, 1 F. Supp. 2d at 264.

Only the third factor supports waiver—the filing itself was not large in scope.  Counsel needed to file only two documents (one letter and one exhibit to the letter).  But that will generally be the case where a misfiled document comprises the disclosure.  And although it is easier to review a small filing than a voluminous document production, occasional errors will not alone indicate extreme carelessness.  *See Prescient Partners, L.P. v. Fieldcrest Cannon, Inc.*, 1997 WL 736726, at *7 (S.D.N.Y. Nov. 26, 1997) (holding that "it would be inappropriate for the client of producing counsel to suffer the waiver of privilege due to an isolated, inadvertent error" (quotation and alterations omitted)); *see also Mazzocchi v. Windsor Owners Corp.*, 2020 WL 4038342, at *3 (S.D.N.Y. July 17, 2020) ("[T]he filing error made by an employee of Defendants' counsel's law firm[] is not a basis for finding waiver of the sacrosanct attorney-client privilege.").

The remaining factors weigh far more strongly against waiver.  Counsel for Defendants took reasonable precautions to avoid waiver, including limiting access to a few government agencies and to the attorneys handling the case.  Dkt. No. 97 at 5.  There is no indication that any part of the filing process was undertaken in a careless manner.  The filing process provides limited opportunities for review, and Defendants are far from the only litigants who have submitted incorrect documents to the Court.  Counsel acted swiftly to rectify the disclosure by contacting the Clerk of Court with an emergency sealing request and by contacting counsel of record.  It is hard to imagine they could have acted faster or done anything more to prevent dissemination.[4]

---

[4] Although Plaintiffs point out that there is no evidence that Defendant contacted third parties to request that they delete any republished versions of the Letter, Dkt. No. 72 at 2, it is not apparent that Defendants had any means of doing so quickly.  Defendants state that identifying which third parties had viewed the document prior to emergency sealing would have required subpoenaing PACER.  Dkt. No. 97 at 6 n.6.  And even if Defendants had quickly identified the third parties that

Finally, there is no indication that it would be "unfair" to bar the parties from using the Letter in this litigation. By confirming that the document is still privileged, "the Court takes nothing away" from Plaintiffs. *Rigas*, 281 F. Supp. 2d at 742; *see Ray*, 2022 WL 842254, at *4 (holding that "any unfairness to defendant by the deprivation of information to which it was not originally entitled is far outweighed by the unfairness to [the witness] in not honoring the attorney-client and psychotherapist-patient privileges" (quotation omitted)); *In re Copper Mkt. Antitrust Litig.*, 200 F.R.D. 213, 223 (S.D.N.Y. 2001) ("Depriving a party of information in an otherwise privileged document is not prejudicial.").[5] Defendants have not undertaken any action that would put the advice in the Letter at issue.[6] As to the legal arguments articulated in the Letter, there was never a concern that the experienced counsel in this case would need to freeload off the arguments of the United States Attorney's Office. Furthermore, Plaintiffs have already filed their opening briefs in support of a preliminary injunction without relying upon the Letter; even if Plaintiffs had wished to mine the Letter for legal arguments, there is no argument expressed in the Letter that would have been additive to the arguments Plaintiffs already stated in their opening briefs. Dkt. Nos. 83, 89. And the MTA and TBTA have argued that Secretary Duffy's February 19 letter—

---

had accessed the document, it is not obvious Defendants could have requested deletion with any expectation that the third parties would honor the request. The press is generally free to publish information it has lawfully acquired. *See Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 570 (1976); *see also* Dkt. No. 97 at 6 n.8 (noting that the CourtListener.com "removal policy" states that "[i]f you want information deleted from our site, your only recourse is to get it deleted from the public record and to obtain a court order demanding that we do the same").

[5] Plaintiffs cite *Rigas* for the proposition that "[g]enerally, courts hold that fairness dictates a finding of waiver in cases where the privileged information at issue has been widely disseminated." Dkt. No. 101 at 3 (citing *Rigas*, 281 F. Supp. 2d at 741); *see also S.E.C. v. Cassano*, 189 F.R.D. 83, 86 (S.D.N.Y. 1999); *Gangi*, 1 F. Supp. 2d at 264. However, that proposition arises in the context of multi-defendant government prosecution where some defendants have reviewed the information at issue while others have not. *See Rigas*, 281 F. Supp. 2d at 741; *Cassano*, 189 F.R.D. at 86; *Gangi*, 1 F. Supp. 2d at 267. In such circumstances, the defendants who have not reviewed the information may be prejudiced vis-à-vis the defendants who have. *See Rigas*, 281 F. Supp. 2d at 741–42. That issue is not presented here, because there is no worry any plaintiff may gain an unfair advantage with respect to any other plaintiff.

[6] If Defendants take action to put the advice at issue, Plaintiffs may seek reconsideration.

which predated the Letter—is the purported basis for Defendants' challenged actions. Dkt. No. 83 at 24. This is thus not a situation in which the disclosed communication reveals facts "that differ markedly from the factual position [the disclosing party] has taken in this action." *Atronic Int'l, GMBH v. SAI Semispecialists of Am., Inc.*, 232 F.R.D. 160, 166 (E.D.N.Y. 2005). "The prejudice factor focuses only on whether the act of restoring immunity to an inadvertently disclosed document would be unfair, not whether the privilege itself deprives parties of pertinent information." *Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.*, 160 F.R.D. 437, 446 (S.D.N.Y. 1995). The fact that Secretary Duffy received a communication from counsel taking a more negativistic view of his legal approach and recommending alternatives may be of interest to Plaintiffs and the public, but Plaintiffs have not demonstrated that maintaining privilege prejudices them in this litigation.

The Letter therefore shall remain privileged and may not be used in this litigation.

## CONCLUSION

Defendants' motion to seal is GRANTED IN PART and DENIED IN PART. The Letter shall be unsealed, but it shall remain privileged such that Plaintiffs and Intervenors may not use it in this litigation.

The Clerk of Court is directed to unseal Dkt. No. 65.

SO ORDERED.

Dated: May 14, 2025
New York, New York

                                            LEWIS J. LIMAN
                                        United States District Judge