# EXHIBIT 1B

# DECLARATION OF D. BRANDON TRICE

Filed 05/05/25

Metro. Transp. Auth. v. Duffy, No. 25 Civ. 1413 (S.D.N.Y.)
(LJL)

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

METROPOLITAN TRANSPORTATION AUTHORITY and TRIBOROUGH BRIDGE AND TUNNEL AUTHORITY,

*Plaintiffs*,

and

NEW YORK STATE DEPARTMENT OF TRANSPORTATION, RIDERS ALLIANCE, SIERRA CLUB, and NEW YORK CITY DEPARTMENT OF TRANSPORTATION,

*Intervenor-Plaintiffs*,

v.

SEAN DUFFY, in his official capacity as Secretary of the United States Department of Transportation, GLORIA M. SHEPHERD, in her official capacity as Executive Director of the Federal Highway Administration, UNITED STATES DEPARTMENT OF TRANSPORTATION, and FEDERAL HIGHWAY ADMINISTRATION,

*Defendants*.

Case No. 25 Civ. 1413 (LJL)

**DECLARATION OF D. BRANDON TRICE IN SUPPORT OF PLAINTIFFS THE METROPOLITAN TRANSPORTATION AUTHORITY AND TRIBOROUGH BRIDGE AND TUNNEL AUTHORITY AND INTERVENOR-PLAINTIFF NEW YORK CITY DEPARTMENT OF TRANSPORTATION'S MOTION FOR A PRELIMINARY INJUNCTION**

I, D. Brandon Trice, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1. I am a member of the bar of the State of New York and am admitted to appear before this Court. I am a partner in the law firm Kaplan Martin LLP, counsel for Plaintiffs the

Metropolitan Transportation Authority ("MTA") and Triborough Bridge and Tunnel Authority ("TBTA") in the above-captioned action.

2.      I respectfully submit this declaration in support of Plaintiffs and Intervenor-Plaintiff New York City Department of Transportation's ("NYCDOT") motion for a preliminary injunction.

3.      Attached hereto as **Exhibit 1** is true and correct copy of the Value Pricing Pilot Program Agreement signed by the Federal Highway Administration ("FHWA"), TBTA, the New York State Department of Transportation ("NYSDOT"), and NYCDOT on November 21, 2024.

4.      Attached hereto as **Exhibit 2** is a true and correct copy of then-candidate Donald Trump's May 24, 2024 Truth Social post.

5.      Attached hereto as **Exhibit 3** is a true and correct copy of Representative Nicole Malliotakis's January 11, 2025 X post.

6.      Attached hereto as **Exhibit 4** is a true and correct copy of President Trump's February 19, 2025 X post.

7.      Attached hereto as **Exhibit 5** is true and correct copy of the February 19, 2025 letter from Defendant Sean Duffy ("Duffy") to Governor Kathy Hochul.

8.      Attached hereto as **Exhibit 6** is a true and correct copy of the February 20, 2025 letter from Defendant Gloria Shepherd ("Shepherd") addressed to TBTA, NYSDOT, and NYCDOT (collectively, the "Project Sponsors").

9.      Attached hereto as **Exhibit 7** is a true and correct copy of Duffy's March 20, 2025 X post.

10.     Attached hereto as **Exhibit 8** is a true and correct copy of the March 20, 2025 letter from Shepherd to the Project Sponsors.

11. Attached hereto as **Exhibit 9** is a true and correct copy of the April 8, 2025 X post by the U.S. Department of Transportation.

12. Attached hereto as **Exhibit 10** is a true and correct copy of the April 21, 2025 letter from Duffy to Governor Kathy Hochul.

Dated: New York, New York
May 5, 2025

*/s/ D. Brandon Trice*
D. Brandon Trice

# EXHIBIT 1

THIS AGREEMENT ("Agreement"), made and entered into this 21st day of November, 2024, by and among the FEDERAL HIGHWAY ADMINISTRATION, UNITED STATES DEPARTMENT OF TRANSPORTATION, (hereinafter referred to as "FHWA") and the NEW YORK STATE DEPARTMENT OF TRANSPORTATION, an agency of the State of New York, Triborough Bridge and Tunnel Authority, and New York City Department of Transportation, (hereinafter referred to as "NYSDOT, TBTA, and NYCDOT ").

WITNESSETH:

WHEREAS, section 1012(b) of the Intermodal Surface Transportation Efficiency Act of 1991 (ISTEA), Public Law 102-240, as amended by section 1216(a) of the Transportation Equity Act for the 21st Century (TEA-21), and section 1604 (a) of the Safe, Accountable, Flexible, Efficient Transportation Equity Act: A Legacy for Users (SAFETEA- LU), Pub. L. 109-59 (August 10, 2005) establishes the Value Pricing Pilot Program, hereinafter referred to as the "pilot program," and permits the FHWA to allow the collection of tolls as part of the value pricing pilot program established under Section 1012(b); and

WHEREAS, Section 1012(b) of ISTEA, as amended, authorizes the Secretary of Transportation to enter into cooperative agreements with as many as fifteen (15) State or local governments or public authorities to establish, maintain, and monitor value pricing programs, or projects; and

WHEREAS, NYSDOT, through the execution of cooperative agreements for prior value pricing projects, is one of the fifteen participants in the pilot program; and

WHEREAS, NYSDOT has requested that the FHWA enter into an agreement with NYSDOT, TBTA, and NYCDOT related to establishing, maintaining, and monitoring a value pricing project, known as the Central Business District Tolling Program (CBDTP) (hereinafter referred to as the "Project"), as part of NYSDOT's participation in the value pricing pilot program; and

WHEREAS, as part of the CBDTP value pricing pilot program, TBTA intends to toll an area which includes portions of highway facilities that have been constructed, reconstructed, rehabilitated, restored, resurfaced or maintained with title 23 funds as described in Attachment A, and made part of this agreement; and

WHEREAS, the FHWA has determined that this Agreement is necessary to oversee and administer the collection of tolls pursuant to Section 1012(b)(4) of ISTEA, as amended; and

WHEREAS, Section 1012(b) of ISTEA, as amended requires that all revenues received from the operation of a value pricing project be applied only toward the project's operating costs (including project implementation costs; mitigation measures to deal with adverse financial effects on low-income drivers; the proper maintenance of the Project;

any reconstruction, rehabilitation, restoration, or resurfacing of the Project; any debt service incurred in implementing the project; a reasonable return on investment of any private person financing the project), and other projects eligible for assistance under title 23, United States Code; and

WHEREAS, this Agreement is neither intended to, nor shall it, result in the independent participation by TBTA and NYCDOT in the value pricing pilot program, it being expressly understood that TBTA's and NYCDOT's participation in the value pricing pilot project approved in this Agreement is (i) derivative of and only exists through NYSDOT's participation in the value pricing pilot program and (ii) limited to the Project; and

NOW THEREFORE, in consideration of the premises and mutual undertakings of the parties, and in conformity with all applicable laws, the NYSDOT, TBTA, NYCDOT, and FHWA hereby agree as follows:

(1)   The FHWA agrees that TBTA may operate the Project as a toll Project in accordance with the provisions of this Agreement and as a value pricing project, as part of NYSDOT's  value pricing pilot program.

