UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ X
METROPOLITAN TRANSPORTATION
AUTHORITY, *et al.*,

                       *Plaintiffs*,

NEW YORK STATE DEPARTMENT OF
TRANSPORTATION, *et al.*,

                       *Intervenor-plaintiffs*,

                            v.

SEAN DUFFY, in his official capacity as Secretary
of the United States Department of
Transportation, *et al.*,

                       *Defendants*.
------------------------------------------------------------------------ X

No. 1:25-cv-1413-LJL


# REPLY MEMORANDUM OF LAW
# IN FURTHER SUPPORT OF INTERVENOR-PLAINTIFF
# NEW YORK STATE DEPARTMENT OF TRANSPORTATION'S
# <u>MOTION FOR A PRELIMINARY INJUNCTION</u>

                                              LETITIA JAMES
                                              Attorney General of the State of New York
                                              New York State Attorney General's Office
                                              28 Liberty Street
                                              New York, New York 10005
                                              (212) 416-8271

Andrew G. Frank,
  Assistant Attorney General
*Of Counsel*

May 22, 2025

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................... 1

ARGUMENT .............................................................................................................................. 2

I.  THE COURT HAS JURISDICTION TO DECIDE STATE
    DOT'S MOTION FOR A PRELIMINARY INJUNCTION ................................. 2

II. STATE DOT IS LIKELY TO SUCCEED ON THE MERITS ............................ 7

III. THE ACTIONS THREATENED BY SECRETARY DUFFY
     WILL CAUSE IRREPARABLE HARM ............................................................. 9

IV. THE PUBLIC INTEREST AND EQUITIES FAVOR A
    PRELIMINARY INJUNCTION ...................................................................... 13

CONCLUSION ................................................................................................................ 14

## **TABLE OF AUTHORITIES**

### FEDERAL CASES

Pages

*Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel., Barez*,
   458 U.S. 592 (1982) .................................................................................................. 11

*American Airways Charters, Inc. v. Regan*,
   746 F.2d 865 (D.C. Cir. 1984) ..................................................................................... 8

*City of Chicago v. Sessions*,
   264 F. Supp. 3d 933 (N.D. Ill. 2017) .......................................................................... 12

*City of Philadelphia v. Sessions*,
   280 F. Supp. 3d 579 (E.D. Pa. 2017) .......................................................................... 12

*City of Philadelphia v. Sessions*,
   309 F. Supp. 3d 289 (E.D. Pa. 2018), *aff'd in part,
   vacated in part on other grounds*, 916 F.3d 276 (3d Cir. 2019) ....................... 12

*Colorado v. U.S. Dep't of Justice*,
   455 F. Supp. 3d 1034 (D. Colo. 2020) ....................................................................... 12

*Cnty. of Santa Clara v. Trump*,
   250 F. Supp. 3d 497 (N.D. Cal. 2017) ........................................................................ 12

*Innovation Law Lab v. Nielsen*,
   310 F. Supp. 3d 1150 (D. Or. 2018) ............................................................................. 5

*Kansas v. United States*,
   249 F.3d 1213 (10th Cir. 2001) .................................................................................. 11

*Kentucky v. Biden*,
   23 F.4th 585 (6th Cir. 2022) ....................................................................................... 11

*Landon v. Plasencia*,
   459 U.S. 21 (1982) ....................................................................................................... 8

*Morales v. Trans World Airlines, Inc.*,
   504 U.S. 374 (1992) ................................................................................................... 12

<u>Pages</u>

*Nebraska, Dep't of Roads v. Tiemann*,
    510 F.2d 446 (8th Cir. 1975) .................................................................................. 8

*North America's Building Trades Unions v. Department of Defense*,
    No. CV 25-1070 (RC), 2025 WL 1423610 (D.D.C. May 16, 2025) ..................... 4

*Ohio v. EPA*,
    603 U.S. 279 (2024) ............................................................................................. 11

*South Dakota v. Adams*,
    587 F.2d 915 (8th Cir. 1978) .................................................................................. 8

*South Dakota v. Dole*,
    483 U.S. 203 (1987) ............................................................................................... 8

*Tennessee v. Dep't of Educ.*,
    104 F.4th 577 (6th Cir. 2024) .............................................................................. 11

*Ward v. Brown*,
    22 F.3d 516 (2d Cir. 1994) .................................................................................... 5

## FEDERAL STATUTES

5 U.S.C. § 705 ................................................................................................................ 14

23 U.S.C. § 131(b) ........................................................................................................... 8

