UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| METROPOLITAN TRANSPORTATION AUTHORITY and TRIBOROUGH BRIDGE AND TUNNEL AUTHORITY,<br><br>        Plaintiffs,<br><br>   and<br><br>NEW YORK CITY DEPARTMENT OF TRANSPORTATION, NEW YORK STATE DEPARTMENT OF TRANSPORTATION, RIDERS ALLIANCE, and SIERRA CLUB,<br><br>        Intervenor-Plaintiffs,<br><br>   v.<br><br>SEAN DUFFY, in his official capacity as Secretary of the United States Department of Transportation, GLORIA M. SHEPHERD, in her official capacity as Executive Director of the Federal Highway Administration, UNITED STATES DEPARTMENT OF TRANSPORTATION, and FEDERAL HIGHWAY ADMINISTRATION,<br><br>        Defendants. | CIVIL ACTION NO. 1:25-cv-01413-LJL |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION
FOR PARTIAL SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................................ II

TABLE OF AUTHORITIES ........................................................................................................ III

PRELIMINARY STATEMENT ..................................................................................................... 1

ARGUMENT .................................................................................................................................. 3

I.     THE COURT HAS PROPERLY EXERCISED JURISDICTION. ..................................... 3

II.    THE COURT SHOULD ENTER JUDGMENT AGAINST DEFENDANTS BECAUSE THE TERMINATION DECISION IS BASED ON FUNDAMENTALLY ERRONEOUS LEGAL REASONING (COUNT II). .................... 7

III.   THE COURT SHOULD ENTER JUDGMENT AGAINST DEFENDANTS BECAUSE SECRETARY DUFFY LACKS LEGAL AUTHORITY TO UNILATERALLY TERMINATE THE CONGESTION PRICING PROGRAM (COUNT IV). ................................................................................................................... 8

IV.   NOTHING IN THE RECORD SUPPORTS DEFENDANTS' PURPORTED POLICY CONCERNS. .................................................................................................. 8

CONCLUSION ............................................................................................................................. 10

## TABLE OF AUTHORITIES

**Page number(s)**

**CASES**

*Abbott Lab'ys v. Gardner*,
    387 U.S. 136 (1967)..........................................................................................................6

*Block v. Cmty. Nutrition Inst.*,
    467 U.S. 340 (1984)..........................................................................................................6

*Bowen v. Massachusetts*,
    487 U.S. 879 (1988)..........................................................................................................5

*Bowen v. Michigan Acad. of Fam. Physicians,*
    476 U.S. 667 (1986)..........................................................................................................6

*Bus. Roundtable v. SEC*,
    647 F.3d 1144 (D.C. Cir. 2011).........................................................................................9

*Chamber of Com. of U.S. v. SEC*,
    412 F.3d 133 (D.C. Cir. 2005)...........................................................................................9

*Chan v. United States Dep't of Transp.*,
    No. 23-CV-10365 (LJL), 2024 WL 5199945 (S.D.N.Y. Dec. 23, 2024) ..........................3

*Cienega Gardens v. United States,*
    194 F.3d 1231 (Fed. Cir.1998)..........................................................................................5

*Conservation L. Found., Inc. v. Acad. Express, LLC*,
    129 F.4th 78 (1st Cir. 2025)..............................................................................................4

*Env't Def. Fund v. FERC*,
    2 F.4th 953 (D.C. Cir. 2021).............................................................................................4

*German All. Ins. Co. v. Home Water Supply Co.*,
    226 U.S. 220 (1912)..........................................................................................................5

*Harmon v. Brucker*,
    355 U.S. 579 (1958)..........................................................................................................8

*Hillside Metro Assocs., LLC v. JPMorgan Chase Bank, Nat'l Ass'n*,
    747 F.3d 44 (2d Cir. 2014)................................................................................................5

*Isbrandtsen Co. v. United States*,
    96 F. Supp. 883 (S.D.N.Y.1951).....................................................................................10

*Japan Whaling Ass'n. v. Am. Cetacean Soc'y*,
    478 U.S. 221 (1986)..........................................................................................................8

*Katz v. Cisneros*,
    16 F.3d 1204 (Fed. Cir. 1994)...........................................................................................6

*LaFleur v. Whitman*,
   300 F.3d 256 (2d Cir. 2002)..................................................................................................4

*Mach Mining, LLC v. EEOC*,
   575 U.S. 480 (2015).............................................................................................................6

*Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*,
   567 U.S. 209 (2012).............................................................................................................4

*Metro. Transp. Auth. v. Duffy*,
   No. 25-CV-1413 (LJL), 2025 WL 1513369 (S.D.N.Y. 2025).........................3, 6, 7, 8, 10

*Mulgrew v. United States Dep't of Transp.*,
   750 F. Supp. 3d 171 (S.D.N.Y. 2024)..................................................................................4

*Nat'l Fed'n of Indep. Bus. v. Dep't of Lab., Occupational Safety & Health Admin.*,
   595 U.S. 109 (2022).............................................................................................................8

*Randall v. United States*,
   95 F.3d 339 (4th Cir. 1996) .................................................................................................5

*Ransom v. United States*,
   900 F.2d 242 (Fed. Cir. 1990)..............................................................................................5

*Salazar v. King*,
   822 F.3d 61 (2d Cir. 2016)...................................................................................................6

*Scenic Hudson Pres. Conf. v. Fed. Power Comm'n*,
   354 F.2d 608 (2d Cir. 1965)...............................................................................................10

*Schuerman v. United States*,
   30 Fed. Cl. 420 (1994) ........................................................................................................5

*Sea-Land Serv., Inc. v. Dep't of Transp.*,
   137 F.3d 640 (D.C. Cir. 1998).............................................................................................7

*SEC v. Chenery Corp.*,
   318 U.S. 80 (1943)...............................................................................................................7

*Sierra Club v. FERC*,
   867 F.3d 1357 (D.C. Cir. 2017)...........................................................................................4

*Suffolk Cnty. v. Long Island Lighting Co.*,
   728 F.2d 52 (2d Cir. 1984)...................................................................................................5

*Tootle v. Sec'y of the Navy*,
   446 F.3d 167 (D.C. Cir. 2006).............................................................................................5

*TransUnion LLC v. Ramirez*,
   594 U.S. 413 (2021).............................................................................................................4

Intervenor-Plaintiffs Riders Alliance and Sierra Club respectfully submit this memorandum of law in support of their motion for partial summary judgment.

## PRELIMINARY STATEMENT

The Trump administration has rushed to deprive millions of New Yorkers of the benefits provided by the Congestion Pricing Program. Defendants have attempted to wipe away years of careful work with the flimsiest of legal justification. They have sought to forestall judicial interpretation of the statute they maintain requires an end to the Program. And Defendants have sought to coerce through alternate means what they cannot lawfully accomplish through administrative process or the courts. For the reasons the Court set forth in its May 28 Opinion and Order, Defendants' actions are subject to this Court's review and do not bear legal scrutiny.

With production of the administrative record, it is even more clear that the Trump administration's attempt to terminate the Congestion Pricing Program rests on nothing beyond the administration's say-so. There is no legal support for Secretary Duffy's asserted legal conclusion. There is no factual support for Secretary Duffy's purported policy concerns. And there is no lawful authority behind Secretary Duffy's claimed power of unilateral termination. The Court should now enter judgment against Defendants.

At bottom, this case is about democracy. New York City's Congestion Pricing Program is the product of years of intense and sustained efforts at the local, state, and federal levels. It rests on the combined public advocacy of transit riders and business leaders, environmentalists and real estate developers, public health advocates and politicians. The Program arises from a state law specifically requiring it, and a federal statute specifically authorizing innovations like it. And the Program was made possible only by the successful navigation of a lengthy and comprehensive public process that secured the necessary approval, support, and resources to bring it to fruition.

Against the slow and careful democratic process that delivered the Congestion Pricing Program, President Trump, declaring himself King, decreed the death of congestion pricing on February 19, 2025. That same day, Secretary of Transportation Sean Duffy, sworn in just a few weeks before, announced he was "terminating" the agreement authorizing the Program based on novel restrictions in federal law that he claimed to have discovered. In months of litigation, Defendant Duffy has been unable to provide any support for the convenient legal interpretation he purported to be bound by. Instead, Defendants have shifted to a new rationale of policy considerations based on factual claims that are likewise unsupported. At the same time, Defendant Duffy has escalated his demands for obedience, threatening an array of ruinous "compliance measures" to try and coerce New Yorkers to accept the Trump administration's lawless command.

