

1133 Avenue of the Americas
Suite 1500
New York, New York 10036

(212) 316-9500
rkaplan@kaplanmartin.com

January 23, 2026

**BY CM/ECF**

The Honorable Lewis J. Liman
United States District Court
Southern District of New York
500 Pearl St.
New York, N.Y. 10007

       *Re:*     *Metro. Transp. Auth., et al. v. Duffy, et al.*, No. 25 Civ. 1413 (LJL)

Dear Judge Liman:

       We write on behalf of Plaintiffs the Metropolitan Transportation Authority ("MTA") and Triborough Bridge and Tunnel Authority ("TBTA") in response to Defendants' notice of supplemental authority concerning the Fourth Circuit's decision this week in *Sustainability Institute v. Trump*, No. 25-1575, 2026 WL 157120 (4th Cir. Jan. 21, 2026).  ECF 180 ("Ltr.").

       As Defendants observe in their letter, the Court reasoned that the plaintiffs' Administrative Procedure Act claims were "essentially contractual" in nature because their alleged injury "stem[s] from the government's refusal to pay promised grants according to the terms and conditions that accompany them."  *Id.* (quoting *Sustainability Institute*, 2026 WL 157120, at *6).  The Court further reasoned as follows:

> [W]e conclude the district court lacked jurisdiction to order that relief, which was designed to enforce obligations to pay money pursuant to Plaintiffs' grants. . . .
>
> There is no meaningful difference between the district court's order here and the district court's order in [*Department of Education v. California*, 604 U.S. 650 (2025) (per curiam)]. Like in *California*, the Government here froze or terminated grants *en masse*, allegedly without individualized analysis. *See Sustainability Inst.*, 784 F. Supp. 3d at 870; *California v. Dep't of Educ.*, 769 F. Supp. 3d 72,

77 (D. Mass. 2025) ("The record reflects that there was no individualized analysis of any of the programs . . ."). Like in *California*, Plaintiffs here sought restoration of their specific grants under the APA. *See, e.g.*, J.A. 150–151 (asking the district court to "[p]reliminarily and permanently enjoin Defendants from continuing to freeze or terminating grants or effectuating any termination" and "[p]rohibit Defendants from otherwise impeding, blocking, cancelling, or terminating Plaintiffs' access to their funds"); *see California*, 769 F. Supp. 3d at 80. And like in *California*, that relief is exactly what the district court awarded. *See Sustainability Inst.*, 784 F. Supp. 3d at 871 ("set[ting] aside the freeze and/or termination of Grants 1–26 and 33–38" and "direct[ing] [the Government] to restore Plaintiffs['] access to grant funds immediately"); *California*, 145 S. Ct. at 968 (explaining that the *California* district court "enjoin[ed] the Government from terminating various education-related grants" and "require[d] the Government to pay out past-due grant obligations and to continue paying obligations as they accrue[d]"). If the *California* district court lacked jurisdiction to issue its order, it follows that the district court here did as well." . . .

The relief Plaintiffs sought and the relief the district court gave them was the reinstatement of their grants. That is "the classic *contractual* remedy of specific performance." *Spectrum Leasing Corp. v. United States*, 764 F.2d 891, 894 (D.C. Cir. 1985) (emphasis added); *cf.* [*National Institutes of Health v. American Public Health Association*, 145 S. Ct. 2658, 2664 (2025)] (Gorsuch, J., concurring in part and dissenting in part) ("An order vacating the government's decision to terminate grants under the APA is in every meaningful sense an order requiring the government to pay those grants."). So contrary to Plaintiffs' assertions, the relief they sought and the district court ordered is contractual in nature.

*Sustainability Institute*, 2026 WL 157120, at *4-7. Finally, the plaintiffs in *Sustainability Institute* did not just challenge the cancellations of the grants, "but also the Executive Orders and various directives issued by the agencies funding their grants. *Id.*, at *8 n.8. The district court, however, did not purport to vacate any of these actions," and so the Fourth Circuit "express[ed] no opinion on whether the district court had jurisdiction to review these high-level actions under the APA, nor what the appropriate remedy would be in the event of an APA violation." *Id.* (citing *Nat'l Insts. of Health*, 145 S. Ct. at 2660-62 (Barrett, J., concurring)).

We thank the Court for its consideration and are prepared to submit supplemental briefing if directed by the Court.

Respectfully submitted,

Roberta A. Kaplan

cc:    Counsel of Record (via ECF)