**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

METROPOLITAN TRANSPORTATION AUTHORITY and TRIBOROUGH BRIDGE AND TUNNEL AUTHORITY,

*Plaintiffs*,

and

NEW YORK STATE DEPARTMENT OF TRANSPORTATION, RIDERS ALLIANCE, SIERRA CLUB, and NEW YORK CITY DEPARTMENT OF TRANSPORTATION,

*Intervenor-Plaintiffs*,

v.

SEAN DUFFY, in his official capacity as Secretary of the United States Department of Transportation, GLORIA M. SHEPHERD, in her official capacity as Executive Director of the Federal Highway Administration, UNITED STATES DEPARTMENT OF TRANSPORTATION, and FEDERAL HIGHWAY ADMINISTRATION,

*Defendants*.

Case No. 25 Civ. 1413 (LJL)

**PLAINTIFFS THE MTA AND TBTA AND INTERVENOR-PLAINTIFF NYCDOT'S SUPPLEMENTAL MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .......... ii

I. The Court has Jurisdiction Over Plaintiffs' Constitutional Claims.......... 1

II. The Court Should Deny Summary Judgment on the Due Process Claim.......... 4

A. Plaintiffs Have a Protected Property Interest in the Authority to Toll .......... 4

B. Defendants Purported to Terminate Without Any Meaningful Process .......... 6

III. The Court Should Deny Defendants' Motion for Summary Judgment on Plaintiffs' Remaining Constitutional Claims .......... 7

A. Spending Clause and Tenth Amendment .......... 8

B. Separation of Powers .......... 9

**TABLE OF AUTHORITIES**

**CASES**

*Armstrong v. Exceptional Child Ctr. Inc.*,
575 U.S. 320 (2015) .......... 2

*Bell v. Hood*,
327 U.S. 678 (1946) .......... 1, 3

*Board of Regents v. Roth*,
408 U.S. 564 (1972) .......... 4

*Burke v. Coggins*,
521 F. Supp. 3d 31 (D.D.C. 2021) .......... 3

*Chacoty v. Pompeo*,
392 F. Supp. 3d 1 (D.D.C. 2019) .......... 3

*Chamber of Comm. v. Reich*,
74 F.3d 1322 (D.C. Cir. 1996) .......... 8, 9

*City and Cty. of San Francisco v. Trump*,
897 F.3d 1225 (9th Cir. 2018) .......... 9

*Contiguous Towing, Inc. v. State*,
202 F. Supp. 3d 269 (E.D.N.Y. 2016) .......... 6

*Dalton v. Specter*,
511 U.S. 462 (1994) .......... 2, 8, 9

*Elk Run Coal Co. v. U.S. Dep't of Lab.*,
804 F. Supp. 2d 8 (D.D.C. 2011) .......... 2

*Expressions Hair Design v. Schneiderman*,
2013 WL 7203883 (S.D.N.Y. Nov. 4, 2013) .......... 3

*Ezekwo v. N.Y.C. Health & Hosps. Corp.*,
940 F.2d 775 (2d Cir. 1991) .......... 4

*F.C.C. v. Fox Television Stations, Inc.*,
567 U.S. 239 (2012) ... 7

*Fed. Express Corp. v. U.S. Dep't of Com.*,
39 F.4th 756 (D.C. Cir. 2022) ... 2, 3

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*,
561 U.S. 477 (2010) ... 1, 2, 3

*Gizzo v. Ben-Habib*,
44 F. Supp. 3d 374 (S.D.N.Y. 2014) ... 4

*Jafarzadeh v. Nielsen*,
321 F. Supp. 3d 19 (D.D.C. 2018) ... 9

*Juliana v. United States*,
947 F.3d 1159 (9th Cir. 2020) ... 3

*LeBlanc v. United States*,
50 F.3d 1025 (Fed. Cir. 1995) ... 3

*Local 342, Long Island Pub. Servs. Emps. v. Town Board of Huntington*,
31 F.3d 1191 (2d Cir. 1994) ... 4

*Martz v. Inc. Vill. of Valley Stream*,
22 F.3d 26 (2d Cir. 1994) ... 5

*Metro. Transp. Auth. v. Duffy*,
784 F. Supp. 3d 624 (S.D.N.Y. 2025) ... 5, 6, 7

*Nat'l Fed'n of Indep. Bus. v. Sebelius*,
567 U.S. 519 (2012) ... 8

*New York v. McMahon*,
784 F. Supp. 3d 311 (D. Mass. 2025) ... 2

*New York v. U.S. Dep't of Health & Hum. Servs.*,
414 F. Supp. 3d 475 (S.D.N.Y. 2019) ... 7, 9

