

1133 Avenue of the Americas
Suite 1500
New York, New York 10036

(212) 316-9500
rkaplan@kaplanmartin.com

February 6, 2026

**BY CM/ECF**

The Honorable Lewis J. Liman
United States District Court
Southern District of New York
500 Pearl St.
New York, N.Y. 10007

      Re:    *Metro. Transp. Auth., et al. v. Duffy, et al.*, No. 25 Civ. 1413 (LJL)

Dear Judge Liman:

      We write on behalf of Plaintiffs the Metropolitan Transportation Authority and Triborough Bridge and Tunnel Authority (together, the "MTA Plaintiffs") to follow up on two questions posed by Your Honor at the oral argument on January 28, 2026 concerning: (1) Defendants' surplusage argument as to 2 C.F.R. § 200.340; and (2) the continuing relevance of the Environmental Assessment analyses.[1]  Defendants have informed us that they object to the submission of this letter and request the opportunity to respond.  The MTA Plaintiffs have no objection to the filing of a response of comparable length addressed to these issues.

     **I.**    **Defendants' Surplusage Argument Is Unavailing**

      Your Honor asked at the hearing on January 28 what additional authority exists for the MTA Plaintiffs' reading of 2 C.F.R. § 200.340: that the "including …" phrase in (a)(4) constitutes merely an "illustrative" example of when an agency can terminate an award, not language that is implicitly incorporated into every government award or contract.  The regulatory history confirms that the "including…" provision was added to (a)(4) to "underscore[] the need for agencies and pass-through entities to clearly and unambiguously communicate termination conditions in the terms and conditions of the award."  *Guidance for Federal Financial Assistance*, 89 Fed. Reg. 30046, 30089 (Apr. 22, 2024), https://www.federalregister.gov/d/2024-07496/p-588.[2]  While an

---

[1] The transcript of the January 28 oral argument has been ordered and is forthcoming.  We are prepared to make any further supplemental submissions the Court may require following the completion of the transcript.

[2] Prior to this amendment, 2 C.F.R. § 200.340(a)(1) stated that an award may be terminated "if a non–Federal entity fails to comply with the terms and conditions of a Federal award" and (a)(2) separately stated that it may be terminated "if an award no longer effectuates the program goals or agency priorities."  2 CFR § 200.340 (eff. Aug. 13, 2020 to

illustrative example may be somewhat redundant, that does not necessarily mean it is superfluous. *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 383, 385 (2013) (a "phrase is not superfluous if used to remove doubt about an issue") (cleaned up); *Fort Stewart Schools v. FLRA*, 495 U.S. 641, 646 (1990) (explaining that "technically unnecessary" examples may have been "inserted out of an abundance of caution"); *United States v. Escalera*, 957 F.3d 122, 136 n.18 (2d Cir. 2020) (superfluity canon should not be "woodenly applied" where "Congress may have simply intended to remove any doubt"); Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 176-77 (2012) (superfluity canon "can be appropriately discounted" where drafter engages "in the ill-conceived but lamentably common belt-and-suspenders approach").

As the Court noted at the January 28 hearing, Defendants' proposed interpretation of (a)(4) likewise creates superfluity.[3] Where a court is faced with two interpretations that arguably result in surplusage, the canon against superfluity is generally considered to be inapplicable. *See Marx*, 568 U.S. at 385; *see also Bufkin v. Collins*, 604 U.S. 369, 387 (2025) ("[W]hen both interpretations involve the same redundancy, the canon against surplusage simply does not apply."); *Bruesewitz v. Wyeth*, 562 U.S. 223, 236 (2011) ("The rule [against superfluity] applies only if verbosity and prolixity can be eliminated by giving the offending passage . . . a competing interpretation."). Indeed, the United States has itself argued in the context of (a)(4) that "the canon against surplusage is not an absolute rule." *See* Mem. of L. in Supp. of Defs.' Mot. to Dismiss, *New Jersey v. U.S. Off. Mgmt. & Budget*, 2025 WL 2952668 (D. Mass. Sept. 11, 2025) (quoting *Marx*, 568 U.S. at 385).[4]

