

**U.S. Department of Justice**

*Civil Division*
*Federal Programs Branch*

---

*1100 L St NW*
*Washington, D.C. 20012*

February 12, 2026

**BY ECF**
The Honorable Lewis J. Liman
United States District Court
Southern District of New York
500 Pearl Street, Courtroom 15C
New York, NY 10007

   Re: *MTA, et al. v. Duffy, et al.*, No. 25 Civ. 1413 (LJL)

Dear Judge Liman:

  We represent Defendants in the above-captioned case. We write to respond to Plaintiffs' letter regarding surplusage and the relevance of the NEPA analyses. ECF 189; *see* ECF 191.

  To begin, Defendants object to Plaintiffs' attempt to supplement long-closed briefing on subjects beyond those specifically directed by the Court at the hearing on the competing motions for summary judgment—and, indeed, on one subject (NEPA) that Plaintiffs chose *not* to press in their pending motion. *See* Tr. of Jan. 28 Hr'g 66:24-25 ("I also am going to want supplemental briefing *with respect to the constitutional due process argument* . . . ." (emphasis added)); ECF 152 at 5-6 n.7 ("Plaintiffs do not seek judgment with respect to their . . . NEPA claim[ ] at this time . . . ."). Such belated supplementation is improper. *See Generation Next Fashions Ltd. v. JP Morgan Chase Bank, NA.*, 698 F. Supp. 3d 663, 677 (S.D.N.Y. 2023).

  To the extent the Court considers Plaintiffs' submission, their arguments fail.

**I. Defendants' interpretation of "including" is supported by case law and does not result in surplusage.**

  The following cases support Defendants' reading of 2 C.F.R. § 200.340 that the "including" phrase in (a)(4) incorporates "when an award no longer effectuates the program goals or agency priorities" as a ground for termination in contracts or grants that reference or rely on 2 C.F.R. § 200.340: *Am. Ass'n of Colleges for Tchr. Educ. v. McMahon*, 770 F. Supp. 3d 822, 853 (D. Md. 2025) (analyzing grants as if the term "an award no longer effectuates the program goals or agency priorities" was incorporated into a grant, even though the term was not explicitly stated in grant itself); *Am. Pub. Health Ass'n v. Nat'l Insts. of Health*, 786 F. Supp. 3d 237, 256 (D. Mass. 2025) (same); *Louisiana Delta Serv. Corps v. Corp. for Nat'l & Cmty. Serv.*, No. CV 25-378-JWD-RLB, 2025 WL 1787429, at *26 (M.D. La. June 27, 2025) (similar).

  And in *Urban Sustainability Directors Network v. USDA*, No. CV 25-1775 (BAH), 2025 WL 2374528, at *29 (D.D.C. Aug. 14, 2025), the D.C. district court explicitly rejected the arguments Plaintiffs make here. In *Urban Sustainability*, the award only referenced 2 C.F.R. § 200.340 without including explicit grounds for termination. Plaintiffs argued that "defendants had to 'clearly and unambiguously' include as a ground for termination that the award 'no longer

effectuates the program goals or agency priorities' in the actual terms and conditions of the award." *Id.* The Court held that "any reference to the general provision, of which § 200.340(a)(4) is a subpart, clearly incorporates that sub-provision's rationale for termination, despite not explicitly spelling that out." *Id.* In other words, the court held that the reference to 2 C.F.R. § 200.340 incorporated authority to terminate if the award no longer effectuated agency policies.

Indeed, the word "include" means "[t]o contain as a part of something." INCLUDE, Black's Law Dictionary (12th ed. 2024). Substituting this definition into the regulation, termination is allowed "pursuant to the terms and conditions of the Federal award, **containing as part of [the terms and conditions]**, to the extent authorized by law, if an award no longer effectuates the program goals or agency priorities." *Id.*; 2.C.F.R. § 200.340.

Plaintiffs argue that OMB Guidance states that the "including" provision was added to (a)(4) to "underscore[] the need for agencies and pass-through entities to clearly and unambiguously communicate termination conditions in the terms and conditions of the award." ECF 189 (citing Guidance for Federal Financial Assistance, 89 Fed. Reg. 30046, 30089 (Apr. 22, 2024), https://www.federalregister.gov/d/2024-07496/p-588). That may be so—but, at the very least, the termination condition was clearly and unambiguously communicated by the explicit reference to 2 C.F.R. § 200.340 as part of FWHA's terms and conditions. "Unambiguous" does not mean "verbatim" or "explicit." A reference may have an unambiguous meaning without having the explicit terms laid out—"[h]ere, any reference to the general provision, of which § 200.340(a)(4) is a subpart, clearly incorporates that sub-provision's rationale for termination, despite not explicitly spelling that out." *Urban Sustainability*, 2025 WL 2374528 at *29.

