**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

METROPOLITAN TRANSPORTATION AUTHORITY and TRIBOROUGH BRIDGE AND TUNNEL AUTHORITY,

*Plaintiffs*,

and

NEW YORK STATE DEPARTMENT OF TRANSPORTATION, RIDERS ALLIANCE, SIERRA CLUB, and NEW YORK CITY DEPARTMENT OF TRANSPORTATION,

*Intervenor-Plaintiffs*,

v.

SEAN DUFFY, in his official capacity as Secretary of the United States Department of Transportation, GLORIA M. SHEPHERD, in her official capacity as Executive Director of the Federal Highway Administration, UNITED STATES DEPARTMENT OF TRANSPORTATION, and FEDERAL HIGHWAY ADMINISTRATION,

*Defendants*.

Case No. 25 Civ. 1413 (LJL)

**ORAL ARGUMENT REQUESTED**

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR FURTHER RELIEF UNDER 28 U.S.C. § 2202 AND FOR LIMITED DISCOVERY**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..... ii

PRELIMINARY STATEMENT ..... 1

FACTUAL AND PROCEDURAL BACKGROUND ..... 2

ARGUMENT ..... 6

I. Defendants' Statement of Interest Violates this Court's Declaratory Judgment and Warrants the Entry of a Permanent Injunction ..... 6

A. The Court Should Hold that Defendants Have Violated the Declaratory Judgment ..... 6

B. The Court Should Enter a Permanent Injunction ..... 11

II. Limited Discovery Is Appropriate to Determine Whether Defendants Have Further Violated the Court's Orders ..... 11

A. The Court Has Authority to Order Discovery ..... 11

B. The Existing Record Raises Significant Questions Regarding Defendants' Compliance ..... 13

CONCLUSION ..... 15

# TABLE OF AUTHORITIES

## CASES

*Abdi v. Nielsen*,
287 F. Supp. 3d 327 (W.D.N.Y. 2018) ........................................ 10

*AlSayer v. OmniX Labs, Inc.*,
2025 WL 3496276 (S.D.N.Y. Dec. 5, 2025) ........................................ 10

*Angell v. U.S. Army Corps of Eng'rs*,
149 F. App'x 34 (2d Cir. 2005) ........................................ 10

*Baldwin v. Iowa State Traveling Men's Ass'n*,
283 U.S. 522 (1931) ........................................ 7, 10

*BlackBerry Ltd. v. Typo Prods. LLC*,
2014 WL 4136586 (N.D. Cal. Aug. 21, 2014) ........................................ 12

*Blumencranz v. Hochul*,
No. 25 Civ. 1787 (S.D.N.Y.) ........................................ 9

*Cal. Dep't of Soc. Servs. v. Leavitt*,
523 F.3d 1025 (9th Cir. 2008) ........................................ 12, 13

*Chevron Corp. v. Donziger*,
325 F. Supp. 3d 371 (S.D.N.Y. 2018) ........................................ 12

*City of Oakland v. Lynch*,
798 F.3d 1159 (9th Cir. 2015) ........................................ 14

*Damus v. Nielsen*,
328 F.R.D. 1 (D.D.C. 2018) ........................................ 12

*Does v. Trump*,
328 F. Supp. 3d 1185 (W.D. Wash. 2018) ........................................ 13

*Dunne v. Metro. Transp. Auth.*,
No. 25 Civ. 18105 (D.N.J.) ........................................ *passim*

*FTC v. Standard Oil Co. of Cal.*,
449 U.S. 232 (1980) ........................................ 14

*Giannone v. York Tape & Label, Inc.*,
548 F.3d 191 (2d Cir. 2008) ........................................ 7

*Halet v. Wend Inv. Co.*,
672 F.2d 1305 (9th Cir. 1982) ........................................................................................ 13

*Harborside Refrigerated Servs., Inc. v. Vogel*,
959 F.2d 368 (2d Cir. 1992)............................................................................................... 7

*Kidder, Peabody & Co. v. Maxus Energy Corp.*,
925 F.2d 556 (2d Cir. 1991)....................................................................................... 10, 11

*Metro. Transp. Auth. v. Duffy*,
No. 26-1213 (2d Cir.)......................................................................................................... 7

*Metro. Transp. Auth. v. Duffy*,
___ F. Supp. 3d ___, 2026 WL 588117 (S.D.N.Y. Mar. 3, 2026)............................................. 8

*Metro. Transp. Auth. v. Duffy*,
784 F. Supp. 3d 624 (S.D.N.Y. 2025)......................................................................... 3, 8, 14

*Montana v. United States*,
440 U.S. 147 (1979)......................................................................................................... 15

*O.A. v. Trump*,
404 F. Supp. 3d 109 (D.D.C. 2019) .................................................................................. 10

