**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| METROPOLITAN TRANSPORTATION AUTHORITY & TRIBOROUGH BRIDGE AND TUNNEL AUTHORITY,<br><br>Plaintiffs,<br><br>NEW YORK STATE DEPARTMENT OF TRANSPORTATION, RIDERS ALLIANCE, SIERRA CLUB, & NEW YORK DEPARTMENT OF TRANSPORTATION<br><br>Intervenor-Plaintiffs,<br><br>v.<br><br>SEAN DUFFY, et al.<br><br>Defendants. | **Case No. 25-cv-01413-LJL** |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR A PERMANENT INJUNCTION AND DISCOVERY**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........ 1

BACKGROUND ........ 2

ARGUMENT ........ 3

I. The Statement of Interest Does Not Violate the Declaratory Injunction ........ 3

II. Plaintiffs cannot show a violation of the preliminary injunction ........ 9

III. This Court should not grant Plaintiff any remedy ........ 11

A. There is no remedy for a violation of the abated preliminary injunction ........ 11

B. Plaintiffs should not receive discovery ........ 12

C. Plaintiffs are not entitled to a permanent injunction ........ 14

CONCLUSION ........ 15

## TABLE OF AUTHORITIES

**CASES** **PAGE(S)**

*Backo v. Loc. 281, United Bhd. of Carpenters & Joiners of Am.*,
438 F.2d 176 (2d Cir. 1970) ........ 12

*Baldwin v. Iowa State Traveling Men's Ass'n*,
283 U.S. 522 (1931) ........ 6

*Bennett v. Spear*,
520 U.S. 154 (1997) ........ 9

*Buzas Baseball, Inc. v. Bd. of Regents of Univ. Sys. of Georgia*,
189 F.3d 477 (10th Cir. 1999) ........ 13

*Chevron Corp. v. Donziger*,
325 F. Supp. 3d 371 (S.D.N.Y. 2018) ........ 12

*City of New York v. Mickalis Pawn Shop, LLC*,
645 F.3d 114 (2d Cir. 2011) ........ 14

*Damus v. Nielsen*,
328 F.R.D. 1 (D.D.C. 2018) ........ 13

*DHS v. Regents of Univ. of Cal.*,
591 U.S. 1 (2020) ........ 6, 7

*Florida v. HHS*,
19 F.4th 1271 (11th Cir. 2021) ........ 12

*Gill v. Whitford*,
585 U.S. 48 (2018) ........ 7

*Hall v. Clinton*,
285 F.3d 74 (D.C. Cir. 2002) ........ 5

*Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO v. E. Air Lines, Inc.*,
847 F.2d 1014 (2d Cir. 1988) ........ 15

*Klett v. Pim*,
965 F.2d 587 (8th Cir. 1992) ........ 12

*Matsushita Elec. Indus. Co. v. Epstein*,
516 U.S. 367 (1996) ........ 8

*Pickering v. Bd. of Ed. of Tp. High School Dist. 205*,
391 U.S. 563 (1968) ........ 5

*Schmidt v. Lessard*,
414 U.S. 473 (1974) .......... 9

*SEC v. Chenery Corp.*,
318 U.S. 80 (1943) .......... 6

*Shannon v. Gen. Elec. Co.*,
186 F.3d 186 (2d Cir. 1999) .......... 11

*Steffel v. Thompson*,
415 U.S. 452 (1974) .......... 5, 11

*Sutter Corp. v. P & P Indus., Inc.*,
125 F.3d 914 (5th Cir.1997) .......... 5, 11

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) .......... 7

*Trump v. CASA, Inc.*,
606 U.S. 831 (2025) .......... 11

*Ulstein Mar., Ltd. v. United States*,
833 F.2d 1052 (1st Cir. 1987) .......... 4

*United States v. Mendoza*,
464 U.S. 154 (1984) .......... 6, 9, 14

*United States v. Stauffer Chemical Co.*,
464 U.S. 165 (1984) .......... 5-6, 6

*W. Gulf Mar. Ass'n v. ILA Deep Sea Loc. 24*,
751 F.2d 721 (5th Cir. 1985) .......... 12