(2)   Pursuant to Section 1012(b) of ISTEA, as amended, TBTA will use all toll revenues received from the operation of the Project for the operating costs of the project as described in attachment A (including project implementation costs; mitigation measures to deal with adverse financial effects on low-income drivers; the proper maintenance of the Project; any reconstruction, rehabilitation, restoration, or resurfacing of the Project; any debt service incurred in implementing the project; a reasonable return on investment of any private person financing the project), and any other projects eligible for assistance under title 23, United States Code.

(3)   The toll rates applicable to the Project will vary as described in Attachment A. and in accordance with Section 1012(b) of ISTEA, as amended including Sec. 1012(b)(6) - HOV Passenger Requirements. Notwithstanding section 102(a) of title 23, United States Code, a State may permit vehicles with fewer than 2 occupants to operate in high occupancy vehicle lanes if the vehicles are part of a value pricing pilot program under this section. Sec. 1012(b)(7) - Financial Effects on Low-Income Drivers – Any value pricing pilot program under this subsection shall include, if appropriate, an analysis of the potential effects of the pilot program on low-income drivers and may include mitigation measures to deal with any potential adverse financial effects on low-income drivers.

(4)   TBTA shall conduct or have an independent auditor conduct an annual audit of toll Project records to verify compliance with use of revenues and report the results of the audits to FHWA.

(5) As of the date of the execution of this Agreement, the imposition of tolls under this Agreement does not render Federal-aid highways within the State of New York generally ineligible for Federal-aid highway funds where such highways are otherwise eligible under the particular funding program.

(6) NYSDOT, TBTA, and NYCDOT, as applicable, will continue to adequately maintain or cause to be adequately maintained, the highway facilities that have been constructed, reconstructed, rehabilitated, restored, or resurfaced or maintained with title 23 funds located in the Project.

(7) That TBTA agrees, upon reasonable notice, to make all of its records pertaining to the Project subject to audit by the FHWA. TBTA agrees to annually audit the records of the Project for compliance with the provisions of this Agreement and report the results thereof to FHWA. In lieu of the TBTA performing said audit, a report of the New York State Comptroller or an independent auditor furnished to FHWA may satisfy the requirements of this section.

(8) Effective on the date of this Agreement, the project is approved as a pilot program, and the following requirements shall apply:

a. In order to carry out Section 1012(b)(5) of ISTEA, as amended, the FHWA and NYSDOT, TBTA and NYCDOT will cooperate and work together in the implementation of the Project.

b. That TBTA and NYCDOT, as applicable, shall monitor and report on the project performance (Attachment B) from the date of implementation for a period of at least ten years or to the end of the life of the Project, whichever is sooner, to evaluate the effects on driver behavior, traffic volume, congestion, transit ridership, air quality, and availability of funds for transportation programs. Reports begin one year after the operation date and every two years thereafter.

c. That TBTA and NYCDOT will identify benefits the application of tolls has in reducing climate pollution.

d. That TBTA and NYCDOT will demonstrate the benefits mitigation measures provide to underserved communities.

(9) That NYSDOT, TBTA and NYCDOT agree to comply with all Federal laws and requirements applicable to this project, including the laws and policies applicable to the Value Pricing Pilot Program. Such laws and requirements include, but are not limited to Section 1012(b) of ISTEA, as amended, the guidance implementing Section 1012(b) of ISTEA, and 23 CFR Part 940 and 950.

(10) TBTA, through NYSDOT, agrees to provide FHWA notice of any proposed changes to the toll structure other than the phases set forth in Attachment A, a minimum of 60 days before such changes go into effect. Any such changes must be eligible pursuant to the VPPP enacted by section 1012(b) of the Intermodal Surface Transportation Efficiency Act of 1991 (ISTEA), Public Law 102-240, as amended by section 1216(a) of the Transportation Equity Act for the 21st Century (TEA-21), and section 1604 (a) of the Safe, Accountable, Flexible, Efficient Transportation Equity Act: A Legacy for Users (SAFETEA- LU), Pub. L. 109-59 (August 10, 2005).

(11) That NYSDOT, TBTA and NYCDOT agree they will work with FHWA to return the Project to its original operating condition if TBTA decides to discontinue tolls on the Project.

(12) That this Agreement will be prepared in quadruplicate originals so that each signatory will have a signed Agreement. This Agreement may be signed in counterparts, each of which shall be deemed an original and taken together shall constitute one and the same agreement.

IN WITNESS THEREOF, the parties hereto have caused this instrument to be duly executed, the day and year first written above.

STATE OF NEW YORK DEPARTMENT OF TRANSPORTATION

BY: Marie Therese Dominguez

Title: Commissioner

TRIBOROUGH BRIDGE AND TUNNEL AUTHORITY

BY: ____________________________
Catherine T. Sheridan
Title: President

NEW YORK CITY DEPARTMENT OF TRANSPORTATION

BY: ____________________________
Ydanis Rodriguez
Title: Commissioner

FEDERAL HIGHWAY ADMINISTRATION
UNITED STATES DEPARTMENT OF TRANSPORTATION

BY: Gloria M. Shepherd

Title: Executive Director

ATTACHMENT A – Project Description
ATTACHMENT B – Performance Metrics

## Attachment A

**Project Description**

The CBD Tolling Program will implement a vehicular tolling program to reduce traffic congestion in the Manhattan Central Business District ("CBD"), consistent with the MTA Reform and Traffic Mobility Act. Traffic congestion is expected to be reduced by disincentivizing use of vehicles within the CBD by imposition of tolls, and concurrently by investments in transit that will incentivize use of transit systems instead of driving. The project purpose is to reduce traffic congestion in the CBD in a manner that will generate revenue for future transportation improvements, pursuant to acceptance into FHWA's Value Pricing Pilot Program.