23 U.S.C. § 158 ................................................................................................................ 8

## FEDERAL REGULATIONS

23 C.F.R. § 1.36 ........................................................................................................... 7, 8

## FEDERAL RULES

Fed. R. Civ. P. 65(a) ...................................................................................................... 14

## PRELIMINARY STATEMENT

US DOT's opposition to State DOT's preliminary injunction motion suffers from an irreconcilable contradiction.[1] On April 21, 2025, US DOT Secretary Duffy sent Governor Kathy Hochul, with copies to State DOT, Triborough and the New York City Department of Transportation ("City DOT"), a letter (the "Duffy April Letter") stating that US DOT would impose retaliatory measures, namely, the withholding of important approvals and funding, starting as soon as May 28, 2025, if either New York's congestion pricing program had not stopped by then or if State DOT had not demonstrated that congestion pricing was lawful. State DOT, MTA, Triborough and City DOT accordingly filed their preliminary injunction motions.

Now, in opposition to those motions, US DOT asserts that there is no ripe dispute because it has taken no final action, and that State DOT has demonstrated no irreparable harm because US DOT will not implement any of the retaliatory measures before May 28, six days from the date of this brief. But the Duffy April Letter refutes these contentions: it states that "FHWA *will* implement appropriate initial compliance measures beginning on or after May 28, 2025, until compliance is achieved" (emphasis added), and then identifies those specific measures. A motion to block retaliatory action scheduled for six days in the future is ripe, and the harms from such imminent action meet the standard for irreparable injury.

---

[1] Unless otherwise indicated, this brief uses the same defined terms as State DOT's opening preliminary injunction brief.

For these reasons, and others set out in MTA's reply brief on its preliminary injunction motion, the Court has jurisdiction and should issue a preliminary injunction because State DOT has shown that it is likely to be successful on the merits of its challenge to the retaliatory measures, that it will suffer irreparable harm if a preliminary injunction is not issued pending the Court's final determination on the merits, and that the public interest and equities favor the grant of that injunction.

## ARGUMENT

### I

### THE COURT HAS JURISDICTION TO DECIDE STATE DOT'S MOTION FOR A PRELIMINARY INJUNCTION.

US DOT argues that State DOT's motion for a preliminary injunction prohibiting US DOT from taking the retaliatory measures set out in Secretary Duffy's April 21 letter is not justiciable for three reasons: (1) there has purportedly been no final agency action; (2) State DOT's claims are not ripe for review; and (3) the Tucker Act gives the Court of Federal Claims exclusive jurisdiction over those claims. Defendants' Combined Opposition to Plaintiffs' Motions for a Preliminary Injunction ("US Mem.") at 13-28 (May 16, 2025) [ECF No. 118]. The first two arguments fail because Secretary Duffy's actions make clear that his February 19 action to terminate the VPPP agreement was his final decision, and his April 21 letter makes clear that the FHWA will impose the measures described in the letter. US DOT's ripeness argument also fails for the reasons stated in MTA, Triborough, and City DOT's reply

brief,[2] as does US DOT's Tucker Act argument. Reply Mem. of Law in Further Support of Plaintiffs the Metropolitan Transp. Auth., *et al.* Motion for a Preliminary Injunction ("MTA Reply Mem.") at 6-10 (May 22, 2025) [ECF No. 124].

US DOT's first two contentions on finality and ripeness both boil down to their repeated argument that Secretary Duffy's April 21 letter gave State DOT and the other plaintiffs an opportunity to respond to both the February 19 termination of the VPPP Agreement *and* the retaliatory measures described in the letter. *See, e.g.,* US Mem. at 16 (the letter allowed plaintiffs "to contest the termination *and* the proposed compliance measures"), 24 ("the Secretary has expressly invited Plaintiffs to contest the notice of termination *and* any potential compliance measures") (emphases added to both quotations). Although the letter claimed to give plaintiffs an opportunity to address the Secretary's decision regarding termination, it did *not* "invite[] Plaintiffs to engage with the agency" regarding "proposed compliance" nor did it "merely propose[] some broad categories of potential compliance measures," as US DOT contends. *Id.* at 18, 51. Instead, it stated in no uncertain terms that "FHWA *will* implement appropriate initial compliance measures beginning on or after May 28, 2025, until compliance is achieved, to include" specific measures that it went on to describe. Duffy April Letter at 2 (emphasis added) [ECF No. 87-10].