When government officials act without authority and rest their decisions on misconstrued legal claims, Congress has made relief available under the Administrative Procedure Act ("APA") for those aggrieved by their actions. Riders Alliance and Sierra Club come before this Court on behalf of their thousands of members with a direct stake in the continued success of the Congestion Pricing Program: ordinary New Yorkers who care about the air they breathe, the streets they walk, the trains and buses they rely on, and the future of their city. Because nothing in the record calls into question the findings of fact and conclusions of law made by the Court in its May 28 Opinion and Order, the Court should now enter judgment on claims II and IV of Intervenor-Plaintiffs' First Amendment Complaint, ECF No. 63, for the reasons set forth by the Court in that Opinion.

In accordance with the page limits established in the streamlined briefing order entered on June 6, 2025, ECF No. 139, and to avoid repetition, Intervenor-Plaintiffs adopt and join the

briefing jointly submitted by Plaintiffs Metropolitan Transportation Authority and Triborough Bridge and Tunnel Authority, and Intervenor-Plaintiff New York City Department of Transportation. Riders Alliance and Sierra Club submit brief additional arguments and authorities in further support of partial summary judgment.[1]

## ARGUMENT

**I.     The Court Has Properly Exercised Jurisdiction.**

Defendants have argued that the claims in the litigation "are grounded in contract"—specifically, the VPPP Agreement—and that the Tucker Act therefore bars this Court from exercising jurisdiction. Defs.' Opp'n to Prelim. Inj., ECF No. 118 at 27–28. As the Court has already found, this argument is fundamentally mistaken: "Plaintiffs are not suing to enforce any term of the VPPP Agreement or accusing Defendants of breach." *Metro. Transp. Auth. v. Duffy*, --- F. Supp. 3d ---, 2025 WL 1513369, at *25 (S.D.N.Y. 2025) ("*Duffy*"). Because Riders Alliance and Sierra Club have well-established rights to judicial relief and are not parties to the VPPP agreement, their claims further confirm that this case belongs in this Court.

As case after case confirms, Riders Alliance and Sierra Club members have a right to call on the federal courts to challenge unlawful agency action that threatens to harm their interests. Congestion pricing delivers cleaner air, better transit, and quieter streets. *See* Baldwin Decl. ¶¶ 4–11 (describing pollution, safety, and noise harms due to traffic, along with ongoing improvements provided by Program); Cryer Decl. ¶¶ 4–8 (same); *see also Chan v. United States Dep't of Transp.*, No. 23-CV-10365 (LJL), 2024 WL 5199945, at *48 (S.D.N.Y. Dec. 23, 2024) (program "predicted to reduce congestion thereby improving regional air quality, providing

---

[1] Given the streamlined nature of this briefing, the Court's deep familiarity with the litigation, and to avoid repeating the comprehensive submissions by Plaintiffs Metropolitan Transportation Authority and Triborough Bridge and Tunnel Authority, and Intervenor-Plaintiff New York City Department of Transportation, Riders Alliance and Sierra Club do not include an independent background section.

3

safety benefits, improving worker productivity, reducing noise pollution, among other benefits"). Defendants threaten to take all these improvements away, inflicting concrete injury. The federal courts are the proper forum for addressing these harms. *See, e.g.*, *Conservation L. Found., Inc. v. Acad. Express, LLC*, 129 F.4th 78, 88 (1st Cir. 2025) ("[B]reathing polluted air is 'traditionally recognized as providing a basis for a lawsuit in American courts.'" (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 417 (2021))); *Env't Def. Fund v. FERC*, 2 F.4th 953, 971 (D.C. Cir. 2021) ("[C]redible claims of exposure to increased noise and . . . disruption of daily activities . . . are sufficient to satisfy Article III's injury-in-fact requirement." (quoting *Sierra Club v. FERC*, 867 F.3d 1357, 1366 (D.C. Cir. 2017))); *LaFleur v. Whitman*, 300 F.3d 256, 270 (2d Cir. 2002) (an individual's "likely exposure to additional [air pollutant] in the air where she works is certainly an 'injury-in-fact' sufficient to confer standing"); *Mulgrew v. United States Dep't of Transp.*, 750 F. Supp. 3d 171, 212 (S.D.N.Y. 2024) (observing that "even a small increase in pollutants abutting" a challenger's "neighborhood would provide the 'identifiable trifle' standing doctrine requires" (citing *LaFleur*, 300 F.3d at 271)). When the harms are inflicted by federal agency action, Congress has ensured that aggrieved individuals may seek review. *See Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 225 (2012) ("Congress's 'evident intent' when enacting the APA 'to make agency action presumptively reviewable.'").