*Olegario v. United States*,
629 F.2d 204 (2d Cir. 1980) .......... 3

*Ove Gustavsson Contracting Co. v. Floete*,
299 F.2d 655 (2d Cir. 1962) .......... 6

*Ozturk v. Hyde*,
136 F.4th 382 (2d Cir. 2025) .......... 1

*Pennhurst State Sch. & Hosp. v. Halderman*,
451 U.S. 1 (1981) .......... 7

*Poett v. United States*,
657 F. Supp. 2d 230 (D.D.C. 2009) .......... 4

*Puerto Rico v. United States*,
490 F.3d 50 (1st Cir. 2007) .......... 2

*Ramirez-Medina v. U.S. Dep't of Homeland Sec.*,
313 F. Supp. 3d 1237 (W.D. Wash. 2018) .......... 6

*Rhode Island Dep't of Env't Mgmt. v. United States*,
304 F.3d 31 (1st Cir. 2002) .......... 1

*Rhode Island v. Trump*,
2025 WL 3251113 (D.R.I. Nov. 21, 2025) .......... 9

*S & D Maintenance Co. v. Goldin*,
844 F.2d 962 (2d Cir. 1988) .......... 5

*Texas v. Cardona*,
743 F. Supp. 3d 824 (N.D. Tex. 2024) .......... 7

*Texas v. Yellen*,
105 F.4th 755 (5th Cir. 2024) .......... 8

*Toxco, Inc. v. Chu*,
801 F. Supp. 2d 1 (D.D.C. 2011) .......... 5

*Trudeau v. Fed. Trade Comm'n*,
456 F.3d 178 (D.C. Cir. 2006) .......... 1, 2, 3

*Tucker v. Darien Bd. of Educ.*,
222 F. Supp. 2d 202 (D. Conn. 2002) .......... 6

*Webster v. Doe*,
486 U.S. 592 (1988) .......... 1, 3

*Youngstown Sheet & Tube Co. v. Sawyer*,
343 U.S. 579 (1952) .......... 2, 9

**STATUTES**

23 U.S.C. § 301 .......... 7

**OTHER AUTHORITIES**

33 Wright & Miller's Federal Practice & Procedure § 8307 (2d ed.) .......... 2

Kathryn E. Kovacs, *Revealing Redundancy*, 54 Drake L. Rev. 77 (2005) .......... 3

Pursuant to the Court's order at the oral argument held on January 28, 2026, Plaintiffs the Metropolitan Transportation Authority ("MTA") and Triborough Bridge and Tunnel Authority ("TBTA"), and Intervenor-Plaintiff New York City Department of Transportation ("NYCDOT," and collectively, "Plaintiffs"),[1] respectfully submit this supplemental memorandum of law in further opposition to Defendants' motion for summary judgment (ECF 158) ("Defs. Mot.") on Plaintiffs' Due Process, Spending Clause and Tenth Amendment, and Separation of Powers claims (Counts VI, IX, and X, respectively, and together the "Constitutional Claims").[2]

**I. The Court has Jurisdiction Over Plaintiffs' Constitutional Claims**

It is well settled that the federal courts have jurisdiction "to issue injunctions to protect rights safeguarded by the Constitution." *Bell v. Hood*, 327 U.S. 678, 684 (1946); *see also Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 491 & n.2 (2010) (exercising jurisdiction over "right of action directly under the Constitution" for Appointments Clause and separation-of-powers claims); *Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178, 190 (D.C. Cir. 2006) (describing "direct cause of action under the First Amendment"). Indeed, there is a "strong presumption" favoring judicial review of constitutional claims. *Rhode Island Dep't of Env't Mgmt. v. United States*, 304 F.3d 31, 41 (1st Cir. 2002); *see also Webster v. Doe*, 486 U.S. 592, 603 (1988) (emphasizing the "heightened showing" which must be made to demonstrate statutory preclusion of judicial review of constitutional claims); *cf. Ozturk v. Hyde,* 136 F.4th 382, 394 (2d Cir. 2025) (applying presumption to assert jurisdiction over constitutional claims).