---

Sept. 30, 2024). According to OMB, it had initially intended to remove this prior version of (a)(2) entirely in order to eliminate "unnecessary language because section 200.340 still allowed agencies to terminate a Federal award according to the terms and conditions of the award." *Id.* After one commenter suggested that "a pass-through entity that included a 'termination for convenience' clause in its subaward should still be able to terminate based on that clause," however, "OMB revised paragraph (a)(4)" to clarify that a Federal award "may include a term and condition allowing termination by the Federal agency … if an award no longer effectuates the program goals or agency priorities." *Id.*

[3] First, it would read "pursuant to the terms and conditions of the Federal award" out of (a)(4). Under Defendants' interpretation, (a)(4) could read: "By the Federal agency or pass-through entity … if an award no longer effectuates the program goals or agency priorities." Second, it leaves the "to the extent authorized by law" clause—which grammatically limits the word "including"—without any meaning. That clause serves a purpose if "including" illustrates when an agency *may* terminate an award pursuant to the award's terms and conditions, because it interposes a limitation on when termination is permissible. But it is superfluous if a termination-for-convenience provision is incorporated automatically (as Defendants propose) under the language of (a)(4). Third, and most importantly, Defendants' reading would render superfluous the many other provisions circumscribing when agencies can terminate existing awards. *See* 2 C.F.R. § 200.340(a)(1)-(3) (federal award may be terminated if "recipient ... fails to comply with the terms and conditions"; upon "the consent of the recipient"; or "[b]y the recipient ... upon sending ... a written notification of the reasons"); *id.* § 200.340(b) (requiring the federal agency to "clearly and unambiguously specify all termination provisions in the terms and conditions of the Federal award"). And Defendants' position reads the word "including" entirely out of the regulation, replacing it with an imaginary "or," thereby effectively rendering it superfluous.

[4] Courts have continued to adopt the MTA Plaintiffs' proposed reading of (a)(4) since the conclusion of summary judgment briefing. *See City of Chicago v. U.S. Dep't of Homeland Sec.*, 2025 WL 3043528, at *18 (N.D. Ill. Oct. 31, 2025) (citing *Metro. Transp. Auth. v. Duffy*, 784 F. Supp. 3d 624, 670 (S.D.N.Y. 2025)); *Washington v. U.S. Dep't of Com.*, 2025 WL 2978822, at *7 (W.D. Wash. Oct. 22, 2025).

## II.   The Continuing Relevance of the Environmental Assessment Analyses

To respond to the Court's question about the longevity of National Environmental Policy Act ("NEPA") analyses, even if Defendants could otherwise use the 2023 Environmental Assessment's ("EA") analysis of the no-action alternative as the basis for a new NEPA determination (which has neither been made, nor even articulated by the agency outside of briefing in this litigation), the data and assumptions underlying the 2023 analysis are no longer germane.

FHWA must reevaluate the validity of a prior EA and Finding of No Significant Impact due to "changes to the proposed action, new information or circumstances, or [if] there is a lapse of time between preparation of the environmental document and implementation of the action." FHWA Guidance, available at https://www.transit.dot.gov/sites/fta.dot.gov/files/docs/regulations-and-guidance/environmental-programs/133526/nepa-re-evaluation-guidance-8-14-2019.pdf; *see also* 23 C.F.R. § 771.129. The regulation and guidance require written documentation of such evaluation after a passage of three years from issuance of an Environmental Impact Statement, indicating a presumption that NEPA analyses more than three years old have questionable validity. *See* FHWA Guidance at 2; 23 C.F.R. § 771.129(a)-(b). The reevaluation must occur "prior to…amending any previously approved aspect of an action." 23 C.F.R. § 771.129. The recent Congestion Relief Zone Tolling First Evaluation Report, issued just last month, draws from a year's worth of data to describe a new status quo in which the Program has been fully operational, and against which the results of the purported termination would have to be compared. Failure to consider the impacts of a departure from the current status quo violates FHWA's obligation to take a "hard look" at relevant data. *See Mulgrew v. U.S. Dep't of Transp.*, 750 F. Supp. 3d 171, 200 (S.D.N.Y. 2024) (Liman, J.).

Respectfully submitted,

Roberta A. Kaplan

cc:   Counsel of Record (via CM/ECF)