Plaintiffs also argue that Defendants' interpretation of 2.C.F.R. § 200.340(a)(4) results in surplusage. ECF 189. It does not. First, it does not read "pursuant to the terms and conditions of the Federal award" out of (a)(4) because the terms and conditions of the Federal award can limit or add additional grounds for termination—(a)(4) is just the default. Second, it does not read out "to the extent authorized by law" because this accommodates meaningful guardrails on what the agency considers its program goals or agency policies, or how the agency may change them. *E.g.*, *Louisiana Delta Serv. Corps*, 2025 WL 1787429, at *26 (noting that applicable statute set forth priorities and constrained agency discretion to change them). An agency could not rely on a program goal that was explicitly prohibited by statute, for example. Finally, it does not render superfluous other grounds for termination. For example, a grant or contract may advance a valid agency goal but still be terminated if the "recipient . . . fails to comply with the terms and conditions"; upon "the consent of the recipient"; or any other terms included in the grant or contract, or in incorporated terms and conditions. Because Defendants interpretation does not render any phrase superfluous, the canon against superfluity only applies against Plaintiffs interpretation and favors Defendants' interpretation.

## II.    The NEPA analyses remain relevant.

Plaintiffs argue—improperly, for the first time in this litigation—that the prior NEPA analyses, which include the environmental assessment (EA) and finding of no significant impact (FONSI) are "no longer germane" because "NEPA analyses more than three years old have questionable validity." ECF 189. That is incorrect both factually and legally.

First, the NEPA analyses relied upon by Defendants were issued on June 23, 2023 (FONSI), DOT_0000361, and May 7, 2023 (EA), DOT_0003544. Even under Plaintiffs' reading of FHWA regulations and guidance, the NEPA analyses would still be less than three years old.

Moreover, FHWA conducted two reevaluations of its EA, in June 2024 and November 2024, as reflected on Plaintiff MTA's own website.[1]

In any event, FHWA's regulations do not require the constant reevaluation Plaintiffs posit. 23 C.F.R. § 771.129 provides that "[t]he Administration must determine, prior to granting any new approval related to an action or amending any previously approved aspect of an action, including mitigation commitments, whether an approved environmental document remains valid as described in this section." Here, there was no new approval—thus, no re-evaluation was required. And 23 C.F.R. § 771.129(d) provides that "[f]or tiered EAs or EISs, if the second tier occurs 5 or more years after the first tier document, the applicant in consultation with the Administration, must re-evaluate the analysis and any underlying assumptions of the first tier EIS or EA to ensure reliance on the analysis remains valid."

Rejecting Plaintiffs' arguments also accords with relevant precedent. Supplemental NEPA analysis is required only "if the new information is sufficient to show that the remaining action will affect[t] the quality of the human environment in a significant manner or to a significant extent not already considered." *Marsh v. Or. Nat. Res. Council*, 490 U.S. 360, 374 (1989). And agencies are entitled to deference in determining whether an action will cause such significant impacts. *Seven Cnty. Infrastructure Coal. v. Eagle Cnty.*, 605 U.S. 168, 180 (2025). In other words, the mere passage of time is not a reason for requiring the preparation of a supplemental EIS. *See Coker v. Skidmore*, 941 F.2d 1306, 1310 (5th Cir. 1991) (citing *Sierra Club v. U.S. Army Corps of Eng'rs*, 701 F.2d 1011, 1036 (2d Cir. 1983)). That is so because a contrary rule like Plaintiffs' would, as a practical matter, require constant, burdensome, and unnecessary reevaluation.

Plaintiffs also argue that a recent Congestion Relief Zone Tolling First Evaluation Report needs to be considered by FHWA. Under Plaintiffs' theory of final agency action, Defendants could not have considered this report, only issued last month, before terminating the agreement last year. And under Defendants', because the agency has not finally acted, FHWA may still consider this report if necessary. Even if FHWA does not consider the report, this Court previously recognized the current NEPA review "which spanned four years and yielded an administrative record of more than 45,000 pages" amounts to a "hard look" at the impact of a congestion pricing program. *Mulgrew v. U.S. Dep't of Transp.*, 750 F. Supp. 3d 171, 200 (S.D.N.Y. 2024); *see* ECF 132 at 88-93.

And "even if an agency's NEPA analysis "falls short in some respects"—which it does not here—courts may not vacate the agency's final action absent evidence that the agency might have "disapprove[d] the project if it added more" to its NEPA analysis. *Seven Cnty.*, 605 U.S. at 169. There is no evidence that FHWA would have acted differently if Plaintiffs had submitted and the agency had considered this report.[2] Indeed, DOT did not initially notice termination based on the project's potential effects *on congestion*.

---

[1] FHWA, CBDTP Reevaluation 2 (Nov. 2024), *available at* https://www.mta.info/document/158191; FHWA, CBDTP Reevaluation (June 2024), *available at* https://www.mta.info/document/142711; *see* MTA, Central Business District Tolling Program, https://www.mta.info/project/CBDTP (cataloguing NEPA materials).

[2] To the contrary, it appears from the report that the project may not be meeting certain performance metrics set forth in Attachment B to the VPPP Agreement.

Respectfully,

BRETT A. SHUMATE
Assistant Attorney General

YAAKOV M. ROTH
Principal Deputy Assistant Attorney General

ERIC J. HAMILTON
Deputy Assistant Attorney General
Civil Division

STEPHEN M. ELLIOTT
Assistant Branch Director

MICHAEL BRUNS
SAMUEL S. HOLT
Trial Attorneys
Federal Programs Branch

*/s/ Charles E.T. Roberts*
CHARLES E.T. ROBERTS
Counsel to the Assistant Attorney General
Civil Division
950 Pennsylvania Ave., NW
Washington, DC 20530
Telephone: 202-305-1141
Email: charles.roberts2@usdoj.gov

cc: All Counsel of Record (via ECF)