*Scottsdale Capital Advisors v. SEC*,
183 F.4th 1302 (10th Cir. 2026) ....................................................................................... 14

*Starter Corp. v. Converse, Inc.*,
170 F.3d 286 (2d Cir. 1999)............................................................................................... 7

*State of N.Y. v. Shore Realty Corp.*,
763 F.2d 49 (2d Cir. 1985)............................................................................................... 12

*United States v. N.Y. Tel. Co.*,
434 U.S. 159 (1977)......................................................................................................... 11

*United States v. Nichols*,
56 F.3d 403 (2d Cir. 1995)............................................................................................... 10

*United States v. Real Property & Premises Known as 63-39 Trimble Road*,
860 F. Supp. 72 (E.D.N.Y. 1994) ..................................................................................... 11

*United States v. Stauffer Chem. Co.*,
464 U.S. 165 (1984)......................................................................................................... 10

*Vermont Structural Slate Co. v. Tatko Brothers Slate Co.*,
253 F.2d 29 (2d Cir. 1958) .......... 7

*Yamaha Corp. of Am. v. United States*,
961 F.2d 245 (D.C. Cir. 1992) .......... 9

**STATUTES & REGULATIONS**

23 U.S.C. § 301 .......... 9

28 U.S.C. § 1651(a) .......... 11

28 U.S.C. § 2201 .......... 2, 7

28 U.S.C. § 2202 .......... 1, 5, 6, 11

2 C.F.R. § 200.340(a)(4) .......... 3

**RULES**

Fed. R. Civ. P. 13(a)(1)(A) .......... 10

**OTHER AUTHORITIES**

Restatement (Second) of Judgments § 27 .......... 9

Restatement (Second) of Judgments § 33 .......... 7

Daniel Huff, *Sue, Settle, Rinse, Repeat*, FEDERALIST SOCIETY BLOG (Nov. 20, 2024),
https://perma.cc/P3P7-4BBM .......... 4

Donald J. Trump (@realDonaldTrump), TRUTH SOCIAL (Aug. 11, 2026),
https://truthsocial.com/@realDonaldTrump/117077620225720641 .......... 5

Plaintiffs the Metropolitan Transportation Authority (the "MTA") and Triborough Bridge and Tunnel Authority ("TBTA"; and together with the MTA, the "MTA Plaintiffs") respectfully submit this memorandum of law in support of their motion for further relief under 28 U.S.C. § 2202 and for expedited discovery concerning whether Defendants have circumvented or violated the Court's preliminary injunction and declaratory judgment.[1]

## PRELIMINARY STATEMENT

On November 3, 2025, President Trump publicly directed Secretary Duffy to "take a good, long look at terminating" New York's congestion pricing program (the "Program"), notwithstanding that this Court had already held that the Program was likely authorized under the VPPP statute and entered a preliminary injunction to that effect. Four weeks later, a group of plaintiffs with close ties to the Trump Administration filed *Dunne v. MTA*, No. 25 Civ. 18105 (D.N.J.) ("*Dunne*"), seeking precisely what this Court had enjoined Defendants—and those "in active concert or participation" with them—from accomplishing: termination of the Program. That sequence of events was suspicious enough. But the signs of improper coordination have become undeniable in recent days.

On August 11, 2026, President Trump renewed his public demand that the Program be stopped, ignoring this Court's judgment upholding the Program and Defendants' failure to appeal the issue of whether the Program is authorized under the VPPP statute. Three days later, the same Civil Division attorneys who represent Defendants in this action filed a Statement of Interest in *Dunne*, asking the District of New Jersey to hold the Program unlawful under statutory theories Defendants could have raised in this case. And remarkably, during a conference before Your

[1] Unless otherwise noted herein, all capitalized terms have the same meaning as provided in the MTA Plaintiffs' briefing on their motion for partial summary judgment (ECF 152, 168, 187).

Honor on August 19, Defendants did not deny that they may be coordinating with that separate challenge to the Program, via proxies in another forum, which they effectively said was permitted.

Defendants are wrong. Under basic principles of collateral estoppel and judicial review of agency action, Defendants were required to litigate the lawfulness of the Program in this action, now on appeal in the Second Circuit. By filing the Statement of Interest, Defendants violated the declaratory judgment. In addition, the MTA Plaintiffs seek narrow, targeted discovery into Defendants' potential coordination with the plaintiffs in *Dunne* to determine whether Defendants further violated the Court's preliminary injunction or are otherwise undermining the finality of this Court's judgment. The MTA Plaintiffs do not ask this Court to decide the merits of *Dunne* or bind the *Dunne* plaintiffs. We ask only that the Court (1) confirm the effect of its own declaratory judgment with respect to the governmental parties to this action; and (2) permit modest discovery to determine whether this Court's orders are being circumvented in other ways.