*Zambrana v. Califano*,
651 F.2d 842 (2d Cir. 1981) .......... 12

**STATUTES**

28 U.S.C. § 517 .......... 5

28 U.S.C. § 518 .......... 5

**FEDERAL RULES**

Fed. R. Civ. P. 65(d) .......... 9, 14

**ADMINISTRATIVE AND EXECUTIVE MATERIALS**

2 C.F.R. § 200.340(a)(4) .......... 3

**OTHER AUTHORITIES**

Charles Alan Wright *et al.*, 18 Fed. Prac. & Proc. § 4413 (2d ed. 2002)........................................ 9

## PRELIMINARY STATEMENT

Plaintiffs Metropolitan Transportation Authority and Triborough Bridge and Tunnel Authority (collectively, "Plaintiffs" or "MTA") seek a ruling that a Statement of Interest filed by the United States in another case in another jurisdiction violates this Court's Declaratory Judgment and warrants a permanent injunction. In doing so, Plaintiffs ask the Court to dictate to the Executive Branch the litigation positions it can and cannot take in other cases in other jurisdictions. And they anchor these arguments in frivolous theories of violations of this Court's orders.

The Declaratory Judgment stated that the Secretary may only terminate the Central Business District Tolling Program (CBDTP) based on the terms of the Value Pricing Pilot Program (VPPP) and could not terminate on other specific grounds: it was silent as to whether the CBDTP or VPPP Agreement were lawful in any other respects or whether the United States could express a position in separate litigation. Similarly, the Court's preliminary injunction enjoined Defendants "from taking any agency action founded on the February 19, 2025 letter from Secretary Duffy to Governor Hochul purporting to terminate the VPPP Agreement and rescind federal approval for New York's Central Business District Tolling Program, including any action to enforce compliance with or implement (1) the February 19 Letter, (2) Defendants' purported termination of the VPPP Agreement, or (3) Defendants' purported termination of the Tolling Program." ECF No. 132 at 108–09. The filing Plaintiffs fret over here is neither a termination nor an agency action and therefore implicates neither order. Nor did this case involve the statutory questions at issue in the filing in *Dunne*: whether the VPPP Statute allows tolling off Interstate Highways or with respect to unfunded programs. No claim or issue preclusion thus applies, and even if it did, that would be a question for the *Dunne* court.

Nor are Plaintiffs' discovery requests warranted. Courts have no authority over the dockets of sister federal courts. Plaintiffs ask this Court to fish into the District of New Jersey and extract information related to the genesis and prosecution of the *Dunne* litigation. Yet they fail to provide even a colorable basis for such an extraordinary request, either in fact or in law. The requested discovery would not be in aid of any contempt finding, as coercive contempt ends when an injunction ends, and compensatory contempt is not available against the United States. Accordingly, the Court should deny Plaintiffs' motion.

## BACKGROUND

This litigation is one of several cases involving the CBDTP and VPPP Agreement. Plaintiffs have endeavored to steer all out-of-district litigation to this Court, but their efforts have been rebuffed by both the District of New Jersey and the Eastern District of New York. In *Dunne v. MTA*, No. 2:25-cv-18105 (D.N.J.), MTA suggested the transfer of that case to this Court shortly after it was filed in December 2025. ECF No. 14. It then moved to transfer the next month, *Dunne,* ECF No. 33, but Judge Gordon denied that motion on June 1, 2026, *Dunne,* ECF No. 52.

In *Town of Hempstead v. Triborough Bridge & Tunnel Auth.*, No. 2:24-cv-3263 (E.D.N.Y.), MTA is a defendant along with the federal defendants in this case. MTA has filed *two* motions to transfer the case to this Court, first in 2024 and then again in December 2025. *See Town of Hempstead,* ECF Nos. 11, 60. Both were denied. *Town of Hempstead*, ECF Nos. 37, 65. In denying Plaintiffs' second motion, Judge Azrack concluded that "[n]otions of convenience and fairness support litigating [*Hempstead*] in the Eastern District," adding that "the Plan will affect many residents of the Eastern District, even if the CBD itself is in the Southern District." *Town of Hempstead*, ECF No. 65 at 7. As a result, judges in two other districts presently exercise

jurisdiction over cases challenging the validity of the VPPP Agreement. The federal government is a defendant in *Hempstead* and recently filed a statement of interest in *Dunne*.