The CBD consists of the geographic area of Manhattan south and inclusive of 60th Street, but not including Franklin D. Roosevelt Drive ("FDR Drive"), West Side Highway/Route 9A, the Battery Park Underpass, and any surface roadway portion of the Hugh L. Carey Tunnel connecting to West Street (the West Side Highway/Route 9A).

TBTA will toll vehicles entering the CBD via a cashless tolling system. The toll amount will be variable, with higher tolls charges during peak periods when congestion is greater. The toll will apply to all registered vehicles (i.e., those with license plates), with the exception of qualifying vehicles transporting persons with disabilities, qualifying authorized emergency vehicles, transit buses, and specialized government vehicles. Passenger vehicles will be tolled no more than once a day. Taxis and for-hire vehicles ("FHVs") will be tolled on a per-trip basis for rides carrying passengers occurring wholly or partially within the CBD.

The Project will use the same tolling infrastructure and tolling system equipment described and evaluated in the Final Environmental Assessment for the Project (the "Final EA").

The environmental commitments made in the Finding of No Significant Impact will be implemented as described in the Environmental Documents.

To address effects to low-income drivers, the Project will include a tax credit for CBD tolls paid by residents of the CBD whose New York adjusted gross income for the taxable year is less than $60,000. TBTA will coordinate with the New York State Department of Taxation and Finance to ensure availability of documentation needed for drivers eligible for the tax credit. In addition, the Project commits, for five years, to a Low-Income Discount Plan offering low-income frequent drivers a 50 percent discount on the full E-ZPass toll rate after the first 10 trips in each calendar month (excluding the overnight period, which will already be deeply discounted).

The toll amounts will be graduated over a six year period in accordance with the toll rate schedule below. Phase 1 will span 2025 through 2027, Phase 2 will span 2028 through 2030, and Phase 3 will commence in 2031.

## Toll Rate Schedule

| TRIBOROUGH BRIDGE AND TUNNEL AUTHORITY CENTRAL BUSINESS DISTRICT (CBD) CHARGES | | | | | | |
|---|---|---|---|---|---|---|
| | PHASE 1 2025-2027 | | PHASE 2 2028-2030 | | PHASE 3 starting 2031 | |
| a E-ZPass Customers VEHICLE CLASSIFICATION | CBD ENTRY CHARGE | TUNNEL CROSSING CREDIT | CBD ENTRY CHARGE | TUNNEL CROSSING CREDIT | CBD ENTRY CHARGE | TUNNEL CROSSING CREDIT |
| 1 Passenger and other vehicles, including sedans, sport utility vehicles, station wagons, hearses, limousines, pickup trucks with factory beds, pickup trucks with caps below the roofline and not extending over the sides, and vans without an extended roof above the windshield | | | | | | |
| Peak period (5am-9pm weekdays, 9am-9pm weekends) | $9.00 | | $12.00 | | $15.00 | |
| Peak period for registered Low-Income Discount Plan participants using an eligible vehicle, 11th trip and trips thereafter in a calendar month (5am-9pm weekdays, 9am-9pm weekends) | $4.50 | | $6.00 | | $7.50 | |
| Peak period per-trip credit (maximum daily credit $5.00) | | | | | | |
| If entering the CBD via the Lincoln Tunnel or Holland Tunnel | | $3.00 | | $4.00 | | $5.00 |
| If entering or exiting the CBD via the Queens-Midtown Tunnel or Hugh L. Carey Tunnel | | $1.50 | | $2.00 | | $2.50 |
| Overnight period (9pm-5am weekdays, 9pm-9am weekends) | $2.25 | | $3.00 | | $3.75 | |
| 2 Single-unit trucks, including non-articulated trucks, pickup trucks with modified beds, vans with modified body behind the drivers cab, pickup trucks with caps above the roofline or extending over the sides, and vans with an extended roof above the windshield | | | | | | |
| Peak period (5am-9pm weekdays, 9am-9pm weekends) | $14.40 | | $19.20 | | $24.00 | |
| Peak period per-trip credit | | | | | | |
| If entering the CBD via the Lincoln Tunnel or Holland Tunnel | | $7.20 | | $9.60 | | $12.00 |
| If entering or exiting the CBD via the Queens-Midtown Tunnel or Hugh L. Carey Tunnel | | $3.60 | | $4.80 | | $6.00 |
| Overnight period (9pm-5am weekdays, 9pm-9am weekends) | $3.60 | | $4.80 | | $6.00 | |
| 3 Multi-unit trucks, including articulated trucks where a power unit is carrying one or more trailers | | | | | | |
| Peak period (5am-9pm weekdays, 9am-9pm weekends) | $21.60 | | $28.80 | | $36.00 | |
| Peak period per-trip credit | | | | | | |
| If entering the CBD via the Lincoln Tunnel or Holland Tunnel | | $12.00 | | $16.00 | | $20.00 |
| If entering or exiting the CBD via the Queens-Midtown Tunnel or Hugh L. Carey Tunnel | | $6.00 | | $8.00 | | $10.00 |
| Overnight period (9pm-5am weekdays, 9pm-9am weekends) | $5.40 | | $7.20 | | $9.00 | |
| 4 Buses, including vehicles registered with the DMV and plated as a bus, omnibus, or have other designated official plates | | | | | | |
| Peak period (5am-9pm weekdays, 9am-9pm weekends) | $14.40 | | $19.20 | | $24.00 | |
| Peak period per-trip credit | | | | | | |
| If entering the CBD via the Lincoln Tunnel or Holland Tunnel | | $7.20 | | $9.60 | | $12.00 |
| If entering or exiting the CBD via the Queens-Midtown Tunnel or Hugh L. Carey Tunnel | | $3.60 | | $4.80 | | $6.00 |
| Overnight period (9pm-5am weekdays, 9pm-9am weekends) | $3.60 | | $4.80 | | $6.00 | |
| Licensed sightseeing buses | | | | | | |
| Peak period (5am-9pm weekdays, 9am-9pm weekends) | $21.60 | | $28.80 | | $36.00 | |
| Peak period per-trip credit | | | | | | |
| If entering the CBD via the Lincoln Tunnel or Holland Tunnel | | $12.00 | | $16.00 | | $20.00 |
| If entering or exiting the CBD via the Queens-Midtown Tunnel or Hugh L. Carey Tunnel | | $6.00 | | $8.00 | | $10.00 |
| Overnight period (9pm-5am weekdays, 9pm-9am weekends) | $5.40 | | $7.20 | | $9.00 | |
| 5 Motorcycles | | | | | | |
| Peak period (5am-9pm weekdays, 9am-9pm weekends) | $4.50 | | $6.00 | | $7.50 | |
| Peak period per-trip credit | | | | | | |
| If entering the CBD via the Lincoln Tunnel or Holland Tunnel | | $1.50 | | $2.00 | | $2.50 |
| If entering or exiting the CBD via the Queens-Midtown Tunnel or Hugh L. Carey Tunnel | | $0.75 | | $1.00 | | $1.25 |
| Overnight period (9pm-5am weekdays, 9pm-9am weekends) | $1.05 | | $1.40 | | $1.75 | |