Nor is it relevant that the Duffy April Letter purported to give State DOT and other plaintiffs an opportunity to demonstrate the legality of congestion pricing. The

---

[2] For the purpose of brevity, State DOT will refer to this reply brief and the arguments it makes as the reply brief submitted by and arguments made by MTA.

Secretary did not represent in that letter, or in any other statement, that the termination decision has been rescinded or reopened. To the contrary, the April letter stated emphatically that "[o]n February 19, 2025, I terminated [the VPPP] agreement," Duffy April Letter at 1. *See North America's Building Trades Unions v. Department of Defense*, No. CV 25-1070 (RC), 2025 WL 1423610, at *9 (D.D.C. May 16, 2025) (agency action is final where relevant agency statements "are plainly not tentative or preliminary").

In addition, the April letter directed State DOT to show why the February 19 termination of the VPPP agreement was invalid even though the Secretary already had that information because plaintiffs had provided it in the complaints they filed in this action. *See* MTA Complaint ¶¶ 122-183 (Feb.19, 2025) [ECF No. 1]; State DOT Complaint-in-Intervention ¶¶ 105-150 (Mar. 27, 2025) [ECF No. 37]; Consolidated First Amended Complaint ¶¶ 207-280 (Apr. 18, 2025) [ECF No. 62]. If the Secretary had truly been interested in reconsidering his termination of the VPPP Agreement, he could have done so based on plaintiffs' complaints. Instead, his April 21 letter created a sham opportunity for plaintiffs to only state *again* why the purported termination was invalid.[3]

Indeed, even though the Secretary had the benefit of plaintiffs' arguments beginning on February 19, he made threats on March 20 and April 8 to take action against the State of New York and plaintiffs, *see* State Mem. at 7, and then made it clear in his April 21 letter that FHWA would undertake a series of "compliance

---

[3] State DOT yesterday responded to the Secretary's April 21 letter by referring FHWA to the complaints and motions for a preliminary injunction filed in this action.

4

measures" as quickly as one week after plaintiffs reiterated why the purported termination was invalid—measures that would, as State DOT has demonstrated, State Mem. at 15-21, cause irreparable harm to New Yorkers. All of the Secretary's conduct is consistent with President Trump's repeated statements that he would terminate New York's congestion pricing program. *See, e.g., Innovation Law Lab v. Nielsen*, 310 F. Supp. 3d 1150, 1161 (D. Or. 2018) (President's statement can make clear that further administrative argument is futile).

The remainder of US DOT's justiciability arguments likewise have no merit. For example, US DOT argues in connection with finality that, "on remedy, if the Court were to deem the February 19 Letter a final agency action that is unlawful, as Plaintiffs urge, the only appropriate remedy would be to set aside and remand for the Secretary and FHWA to reconsider that action," US Mem. at 19, and reiterates that argument as a separate point, *id.* at 58-59. That contention confuses the final relief that State DOT seeks here—an order setting aside the February 19 purported termination of the VPPP Agreement—with State DOT's preliminary injunction motion, which seeks to prohibit US DOT from taking retaliatory measures based on the purported termination while the Court decides whether the termination was unlawful. Thus, *Ward v. Brown*, 22 F.3d 516, 522 (2d Cir. 1994), on which US DOT relies, US Mem. at 19, has no relevance here because it addresses the final relief a court should award in a challenge to agency action. Moreover, in the event that the Court determines that the purported termination was unlawful, the appropriate final relief will be invalidation of the purported termination, not a remand to US DOT.

Similarly, US DOT misses the mark in arguing that "[h]ad [plaintiffs] truly believed that the February 19 Letter constituted final agency action, they would have presumably sought injunctive relief at that time rather than waiting until April." US Mem. at 19. Plaintiffs and intervenor-plaintiff State DOT *did* seek an order setting aside the February 19 letter by timely filing complaints shortly thereafter seeking that relief. MTA Complaint at 50 [ECF No. 1]; State DOT Complaint-in-Intervention at 34 [ECF No. 37]; Consolidated First Amended Complaint at 109 [ECF No. 62]. There was no need to move for preliminary injunctive relief until Secretary Duffy stated in his April 21 letter that FHWA would take enforcement action based on the February 19 purported termination. And to be sure, State DOT and the other plaintiffs were fully prepared to seek a preliminary injunction if US DOT had taken enforcement action based on either the March 21 or April 20 deadline for stopping congestion pricing. *See* Ltr. from Roberta Kaplan to the Hon. Lewis J. Liman at 3-4 (Apr. 4, 2025) [ECF No. 49].