Nonetheless, in Defendants' view, the administration's decision to unilaterally "terminate" a program affecting millions of New Yorkers is shielded from ordinary APA challenge by the Tucker Act. Because a cooperative agreement authorizes the collection of tolls that underpins the Congestion Pricing Program, Defendants insist that any challenge to the Program's termination must proceed as a contract action in the Court of Claims. ECF No. 118 at

4

26–28. But the millions of people affected by an agency decision to shut down the Congestion Pricing Program would have no claim under the Tucker Act: "To maintain a cause of action pursuant to the Tucker Act that is based on a contract, the contract must be between the plaintiff and the government." *Cienega Gardens v. United States,* 194 F.3d 1231, 1239 (Fed. Cir.1998) (quoting *Ransom v. United States*, 900 F.2d 242, 244 (Fed. Cir. 1990)). "[A]bsent a contractual relationship there can be no contractual remedy." *Hillside Metro Assocs., LLC v. JPMorgan Chase Bank, Nat'l Ass'n*, 747 F.3d 44, 49 (2d Cir. 2014) (quoting *Suffolk Cnty. v. Long Island Lighting Co.*, 728 F.2d 52, 63 (2d Cir. 1984)).[2] And even if New Yorkers seeking to challenge agency action to shut down the Congestion Pricing Program could somehow file their case in the Court of Claims, they could not seek appropriate relief. The harms that Intervenor Plaintiffs seek protection against are non-monetary, and "a naked money judgment against the United States" would not redress them. *Bowen v. Massachusetts*, 487 U.S. 879, 905 (1988).

      By demanding that challenges to Secretary Duffy's unlawful decision proceed as contract actions in the Court of Claims, Defendants would shut out of court the vast majority of people affected by agency action. There is no support for this radical view. A federal district court cannot "be deprived of jurisdiction by the Tucker Act when no jurisdiction lies in the Court of Federal Claims." *Tootle v. Sec'y of the Navy*, 446 F.3d 167, 176 (D.C. Cir. 2006). After all, "[t]here cannot be exclusive jurisdiction under the Tucker Act if there is no jurisdiction under the Tucker Act." *Id.* at 177 (citing *Randall v. United States*, 95 F.3d 339, 346 (4th Cir. 1996). Defendants' view cannot be squared with the "strong presumption favoring judicial

---

[2] A few exceptions, not relevant here, involve enforcement by specifically intended third-party beneficiaries. *See Schuerman v. United States*, 30 Fed. Cl. 420, 428 (1994) ("In cases of contracts intended to benefit the general public, a stranger to such contract must show that the contract 'was intended for his direct benefit.'" (quoting *German All. Ins. Co. v. Home Water Supply Co.*, 226 U.S. 220, 230 (1912))).

review of administrative action" by parties who face injury from administrative decisions. *Salazar v. King*, 822 F.3d 61, 75 (2d Cir. 2016) (citing *Mach Mining, LLC v. EEOC,* 575 U.S. 480, 485–86 (2015)); *Block v. Cmty. Nutrition Inst.,* 467 U.S. 340, 349 (1984). As the Supreme Court instructed, "judicial review of a final agency action by an aggrieved person will not be cut off unless there is persuasive reason to believe that such was the purpose of Congress." *Bowen v. Michigan Acad. of Fam. Physicians,* 476 U.S. 667, 670 (1986) (quoting *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 140 (1967)). Defendants have not provided any reason, much less a persuasive reason, to reach such a draconian result here.

Moreover, this case is about whether Secretary Duffy has any authority to deprive New Yorkers of the benefits of Congestion Pricing, and whether the statutory theory he has put forward as requiring his decision bears any scrutiny. These types of questions, as the Federal Circuit has explained, belong in federal district court—not the Court of Claims. As the Federal Circuit has itself instructed, "no relief is available in the Court of Federal Claims" for a case that "challenges the interpretation of law which controls" a dispute. *Katz v. Cisneros*, 16 F.3d 1204, 1209 (Fed. Cir. 1994). Such a case—like this one—"is not a contract case." *Id.* Thus, as the Court correctly determined, "[t]his Court under the APA, not the Court of Claims under the Tucker Act, has the authority to review the relevant statutes and regulations and to determine whether the Secretary's actions are lawful or not." *Duffy* at *25.[3]