---

[1] Unless otherwise noted, all defined terms have the same meaning as provided in Plaintiffs' briefing on their motion for a preliminary injunction. Plaintiffs incorporate the background and arguments presented in that briefing and in their opening motion for partial summary judgment (ECF 152), as permitted by the Court. *See* ECF 139.

[2] Given our understanding that the Court directed the parties to focus on the constitutional claims, we address all such claims here. However, as in our initial opposition papers, *see* ECF 168 ("Pls. Mot.") at 41-43, we are mindful of the Court's view that Counts IX and X (Violation of the Spending Clause and Tenth Amendment and Violation of the Separation of Powers) would invite an "advisory opinion" and therefore only briefly address those claims here.

Rather than grapple with these basic principles, Defendants rely primarily on inapposite authorities concerning statutory *ultra vires* claims. Defs. Mot. at 19 (citing *Fed. Express Corp. v. U.S. Dep't of Com.*, 39 F.4th 756, 764 (D.C. Cir. 2022) (agency allegedly "exceeded its statutory authority"); 33 Wright & Miller's Federal Practice & Procedure § 8307 (2d ed.) (explaining that "[n]onstatutory review is commonly used to challenge the constitutionality of statutes")). But an *ultra vires* claim is not the same as a constitutional claim. *Dalton v. Specter*, 511 U.S. 462, 472 (1994). To succeed on a claim seeking to enjoin unconstitutional conduct, a plaintiff need only demonstrate that the Constitution was violated. *See, e.g.*, *Free Enter.*, 561 U.S. at 491 n.2; *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 585 (1952); *see also, e.g.*, *Trudeau*, 456 F.3d at 190 (distinguishing between a "direct cause of action" under the Constitution and a claim that agency exceeded statutory authority); *New York v. McMahon*, 784 F. Supp. 3d 311, 349-50 (D. Mass. 2025) (claims could proceed because plaintiff asserted constitutional claims and not statutory claims); *Elk Run Coal Co., Inc. v. U.S. Dep't of Lab.*, 804 F. Supp. 2d 8, 28, 31 (D.D.C. 2011) (dismissing statutory claim but allowing constitutional claim to proceed).

Similarly, Defendants cite *Armstrong v. Exceptional Child Center Inc.*, 575 U.S. 320 (2015), for the sweeping proposition that "[t]he Constitution does not contain an implied right of action." Defs. Mot. at 18. But in *Armstrong*, the Supreme Court held only that the Supremacy Clause did not imply a right of action, but rather "creates a rule of decision." 575 U.S. at 324-25. As the authorities we cited show, the constitutional provisions Plaintiffs rely on are enforceable in federal court.[3]

[3] While Defendants cite *Puerto Rico v. United States*, 490 F.3d 50, 60 (1st Cir. 2007), that decision was about whether Puerto Rico had a cause of action "to obtain information from the [FBI] in connection with a criminal investigation," and the Court described Puerto Rico's claim as a mix between a constitutional and an *ultra vires* claim. *Id*. at 59 (FBI allegedly "acted outside the scope of its legal authority … in violation of the Constitution"). What's more, the First Circuit in that case released three separate opinions, with no clear consensus. *See id*. at 53, 71, 73.

Although Defendants do not acknowledge it, the "strong presumption" of constitutional review is particularly relevant here. Even as Defendants argue that Plaintiffs' constitutional claims fail, they continue to insist that Plaintiffs have no recourse under the APA. Defs. Mot. at 5-18. And they would surely move to dismiss the Constitutional Claims if, as they seek, this case were required to proceed in the Court of Federal Claims. *See LeBlanc v. United States*, 50 F.3d 1025, 1028 (Fed. Cir. 1995) (Court of Federal Claims lacks jurisdiction over Due Process and Separation of Powers claims). In other words, under Defendants' logic, there is *no forum anywhere* with jurisdiction to hear the Constitutional Claims. That is not and cannot be the law. *Webster*, 486 U.S. at 603.