The MTA Plaintiffs specifically seek relief on two independent grounds. First, the Court should enter an order holding that Defendants violated the declaratory judgment by filing the Statement of Interest, and should convert its declaratory judgment to a permanent injunction in order to eliminate any apparent confusion in that regard. Second, the timing, connections, and Defendants' own statements at the August 19, 2026 conference provide cause to believe that Defendants are coordinating with the *Dunne* plaintiffs to obtain by proxy what the Court's orders bar them from seeking, so discovery is warranted to investigate the scope of any such coordination.

## FACTUAL AND PROCEDURAL BACKGROUND

This Court is familiar with the factual and procedural background as set forth in the MTA Plaintiffs' August 17, 2026 letter requesting leave to take discovery, ECF 201, this Court's May 28, 2025 Opinion and Order, ECF 132, and this Court's March 3, 2026 Opinion and Order, ECF 195.

In brief, the MTA Plaintiffs commenced this action on February 19, 2025, after Secretary Duffy sent a letter purporting to rescind federal approval for the Program and terminate the VPPP Agreement, ECF 87-5 (the "February 19 Letter"), asserting that the Program's cordon-pricing structure exceeded the scope of the VPPP statute, and that the tolls had been impermissibly set primarily to raise revenue for the MTA's transit system. Apparently recognizing the weakness of his statutory arguments, the Secretary shifted focus in a second letter dated April 21, 2025, ECF 87-10 (the "April 21 Letter"), which purported to invoke new, independent grounds for termination, including that the Agreement no longer "effectuate[d] the program goals or agency priorities" under 2 C.F.R. § 200.340(a)(4).

On May 28, 2025, this Court entered a preliminary injunction barring Defendants and "all other persons who are in active concert or participation with any of the foregoing" from "taking any agency action founded on the February 19, 2025 letter . . . including any action to enforce compliance with or implement (1) the February 19 Letter, (2) Defendants' purported termination of the VPPP Agreement, or (3) Defendants' purported termination of the Tolling Program." ECF 132. In granting that injunction, the Court rejected Defendants' statutory arguments, observing that Defendants did not "offer a full-throated defense" of their initial statutory claims. *Id.* at 62. At oral argument, the Court asked counsel for Defendants whether Defendants would abide by the terms of the Court's order. Tr. of May 27, 2025 Conf. at 65:11-13. Counsel replied that they would. *Id.*

On November 3, 2025, while this Court's preliminary injunction remained in effect, the President posted on social media directing Secretary Duffy to "take a good, long look at terminating" the Program. ECF 195 at 146. Four weeks later, on December 2, 2025, a putative

class action was filed in the District of New Jersey, *Dunne v. MTA*, seeking to declare the Program unlawful on the theory that it is not authorized under the VPPP statute.

On January 9, 2026, the MTA and TBTA moved to transfer *Dunne* to this District, pointing to both the overlap in claims between *Dunne* and this action, and the apparent ties between Defendants and the *Dunne* plaintiffs. *Dunne*, ECF 33-1. Specifically, named plaintiff Richard Manjarres works in the Executive Branch as a political appointee,[2] and named plaintiff Tamara Lashchyk is a former Republican candidate for the New York State Assembly.[3] They are represented by Michael B. Lavery, former Chairman of the New Jersey Republican State Committee, and Daniel Huff, who previously worked in the White House selecting attorneys for roles in the Justice Department. *Id.* at 3.[4] In opposing transfer, the *Dunne* plaintiffs represented that there was "*no* overlap on the plaintiffs' side *at all*" with the parties here, and that the issues in *Dunne* had "never been asserted, argued or otherwise presented" before this Court. *Dunne*, ECF 39 at 10, 12. The District of New Jersey credited those representations in denying transfer. *Dunne*, Tr. of June 1, 2026 Conf. at 16:14-17, 17:20-25.[5]

On March 3, 2026, this Court granted partial summary judgment to the MTA Plaintiffs, rejecting Defendants' arguments that the Program is not authorized under the VPPP, and holding

---

[2] Mr. Manjarres's LinkedIn profile reflects that he is currently a Senior Advisor in the Department of the Treasury and at the time *Dunne* was filed was a Senior Advisor at the Government National Mortgage Association. *See* https://www.linkedin.com/in/richardmanjarres/.

[3] Tamara Lashchyk, Ballotpedia, https://ballotpedia.org/Tamara_Lashchyk.

[4] Mr. Huff has previously described a "litigation feedback loop between regulators and activists," in which DOJ joins cases as a supporting force, filing briefs and lending government authority, so that combined public and private pressure achieves what the government could not obtain directly. Daniel Huff, *Sue, Settle, Rinse, Repeat*, FEDERALIST SOCIETY BLOG (Nov. 20, 2024), https://perma.cc/P3P7-4BBM.