## ARGUMENT

### I. The Statement of Interest Does Not Violate the Declaratory Injunction

This Court's Declaratory Judgment did not muzzle the federal government from stating its position in federal cases involving the VPPP Agreement, and Plaintiffs cannot show that the *Dunne* Statement of Interest violated any order of this Court. In this case, Plaintiffs sued based on the February 2025 letter purporting to terminate the VPPP Agreement. ECF No. 96. Their claims centered on Secretary Duffy's ability to *terminate* the VPPP Agreement for the reasons provided in his correspondence. *Id.* The Court entered a declaratory judgment that:

> the Secretary is permitted to terminate the VPPP Agreement only pursuant to the terms expressly stated therein, that the Defendants' termination of the VPPP Agreement was unlawful, and that any attempt to enforce the February 19 Letter or April 21 Letter would be unlawful. Defendants may not terminate the VPPP Agreement under 2 C.F.R. § 200.340(a)(4), the incorporation of that provision through the *Christian* doctrine, under the Secretary's powers contained within the VPPP itself, or the exercise of the Secretary's powers under the unmistakability doctrine.

Opinion & Order 148-49, ECF No. 195. Defendants have complied with that judgment. They have not attempted to enforce the February 19 or April 21 letters. The Declaratory Judgment also declares that Defendants may not terminate the VPPP Agreement for specific reasons, and the agreement has not been re-terminated for those or any other reasons.

The filing of the Statement of Interest in *Dunne* was not in any way inconsistent with the Declaratory Judgment. As an initial matter, in expressing its legal views, the Executive Branch did not "terminate the VPPP Agreement." And in any event, the Statement of Interest addressed entirely separate legal issues from those addressed by the Declaratory Judgment. This case's claims concerned Secretary Duffy's attempt to terminate the VPPP Agreement based on the rationales in

the February letter; the Statement of Interest expressed views as to the lawfulness of the CBDTP. Comparing the rationales of the February 19, 2025 termination letter that this Court addressed with the *Dunne* Statement of Interest arguments confirms the distinctions:

| **February 19, 2025 Letter** | **Statement of Interest** |
|---|---|
| "*First*… Congress did not… authorize the unprecedented and consequential step of cordon pricing." ECF No. 58-1 at 4. | "First, the VPPP Statute permits tolling only on the 'Interstate System,' not on all Federal-aid highways." ECF No. 200-1 at 2 |
| "*Second*… VPPP does not authorize tolls that are calculated from reducing congestion or advancing other road-related goals." ECF No. 58-1 at 4 | "Second, the VPPP Statute permits the Secretary to authorize tolling only 'as part of' a value pricing project that receives federal funding." ECF No. 200-1 at 2 |

The February and April 2025 letters also asserted policy-based grounds for termination, none of which are mentioned in the Statement of Interest or at issue in the *Dunne* litigation. There is no overlap, either in form or substance. The Declaratory Judgment, decided on one set of issues raised in DOT's February 2025 letter, could not reach the Statement of Interest's separate, unadjudicated issues. And contrary to Plaintiffs' allegation that the United States is "urging the District of New Jersey to hold that the Program is not authorized under the VPPP statute," ECF No. 210 at 5-6, the Statement of Interest includes no such request. It simply expresses the views of the United States. *See* ECF No. 200 at 23 (conclusion).

Even if there were overlap between the issues addressed by the Declaratory Judgment and the Government's Statement of Interest in *Dunne*, nothing about the Declaratory Judgment would silence Government speech on the judgment's topic. First, declaratory judgments are not coercive. "An injunction is a coercive order by a court directing a party to do or refrain from doing something, and applies to future actions." *Ulstein Mar., Ltd. v. United States*, 833 F.2d 1052, 1055 (1st Cir. 1987). "A declaratory judgment states the existing legal rights in a controversy, but does not, in itself, coerce any party or enjoin any future action." *Id.* Plaintiffs' theory treats declaratory

judgments and injunctions as interchangeable but a declaratory judgment "is a much milder form of relief than an injunction." *Steffel v. Thompson*, 415 U.S. 452, 471 (1974).