*E-ZPass CBD entry charges are available subject to terms, conditions, and agreements established by the Authority.*

*The Authority reserves the right to determine whether any vehicle is of unusual or unconventional design, weight, or construction and therefore not within any of the listed categories. The Authority also reserves the right to determine the CBD charge for any such vehicle of unusual or unconventional design, weight, or construction. Any single unit vehicle identified as belonging to Classes 1, 2, or 5 will be up-classed to the next toll class when towing a trailer or another vehicle.*

*Daily toll cap of once per day for Class 1 and Class 5 vehicles. Caps for other vehicles are subject to change pursuant to the adaptive management approach to mitigating project effects, as committed to in the Final Environmental Assessment.*

*CBD entry charges and tunnel credits are subject to a variable percentage increase/decrease of up to 10% for up to one year after implementation pursuant to the adaptive management approach to mitigating project effects, as committed to in the Final Environmental Assessment.*

*The Low-Income Discount Plan shall continue for five years as committed to in the Final Environmental Assessment.*

*The Authority reserves the right to charge a 25% higher CBD charge during Gridlock Alert Days. Each year, the NYCDOT identifies Gridlock Alert Days during the UN General Assembly and throughout the holiday season when heavy traffic is expected in Manhattan. On Gridlock Alert Days, consider walking, biking, or taking mass transit for any trips in Manhattan.*

*Qualifying authorized emergency vehicles and qualifying vehicles transporting persons with disabilities are exempt pursuant to Vehicle and Traffic Law § 1704-a (2).*

*Qualifying authorized commuter buses and specialized government vehicles, as determined by the Authority, are exempt.*

| TRIBOROUGH BRIDGE AND TUNNEL AUTHORITY CENTRAL BUSINESS DISTRICT (CBD) CHARGES | | | | | | |
|---|---|---|---|---|---|---|
| | PHASE 1 2025-2027 | | PHASE 2 2028-2030 | | PHASE 3 starting 2031 | |
| b Customers Using Fare Media Other Than E-ZPass<br>VEHICLE CLASSIFICATION | CBD ENTRY CHARGE | PER TRIP CHARGE PLAN* (TO/FROM/ WITHIN/ THROUGH CBD) | CBD ENTRY CHARGE | PER TRIP CHARGE PLAN* (TO/FROM/ WITHIN/ THROUGH CBD) | CBD ENTRY CHARGE | PER TRIP CHARGE PLAN* (TO/FROM/ WITHIN/ THROUGH CBD) |
| 1 Passenger and other vehicles, including sedans, sport utility vehicles, station wagons, hearses, limousines, pickup trucks with factory beds, pickup trucks with caps below the roofline and not extending over the sides, and vans without an extended roof above the windshield | | | | | | |
| Peak period (5am-9pm weekdays, 9am-9pm weekends) | $13.50 | | $18.00 | | $22.50 | |
| Overnight period (9pm-5am weekdays, 9pm-9am weekends) | $3.30 | | $4.40 | | $5.50 | |
| 2 Single-unit trucks, including non-articulated trucks, pickup trucks with modified beds, vans with modified body behind the drivers cab, pickup trucks with caps above the roofline or extending over the sides, and vans with an extended roof above the windshield | | | | | | |
| Peak period (5am-9pm weekdays, 9am-9pm weekends) | $21.60 | | $28.80 | | $36.00 | |
| Overnight period (9pm-5am weekdays, 9pm-9am weekends) | $5.40 | | $7.20 | | $9.00 | |
| 3 Multi-unit trucks, including articulated trucks where a power unit is carrying one or more trailers | | | | | | |
| Peak period (5am-9pm weekdays, 9am-9pm weekends) | $32.40 | | $43.20 | | $54.00 | |
| Overnight period (9pm-5am weekdays, 9pm-9am weekends) | $8.10 | | $10.80 | | $13.50 | |
| 4 Buses, including vehicles registered with the DMV and plated as a bus, omnibus, or have other designated official plates | | | | | | |
| Peak period (5am-9pm weekdays, 9am-9pm weekends) | $21.60 | | $28.80 | | $36.00 | |
| Overnight period (9pm-5am weekdays, 9pm-9am weekends) | $5.40 | | $7.20 | | $9.00 | |
| Licensed sightseeing buses | | | | | | |
| Peak period (5am-9pm weekdays, 9am-9pm weekends) | $32.40 | | $43.20 | | $54.00 | |
| Overnight period (9pm-5am weekdays, 9pm-9am weekends) | $8.10 | | $10.80 | | $13.50 | |
| 5 Motorcycles | | | | | | |
| Peak period (5am-9pm weekdays, 9am-9pm weekends) | $6.75 | | $9.00 | | $11.25 | |
| Overnight period (9pm-5am weekdays, 9pm-9am weekends) | $1.65 | | $2.20 | | $2.75 | |
| NYC TLC taxis, green cabs, for-hire vehicles (FHVs) | | | | | | |
| Taxis, green cabs, and FHVs on trips | | $0.75 | | $1.00 | | $1.25 |
| FHVs on trips dispatched by high-volume for-hire services (HVFHSs) | | $1.50 | | $2.00 | | $2.50 |

*The Authority reserves the right to determine whether any vehicle is of unusual or unconventional design, weight, or construction and therefore not within any of the listed categories. The Authority also reserves the right to determine the CBD charge for any such vehicle of unusual or unconventional design, weight, or construction. Any single unit vehicle identified as belonging to Classes 1, 2, or 5 will be up-classed to the next toll class when towing a trailer or another vehicle.*

*Daily toll cap of once per day for Class 1 and Class 5 vehicles. Caps for non-passenger vehicles are subject to change pursuant to the adaptive management approach to mitigating project effects, as committed to in the Final Environmental Assessment.*

*NYC TLC taxi, green cab, and FHV tolls are to be paid by the passenger pursuant to Rules of City of NY Taxi & Limousine Commn (35 RCNY) §§ 58-26 (f), 59A-23 (b), 59D-17 (c).*