Finally, US DOT contends that plaintiffs "are asking this Court to review possible compliance measures that the FHWA may take" and that "[i]n essence, the Court would have to step in and superintend the compliance process." US Mem. at 24. State DOT and the other plaintiffs have not asked the Court to superintend a process. Instead, they have demonstrated that the Court should prohibit US DOT from taking *any* of the measures in the April 21 letter to enforce the Secretary's purported termination of the VPPP Agreement until the Court rules on the validity of that termination.

6

## II

## STATE DOT IS LIKELY TO SUCCEED ON THE MERITS.

As State DOT has shown, the retaliatory measures described in the April 21 letter, if allowed to take effect, would violate Article II of the Constitution because they would result in withholding funds appropriated by Congress, and neither the Federal-Aid Highway Act nor the Transit Act give the Secretary or FHWA authority to do so. State Mem. at 10-15. US DOT responds that that claim is not justiciable, US Mem. at 20, but as shown above (at 2-6), that is incorrect.

The Secretary contended in his April letter that 23 C.F.R. § 1.36 gives him the authority to take those enforcement measures. Duffy April Letter at 1. The regulation does not supply that authority for the reasons stated by MTA in its opening and reply briefs. *See* Mem. of Law in Support of Plaintiffs the Metropolitan Transp. Auth., *et al.* Motion for a Preliminary Injunction at 43-45 (May 5, 2025) [ECF No. 83]; MTA Reply Mem. at 23-25. In addition, as State DOT has explained, Article II requires US DOT to have statutory authority, not regulatory authority, to withhold funds that Congress has appropriated. State Mem. at 14.

US DOT argues in response that "Plaintiffs have not articulated why the Secretary's proposed actions would fall outside the scope of [23 C.F.R. § 1.36] whereas other actions would fall within the scope." US Mem. at 54. Those enforcement measures fall outside of the scope of the regulation for the reasons stated in the brief submitted by MTA. MTA Reply Mem. at 24-25. In addition, interpreting that regulation to authorize US DOT to take actions that would withhold appropriated funds from State DOT would run afoul of Article II because only Congress may grant

US DOT that authority. Regulations, like statutes, should be construed to avoid serious doubt of their constitutionality. *Landon v. Plasencia*, 459 U.S. 21, 33 (1982) (referencing decision interpreting regulation "to avoid constitutional problems"); *American Airways Charters, Inc. v. Regan*, 746 F.2d 865, 874 (D.C. Cir. 1984) (construing regulations to "steer clear" of uncertainty regarding their constitutionality).

US DOT relies on *Nebraska, Dep't of Roads v. Tiemann*, 510 F.2d 446, 448 (8th Cir. 1975), to argue that § 1.36 gives it authority to withhold funds, US Mem. at 55-56, but that decision did not consider whether a regulation that authorizes the impoundment of funds in the absence of statutory authority runs afoul of Article II. US DOT also cites *South Dakota v. Dole*, 483 U.S. 203, 205 (1987), US Mem. at 56, and *South Dakota v. Adams*, 587 F.2d 915, 919 (8th Cir. 1978), US Mem. at 51, but both decisions rely on *statutory* authority to withhold funds. *Dole* upheld Congress's authority, through 23 U.S.C. § 158, to condition the states' receipt of a portion of federal highway funds on the adoption of a minimum drinking age of 21, 483 U.S. at 205, and *Adams* ruled that 23 U.S.C. § 131(b), which authorizes US DOT to withhold funds from States that do not comply with outdoor advertising requirements, gave US DOT implied authority to temporarily withhold funds pending a final determination, 587 F.2d at 919.

As a result, State DOT is likely to succeed on the merits of its argument that US DOT may not withhold appropriated funds from State DOT because it does not have Congressional authority to do so. State DOT also adopts the arguments made

8

by MTA regarding the likelihood of success on the merits. *See* MTA Reply Mem. at 11-25.