---

[3] Defendants have also challenged the Court's jurisdiction based on their claims that Secretary Duffy's February 19th letter does not reflect a final decision, and that the claims are not ripe. For the reasons set forth in the Court's decision, the decision is final, and it is prudentially ripe for judicial review. *Duffy* at *18–*24. Nothing in the administrative record contradicts the Court's determination that "[t]he Secretary has taken the definitive views that federal law did not permit the FHWA to sign the VPPP Agreement and that he has the authority to terminate the VPPP Agreement." *Id.* at *23. As the Court found, and as the record confirms, "Defendants have not given any indication that the decision *will* be reconsidered." *Id.* at *21. Defendants' production of the record provides no additional indicia of non-finality.

II. **The Court Should Enter Judgment Against Defendants Because the Termination Decision Is Based on Fundamentally Erroneous Legal Reasoning (Count II).**

As the Court has found and as the February 19 letter unambiguously states, Defendants' decision to terminate the VPPP agreement was based exclusively on Secretary Duffy's erroneous legal "conclusion that FHWA lacked statutory authority to approve the cordon pricing tolling under the [Tolling Program]." *Id.* at *36 (quoting Duffy letter); *see also* DOT_0047572 (letter in record, ECF No. 130-3.). Secretary Duffy offered "two reasons" supporting his legal conclusion that FHWA lacked authority to authorize the Congestion Pricing Program: the "cordon pricing" theory and the "revenue" theory. DOT_0047572. The Court's May 28 order comprehensively explains both theories' fatal flaws. *See Duffy* at *31–*36. Secretary Duffy's legal conclusion fundamentally misinterprets the law because it rests on two meritless theories that are contradicted by statutory text, legislative history, and decades of agency practice that Congress was fully aware of and repeatedly re-authorized. *See id.*

The termination decision therefore rests on a legal error and must be vacated. When an "[agency] action is based upon a determination of law as to which the reviewing authority of the courts does come into play, an order may not stand if the agency has misconceived the law." *SEC v. Chenery Corp.*, 318 U.S. 80, 94 (1943). While Defendants have gestured at policy arguments, "the Secretary's February 19 Letter is not based on policy considerations but on his misconstruction of the VPPP statute." *Duffy* at *31. "An agency action . . . cannot be sustained where it is based not on the agency's own judgment but on an erroneous view of the law." *Sea-Land Serv., Inc. v. Dep't of Transp.*, 137 F.3d 640, 646 (D.C. Cir. 1998) (citation modified). The Court should therefore enter judgment against Defendants on Count II of Intervenor-Plaintiffs' First Amended Complaint.

7

### III. The Court Should Enter Judgment Against Defendants Because Secretary Duffy Lacks Legal Authority to Unilaterally Terminate the Congestion Pricing Program (Count IV).

As the Court has found, neither the VPPP's statutory authorization, the regulations governing federal awards, nor any terms of the VPPP agreement itself provide Secretary Duffy to unilaterally terminate the Congestion Pricing Program. *See Duffy* at *27–*31. In fact, if Defendants were right that Congress had conferred upon Secretary Duffy the unilateral authority to terminate VPPP agreements at will, the argument "has built within it the seeds of the destruction of the VPPP and the objectives Congress intended to further with it." *Id.* at *30. But Congress was sufficiently wise not to confer such unfettered authority, and Secretary Duffy cannot claim such authority on his own behalf. *See Nat'l Fed'n of Indep. Bus. v. Dep't of Lab., Occupational Safety & Health Admin.*, 595 U.S. 109, 117 (2022) ("Administrative agencies are creatures of statute. They accordingly possess only the authority that Congress has provided.").

"Generally, judicial relief is available to one who has been injured by an act of a government official which is in excess of his express or implied powers." *Harmon v. Brucker*, 355 U.S. 579, 581–82 (1958). Because Riders Alliance and Sierra Club members stand to be injured by Secretary Duffy's ultra vires actions, the Court should enter judgment against Defendants on Count IV of Intervenor-Plaintiffs' First Amended Complaint.[4]

### IV. Nothing in the Record Supports Defendants' Purported Policy Concerns.

As described above, the Court has correctly determined that Defendants' professed policy concerns cannot support the decision to terminate the Congestion Pricing Program because that