The possibility that Plaintiffs can obtain certain relief through the APA (which, of course, Defendants deny) does not foreclose the Constitutional Claims. *Contra* Defs. Mot. at 19.[4] Federal court jurisdiction to issue injunctive relief to protect constitutional rights long predates the APA. *Bell*, 327 U.S. at 684; *see Free Enter.*, 561 U.S. at 491 n.2. And there is a broad consensus that this form of review "survived the enactment of the APA." *Fed. Express Corp.*, 39 F.4th at 763; Kathryn E. Kovacs, *Revealing Redundancy*, 54 Drake L. Rev. 77, 93-94 & n.100 (2005) ("Nonstatutory review clearly is still available in cases alleging constitutional violations."); *Olegario v. United States*, 629 F.2d 204, 224 n.9 (2d Cir. 1980). Thus, a plaintiff can directly challenge unconstitutional Executive action, "regardless of whether [they] have a cause of action under" the APA. *Chacoty v. Pompeo*, 392 F. Supp. 3d 1, 12 (D.D.C. 2019); *see Juliana v. United States*, 947 F.3d 1159, 1167 (9th Cir. 2020) (plaintiffs may bring "equitable action to enjoin

[4] There is no potential for relief on the Constitutional Claims under the Tucker Act because the Court of Federal Claims lacks jurisdiction. Pls. Mot. at 12-15; *see also LeBlanc*, 50 F.3d at 1028. And there is nothing in the Tucker Act to suggest that Congress intended to preclude plaintiffs from asserting claims for unconstitutional conduct. *See Webster*, 486 U.S. at 603 (because denying a "judicial forum for a colorable constitutional claim" presents a "serious constitutional question," Congress's intent through a statute to do so must be clear).

unconstitutional official conduct, *or* under [the APA]" (emphasis added)); *Trudeau*, 456 F.3d at 187.[5]

## II. The Court Should Deny Summary Judgment on the Due Process Claim

On the merits, Defendants argue that Plaintiffs fail at Steps One and Three of the due process inquiry established by *Local 342, Long Island Pub. Serv. Empls v. Town Bd. of Huntington*, 31 F.3d 1191, 1194 (2d Cir. 1994), because (i) Plaintiffs have failed to identify a property right protected by the Due Process Clause, and (ii) Plaintiffs were afforded sufficient process before deprivation of a property right. Defs. Mot. at 42.[6] Both arguments are squarely contradicted by this Court's prior determinations, as discussed below.[7]

### A. Plaintiffs Have a Protected Property Interest in the Authority to Toll

Starting with the property right (Step One), under the Due Process Clause, "'property' denotes a broad range of interests that are 'secured by existing rules or understandings.'" *Ezekwo v. N.Y.C Health & Hosps. Corp.*, 940 F.2d 775, 782 (2d Cir. 1991). Here, Plaintiffs' *status* as entities authorized to operate the Program is exactly the kind of property right which is protected

---

[5] Courts may issue a permanent injunction for any claims resolved on summary judgment, even where the court does not grant summary judgment with respect to other claims, including any constitutional claims, and may then dismiss the remaining claims as moot without prejudice to refile, or alternatively, stay the remaining claims. *See Burke v. Coggins*, 521 F. Supp. 3d 31, 45 (D.D.C. 2021) (declining to reach plaintiffs' First Amendment and Appointments Clause arguments given complete relief on APA challenge); *Expressions Hair Design v. Schneiderman*, 2013 WL 7203883, at *1 (S.D.N.Y. Nov. 4, 2013) (dismissing preemption claim as moot without prejudice to refile following grant of final judgment with permanent injunction on plaintiff's constitutional claims); *Pearson Educ., Inc. v. Kumar*, 2010 WL 2230574, at *2 (S.D.N.Y. May 27, 2010) (allowing plaintiff's remaining trademark and common law claims to proceed following grant of final judgment and permanent injunction on plaintiff's copyright claims); *Poett v. United States*, 657 F. Supp. 2d 230, 242 (D.D.C. 2009) (similar, denying without prejudice plaintiff's constitutional claims). To the extent that the Court does not grant summary judgment with respect to all claims, Plaintiffs would endeavor to work collaboratively with Defendants to take any steps necessary to allow an immediate appeal from the Court's ruling should either party choose to do so.