[5] The District of New Jersey admonished the *Dunne* plaintiffs for certifying, in their Complaint, that it was "not the subject of any other action pending in any court," even though the Complaint drew on facts from this docket. *Dunne*, ECF 1 at 16 ¶ 52; *compare id. with Dunne*, ECF 33-2 ¶¶ 38, 40; *Dunne*, Tr. of Feb. 11, 2026 Conf. at 8:6-17 (the Court: "don't play that game with me").

that the Secretary lacked authority to terminate the VPPP Agreement except according to its own terms. ECF 195 at 148-49. Notably, the Court held that the Program is authorized by the VPPP statute, which "clearly includes an area wide, or cordon, program within its ambit." ECF 195 at 74. The Court vacated the February 19 and April 21 Letters and entered a declaratory judgment that the Secretary "is permitted to terminate the VPPP Agreement only pursuant to the terms expressly stated therein, that the Defendants' termination of the VPPP Agreement was unlawful, and that any attempt to enforce the February 19 Letter or April 21 Letter would be unlawful." *Id.* at 144, 148-49. The Court declined to convert the preliminary injunction into a permanent one, explaining that the record "provided no evidence that [Defendants] will not abide by the Court's orders including the declaratory judgment," *id.* at 147, but also emphasizing that this did not "leave the Plaintiffs without remedy if they believe the Defendants take action that violates the Court's declaratory judgment," and that the Court remained "open to provide '[f]urther necessary or proper relief'" under 28 U.S.C. § 2202, *id.*

On May 20, 2026, the MTA and TBTA moved to dismiss the *Dunne* complaint. *Dunne*, ECF 50. The *Dunne* plaintiffs opposed the motion on August 7, 2026. *Dunne*, ECF 60 at 9 n.3. Four days later, on August 11, 2026, President Trump posted that the Program "doesn't work in America, and must be stopped, NOW!" Donald J. Trump (@realDonaldTrump), Truth Social (Aug. 11, 2026). In what appears unlikely to be a mere coincidence, three days later, on August 14, 2026, two Civil Division attorneys who represent Defendants here filed a 23-page Statement of Interest in *Dunne* on behalf of the United States. *Dunne*, ECF 64.

In language that will be very familiar to this Court, the Statement of Interest explains that "the Trump Administration [] has concluded that this 'cordon pricing' program imposes a disproportionate financial hardship" on drivers, urging the District of New Jersey to hold that the

Program is not authorized under the VPPP statute. *Id.* at 1. It advances two arguments that it concedes are "contrary to positions previously taken by DOT," *id.* at 2, namely that: (1) the VPPP statute authorizes tolling only on the "Interstate System"; and (2) the VPPP statute authorizes tolling only "as part of" a project that receives federal funding, *id.* at 7-21. The first argument overlaps—and is incompatible—with this Court's holding that the VPPP statute authorizes cordon pricing programs that "charge a price for access to the tolled area and [] limit congestion in that area." ECF 195 at 74. Both arguments, however, could have been pressed by Defendants here, either in their defense or in a counterclaim, but were not raised at all.

On August 17, 2026, the MTA Plaintiffs wrote to this Court requesting a pre-motion conference for leave to take limited, expedited discovery concerning Defendants' apparent coordination with the *Dunne* plaintiffs. ECF 201. Defendants responded on August 19, 2026, opposing discovery. ECF 205. At a conference held the same day, counsel for Defendants did not deny that they coordinated with the *Dunne* plaintiffs, stating "[f]iling a statement of interest, even coordinating with another party, is not terminating the VPPP agreement on the bases of the February letter, which was the scope of the preliminary injunction." Tr. of Aug. 19, 2026 Conf., ECF 207 ("Conf. Tr.") at 9:16-19.

## ARGUMENT

### I. Defendants' Statement of Interest Violates this Court's Declaratory Judgment and Warrants the Entry of a Permanent Injunction

#### A. The Court Should Hold that Defendants Have Violated the Declaratory Judgment

As an initial matter, the record is already sufficient for the Court to enter an order pursuant to 28 U.S.C. § 2202 holding that Defendants violated the declaratory judgment, which states: "the Secretary is permitted to terminate the VPPP Agreement *only pursuant to the terms expressly stated therein*, that the Defendants' termination of the VPPP Agreement was unlawful, and that

any attempt to enforce the February 19 Letter or April 21 Letter would be unlawful." ECF 195 at 148 (emphasis added). The Court entered the declaratory judgment to prevent Defendants from engaging in a "redo" of their attempt to terminate the Program, *id.* at 144—but that is precisely what Defendants are attempting in *Dunne*.