Second, Plaintiffs' gag-order interpretation of the Declaratory Judgment ignores the authority Congress has vested in the Department of Justice to "to attend to the interests of the United States in a suit pending in a court of the United States, or in a court of a State, or to attend to any other interest of the United States." 28 U.S.C. § 517; *see also id.* § 518; *Hall v. Clinton,* 285 F.3d 74, 80 (D.C. Cir. 2002). The Declaratory Judgment did not extinguish the broad statutory authority of the United States to participate in any case where it has an interest. To hold otherwise would contravene the "public interest," which supports "free and unhindered debate on matters of public importance." *Pickering v. Bd. of Ed. of Tp. High School Dist. 205*, 391 U.S. 563, 573 (1968).

Plaintiffs argue that the Court ruled that the CBDTP was lawfully authorized under *every* requirement in the VPPP. ECF No. 210 at 7 ("Whether the Program is lawfully authorized under the VPPP was directly presented and decided in this case"). Plaintiffs are incorrect: this Court recognized that Secretary Duffy terminated the VPPP Agreement on two rationales: first that Congress did not authorize cordon pricing, and second that the tolls were impermissibly calculated for use outside of highway infrastructure. ECF No. 195 at 73, 83. The Court then decided that the VPPP Statute "allows the Secretary to permit cordon pricing," *id.*, and "funds generated by a value pricing program are not limited to use on highway infrastructure," *id.* at 83. These were the statutory issues decided, not the broader question of whether the VPPP Agreement and CBDTP are lawful in every possible aspect.

Plaintiffs recognize that the Statement of Interest advances "new statutory rationales," ECF No. 210 at 10, but boldly assert "[a] party cannot avoid the effect of a judgment by supplying new statutory rationales for a legal conclusion already rejected," *id.* Plaintiffs rely on *United States v.*

*Stauffer Chemical Co.*, 464 U.S. 165, 174 (1984), and *Baldwin v. Iowa State Traveling Men's Ass'n*, 283 U.S. 522, 525 (1931). But these cases are inapposite. *Stauffer* involved the *same* statutory language and statutory issue: "whether private contractors are 'authorized representatives' under the statute. 464 U.S. at 166. And *Baldwin* concerned no statutory question at all, but rather personal jurisdiction and applied non-mutual collateral estoppel, 283 U.S. at 525, which is not available against the Government. *United States v. Mendoza*, 464 U.S. 154, 160 (1984).

In a footnote, Plaintiffs allege that Defendants were *required* to raise any claim with respect to the CBDTP's validity in this action because it would arise from the same transaction or occurrence. ECF No. 210 at 10. This is nonsensical. This action challenged the legality of the February 19, 2025 (and then April 21, 2025) letters. These letters did not advance the arguments made in the *Dunne* litigation regarding the Interstate Highway System and the absence of federal funding. Plaintiffs strenuously argued, and this Court agreed, that Defendants could only rely on the bases of the letters as grounds to terminate the VPPP Agreement. ECF 195 at 90 ("[T]he agency can elaborate only on the reasons it actually had for the decision. It cannot make up new reasons in the course of litigation and assert that those—and not the stated reasons—were the basis of its action.") (citation omitted). The issues raised in *Dunne* were never, and could not be, litigated here unless Defendants relied on them in terminating the VPPP Agreement.

Plaintiffs' apparent theory of something like permanent administrative estoppel—whereby an agency forfeits the right to consider and support legal arguments, however valid, for all time and in all subsequent potential fora—finds no support in the law. Indeed, Plaintiffs cite no authority for it. That is because it is not the law: under the APA, an agency is bound by the reasons provided in its agency action, *SEC v. Chenery Corp.,* 318 U.S. 80, 92 (1943); *DHS v. Regents of Univ. of Cal.*, 591 U.S. 1, 20 (2020), but is not forever prohibited from taking *new* agency action on

different reasons if supported by the law and the facts. *Regents*, 591 U.S. at 21. Article III authorizes federal courts to give remedies "limited to the inadequacy that produced [a plaintiff's] injury in fact." *Gill v. Whitford*, 585 U.S. 48, 66 (2018). It is not a power to "exercise general legal oversight of the Legislative and Executive Branches." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423-424 (2021).