*CBD entry charges and per trip charges are subject to a variable percentage increase/decrease of up to 10% for up to one year after implementation pursuant to the adaptive management approach to mitigating project effects, as committed to in the Final Environmental Assessment.*

*The Authority reserves the right to charge a 25% higher CBD charge during Gridlock Alert Days. Each year, the NYCDOT identifies Gridlock Alert Days during the UN General Assembly and throughout the holiday season when heavy traffic is expected in Manhattan. On Gridlock Alert Days, consider walking, biking, or taking mass transit for any trips in Manhattan.*

*Qualifying authorized emergency vehicles and qualifying vehicles transporting persons with disabilities are exempt pursuant to Vehicle and Traffic Law § 1704-a (2).*

*Qualifying authorized commuter buses and specialized government vehicles, as determined by the Authority, are exempt.*

**Subject to full execution of and in compliance with plan agreement by FHV bases and taxi technology system providers.*

**ATTACHMENT B – Performance Metrics**

As developed in the Final EA and the Reevaluations for the Project dated June 2024 and November 2024, the performance metrics of the system for evaluating the effectiveness of the pilot program and managing congestion are related to reducing vehicles entering the CBD and reducing VMT within the CBD. For reference, the amount of congestion reduction within the CBD for the toll structure is as follows::

- Reduce daily vehicle miles traveled (VMT) within the Manhattan CBD by 6.4 percent (Phase 1) to 8.9 percent (Phase 3)
- Reduce the number of vehicles entering the Manhattan CBD by 13.4 percent (Phase 1) to 17 percent (Phase 3)

Another important factor for measuring congestion reduction in the CBD related to transit investment is transit ridership in the CBD.:

- Increase in transit use entering the CBD.

The program will be collecting a significant amount of data to assess, track, and trend the direct and indirect effects of the project. These data, which are described in the following bullets, will be made public on a regular basis in open data format to the greatest extent practicable.

**Direct Congestion Measures**
- Vehicle entries into the CBD (by type of vehicle, day of week, time of day)
- Historic volumes entering the CBD (average fall weekday/weekend, time of day)
- Taxi and FHV trips to, from, and within the CBD
- Taxi and FHV VMT within the CBD

**Indirect Congestion Measures**
- System-wide transit ridership for transit services providing CBD-related service (monthly total ridership by mode and transit operator)
- Metropolitan Transportation Authority bus speeds within the CBD
- Capital projects funded or financed through Project revenue

**Monitored and Modeled Air Quality Measures**
- PM2.5
- Nitrogen Oxides
- Ozone: via modeling
- Greenhouse Gases

**Reporting on revenue and for audit purposes**
- Project revenue
- Project capital and operating expenses

# EXHIBIT 2



**Donald J. Trump**
@realDonaldTrump

“Congestion Pricing” is a disaster for NYC. I stopped it for years at the Federal level, but Crooked Joe railroaded it through. A massive business killer and tax on New Yorkers, and anyone going into Manhattan. I will TERMINATE Congestion Pricing in my FIRST WEEK back in Office!!! Manhattan is looking for business, not looking to kill business!

**3.12k** ReTruths **11.7k** Likes May 24, 2024, 2:41 PM

# EXHIBIT 3

← **Post**

**Nicole Malliotakis**
@NMalliotakis

A productive meeting with President @realDonaldTrump about ending the illegal immigration crisis, providing SALT relief & stopping #NYC congestion pricing and more! Looking forward to January 20!

7:01 PM · Jan 11, 2025 · **356.3K** Views

258 242 1.3K 41

# EXHIBIT 4

 The White House
@WhiteHouse

"CONGESTION PRICING IS DEAD. Manhattan, and all of New York, is SAVED. LONG LIVE THE KING!"
–President Donald J. Trump

TRUMP
LONG
LIVE
THE
KING



Case 1:25-cv-01413-LJL Document 87-5 Filed 05/02/25 Page 1 of 4

# EXHIBIT 5



THE SECRETARY OF TRANSPORTATION
WASHINGTON, DC 20590

February 19, 2025

The Honorable Kathy Hochul
Governor of New York
Albany, NY 12224

Dear Governor Hochul:

I am writing to you concerning the Federal Highway Administration's (FHWA) approval of the Central Business District (CBD) Tolling Program (CBDTP), which is a pilot project under the Value Pricing Pilot Program (VPPP). The FHWA implements VPPP on behalf of the Secretary of Transportation pursuant to a delegation of authority. On November 21, 2024, FHWA and the New York State Department of Transportation (NYSDOT) executed an agreement (November 21 Agreement) approving the CBDTP pilot project under VPPP. The VPPP is an exception to the general rule prohibiting tolling on highways. Congress approved the VPPP exception in 1991 as a pilot to test congestion reduction techniques. New York State is one of 15 States authorized to implement the program.

Pursuant to the November 21 Agreement, FHWA approved NYSDOT's implementation of CBDTP as a pilot project under VPPP. Under the pilot project, NYSDOT and its project sponsors, Triborough Bridge and Tunnel Authority (TBTA) and New York City Department of Transportation (NYCDOT), were authorized to implement a method of congestion pricing known as "cordon pricing," under which certain vehicles are charged tolls upon entry into Manhattan south of and inclusive of 60th Street. The imposition of tolls under the CBDTP pilot project by NYSDOT and its project sponsors became operational on January 5, 2025.

President Trump recently took office on January 20, 2025. I was nominated by the President to be the Secretary of Transportation, confirmed by the Senate on January 28, 2025, and sworn into office on January 29, 2025. Upon assuming my responsibilities, President Trump asked me to review FHWA's approval of CBDTP as a pilot project under VPPP. In particular, the President expressed his concerns about the extent of the tolling that was approved by the Department of Transportation on highways that have been constructed with funds under the Federal-aid Highway Program and the significant burdens on the New York City residents, businesses, and area commuters (including those from New Jersey and Connecticut) who regularly use the highway network in the CBD tolling area.

As Secretary of Transportation, I am aware of many concerns regarding the CBDTP pilot project. For example, in a January 20, 2025, letter to President Trump, which I reviewed, New Jersey Governor Murphy expressed significant concerns about the impacts that the imposition of tolls under the CBDTP pilot project is having on New Jersey commuters and residents. Also, in a January 20, 2025, letter to me, New Jersey Department of Transportation Commissioner O'Connor also expressed many concerns regarding the impacts of the CBDTP pilot project to New Jersey communities. Additionally, I have been made aware that legal challenges are pending regarding the project, which question whether the scope of the project exceeds the authority of VPPP.