### III

### THE ACTIONS THREATENED BY SECRETARY DUFFY WILL CAUSE IRREPARABLE HARM.

State DOT has established that the measures described in Secretary Duffy's April letter will cause irreparable harm, including increased congestion, air pollution, and risk of traffic accidents; non-compensable economic losses; lost jobs and opportunities for economic development; increased costs to State DOT; and significant administrative burdens on State DOT. State Mem. at 15-21. In response, US DOT mainly reiterates the arguments it made regarding finality and ripeness. It argues that "Plaintiffs' claims of irreparable harm ring hollow given their delay in filing for a preliminary injunction," US Mem at 29, but, as explained above (at 5-6), State DOT's preliminary injunction motion seeks to enjoin implementation of the retaliatory measures set out in the Secretary Duffy's April 21 letter. Plaintiffs and intervenor-plaintiff State DOT informed the Court that they intended to seek a preliminary injunction, Ltr. from Roberta Kaplan to the Hon. Lewis J. Liman at 2 (Apr. 23, 2025) [ECF No. 64], two days after the April 21 letter and then filed their motions within 15 days after the letter, so there was no delay here. Furthermore, when plaintiffs notified the Court prior to the April 21 letter that they anticipated moving for preliminary relief, US DOT responded that "expedited injunctive relief" was "premature." Ltr. from Roberta Kaplan to the Hon. Lewis J. Liman at 5 (Apr. 4, 2025) [ECF No. 49].

US DOT also argues that any harms from the measures in the April 21 letter are too speculative because "FHWA has not reached a final decision about any appropriate compliance measures." US Mem. at 30. As also discussed above (at 1, 3-4), the April 21 letter states that FHWA "*will*" implement those measures, Duffy April Letter at 2, unless the Secretary changes his mind about his February 19 decision. Moreover, the Secretary's actions over the last several months demonstrate that that decision was his final decision. Thus, for the same reasons that this is a ripe dispute over a final agency action, the harms here are sufficiently concrete and immediate—to be implemented as soon as six days after the filing of this brief—to establish irreparable harm.

US DOT also contends that the retaliatory measures identified in the April letter were not "specific," US DOT Mem. at 31, but those measures, which included not providing NEPA approvals and not obligating funds, Duffy April Letter at 2, were quite specific, and State DOT has identified harm arising from specific projects, such as the I-81 and Cross-Bronx Expressway improvements, that would be subject to those measures. *See* Declaration of Janet Ho ("Ho Decl.") ¶¶ 36-53 (May 6, 2025) [ECF No. 90]. US DOT does not discuss these harms, let alone dispute that these projects fall within the categories of retaliatory action set out in the April 21 letter.

US DOT also contends that State DOT invokes compliance costs as a harm without identifying any such costs. US Mem. at 32. But State DOT did identify those costs, namely, the administrative costs of adjusting existing plans for implementing projects if they are delayed or cancelled. Ho Decl. ¶¶ 63-64. State DOT has not yet

10

incurred those costs because FHWA has not implemented its enforcement measures but, consistent with the purpose of preliminary injunctions to preserve the status quo, State DOT filed this motion to *avoid* incurring those costs starting six days from the date of this brief.

US DOT also claims that the retaliatory actions identified in the April letter do not create irreparable harm to any of New York's sovereign interests, US Mem. at 31-32, but that claim overlooks New York's sovereign interest in implementing its state laws. *See Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel., Barez*, 458 U.S. 592, 601 (1982) (a state has a sovereign interest in "creat[ing] and enforc[ing] a legal code"). And because the impact of an invasion of state sovereignty "cannot be economically quantified," it constitutes irreparable harm. *Tennessee v. Dep't of Educ.*, 104 F.4th 577, 613 (6th Cir. 2024) (quoting *Kentucky v. Biden*, 23 F.4th 585, 611 n.19 (6th Cir. 2022)). Thus, states suffer an "irreparable" injury when forced to abandon their "sovereign interests and public policies." *Kansas v. United States*, 249 F.3d 1213, 1227 (10th Cir. 2001); *see also Ohio v. Environmental Protection Agency*, 603 U.S. 279, 291 (2024) (impairment of States' "sovereign interests in regulating their own industries and citizens" is irreparable harm).

Without an injunction, State DOT faces a choice between two stark alternatives: foregoing federal funding for important transportation projects or relinquishing its sovereign right to implement the state statute that authorizes its congestion pricing program, the Traffic Mobility Act, which reflects the considered judgment of the political branches of New York's government. That "Hobson's choice"