---

[4] Riders Alliance and Sierra Club pled their ultra vires claim as one for nonstatutory relief. *See* First Am. Compl. ¶¶ 107–110, ECF No. 63. However, as the Court has observed, such claims may also be asserted under the APA: "Under the APA therefore, a reviewing court must set aside agency actions that exceed the agency's delegated authority." *Duffy* at *27. Intervenor-Plaintiffs therefore request that the Court construe Count IV of the First Amended Complaint as an APA claim. *See Japan Whaling Ass'n v. Am. Cetacean Soc'y*, 478 U.S. 221, 228, 230 n.4 (1986) (treating Mandamus Act petition as APA claim).

decision rested solely on Secretary Duffy's flawed legal theories. With production of the administrative record, it is even more clear that Defendants' claimed policy assessments—even if they could be considered—are as unfounded as their statutory theories.

Defendants profess concern over "[p]rotecting taxpayers and working-class Americans," which they charge is a "priority directly at stake in this VPPP." ECF No. 118 at 57. But nothing in the record indicates that Defendants have even tried to understand the impact of the VPPP on "working-class Americans," much less that they made a reasoned decision based on evidence showing that termination would assist this claimed policy priority. This failure to even attempt to learn the consequences of its planned decision would itself show the decision to be arbitrary and capricious. *See Bus. Roundtable v. SEC*, 647 F.3d 1144, 1148 (D.C. Cir. 2011) (explaining that an agency's failure to "apprise itself . . . of the economic consequences" of a potential action is "arbitrary and capricious and not in accordance with law" (quoting *Chamber of Com. of U.S. v. SEC*, 412 F.3d 133, 144 (D.C. Cir. 2005))).

In fact, the record directly contradicts Defendants' claim that eliminating the VPPP would protect low-income and working-class Americans. As the federal government has known from the very outset of the VPPP process, funding public transit aids precisely the low-income population over which Defendants now claim concern. In the initial expression of interest for the Congestion Pricing Program, the federal government was informed that "[n]inety-eight percent of low-income workers with jobs in the Manhattan CBD do not commute by private vehicle." DOT_0038312 (citing Community Service Society's 2017 finding). Years of analysis confirm the basic fact that low-income commuters overwhelmingly use public transit. *See* DOT_0045448 (June 2024 Reevaluation) ("A very small minority of low-income commuters to the CBD drive; many more take transit."). And the Congestion Pricing Program further mitigates the impact on

the small number of low-income commuters who would otherwise be adversely impacted by including significant discounts and tax credits. *See, e.g.*, DOT_0045466 (June 2024 Reevaluation). For this reason, organizations that serve and organize low-income and working-class Americans, like Riders Alliance and the Community Service Society, support the Congestion Pricing Program. *See* Pearlstein Decl. ¶¶ 3–8.

In the face of a record that provides them no support, Defendants appear to view Secretary Duffy's unsupported claims as all the evidence they need to eliminate a hugely consequential government program. But orderly administrative decisionmaking requires more than a cabinet secretary's say-so. An "agency must always act upon the record made, and if that is not sufficient, it should see the record is supplemented before it acts. It . . . is not fair play for it to create an injustice, instead of remedying one, by omitting to inform itself and by acting ignorantly when intelligent action is possible." *Scenic Hudson Pres. Conf. v. Fed. Power Comm'n*, 354 F.2d 608, 621 (2d Cir. 1965) (quoting *Isbrandtsen Co. v. United States*, 96 F. Supp. 883, 892 (S.D.N.Y.1951), *aff'd by equally divided court*, *A/S J. Ludwig Mowinckels Rederi v. Isbrandtsen Co.*, 342 U.S. 950 (1952)).

As this Court observed, "[t]hough Defendants are free to construct their own policy priorities, the public is entitled to an orderly evaluation of actions purportedly taken based on those policies." *Duffy* at *36. Such orderly evaluation must require the consideration of actual evidence, rather than dubious assertions of economic concern.

## CONCLUSION

For the reasons described above, the Court should enter judgment against Defendants on Counts II and IV of Intervenor-Plaintiffs' First Amended Complaint.

| | |
|---|---|
| DATED: June 27, 2025 | <u>*s/Dror Ladin*</u><br>Dror Ladin<br>Earthjustice<br>48 Wall Street, 15th Floor<br>New York, NY 10005<br>(917) 410-8701<br>dladin@earthjustice.org<br><br>*Counsel for Intervenor-Plaintiffs*<br>*Riders Alliance and Sierra Club* |