[6] Curiously, Defendants do not dispute that Plaintiffs satisfy "Step Two" of the Due Process inquiry—that Plaintiffs were deprived of a "property right" by the government—which undercuts the notion that Plaintiffs did not have a property right in the first place. *Id.*

[7] Defendants also argue that the Due Process claim fails because it is a mere "repackaging" of Plaintiffs' APA causes of action. Defs. Mot. at 18. The availability of overlapping causes of action under the U.S. Constitution and the APA is uncontroversial and irrelevant, *supra* at 3. In any event, Plaintiffs reserve the right to assert a Due Process theory under their APA claims in later proceedings if necessary.

by the Due Process Clause. *See id.* at 783; *Gizzo v. Ben-Habib*, 44 F. Supp. 3d 374, 383 (S.D.N.Y. 2014) (noting the Due Process Clause ensures "procedural protection ... in connection with a state's revocation of a *status*") (emphasis in original). Defendants do not (and cannot) dispute that Plaintiffs have "more than an abstract need or desire" for the authority to toll, as memorialized by the VPPP Agreement. *Ezekwo*, 940 F.2d at 782 (quoting *Board of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972)).

Defendants contend that Plaintiffs' ability to operate congestion pricing is not a property right because it is entirely contractual. Defs. Mot. at 42-43. But this Court has already made it clear that Plaintiffs "are not suing to enforce any term of the VPPP Agreement or accusing Defendants of breach." *Duffy*, 784 F. Supp. 3d at 665. Plaintiffs' right to operate the Program derives from "congressionally permitted authorization" pursuant to "federal laws such as the FAHA, NEPA, and the Federal Transit Act," and is not "derive[d] from any contract." *Id.* at 665-67. The VPPP Agreement, in other words, is simply the vehicle through which FHWA made its "congressionally permitted authorization" that is protected by the Due Process Clause. *Id.*

In any event, protected property rights can arise out of contracts or agreements with the government. *See Toxco, Inc. v. Chu*, 801 F. Supp. 2d 1, 9 (D.D.C. 2011) (collecting cases); *Martz v. Inc. Vill. of Valley Stream*, 22 F.3d 26, 30 (2d Cir. 1994) (noting some public contracts "can confer a protectible benefit."). Where, as here, the government has limited (or no) authority to terminate the agreement, *see Duffy*, 784 F. Supp. 3d at 671, the property interest is even more likely to be constitutionally protected, *Toxco*, 801 F. Supp. 2d at 9-10.

Not surprisingly, Defendants' authorities are all inapposite. In *S & D Maintenance Co., Inc. v. Goldin*, the Second Circuit concluded that a contractor lacked a protectable due process right in receiving prompt payment for services rendered. 844 F.2d 962, 966-67 (2d Cir. 1988).

There, the court recognized that the action was essentially a claim for breach of contract, *id.* at 968, and that the claim was unrelated to "a state's revocation of a *status*." *Id.* (emphasis in original). What's more, the alleged "continuation right" under the contract in that case did not give rise to a property interest because termination was not conditioned or limited "by statute or contract." *Id.* at 967-68. Likewise, the contract at issue in *Contiguous Towing, Inc. v. State* had an explicit provision that allowed the Department of Transportation to cancel the agreement under certain circumstances, and as a "routine commercial agreement" it conferred no statutory rights. 202 F. Supp. 3d 269, 275-76 (E.D.N.Y. 2016). And even further off point, in *Tucker v. Darien Bd. of Educ.*, the court found that a medical benefit did not rise to the level of a protected property right because there was not "extreme dependence" on such benefits, so the claim was for an ordinary breach of contract. 222 F. Supp. 2d 202, 206 (D. Conn. 2002).[8]

**B. Defendants Purported to Terminate Without Any Meaningful Process**

Plaintiffs also satisfy Step Three because Defendants ostensibly deprived the property interest without due process—indeed, without any process whatsoever. Defendants point to the post-February 19 "notice and an opportunity to object." *See* Def. Mot. at 43. Yet this Court has already concluded that Defendants "consummated" the decision to rescind authorization and terminate the VPPP Agreement "at the latest" on February 19, 2025, a pronouncement they have never retracted, which means they deprived Plaintiffs of their protected property right *months* before purportedly offering any "process" on April 21, 2025. *Duffy*, 784 F. Supp. 3d at 657, 659. Regardless, even the April 21 Letter, which purports to offer notice and an opportunity to object, does not "signal reconsideration" nor does it bear any "markers of sincerity." *Id.* at 660. It is

[8] *Ove Gustavsson Contracting Co. v. Floete* contains no analysis of what creates a protectable property interest at all, as the case was largely concerned with whether officials of the federal government could be held personally liable for torts. 299 F.2d 655, 657-60 (2d Cir. 1962).