Whether the Program is lawfully authorized under the VPPP was directly presented and decided in this case. The Court's declaratory judgment requires the federal government to recognize the MTA Plaintiffs' adjudicated rights unless and until that judgment is reversed on appeal. Defendants were free to seek reversal of Your Honor's decision in the Second Circuit—yet they elected only to appeal on other grounds.[6] Having litigated and lost the statutory authorization question in this forum, Defendants cannot now again pursue that argument before a different federal district court as a collateral attack on the Program. Although the MTA Plaintiffs do not at present seek a contempt finding, the Court can and should hold that Defendants have violated the Judgment.

A declaratory judgment "shall have the force and effect of a final judgment or decree." 28 U.S.C. § 2201(a). Its conclusive effect extends to the "matters declared" and the issues "actually litigated . . . and determined." *Giannone v. York Tape & Label, Inc.*, 548 F.3d 191, 194-95 (2d Cir. 2008) (quoting Restatement (Second) of Judgments § 33 (1982)); *see also Harborside Refrigerated Servs., Inc. v. Vogel*, 959 F.2d 368, 372-73 (2d Cir. 1992). Once such an issue has been decided, it is "forever settled as between the parties." *Baldwin v. Iowa State Traveling Men's Ass'n*, 283 U.S. 522, 525 (1931).

[6] Defendants on appeal primarily argue that this Court lacked jurisdiction to adjudicate this dispute under the Tucker Act and that its declaratory judgment is overbroad. *Metro. Transp. Auth. v. Duffy*, No. 26-1213 (2d Cir.), Dkt. No. 30.

Section 2202 empowers a court that entered a declaratory judgment to enforce it in precisely these circumstances. In *Vermont Structural Slate Co. v. Tatko Brothers Slate Co.*, for instance, the losing party continued prosecuting an already-pending action in another federal court based on a position rejected by the declaratory judgment. 253 F.2d 29, 29-30 (2d Cir. 1958). The Second Circuit held that § 2202 gave the rendering court "ample residual power" to enjoin that prosecution even though its original decree contained no injunction. *Id.* at 30; *see also Starter Corp. v. Converse, Inc.*, 170 F.3d 286, 298-99 (2d Cir. 1999) (§ 2202 permits a court to enforce a declaratory judgment through "injunction, damages and other relief"). The relief sought here is narrower: the MTA Plaintiffs ask only that this Court hold that by asserting new statutory interpretations of the VPPP statute against the MTA Plaintiffs in litigation, Defendants did not comply with the judgment.

Again, the statutory authorization of the Program under the VPPP statute was directly presented and decided here. The February 19 Letter purported to terminate the VPPP Agreement because, according to Secretary Duffy, "FHWA lacked statutory authority to approve the cordon pricing tolling under the CBDTP pilot project." Feb. 19 Ltr. at 3. The MTA Plaintiffs challenged that determination as contrary to law, alleging that the Program was authorized under the VPPP statute and addressing the statute's text, history, and longstanding administrative interpretation at length. *See* SAC ¶¶ 80-169, 228-36. Defendants responded that the Program was unprecedented, inconsistent with Congress's intent, and subject to statutory "deficiencies" that rendered it "ineligible under the VPPP statute." ECF 118 at 56.

The Court twice rejected Defendants' position. At the preliminary-injunction stage, it held that the VPPP authorized cordon pricing and that Defendants had likely acted arbitrarily and capriciously by terminating the Agreement based on the contrary legal conclusion. ECF 132 at 67-

80. On summary judgment, the Court again held that Defendants' asserted basis for termination—"broadly, that the Program 'is not an eligible value pricing pilot program' and thus 'FHWA lacked statutory authority to approve' the Program"—was contrary to law and arbitrary and capricious, and further held that the Program is authorized by the VPPP statute, which "clearly includes an area wide, or cordon, program within its ambit." ECF 195 at 72-73.

Remarkably, the Statement of Interest asks the District of New Jersey to reach the exact opposite conclusion. It asserts that the Program "violates federal law," that DOT's "prior grant of authority to New York violated the governing statute," and that the VPPP Agreement "violate[d] the plain terms of the VPPP Statute." *Dunne*, ECF 64 at 1-2, 8. The requested determination—that FHWA lacked statutory authority to approve the Program—is the same determination Defendants sought here and this Court rejected. It makes no difference that Defendants advance new statutory theories, or that they have appealed this Court's judgment on other grounds. Indeed, the fact that Defendants did not move to intervene in *Dunne*, and chose only to file a Statement of Interest, is also no accident and suggests they knew that doing so would be patently unlawful.[7] It blinks reality for Defendants to conclude that it was perfectly okay for them to do something by filing a Statement of Interest that they could not do by seeking to intervene as a party.