Far from barring Defendants from making court filings regarding the VPPP Agreement, this Court instead recognized that "[the President] is obviously free to continue to make public statements as well as to ask the Secretary of Transportation to look into whether there are lawful means to end the CBDTP. And, as to the Secretary's statements, he has a right to continue to fight his case and to take an appeal of this Court's orders." ECF No. 195 at 146. The Declaratory Judgment also expressly recognizes authority to terminate in the future based on the Agreement's terms. Even without these express allowances, it is black letter law that agencies are permitted to take new and separate actions that produce the same result even if one ground for producing a result has been foreclosed in court. *Regents*, 591 U.S. at 21 ("[T]he agency can deal with the problem afresh by taking *new* agency action. An agency taking this route is not limited to its prior reasons but must comply with the procedural requirements for new agency action") (cleaned up). And in any event, filing a Statement of Interest is not agency action.

Finally, to hold that participation in litigation on separate legal issues than those determined in this case is a violation of the declaratory judgment would be a de facto enlargement of the judgment while it is on appeal. As Plaintiffs concede, "the Court may not 'modify [the] judgment substantively' while the appeal is pending." ECF No. 210 at 10.

The present motion is just one more attempt by Plaintiffs to steer all litigation regarding this sprawling program to this Court. This Court has noted there was "no evidence here that

Plaintiffs seek declaratory judgment for procedural fencing, nor that it would create friction with other courts." ECF 195 at 144. Yet now Plaintiffs are attempting to restrict the government's lawful authority to file Statements of Interest and, by challenging the bona fides of related litigation, are causing friction in other courts. Apparently unwilling to accept two district courts' denials of their motions to transfer, Plaintiffs wrongly use this Court's declaratory judgment to limit the presentation of issues in sister district courts.

Plaintiffs also fail to grapple with the fact that the *Duffy* Defendants are co-defendants with the MTA at present in the Eastern District of New York. Just as the declaratory judgment did not bar a statement of interest in the District of New Jersey, it does not compel Defendants to bow to the MTA's views in E.D.N.Y. litigation. In the *Town of Hempstead* case in the Eastern District of New York, the Defendants are *parties* and must respond to the plaintiffs' complaint by October 7—does MTA believe that this Court's Declaratory Judgment limits what Defendants can say in that legally-required filing? And does MTA believe that this Court's Declaratory Judgment prohibits Defendants from arguing against the Declaratory Judgment in Defendants' pending appeal in the Second Circuit? Of course not.

If Plaintiffs believe the Government's statement should not have been filed, they should raise issue preclusion with the court in *Dunne* to (at most) strike the Government's Statement of Interest. *Matsushita Elec. Indus. Co. v. Epstein,* 516 U.S. 367, 396 (1996) ("A court conducting an action cannot predetermine the res judicata effect of the judgment; that effect can be tested only in a subsequent action") (Souter, J., concurring in part, dissenting in part); *see* Charles Alan Wright *et al.*, 18 Fed. Prac. & Proc. § 4413 (2d ed. 2002) (noting "general rule that a court cannot dictate preclusion consequences at the time of deciding a first action," except in limited cases where it seeks to *limit* the decision's preclusive effect). But instead, resisting two other district courts'

denials of their motions to transfer cases to this Court, Plaintiffs ask this Court to probe the origins of one of these cases and apparently expect this Court to control the litigation positions the Federal Government takes in cases that other district courts have decided against transferring to this Court. Granting MTA's requests would be a profound violation of the separation of powers and judicial comity. *Mendoza*, 464 U.S. at 161 ("[The Executive Branch] nonetheless controls the progress of government litigation through the federal courts.").