I share the President's concerns about the impacts to working class Americans who now have an additional financial burden to account for in their daily lives. Users of the highway network within the CBD tolling area have already financed the construction and improvement of these highways through the payment of gas taxes and other taxes. The recent imposition of this CBDTP pilot project upon residents, businesses, and commuters left highway users without any free highway alternative on which to travel within the relevant area. Moreover, the revenues generated under this pilot program are directed toward the transit system as opposed to the highways. I do not believe that this is a fair deal.

In light of the President's concerns about the CBDTP pilot project, the legal challenges that have been made, as well as the concerns expressed by New Jersey Governor Murphy and New Jersey Commissioner O'Connor, I reviewed the tolling authority granted under VPPP to the CBDTP pilot project for compliance with Federal law. For the reasons explained below, I have concluded that the scope of this pilot project as approved exceeds the authority authorized by Congress under VPPP.

The construction of Federal-aid highways as a toll-free highway system has long been one of the most basic and fundamental tenets of the Federal-aid Highway Program. Ever since the enactment of the Federal-Aid Road Act of 1916, Congress has required that roads constructed with Federal-aid highway funds be free from tolls of all kinds, subject to limited exceptions. *See* Public Law 64-154, § 1, 39 Stat. 355 (1916). This general requirement was codified at 23 U.S.C. § 301 under Pub. L. No. 85-767, 72 Stat. 885 (1958), and remains the law today. Specifically, this statute currently reads as follows:

> Except as provided in section 129 of this title with respect to certain toll bridges and toll tunnels, all highways constructed under the provisions of this title shall be free from tolls of all kinds.

In 1991, Congress created a limited exception to the tolling prohibition for "congestion pricing pilot projects" implemented by States, local governments, or public authorities. Intermodal Surface Transportation Efficiency Act of 1991, § 1012(b), Pub. L. No. 102-240. Congress did not define "congestion pricing pilot project." Congress later amended the statute to replace "congesting pricing pilot projects" with "value pricing pilot programs," but it again did not

define this term. Transportation Equity Act of the 21st Century, § 1216(a), Pub. L. No. 105-178 (1998). The long-standing history of the anti-tolling provision requires me to narrowly construe this exception.

I have concluded that CBDTP is not an eligible "value pricing pilot program," for two reasons.

*First*, CBDTP uses a method of tolling known as "cordon pricing," under which drivers who enter Manhattan south of 60th Street are charged tolls no matter what roads they use. Unlike other forms of tolling, the CBDTP's cordon pricing program provides no toll-free option for many drivers who want or need to travel by vehicle in this major urbanized area. Congress in a separate statutory provision has authorized cordon pricing on the *Interstate System* where drivers can choose a non-Interstate route. *See* 23 U.S.C. § 129(d)(4)(B), (6)(A). But no statute contemplates cordon pricing in a situation where tolls are inescapable, and FHWA has never before approved a VPPP program that uses cordon pricing or that does not provide a toll-free option. I have concluded that Congress did not, in using the vague phrase "value pricing pilot program," authorize the unprecedented and consequential step of cordon pricing. Indeed, the Town of Hempstead and its supervisor have sued FHWA, TBTA, and NYSDOT making this argument, and I believe that FHWA faces a significant risk of loss in that litigation. *See Town of Hempstead v. DOT*, No. 24-cv-3263 (E.D.N.Y.).

*Second*, the imposition of tolls under the CBDTP pilot project appears to be driven primarily by the need to raise revenue for the Metropolitan Transit Authority (MTA) system as opposed to the need to reduce congestion. I recognize that preliminary project data published by the MTA reports a congestion reduction benefit, but the toll rate that is set under VPPP should not be driven primarily by revenue targets, particularly revenue targets that have nothing to do with the highway infrastructure. While revenue generation is a necessary outcome of any congestion pricing scheme and specifically allowable under the VPPP statute, the primary consideration of the toll rates here is to raise revenue for an MTA capital program. This revenue target for MTA projects artificially drives the establishment of toll rates to the highway users rather than the price needed to reduce congestion. As a result, highway users of the Federal-aid highway network within the priced zone are burdened with a price that is set to raise certain amounts of revenue for MTA capital projects rather than a price that is necessary to have an impact on congestion. Even if improving the transit system may eventually affect roadway congestion, there is no indication that the tolls were set in order to achieve these attenuated effects. I have concluded that VPPP does not authorize tolls that are calculated based on considerations separate from reducing congestion or advancing other road-related goals.

Federal-aid infrastructure projects must be carried out in compliance with Federal law. Due to my conclusion that FHWA lacked statutory authority to approve the cordon pricing tolling under the CBDTP pilot project, I am rescinding FHWA's approval of the CBDTP pilot project under the November 21 Agreement and terminating the Agreement. I recognize that FHWA under the prior Administration concluded, when executing the November 21 Agreement, that the CBDTP was eligible for approval under VPPP, and that my determination represents a change in position.

FHWA, however, did not explain the basis for its conclusion, and nothing in the prior approval undermines the above analysis upon which my determination is based.

I recognize, moreover, that TBTA and NYSDOT have relied on the Agreement to begin collecting tolls under the program, but I have concluded that such reliance should not prevent the termination of the November 21 Agreement. While the TBTA and NYSDOT have incurred costs related to the program, many of those costs were incurred before FHWA signed the Agreement, and FHWA is not aware of any substantial costs associated with the physical stopping of the program. To be sure, the termination of the program may deprive the transit system of funding, but any reliance on that funding stream was not reasonable given that FHWA approved only a "pilot project." Finally, any reliance interests cannot overcome the conclusion that FHWA's approval was not authorized by law.

The FHWA will contact NYSDOT and its project sponsors to discuss the orderly cessation of toll operations under this terminated pilot project.

Sincerely,

Sean P. Duffy

CC:   Marie Therese Dominquez, Esq. NYSDOT Commissioner
        Catherine T. Sheridan, President of TBTA
        Ydanis Rodriguez, NYCDOT Commissioner

# EXHIBIT 6



U.S. Department
of Transportation
Federal Highway
Administration

1200 New Jersey Ave., SE
Washington, DC 20590

February 20, 2025

Marie Therese Dominguez, Commissioner
New York State Department of Transportation
50 Wolf Road
Albany, NY 12232

Ydanis Rodriguez, Commissioner
New York City Department of Transportation
55 Water Street, 9th Floor
New York, NY 10041

Catherine T. Sheridan, President
MTA Bridges and Tunnels
2 Broadway, 23rd Floor
New York, NY 10004

Dear Commissioner Dominguez, Commissioner Rodriguez, and President Sheridan:

I am writing pursuant to Secretary Duffy's February 19, 2025, letter terminating the November 21, 2024 Value Pricing Pilot Program (VPPP) Agreement under which the Federal Highway Administration (FHWA) has approved the implementation of tolls as part of the New York's Central Business District Tolling Program (CBDTP). The Secretary's letter stated that the FHWA will contact the New York State Department of Transportation (NYSDOT) and its project sponsors, Triborough Bridge and Tunnel Authority (TBTA) and New York City Department of Transportation (NYCDOT), to discuss the orderly cessation of toll operations under the CBDTP.