irreparably harms New York's sovereign interests. *See City of Chicago v. Sessions*, 264 F. Supp. 3d 933, 950 (N.D. Ill. 2017) (quoting *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 381 (1992)). *See also Colorado v. U.S. Dep't of Justice*, 455 F. Supp. 3d 1034, 1061 (D. Colo. 2020) (irreparable harm when city faced either (a) imposition of conditions violating separation of powers and the Spending Clause or (b) foregoing federal grant); *City of Philadelphia v. Sessions*, 309 F. Supp. 3d 289, 340, 343 (E.D. Pa. 2018) (city will be irreparably harmed for purposes of permanent injunction whether it "accept[s] the grant and changing its policies; accept[s] the grant without changing its policies at risk of sanctions; or forego[es] the funds), *aff'd in part, vacated in part on other grounds*, 916 F.3d 276 (3d Cir. 2019); *City of Philadelphia v. Sessions*, 280 F. Supp. 3d 579, 657 (E.D. Pa. 2017) (being faced with a choice "between, on the one hand, complying with a law [one] credibly believes is unconstitutional, and on the other hand, foregoing funds [one] plans to use for life-saving projects" establishes irreparable harm for purposes of a preliminary injunction); *Cnty. of Santa Clara v. Trump*, 250 F. Supp. 3d 497, 537-38 (N.D. Cal. 2017) (coercion to change policies by imposing overwhelming penalties without due process constituted irreparable harm).

US DOT argues that implementation of congestion pricing was always subject to federal approval. US Mem. at 35. But this misses the point: the harm arises from the FHWA's *unlawful* termination of that approval and withdrawal of funding for projects unrelated to congestion pricing based on the *unlawful* termination of congestion pricing.

State DOT also adopts the arguments made by MTA in response to US DOT's contentions regarding plaintiffs' purported delay in seeking a preliminary injunction, the purportedly speculative nature of plaintiffs' irreparable harm, the harm to plaintiffs' sovereign interests, and compliance costs. *See* MTA Reply Mem. at 25-28.

## IV

### THE PUBLIC INTEREST AND EQUITIES FAVOR A PRELIMINARY INJUNCTION.

In its opening brief, State DOT demonstrated that the public interest and balance of the equities supported the requested preliminary relief for several reasons: State DOT's high likelihood of success on the merits and showing of irreparable harm show that an injunction would serve the public interest; the threatened US DOT actions will interfere with public safety, the economy and jobs; unlawful action by US DOT is contrary to the public interest; and State DOT's and the public's interest in continuing with important projects requiring federal funding and approvals outweighs any interest US DOT might have in stopping such funding or approvals. State Mem. at 22-24.

In response, US DOT repeats contentions it made in connection with finality, ripeness, and irreparable harm. It argues that a preliminary injunction would "disrupt[] this ongoing agency decisionmaking process," US Mem. at 57, but, as explained above (at 3-4), there is no such ongoing process because Secretary Duffy has made clear that the purported termination of the VPPP Agreement is final and that FHWA will undertake the measures described in his April 21 letter. US DOT also argues and that a preliminary injunction would "effectively create a preclearance

13

regime for potential compliance measures" *id.*, but, as also shown above (at 6), plaintiffs do not ask the Court to oversee enforcement measures; instead, they ask the court to prohibit any enforcement measures pending a final decision.

US DOT also responds that the continuation of congestion pricing will be burdensome for people who drive into the central business district and will increase congestion in the Bronx. US Mem. at 57, 58. As shown by MTA, congestion pricing actually provides substantial benefits to people who drive into the central business district—including low-and medium-income commuters—including by facilitating mass transit, reducing congestion and providing a discount for frequent low-income drivers. MTA Reply Mem. at 13. And as regards the Bronx, mitigation measures for traffic diversions in the Bronx were identified in the environmental review process and found to be sufficient by this Court, and involve over $71 million in investments to improve air quality in the Bronx. *Id.* at 30.

## CONCLUSION

For the foregoing reasons and those set out in State DOT's opening memorandum as well as the reasons set out in MTA opening and reply memoranda upon which State DOT has relied, this Court should enter a preliminary injunction under Federal Rule of Civil Procedure 65(a) and grant preliminary relief under 5 U.S.C. § 705 prohibiting defendants from taking the actions threatened in Secretary Duffy's April 21 letter or any other action against State DOT based on the continuation of New York's congestion pricing program, pending further order of the Court.

14

Dated:   New York, New York
         May 22, 2025

                                             Respectfully Submitted,

                                             LETITIA JAMES
                                             Attorney General of the State of New York

                                             By:   */s/ Andrew G. Frank*
                                                 Andrew G. Frank
                                                 Assistant Attorney General
                                                 N.Y.S. Attorney General's Office
                                                 28 Liberty Street
                                                 New York, New York 10005
                                                 Telephone:   (212) 416-8271
                                                 E-mail:         andrew.frank@ag.ny.gov

                                             *Attorneys for Intervenor-Plaintiff New York*
                                             *State Department of Transportation*