(belated) process "in name only." *Id.* Put simply, the conclusions of fact and law in both letters "implicate Plaintiff[s'] right to an opportunity to be heard in a "meaningful manner.'" *Ramirez-Medina v. U.S. Dep't of Homeland Sec.*, 313 F. Supp. 3d 1237 (W.D. Wash. 2018). That was never provided to Plaintiffs here.

Finally, Defendants argue that Plaintiffs somehow have received (or will receive) process because the T&C give them post-appeal and objection rights. But the VPPP Agreement is not governed by FHWA's T&C, which Defendants did not comply with in any event, Pls. Opp. at 41, and regardless, the provision they point to regarding appeal and objection rights concerns "non-compliance," which Defendants have never argued happened here. In other words, insofar as Defendants now rely on the T&C, their failure to allege non-compliance before terminating the Program would indeed be yet another violation of due process. *See F.C.C. v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012) ("[C]larity in regulation is essential to the protections provided by the Due Process Clause of the Fifth Amendment.")

## III. The Court Should Deny Defendants' Motion for Summary Judgment on Plaintiffs' Remaining Constitutional Claims

To the extent the Court deems it necessary to reach Plaintiffs' Spending Clause and Separation of Powers claims, Defendants' motion should be denied.

### A. Spending Clause and Tenth Amendment

As we previously explained, Congress must express conditions on the grant of federal moneys "unambiguously" in the governing statute, and a State cannot be deemed to accept a condition if it is "unable to ascertain what is expected of it." *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17 (1981). "[P]ost acceptance" or "retroactive," conditions, like those threatened by Secretary Duffy in the April 21 Letter, crash directly into the guarantees of the Tenth Amendment. *Id.* at 25. While 23 U.S.C. § 301 may be "longstanding," Defs. Mot. at 44, it certainly

does not contain the "unmistakably clear language" required to notify Plaintiffs that the continued operation of a federally authorized Program would subject them to the loss of federal approvals and billions of dollars in federal funding. *See Texas v. Cardona*, 743 F. Supp. 3d 824, 885 (N.D. Tex. 2024) (citing *Gregory v. Ashcroft*, 501 U.S. 452, 460 (1991)); *see also New York v. U.S. Dep't of Health & Hum. Servs*., 414 F. Supp. 3d 475, 568 (S.D.N.Y. 2019). *See generally Duffy,* 784 F. Supp. 3d at 673-75.

The Supreme Court in *Sebelius* was explicit that such new conditions on already appropriated funds are an unlawful "means of pressuring the States to accept policy changes." *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 580 (2012). Yet that is exactly what Defendants unabashedly attempt here. While Congress may have the authority to draft legislation "offering funds" that States can knowingly accept in consideration for compliance with certain conditions, Defs. Mot. at 45, the Supreme Court rejected the idea that the federal government could coerce states to comply with new policies by withholding "States' existing" funds. *Sebelius*, 567 U.S. at 580-81. And the threat to both suspend a Program *raising* $15 billion in revenue and withhold federal funding of up to $13.1 billion from the same $54.8 billion 2020-2024 Capital Plan is a threat to more than 50% of all of the MTA's funding for capital projects, thus is certainly coercive. *See Texas v. Yellen*, 105 F.4th 755, 768 (5th Cir. 2024) ("The point at which permissible inducement crosses over to impermissible coercion is not always easy to discern under the Supreme Court's precedent, but it lies somewhere between *Dole* [5% of funds under specified highway grant programs] and *NFIB* [10 percent of a State's overall budget.]"). Given Defendants' numerous enumerated threats, the amount of funding at issue here is likely even greater. Indeed,

it is no exaggeration to claim this is exactly the "gun to the head" inducement that the Supreme Court has held cannot stand under the Tenth Amendment. *Sebelius*, 567 U.S. at 581.[9]