As for Defendants' new statutory theories, they are incompatible with this Court's interpretation of the VPPP statute to allow for authorization of the Program. *See supra* at 5-6. More fundamentally, once a legal issue has been litigated and determined, "it is the entire issue that is precluded, not just the particular arguments raised in support of it in the first case." *Yamaha Corp. of Am. v. United States*, 961 F.2d 245, 254 (D.C. Cir. 1992); *see* Restatement (Second) of

[7] Although Defendants support the *Dunne* plaintiffs' statutory arguments, they notably chose not to address whether 23 U.S.C. § 301 provides a private right of action, a question Your Honor has already answered in the negative. *Blumencranz v. Hochul*, No. 25 Civ. 1787 (S.D.N.Y.), ECF 35.

Judgments § 27 cmt. c (where the previously decided issue is one of law, "new arguments may not be presented to obtain a different determination of that issue"). A party cannot avoid the effect of a judgment by supplying new statutory rationales for a legal conclusion already rejected. *See United States v. Stauffer Chem. Co.*, 464 U.S. 165, 174 (1984) (applying estoppel where a federal agency sought to litigate "the same issue arising under virtually identical facts against the same party"); *see also Baldwin*, 283 U.S. at 525.[8]

It likewise makes no difference that Defendants have appealed this Court's judgment. A district court retains jurisdiction pending appeal to enforce its judgment and preserve the status quo, including by enjoining the continued litigation of issues already resolved by a declaratory judgment. *See Kidder, Peabody & Co. v. Maxus Energy Corp.*, 925 F.2d 556, 565 (2d Cir. 1991). Although the Court may not "modify [the] judgment substantively" while the appeal is pending, it may clarify the judgment and enforce the rights already determined. *See United States v. Nichols*, 56 F.3d 403, 411 (2d Cir. 1995); *AlSayer v. OmniX Labs, Inc.*, 2025 WL 3496276, at *2 (S.D.N.Y. Dec. 5, 2025) (Liman, J.) ("neither the filing of an appeal nor a lengthy delay after the trial court's initial ruling terminates the court's authority to grant further relief pursuant to § 2202"); *see also Abdi v. Nielsen*, 287 F. Supp. 3d 327, 333 (W.D.N.Y. 2018). The order we request would do exactly that: it would apply the judgment to Defendants' undisputed post-judgment conduct without changing the rights the judgment declared.

[8] Rule 13 reinforces this conclusion. Any claim by Defendants arising from the same transaction or occurrence was required to be asserted here. *See* Fed. R. Civ. P. 13(a)(1)(A); *Angell v. U.S. Army Corps of Eng'rs*, 149 F. App'x 34, 36 (2d Cir. 2005); *see also* ECF 138 at 2. The Court need not even determine that broader preclusive scope, however, because the Statement of Interest reasserts the statutory issue actually litigated and decided.

### B. The Court Should Enter a Permanent Injunction

The Court previously declined to issue a permanent injunction on the basis that an injunction against an agency should not be issued "unless doing so would 'have [a] meaningful practical effect independent of its vacatur.'" ECF 195 at 145 (citing *O.A. v. Trump*, 404 F. Supp. 3d 109, 153-54 (D.D.C. 2019)). Unfortunately, the circumstances underlying that conclusion have now changed to warrant the issuance of a permanent injunction—a situation the Court appeared to foresee in stating that its decision "does not leave the Plaintiffs without remedy if they believe the Defendants take action that violates the Court's declaratory judgment." *Id.* at 147 (citing 28 U.S.C. § 2202). Given Defendants' conduct, the MTA Plaintiffs respectfully request that the Court grant further relief by entering a permanent injunction enforcing the declaratory judgment, for the reasons identified in their summary judgment brief.[9] ECF 152 at 29-33.

## II. Limited Discovery Is Appropriate to Determine Whether Defendants Have Further Violated the Court's Orders

Separately, the Court should order limited discovery into whether Defendants have coordinated with or controlled the plaintiffs in the *Dunne* litigation in violation or circumvention of the Court's preliminary injunction and declaratory judgment.

### A. The Court Has Authority to Order Discovery

This Court's authority to order discovery in support of its judgment is well-settled. Section 2202 authorizes "[f]urther necessary or proper relief" based on a declaratory judgment against "any adverse party whose rights have been determined by such judgment." 28 U.S.C. § 2202. The All Writs Act authorizes "all writs necessary or appropriate in aid of [this Court's] jurisdiction[]." 28 U.S.C. § 1651(a). That authority "extends, under appropriate circumstances,

[9] The Court retains jurisdiction pending appeal to grant injunctive relief to "preserve the status quo." *Kidder, Peabody & Co.*, 925 F.2d at 565 (district court properly enjoined defendant from "relitigating the federal securities claims … because those issues already had been decided").

to persons who . . . are in a position to frustrate the implementation of a court order or the proper administration of justice." *United States v. N.Y. Tel. Co.*, 434 U.S. 159, 174 (1977); *accord United States v. Real Property & Premises Known as 63-39 Trimble Road*, 860 F. Supp. 72, 75 (E.D.N.Y. 1994) (writ of assistance available against non-parties "in a position to frustrate" a court's judgment).