## II. Plaintiffs cannot show a violation of the preliminary injunction

Plaintiffs' arguments with respect to the preliminary injunction fare no better. "Every . . . injunction . . . must . . . state its terms specifically; and describe in reasonable detail . . . the act or acts restrained or required." Fed. R. Civ. P. 65(d)(1). "[T]he specificity provisions of Rule 65(d) are no mere technical requirements." *Schmidt v. Lessard*, 414 U.S. 473, 476 (1974). "Since an injunctive order prohibits conduct under threat of judicial punishment, basic fairness requires that those enjoined receive explicit notice of precisely what conduct is outlawed." *Id.* This Court enjoined Defendants from taking "agency action" to terminate the VPPP Agreement based upon the February 19 letter. It did not come close to enjoining the federal government from filing statements of interest or collaborating with counsel in other litigation involving the VPPP Agreement. The filing of a Statement of Interest is not an *agency action*—it is a legal brief that fixes no legal rights. *Bennett v. Spear*, 520 U.S. 154 (1997). Nor does it purport "to enforce compliance with or implement" any of the actions that were at issue in this case. And the filing of a complaint by private parties based on new and different legal theories could not conceivably be "taking any agency action founded on the February 19, 2025 letter," especially when viewed against Rule 65's specificity requirements.

Plaintiffs take a broad view of agency action that would encompass any activity by DOT that touches on the CBDTP. ECF No. 210 at 14. But this would contradict the Court's

characterization of the preliminary injunction. The Court explicitly stated that Defendants could continue their review of the legality of the VPPP agreement. Summ. J. Tr. 49:5-9. ("I issued an injunction that did not prohibit the agency from continuing its review, but I don't have anything in the record that indicates that the agency has done anything, even though I decidedly did not prohibit the agency from continuing to conduct review."); *see also* Dkt. 195 at 44 ("Had there been a process, there would have been nothing in the Court's preliminary injunction that would have prevented the Secretary from continuing it and evaluating the policy benefits and costs of the CBDTP program. There was nothing in the Court's preliminary injunction that prohibited the FHWA from commencing such a process either."). No doubt such reviews would be "agency actions" under Plaintiffs' definition (though not the APA itself), but they were not barred by the preliminary injunction.

In any event, even if participating in litigation on the legality of the CBDTP fell within the definition of "agency action," it would not be barred by the preliminary injunction because it would not be agency action "founded on the February 19, 2025 letter from Secretary Duffy to Governor Hochul purporting to terminate the VPPP Agreement and rescind federal approval for New York's Central Business District Tolling Program." ECF No. 132 at 108–09. Plaintiffs fail to explain how participation in litigation advancing completely separate legal theories as to why DOT lacked authority to authorize the CBDTP could be said to be an action founded on the specific rationales in the February 19 termination letter. Quite simply, it could not be: the February letter purported to terminate the VPPP Agreement on specific legal grounds and policy rationales, and the *Dunne* litigation alleges the CBDTP is unlawful on pure questions of law, ones undecided by this Court and not implicated by the preliminary injunction.

At bottom, Plaintiffs' theory of a violation rests on a radical view of equitable power giving one injunction implicitly preclusive effect in other cases before other district judges. Congress saw fit to create a federal judiciary dividing the country's geography into dozens of judicial districts, while allowing these courts to simultaneously handle cases involving overlapping issues. The federal government routinely faces multiple suits in different fora involving the same challenged agency action. And under Plaintiffs' view, an injunction in one of these cases implicitly forecloses the Government's participation in all of them. Just last year, the Supreme Court recognized district courts lack authority to issue universal injunctions addressing claims not presented by a case's plaintiff. *Trump v. CASA, Inc.*, 606 U.S. 831, 861 (2025). But Plaintiffs' theory hangs on an even more expansive view of equitable jurisdiction than that rejected in *Casa* and under which a preliminary injunction in one case implicitly controls the federal government's litigation conduct in all other cases touching on the same subject. There is no support for that.

## III. This Court should not grant Plaintiff any remedy

Plaintiffs cannot establish a violation of the Declaratory Judgment or the preliminary injunction. But even if they could, no remedy would be available. Neither coercive nor compensatory contempt is available for a violation of the preliminary injunction, so the Plaintiffs' requested discovery would not be in service to any claim or right. So too with the declaratory judgment. "[N]oncompliance with [a declaratory judgment] may be inappropriate, but is not contempt." *Steffel*, 415 U.S. at 471. Discovery is further unwarranted because it violates comity and there is no significant question of compliance. And a permanent injunction would be overly broad and non-specific, and it would wrongly modify the judgment while on appeal.