In order to provide NYSDOT and its project sponsors time to terminate operations of this pilot project in an orderly manner, this rescission of approval and termination of the November 21, 2024 Agreement will be effective on March 21, 2025. Accordingly, NYSDOT and its project sponsors must cease the collection of tolls on Federal-aid highways in the CBDTP area by March 21, 2025. Please work with Rick Marquis, the FHWA's New York Division Administrator, to provide the necessary details and updates regarding the cessation of toll operations.

Sincerely,

Gloria M. Shepherd

Gloria M. Shepherd
Executive Director

# EXHIBIT 7



Post
Secretary Sean Duffy
@SecDuffy
.@GovKathyHochul — the federal government and @POTUS are putting New York on notice.
Your refusal to end cordon pricing and your open disrespect towards the federal government is unacceptable.
Just as your high tolls and no free road option are a slap in the face to hard working Americans, your refusal to approve two vital pipelines that will lower fuel costs by 50% are against the public's best interests.
Your unlawful pricing scheme charges working-class citizens to use roads their federal tax dollars already paid to build.
We will provide New York with a 30-day extension as discussions continue.
Know that the billions of dollars the federal government sends to New York are not a blank check. Continued noncompliance will not be taken lightly.
6:04 PM · Mar 20, 2025 · 64.3K Views
211
894
3K
61
Read 211 replies

Case 1:25-cv-01413-LJL Document 125-8 Filed 05/20/25 Page 1 of 2

# EXHIBIT 8



U.S. Department
of Transportation
Federal Highway
Administration

1200 New Jersey Ave., SE
Washington, DC 20590

March 20, 2025

Marie Therese Dominguez, Commissioner
New York State Department of Transportation
50 Wolf Road
Albany, NY 12232

Ydanis Rodriguez, Commissioner
New York City Department of Transportation
55 Water Street, 9th Floor
New York, NY 10041

Catherine T. Sheridan, President
MTA Bridges and Tunnels
2 Broadway, 23rd Floor
New York, NY 10004

Dear Commissioner Dominguez, Commissioner Rodriguez, and President Sheridan:

I am writing pursuant to my February 20, 2025 letter, providing you until March 21, 2025, to cease tolling operations that were initiated through the November 21, 2024, Value Pricing Pilot Program (VPPP) Agreement. The Secretary has directed that I extend the period of time to comply by 30 days. Accordingly, toll operations must cease by April 20, 2025.

Please work with Rick Marquis, FHWA's New York Division Administrator, to provide the necessary details and updates regarding the cessation of toll operations.

Sincerely,

Gloria M. Shepherd
Executive Director

# EXHIBIT 9



Post

USDOT Rapid Response
@USDOTRapid

This is a complete lie by the elitist New York liberal media, whose rich buddies love the idea of pricing poor people out of the city.

The truth is simple agreements on judicial timelines have no bearing on the underlying merits of our case or our position.

Here are the facts:

1. @USDOT's position remains that New York's elitest cordon pricing scheme is illegal, a form of class warfare that targets working Americans, and unfair to the driving public whose tax dollars have already paid for these roads.

2. USDOT's deadline for stopping toll collection has not changed. Make no mistake – the Trump Administration and USDOT will not hesitate to use every tool at our disposal in response to non-compliance later this month.

3. USDOT will continue to fight tooth and nail against this unlawful tax on hardworking Americans.

Don't buy the MTA's spin, who are desperate to manufacture fake news to distract from the fact that their riders are getting assaulted regularly.

> **CBS New York** @CBSNewYork · 18h
> #Breaking: The MTA and the Trump administration have reached an agreement that will keep NYC congestion pricing in place through October. cbsloc.al/3R6u3Gg

5:23 PM · Apr 8, 2025 · **7,818** Views

6 · 26 · 26 · 5

# EXHIBIT 10



THE SECRETARY OF TRANSPORTATION
WASHINGTON, DC 20590

April 21, 2025

The Honorable Kathy Hochul
Governor of New York
Albany, NY 12224

Dear Governor Hochul:

I write to warn you that the State of New York risks serious consequences if it continues to fail to comply with Federal law, and to direct New York to show cause why the Federal Highway Administration ("FHWA") should not impose appropriate measures to ensure compliance.

Under 23 U.S.C. § 301, all roads constructed using Federal-aid highway funds "shall be free from tolls of any kind," unless an exception applies. In November 2024, the Biden Administration signed a Value Pricing Pilot Program ("VPPP") agreement that authorized an exception for New York's Central Business District Tolling Program ("CBDTP"). On February 19, 2025, I terminated that agreement. New York therefore is not legally permitted to collect tolls on roads within the CBDTP zone that were constructed using Federal-aid highway funds.

To allow for an orderly shutdown, on February 20, 2025, FHWA notified New York that the termination would take effect on March 21, 2025. FHWA made clear that New York "must cease the collection of tolls" by March 21, 2025, and directed New York to "provide the necessary details and updates regarding the cessation of toll operations." In a spirit of goodwill based on ongoing discussions with New York, FHWA later extended the deadline to April 20, 2025, and again requested that New York provide information about the cessation of tolling.

New York has not responded to FHWA's requests for information. You have also publicly declared that New York will continue to collect tolls in open defiance of Federal law, and the April 20, 2025, deadline has now passed without New York taking action to comply.