**B. Separation of Powers**

Defendants are wrong that *Dalton v. Specter* forecloses Plaintiffs' Separation of Powers claim. *Dalton* "merely stands for the proposition that when a statute entrusts a discrete specific decision to the President and contains no limitations on the President's exercise of that authority, judicial review of an abuse of discretion claim is not available." *Chamber of Comm. v. Reich,* 74 F.3d 1322, 1331-32 (D.C. Cir. 1996) (citing *Dalton v. Specter*, 511 U.S. 462 (1994). *Dalton* is inapposite here, "where the claim instead is that the [Secretary] ... independently violate[d] ... a statute that delegates *no* authority to" engage in the challenged action. *Id.* at 1332 (emphasis added). In *Dalton* itself, the Court distinguished its decision from *Youngstown*, where the President acted in the "*absence of any statutory authority*." *Dalton*, 511 U.S. at 473 (emphasis in original) (citing *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 587 (1952)). There is no statute that entrusts the Secretary with discretion to withhold transportation funding from New York if Plaintiffs do not comply with the Administration's demands. Defendants' reliance on *Dalton* is thus "grossly inapt." *Rhode Island v. Trump*, 2025 WL 3251113, at *16 (D.R.I. Nov. 21, 2025). Secretary Duffy acted beyond his statutory authority in purporting to terminate the Program, but Defendants also violated the separation of powers by threatening to override Congress and withhold already appropriated funds in order to effectuate the President's policy goals. *New York v. U.S. Dep't of Health & Hum. Servs.,* 414 F. Supp. 3d 475, 562 (S.D.N.Y. 2019) ("Absent

---

[9] The April 21 Letter also threatened to suspend "further approvals of Statewide Transportation Improvement Program ('STIP') amendments concerning New York Metropolitan Transportation Council TIP modifications," and "further obligations of FHWA funds (both formula and competitive) for projects within New York City." ECF 83 at 17-19. These threatened withholdings threaten billions of dollars in annual congressionally appropriated funding the MTA receives from FTA and FHWA. *Id.* at 55-56.

congressional authorization, [an agency] may not redistribute or withhold properly appropriated funds in order to effectuate its own policy goals [without violating the separation of powers].") (alteration in original) (quoting *City and Cty. of San Francisco v. Trump*, 897 F.3d 1225, 1235 (9th Cir. 2018)). Just because the Secretary "*claims* that he [was] acting pursuant to" statute to impose the threatened compliance measures does not insulate Defendants from constitutional scrutiny. *Chamber of Comm.*, 74 F.3d at 1332 (emphasis in original).[10]

Dated: February 6, 2026
New York, New York

Respectfully submitted,

*_/s/ Roberta A. Kaplan_*
Roberta A. Kaplan
D. Brandon Trice
Maximilian T. Crema
KAPLAN MARTIN LLP
1133 Avenue of the Americas | Suite 1500
New York, NY 10036
Tel.: (212) 316-9500
rkaplan@kaplanmartin.com
btrice@kaplanmartin.com
mcrema@kaplanmartin.com

*_/s/ Mark A. Chertok_*
Mark A. Chertok
Elizabeth Knauer
John F. Nelson
SIVE, PAGET & RIESEL, P.C.
560 Lexington Avenue, 15th Floor
New York, NY 10022
Tel.: (212) 421-2150
mchertok@sprlaw.com
eknauer@sprlaw.com
jnelson@sprlaw.com

[10] Defendants' reliance on *Jafarzadeh v. Neilson* is also misplaced. Unlike in *Jafarzadeh*, Plaintiffs' separation of powers claim does not arise from "the same infirmities that underlie" their substantive APA claim. *Cf. Jafarzadeh v. Nielsen*, 321 F. Supp. 3d 19, 40 (D.D.C. 2018).

*Attorneys for Plaintiffs Metropolitan Transportation Authority and Triborough Bridge and Tunnel Authority*

*/s/ Nathan Taylor*___________
Nathan Taylor
New York City Law Department
100 Church Street
New York, New NY 10007
Tel.: (212) 356-2315
ntaylor@law.nyc.gov

*Attorneys for Intervenor-Plaintiff New York City Department of Transportation*

**CERTIFICATE OF COMPLIANCE**

This brief complies with the typeface and type-style requirements of Loc. R. 7.1(b) because it was prepared in a proportionally spaced typeface using Microsoft Word for Office 365 in size 12 Times New Roman font.

Dated: February 6, 2026
New York, New York

*/s/ Roberta A. Kaplan*
Roberta A. Kaplan

**CERTIFICATE OF SERVICE**

I, Roberta A. Kaplan, counsel for Plaintiffs the MTA and TBTA, and a member of the Bar of this Court, certify that on February 6, 2026, copies of the foregoing brief were filed with the Clerk through the Court's electronic filing system, which will send notice of such filing to all counsel of record.

Dated: February 6, 2026
New York, New York

*/s/ Roberta A. Kaplan*
Roberta A. Kaplan