Courts routinely exercise this authority as well as their broader inherent power to enforce their own judgments, by ordering discovery of the kind we seek. "[A]ppropriate discovery should be granted" where "significant questions regarding noncompliance [with a court order] have been raised," as part of a court's "inherent power to enforce its judgments." *Damus v. Nielsen*, 328 F.R.D. 1, 3 (D.D.C. 2018) (quoting *Cal. Dep't of Soc. Servs. v. Leavitt*, 523 F.3d 1025, 1033-34 (9th Cir. 2008)). Although the MTA Plaintiffs are not presently seeking contempt, judgment-enforcement discovery does not need to "await the formal initiation of contempt proceedings to order discovery concerning a party's ability to comply with orders issued but not carried out." *State of N.Y. v. Shore Realty Corp.*, 763 F.2d 49, 52 (2d Cir. 1985). Discovery aimed at identifying a party's coordination with others "in pursuit of the legitimate end of enforcing a court's judgment" is likewise proper. *Chevron Corp. v. Donziger*, 325 F. Supp. 3d 371, 383, 387 (S.D.N.Y. 2018); *see also BlackBerry Ltd. v. Typo Prods. LLC*, 2014 WL 4136586, at *5 (N.D. Cal. Aug. 21, 2014).

Defendants suggest that ordering discovery in this action would violate principles of comity, and that the MTA Plaintiffs should be seeking discovery in *Dunne*. ECF 205. That gets the jurisdictional picture backwards. The MTA Plaintiffs seek to enforce *this* Court's preliminary injunction order and declaratory judgment, not any orders entered in *Dunne*. What's more, Defendants are parties only to this action—it seems, because they recognize that intervening and asserting the same arguments they make in the Statement of Interest would be a flagrant violation

of this Court's Judgment—and they have not suggested that they would submit to the jurisdiction of the District of New Jersey for discovery. The United States appears solely through a non-party Statement of Interest, and Defendants Duffy, DOT, and FHWA have not appeared there at all.

### B. The Existing Record Raises Significant Questions Regarding Defendants' Compliance

Limited discovery is warranted because the record raises serious questions regarding Defendants' compliance with this Court's orders. A party seeking compliance discovery need not prove a violation before obtaining the evidence necessary to determine whether one occurred. "[T]he kind and amount of evidence of noncompliance required to justify discovery is, necessarily, considerably less than that needed to show actual noncompliance." *Leavitt*, 523 F.3d at 1033. As a result, "[i]f significant questions regarding noncompliance have been raised, appropriate discovery should be granted." *Id.* at 1034; *Does v. Trump*, 328 F. Supp. 3d 1185, 1201 (W.D. Wash. 2018) (ordering limited discovery because the Court "cannot rely on Defendants' statements alone") (quoting *Halet v. Wend Inv. Co.*, 672 F.2d 1305, 1308 (9th Cir. 1982)).

The current record easily satisfies that standard. While the preliminary injunction remained in force, the President called on Secretary Duffy to terminate the Program, and only four weeks later, *Dunne* was filed in the District of New Jersey seeking an order ending the Program. The *Dunne* plaintiffs and counsel representing them have numerous public connections to the Trump Administration, including that plaintiff Manjarres is a political appointee and one of the plaintiffs' attorneys worked in the White House selecting DOJ attorneys. *See supra* at 4 & n.2. Then months later, the President renewed his demand that the Program "be stopped," and the same Civil Division attorneys who represent Defendants here promptly filed the Statement of Interest in *Dunne*, supporting the *Dunne* plaintiffs and advancing the statutory position this Court had rejected. Were that not enough, when they were given the opportunity to deny the existence of

any coordination, counsel for Defendants instead asserted that such coordination would not violate the Court's orders. Tr. at 9:16-19.

Discovery is necessary to determine whether Defendants violated the Court's preliminary injunction. That injunction, in force when *Dunne* was filed, forbade Defendants and "all other persons who are in active concert or participation with any of the foregoing" from "taking any agency action founded on the February 19, 2025 letter . . . including any action to enforce compliance with or implement (1) the February 19 Letter, (2) Defendants' purported termination of the VPPP Agreement, or (3) Defendants' purported termination of the Tolling Program." ECF 132 at 108-09. If Defendants coordinated, funded, or otherwise assisted in the filing or prosecution of *Dunne*, then they violated the injunction.