### A. There is no remedy for a violation of the abated preliminary injunction

Discovery into any alleged violation of the preliminary injunction is further unwarranted because it would serve no purpose: there is no remedy plaintiffs could receive for any discovered

violation. The preliminary injunction ceased when the Court entered final judgment. *See, e.g., Shannon v. Gen. Elec. Co.*, 186 F.3d 186, 192 (2d Cir. 1999). And when there is no active injunction, coercive contempt proceedings are not available. *Klett v. Pim,* 965 F.2d 587, 590 (8th Cir. 1992) ("A court cannot impose a coercive civil contempt sanction if the underlying injunction is no longer in effect."). "Where a civil contempt proceeding is coercive in nature and seeks to enforce an interlocutory order, it abates when the proceedings out of which it arises are terminated." *Backo v. Loc. 281, United Bhd. of Carpenters & Joiners of Am.*, 438 F.2d 176, 182 (2d Cir. 1970).

Plaintiffs seem to understand that there is no available remedy connected to the discovery they seek. ECF No. 210 at 12 ("MTA Plaintiffs are not presently seeking contempt"). Yet, discovery was ordered in the cases cited by Plaintiffs only for the purpose of aiding an eventual contempt determination. *See, e.g. Chevron Corp. v. Donziger*, 325 F. Supp. 3d 371, 383 (S.D.N.Y. 2018) ("But the Court has ruled that a hearing is appropriate to determine whether the evidence ultimately will warrant a finding of contempt with respect to Elliott and granted limited discovery in order to facilitate that hearing"). Plaintiffs are foreclosed from both compensatory contempt and coercive contempt, and their discovery is not anchored in any relief that this Court can grant. Accordingly, the Court should not grant discovery into violation of the now abated preliminary injunction. So too for the declaratory judgment. Plaintiffs have not articulated a violation of it, but even if they had violations of declaratory judgments do not rise to contempt. *Steffel*, 415 U.S. at 471.

**B. Plaintiffs should not receive discovery**

The Court should reject Plaintiffs' request for *Dunne* litigation discovery, in particular given the District of New Jersey's jurisdiction over that case. Though Plaintiffs wish this Court had exclusive jurisdiction over all cases touching on the VPPP Agreement, two federal judges have

decided otherwise, and their decisions deserve respect. "The federal courts long have recognized that the principle of comity requires federal district courts—courts of coordinate jurisdiction and equal rank—to exercise care to avoid interference with each other's affairs." *Florida v. HHS*, 19 F.4th 1271, 1285 (11th Cir. 2021) (quoting *W. Gulf Mar. Ass'n v. ILA Deep Sea Loc. 24*, 751 F.2d 721, 728 (5th Cir. 1985)); *see also Zambrana v. Califano*, 651 F.2d 842, 844 (2d Cir. 1981) ("Generally, principles of comity and judicial economy make courts reluctant to exercise jurisdiction over claims involving the orders of coordinate courts.") ; *Buzas Baseball, Inc. v. Bd. of Regents of Univ. Sys. of Georgia,* 189 F.3d 477, 477 (10th Cir. 1999) (discussing first-to-file rule, but stating "courts of coordinate jurisdiction and equal rank ... must be careful to avoid interfering with each other's affairs [and must] 'avoid rulings which may trench upon the authority of sister courts'") (quoting *Sutter Corp. v. P & P Indus., Inc.,* 125 F.3d 914, 917 (5th Cir. 1997)).

If Plaintiffs wish to probe *Dunne*'s origins, they should seek discovery in *Dunne*. Plaintiffs made a similar claim about the *Dunne* plaintiffs nine months ago that they now seek to carry over to this case. In a December 2025 letter filed on the *Dunne* docket less than three weeks after the case was commenced, Plaintiffs complained that one of the *Dunne* plaintiffs "is an Executive Branch political appointee" and that one of the plaintiffs' attorneys "worked in the White House." *Dunne*, ECF No. 14 at 2 n.4. It now appears that Plaintiff may seek the same discovery in *Dunne* that they ask this Court to order. On the same day Plaintiffs filed their letter with this Court, Plaintiffs made a filing in *Dunne* noting the possibility they may seek the same discovery in *Dunne*. ECF No. 65-2. That filing attaches the letter they sent to this Court, notes their request for *Dunne* discovery here, and "reserve[s] the right to seek similar discovery from Plaintiffs here," i.e., in *Dunne*. ECF No. 65-2 at 4 n.3. Nothing about the United States's Statement of Interest filed in *Dunne* brings Plaintiffs' nine-month-old complaint about the *Dunne* plaintiffs within this Court's

jurisdiction. And principles of comity and judicial economy require Plaintiffs to litigate their concerns with *Dunne* in the District of New Jersey