**Accordingly, I hereby direct the New York State Department of Transportation ("NYSDOT") to show cause, no later than May 21, 2025, why FHWA should not take appropriate steps under 23 CFR § 1.36 to remedy New York's noncompliance with 23 U.S.C. § 301 in connection with the CBDTP. By that date, NYSDOT shall submit a response to FHWA's New York Division Administrator that either: (1) certifies that the collection of tolls under the CBDTP has ceased; or (2) demonstrates that the continued collection of tolls does not violate 23 U.S.C. § 301. The project's other sponsors—the Triborough Bridge and Tunnel Authority ("TBTA") and the New York City Department of Transportation ("NYCDOT")—may also submit responses.**

If, after evaluating NYSDOT's response and any responses received from TBTA and NYCDOT (or if NYSDOT fails to submit a timely response), FHWA determines that New York is out of compliance with 23 U.S.C. § 301, FHWA will implement appropriate initial compliance measures beginning on or after May 28, 2025, until compliance is achieved, to include:

- No further advance construction ("AC") authorizations for projects within the borough of Manhattan, except for projects determined by FHWA to be essential for safety ("Safety Projects").[1]
- No further National Environmental Policy Act ("NEPA") approvals for projects within the borough of Manhattan, except for Safety Projects.
- No further approvals of Statewide Transportation Improvement Program ("STIP") amendments concerning New York Metropolitan Transportation Council ("NYMTC") TIP modifications.

If New York's noncompliance continues, FHWA may consider imposing additional measures such as:

- No further obligations of FHWA funds (both formula and competitive) for projects within New York City, except for Safety Projects.
- No further AC authorizations for projects within New York City, except for Safety Projects.
- No further NEPA approvals for projects within New York City, except for Safety Projects.

The corrective measures noted above may be expanded to other geographic areas within the State of New York, if any noncompliance continues.

The response(s) to the directive to show cause should include any arguments related to my determination, explained in the February 19, 2025, letter, that FHWA lacked the statutory authority to approve the New York City cordon pricing project as a "value pricing pilot project."

The response(s) should also address the policy concerns expressed in my February 19, 2025, letter, which were an independent basis for my decision to terminate the VPPP agreement. New York's cordon pricing program imposes a disproportionate financial hardship on low and medium-income hardworking American drivers for the benefit of high-income drivers. It is not consistent with the Federal-aid Highway Program, which was established and funded as a "user-pay" system through the gas tax. Highway users whose taxes already paid for the Federal-aid highways in the cordon area are now being forced to pay again while receiving no new highway benefits in return because there are no toll-free alternative routes available to access the cordoned-off area of Manhattan. This type of cordon pricing is unprecedented in the United States and is inconsistent with any previous pilot project approved under the VPPP. Anyone needing to drive into the area is either forced to pay a cost-prohibitive toll or required to use the

[1] Safety Projects include projects under the National Highway Performance Program, Bridge Formula Program, and Highway Safety Improvement Program.

substandard transit system run by the Metropolitan Transit Authority ("MTA"). This is a breach of the promise made to the hardworking American taxpayers whose gas taxes have funded the existing Federal-aid highway system in this area.

I am also concerned that the tolls collected from highway users under this pilot project have been set and will be used primarily for funding transit capital projects.[2] It is a fundamental principle of the Federal-aid Highway Program that toll revenues should be used to pay for the infrastructure on which the toll is imposed, with any excess reinvested back into the broader highway network. Although the VPPP statute permits revenues from pilot programs to be used for transit projects eligible for funding under title 23 of the U.S. Code, it is unconscionable as a matter of policy that highway users are being forced to bail out the MTA transit system. Moreover, setting tolls with the primary goal of raising revenue for the MTA conflicts with the purpose of the VPPP to initiate pilot projects designed to relieve congestion, not fund transit capital projects.

Rather than establishing good transportation policy under this pilot project, the Biden Administration sought to advance its preference for funding transit systems over highway improvements. Under this Administration, FHWA policy will no longer support this type of project or policy. While I am Secretary, FHWA will only prioritize tolling projects under the VPPP that provide for toll-free alternative routes and set tolls with the aims of reducing congestion and/or raising revenue primarily for highway infrastructure, rather than projects such as the CBDTP, which forces hardworking Americans who rely upon the already-paid-for existing Federal-aid highway network to pay cost-prohibitive tolls designed to fund MTA's capital projects.

Finally, I note that MTA, TBTA, NYSDOT, and NYCDOT alleged in the Complaints they filed in the U.S. District Court for the Southern District of New York that the VPPP agreement is a "cooperative agreement" that may only be terminated pursuant to 2 CFR Part 200. To the extent those regulations apply, they support my termination of the VPPP agreement. Under 2 CFR § 200.340(a)(4), a cooperative agreement may be terminated by a federal agency if it "no longer effectuates the program goals or agency priorities." As explained above, and in my February 19, 2025, letter, the CBDTP does not effectuate the goals or priorities of the U.S. Department of Transportation.

Although MTA, TBTA, NYSDOT, and NYCDOT further allege that termination was not permissible under this regulation because the VPPP agreement does not contain any provision that would permit FHWA to terminate the agreement unilaterally, that suggestion is equally unavailing. Indeed, the VPPP agreement expressly incorporates all Federal laws and requirements applicable to the project, and the terms and conditions pertinent to FHWA cooperative agreements unambiguously provide that such agreements may be terminated under

---

[2] New York's implementing legislation for the CBDTP provides that the level of tolls must be set to achieve minimum funding requirements for MTA capital projects. *See* N.Y. Veh. & Traf. Law § 1704-a(1).

2 CFR § 200.340.[3] Moreover, it simply cannot be that this "pilot program" must be permitted to go on *forever*, for as long as New York wants. Perpetual operation of a value pricing pilot is not mandated by law, and the right to termination is inherent in the VPPP agreement. Furthermore, the allegations by MTA, TBTA, NYSDOT, and NYCDOT that they were not given proper "notice" and an "opportunity to be heard" with respect to the termination, pursuant to 2 CFR § 200.341(a), is unavailing in light of this letter, which once again provides notice of the termination and, for now the third time, provides them with a fair opportunity to contest that termination before FHWA begins imposing compliance measures. To the extent the regulations at 2 CFR Part 200 apply, this letter serves as the written notice of termination under 2 CFR § 200.341(a), and the directive to show cause outlined above serves as NYSDOT's, TBTA's, and NYCDOT's opportunity to object and provide information challenging the termination under 2 CFR § 200.342.

As always, I remain available for further communication with you on these issues, and I look forward to receiving New York's response.

Sincerely,

Sean P. Duffy

CC: Marie Therese Dominquez, Esq. NYSDOT Commissioner
Catherine T. Sheridan, President of TBTA
Ydanis Rodriguez, NYCDOT Commissioner

---

[3] *See* Federal Highway Administration, *Contractors and Recipients General Terms and Conditions for Assistance Awards* § 17, *available at* https://www.fhwa.dot.gov/cfo/contractor_recip/gtandc_after2023aug07.cfm.