Defendants contend that "the filing of a Statement of Interest is not an agency action." ECF 205 at 2. This argument confuses "agency action" with "final agency action." Even assuming the injunction incorporates the APA's terminology, the Supreme Court has expressly held that an agency's issuance of an enforcement complaint is "agency action," although it is not *final* agency action subject to APA review. *FTC v. Standard Oil Co. of Cal.*, 449 U.S. 232, 238 n.7, 242-43 (1980). Courts apply the same distinction to judicial enforcement proceedings. *See City of Oakland v. Lynch*, 798 F.3d 1159, 1166-67 (9th Cir. 2015) (government decision to file civil forfeiture action was unreviewable; "agency action … committed to agency discretion by law"); *cf. Scottsdale Capital Advisors v. SEC*, 183 F.4th 1302, 1312 (10th Cir. 2026) (SEC's filing of federal-court complaint was not final agency action because the court would determine the parties' rights). The injunction here prohibited "any agency action," not merely final agency action. ECF 132 at 108. Coordination of a lawsuit asking a federal court to invalidate the Program clearly fits within that broader language.

The Supreme Court's decision in *Montana v. United States*, 440 U.S. 147 (1979), is instructive. There, the Court held that the United States, though never a formal party to a Montana state-court tax case brought by a private contractor, was nonetheless collaterally estopped from relitigating the same issue the contractor had already lost, because the United States had a sufficient role in that litigation to be bound. *Id.* at 155. The Supreme Court reached that conclusion because the government had (1) directed the lawsuit to be filed, (2) reviewed and approved the complaint, (3) paid the attorneys' fees and costs, (4) directed the appeal, (5) appeared and submitted a brief as amicus curiae, (6) directed the filing of a notice of appeal to the Supreme Court, and (7) effectuated the contractor's abandonment of that appeal on the advice of the Solicitor General. *Id.* On those facts, the government "plainly had a sufficient 'laboring oar' in the conduct of the state-court litigation to actuate principles of estoppel," even though it was never named as a party. *Id.* *Montana* concerned estoppel and not compliance with a Court order, but its reasoning is relevant.

Several of those same categories of facts—whether Defendants encouraged or funded the *Dunne* litigation, and whether they had any advance role in reviewing or shaping the complaint—are precisely what the requested discovery would elucidate here. Indeed, the fifth *Montana* factor, participation through an amicus-style filing, has already happened given defense counsel's filing of the Statement of Interest in *Dunne*. The open question is how much further their involvement went, and only discovery in this case can answer that. If leave is granted, the MTA Plaintiffs will serve no more than ten interrogatories and ten document requests, and seek a deposition (if appropriate) of an individual capable of answering our questions. Conf. Tr. at 8:1-7.

## **CONCLUSION**

For the above reasons, the Court should grant the motion.

Dated: August 28, 2026
New York, New York

Respectfully submitted,

*/s/ Roberta A. Kaplan*

Roberta A. Kaplan
D. Brandon Trice
Maximilian T. Crema
KAPLAN MARTIN LLP
1133 Avenue of the Americas | Suite 1500
New York, NY 10036
Tel.: (212) 316-9500
rkaplan@kaplanmartin.com
btrice@kaplanmartin.com
mcrema@kaplanmartin.com

*/s/ Mark A. Chertok*

Mark A. Chertok
Elizabeth Knauer
Amy Lynn Cassidy
John F. Nelson
Philip Dane Warren
SIVE, PAGET & RIESEL, P.C.
560 Lexington Avenue, 15th Floor
New York, NY 10022
Tel.: (212) 421-2150
mchertok@sprlaw.com
eknauer@sprlaw.com
acassidy@sprlaw.com
jnelson@sprlaw.com
dwarren@sprlaw.com

*Attorneys for Plaintiffs Metropolitan Transportation Authority and Triborough Bridge and Tunnel Authority*

**CERTIFICATE OF COMPLIANCE**

This brief complies with the typeface and type-style requirements of Loc. R. 7.1(b) because it was prepared in a proportionally spaced typeface using Microsoft Word for Office 365 in size 12 Times New Roman font.

Dated: August 28, 2026
New York, New York

*/s/ Roberta A. Kaplan*
Roberta A. Kaplan

**CERTIFICATE OF SERVICE**

I, Roberta A. Kaplan, counsel for Plaintiffs the MTA and TBTA, and a member of the Bar of this Court, certify that on August 28, 2026, copies of the foregoing brief were filed with the Clerk through the Court's electronic filing system, which will send notice of such filing to all counsel of record.

Dated: August 28, 2026
New York, New York

*/s/ Roberta A. Kaplan*
Roberta A. Kaplan