Plaintiffs attempt to ignore principles of comity by characterizing their request as merely enforcing this Court's preliminary injunction. ECF No. 210 at 12-13. But this discovery seeks to probe the inner workings of a pending litigation where Plaintiffs are a party against private litigants, including the communications of their opposing counsel. This discovery would interfere with the District Court of the District of New Jersey's jurisdiction and control of its docket. In all events, though, discovery is limited to instances where there are "significant questions regarding noncompliance." *Damus v. Nielsen*, 328 F.R.D. 1, 3 (D.D.C. 2018). Plaintiffs fail to raise any significant question. At most, they allege that President Trump posted on Truth Social calling on *Secretary Duffy* to *terminate* the program, and four weeks later *private* plaintiffs (with no official role in DOT or DOJ) filed a complaint. This is not Secretary Duffy terminating the program. And even if Plaintiffs had identified some valid basis for discovery (they have not), they have not come close to justifying a fishing expedition under which they would be granted ten interrogatories, ten requests for production, and a deposition.

**C. Plaintiffs are not entitled to a permanent injunction**

For the reasons explained in Defendants' summary judgment brief and accepted by the Court, Plaintiffs are not entitled to any injunctive relief. ECF No. 158 at 46; *see also* ECF No. 195 at 146 ("Plaintiffs have not made out a sufficient showing to support permanent injunctive relief"). Separately, the Court should not grant the injunction that Plaintiffs seek because such an injunction would be overbroad and not reasonably detailed. "An injunction is overbroad when it seeks to restrain the defendants from engaging in legal conduct, or from engaging in illegal conduct that was not fairly the subject of litigation." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 145 (2d Cir. 2011). In asking this Court to enjoin Defendants from making any new or

different legal arguments regarding the validity of the CBDTP, Plaintiffs seek to non-mutually estop the Government from being involved in litigation addressing the validity of the CBDTP in all cases and on all imaginable rationales. But "[a]llowing nonmutual collateral estoppel against the government in such cases would substantially thwart the development of important questions of law by freezing the first final decision rendered on a particular legal issue." *Mendoza*, 464 U.S. at 160. And it is wholly inappropriate where the legal issues are distinct. Restatement (First) of Judgments § 70 (1942).

Nor would such an injunction be reasonably detailed. In essence, Plaintiffs are seeking the Court to enjoin Defendants from taking certain legal positions. But Rule 65(d) states that any injunction must "describe in reasonable detail . . . the act or acts restrained or required." Fed. R. Civ. P. 65(d). "A court is required to frame its orders so that those who must obey them will know what the court intends to forbid." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 145 (2d Cir. 2011). Given the pending litigations in two other Districts, the Second Circuit appeal, and this Court's acknowledgment that Secretary Duffy "has a right to continue to fight his case," ECF No. 195 at 146-147, Defendants will lack adequate notice of what conduct is proscribed.

In addition, such an injunction would be an impermissible modification of the judgment while it is on appeal. "[O]nce a notice of appeal has been filed, a district court may take actions only "in aid of the appeal or to correct clerical errors." *Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO v. E. Air Lines, Inc.*, 847 F.2d 1014, 1017 (2d Cir. 1988).

**CONCLUSION**

For the foregoing reasons, the Court should not find a violation of the Declaratory Judgment or preliminary injunction, enter a permanent injunction, or grant Plaintiffs any relief.

Dated: September 10, 2026.

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

CHARLES E.T. ROBERTS
Senior Counsel to the Assistant Attorney General
Civil Division

JOSEPH BORSON
Assistant Branch Director
Federal Programs Branch

*/s/ Michael Bruns*
Michael Bruns
Trial Attorney
Federal Programs Branch
Civil Division, Department of Justice
1100 L Street NW
Washington, DC 20005
Telephone: 202-514-4011
Email: michael.bruns@usdoj.gov